IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

In re: ELIZABETH JANE PEIFFER,          )
                                        )
          *Appellant*,                  )
                                        )
_____                              )          No. 23-5
                                        )
UNITED STATES OF AMERICA,               )
                                        )
          *Plaintiff-Appellee,*         )
                                        )
          v.                            )
                                        )
DAVID ANTHONY RUNYON,                   )
                                        )
          *Defendant.*                  )


**United States' Response Opposing Emergency Stay**

The United States respectfully opposes Elizabeth Peiffer's motion for a stay

of proceedings in defendant David Anthony Runyon's motion under 28 U.S.C.

§ 2255. Peiffer fails to meet her burden of satisfying the four traditional

requirements for a stay. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). "A stay is

an intrusion into the ordinary processes of administration and judicial review,"

*Nken*, 556 U.S. at 427, and is an "extraordinary" remedy, *Williams v. Zbaraz*, 442

U.S. 1309, 1311 (1979) (Stevens, J., in chambers).

A stay is particularly unjustified here given that this Court remanded

Runyon's § 2255 for an evidentiary hearing to address a single claim of ineffective

1

assistance of counsel, *United States v. Runyon*, 994 F.3d 192, 208–09 (4th Cir. 2021), and those proceedings are nearly complete. Runyon has already presented thirteen witnesses in support of that claim during a hearing spanning eight days in February 2023 and represented that he had just five proposed remaining expert witnesses, all of whom have completed their evaluation and reports . Indeed, the proceedings would have concluded if one of Runyon's attorneys had not committed a material discovery violation by failing to disclose evidence that weakens Runyon's claims on the issue on which this Court remanded. Runyon had previously contended in his § 2255 that trial counsel essentially stopped communicating with Runyon's mental-health expert, Dr. Merikangas, after he provided a preliminary report on August 5, 2009, and that counsel never shared brain scans with Dr. Merikangas. But the undisclosed discovery shows that counsel did provide the scans to Dr. Merikangas, who in turn counseled against presenting a mental-health defense at the penalty phase.

Runyon's attorney who committed the discovery violation and her organization were permitted to withdraw from representing Runyon while Peiffer remained. On May 17, 2023, the district court appointed Runyon a second additional counsel. Runyon's habeas counsel in turn proposed the current deadline for completing full discovery to the United States—August 31, 2023—with the conclusion of the evidentiary hearing scheduled for November 1, 2023.

Meanwhile, Runyon obtained six additional *pro bono* attorneys from Covington & Burling, and the district court agreed that those Covington attorneys may assist Runyon, regardless of whether they are admitted *pro hac vice*, and they have been assisting Runyon's review of the discovery, which should remove any question about Runyon's ability to cure his discovery violation by August 31, 2023. The present interlocutory appeal challenges the district court's decision not to permit one of Runyon's remaining appointed attorneys, Elizabeth Peiffer, to withdraw. The court concluded that her continued representation would provide continuity in Runyon's representation and that she, with Runyon's new appointed counsel and assisted by six attorneys from Covington, should be able to address what remains to be litigated on the single issue on which this Court remanded. Although Peiffer faces deeply regrettable circumstances surrounding her mother's health, Peiffer declined to discuss with the district court whether she is withdrawing from the practice of law because of those circumstances, and *after* the district court denied Peiffer's motion to withdraw, Peiffer appeared in a different capital case. *See Batiste v. Cain*, No. 1:22cv108. Notably, Peiffer declined to address the court's questions, particularly whether she consulted with her state bar on that comparative issue, and did not submit any written ethics' opinion for the district court's consideration.

"[S]imply showing some possibility of irreparable injury fails to satisfy" the stay standard, *Nken*, 556 U.S. at 434–35, and an applicant must offer concrete proof that irreparable harm is "likel[y]" to occur. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). Here, Peiffer is working with seven other attorneys to finish out what remains after an eight-day hearing and a discovery violation by Runyon's counsel. Moreover, because Peiffer is pursuing a personal interlocutory appeal, she faces additional hurdles that the collateral-order doctrine imposes. Under that doctrine, even though "a ruling 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment,'" such circumstance have "never sufficed" to justify interlocutory appeal. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (quoting *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

By seeking to stay the § 2255 proceedings, Peiffer also undercuts that her claims are separate from the merits of the § 2255—an essential requirement for an interlocutory appeal. *Mohawk Indust.*, 558 U.S. at 106. The district court was plainly focused on the limited scope of the remaining proceedings, making the district court's ruling on Peiffer's motion to withdraw closely bound up with the merits of Runyon's habeas challenge. Moreover, even if this Court were to conclude that it possesses jurisdiction for Peiffer's appeal—a topic the United States will address in a forthcoming motion to dismiss—Peiffer cannot show that it

4

is likely that the district court abused its discretion in denying her request to withdraw. The standard for substitution of counsel is "a peculiarly context-specific inquiry," and because it "is so fact-specific, it deserves deference." *Martel v. Clair*, 565 U.S. 648, 663 (2012). Here, the court had appointed another attorney to represent Runyon, who asserted she is learned and capable of representing Runyon through this evidentiary hearing (Tr. 6/16/23, at 23-24); Runyon's counsel proposed the next discovery deadline in August; Runyon has the assistance of six *pro bono* attorneys; and the issue remaining following an eight-day evidentiary hearing are not broad. Peiffer also has not shown that she will suffer irreparable harm during the time that it takes to complete appellate litigation over her interlocutory appeal. And she cannot show that the interests of the parties and the public militate in favor of staying the § 2255 remand at this eleventh hour.

### Background

Runyon murdered Cory Allen Voss in late April 2007 after Voss's wife, Catherina, and her lover, Michael Draven, paid Runyon to carry out the murder so that Catherina and Draven could collect life insurance proceeds and terminate Cory's and Catherina's marriage. Runyon's convictions and death sentence were upheld after extensive litigation on direct appeal. *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013), *cert. denied*, 574 U.S. 813 (2014).

Three years after the Supreme Court denied review, the district court denied defendant's motion under 28 U.S.C. § 2255 in an equally extensive opinion reviewing Runyon's 18 claims for relief. *Runyon v. United States*, 228 F. Supp.3d 569 (E.D.Va. 2017). On appeal, after this Court granted a certificate of appealability on four issues, this Court affirmed the denial of relief on all but one portion of one of defendant's claims and ordered an evidentiary hearing on that issue—namely, whether defense counsel was ineffective at the penalty phase for failing to investigate adequately mitigation evidence about defendant's potential mental illness and brain injury. *United States v. Runyon*, 994 F.3d 192, 208–09 (4th Cir. 2021). Defendant had raised a broader claim alleging ineffectiveness in presenting mitigation evidence, but this Court denied defendant's claim that his counsel were ineffective in investigating or presenting evidence on defendant's putative "generational trauma" and "Psycho-Social History."

At the time of the remand, Runyon had long been represented in his § 2255 by Michele Brace of the Virginia Capital Representation Resource Center (VCRRC) and Dana Chavis, then supervisor of the capital habeas unit of the Federal Defender Services of Eastern Tennessee, Inc. (FDSET). In November 2021, Brace moved to withdraw for medical reasons and requested that she be replaced by Elizabeth Peiffer, also an employee of VCRRC and member of the EDVA bar. (ECF 648). Brace amply described her circumstances of personal

illness, represented that she "already has withdrawn from her representation of the petitioner in her other active habeas matter," and sought equally to withdraw from Runyon's § 2255. (ECF 648 at 1). Peiffer's resume was attached, identifying her as learned and competent counsel to proceed in the capital litigation. The government did not object, and the district court granted the withdrawal and substitution in November 2021. (ECF 649).

On January 27, 2022, the parties entered a joint scheduling and discovery order. (ECF Nos. 656 and 657). Runyon later filed motions for discovery and early production of Jencks that were denied. (ECF Nos. 737, 739, 767, and 775).

In August 2022, Runyon filed a motion to appoint Susanne Bales, another FEDSET attorney, pro hac vice (ECFs 691, 692), and renewed the motion on January 13, 2023. The district court granted the motion in part, limited to a set of designated witnesses. (ECF Nos. 725, 726, 751, 772).

On January 31, 2023, the United States filed a memorandum (ECF No. 743), addressing Runyon's motion for the early production of Jencks materials, and explained that the materials had already been produced. The United States noted, however, that Runyon had not disclosed such materials and made a reciprocal request. (ECF No. 743 at 7). On February 6, 2023, Runyon disputed the United States' claims of untimely discovery disclosure and accused the United States of failing to comply with the agreed upon disclosure deadlines. (ECF No. 771).

Counsel stated, "It is simply incorrect to suggest that Mr. Runyon's counsel has not complied with the agreed-upon disclosure schedule or that the government 'has not received reciprocal disclosures from certain of the Petitioners experts, including Dr. Siddartha Nadkarni.'" (ECF No. 771, p.3). Runyon also emphasized, "Any and all conflicting statements, no matter how minor, must be disclosed." *Id.* at 4.

The evidentiary hearing commenced on February 7, 2023. By that time, approximately two years had elapsed since this Court's remand. Runyon called thirteen witnesses to testify, including trial counsel (now) Judge Stephen Hudgins, Jon Babineau, and Lawrence Woodward. Also called to testify were lay witnesses Maria Runyon, Mark Runyon, David Dombrowski, Wren Fleming, Scott Linker, Tiffany Linker, Deborah and Robert Seeger, Jeffrey Harris and (mitigation specialist) Sheila Cronin. Often, witnesses were asked about information pertaining to Runyon's psycho-social history, or transgenerational and cultural trauma. The government objected frequently that the testimony was beyond the scope of the remand, and the district court agreed. For example, after such an objection during David Dombrowski's testimony regarding generational trauma, the court asked habeas counsel whether the scope of the claim was limited to evidence of brain injury and mental illness. Counsel agreed but requested permission to elicit the information for purposes of the record.

On the morning of the fifth hearing day, February 13, 2023, Chavis left two documents on the courtroom table of the attorneys for the United States that had not been produced previously in discovery or as part of any Jencks material. At minimum, these documents were Jencks material for Sheila Cronin and Judge Hudgins, who had each already testified. At the end of the day of testimony, the United States alerted the district court that it was concerned that discovery had not been provided in a complete or timely manner. The district court questioned Runyon's counsel about the matter. Chavis acknowledged giving the document to the United States before the hearing but was uncertain whether it been produced previously. Chavis continued that Runyon did not introduce the document because the United States objected.

On February 14, 2023, before the hearing began, Bales approached the government's counsel and advised that there were documents that were discoverable regarding Dr. Merikangas' testimony that had not been produced to the United States and that counsel was working on the production. In court, Bales disclosed to the court that certain documents had not been disclosed to the United States and that their office was working to produce the documents. The district court questioned Runyon's counsel and adjourned until 5:00 p.m. for Runyon's counsel to report about the production's status. At 5:00 p.m., the court reconvened, and Bales disclosed that they lacked a record to determine what had

9

previously been disclosed to the United States and that they did not know how long it would take to produce the documents, but that counsel was working diligently on the matter. At the end of the hearing, the court ordered Runyon's counsel to produce all discoverable and Jencks documents to the attorneys for the United States and set a deadline of February 15, 2023, by 3:30 p.m.

The initial production of documents provided on February 14, 2023, established, at minimum, that: (1) trial counsel did have communications with Dr. Merikangas after he had completed his August 5, 2009, preliminary report and this communication included Dr. Merikangas' recommendation that a mental health defense *not* be invoked; and (2) that Dr. Merikangas had, in fact, received and reviewed the MRI and PET scans of Runyon that had been conducted before the onset of the penalty phase. These two facts alone conflict with information tendered in pleadings, declarations and examinations that have been presented to the district court and this Court. For example, contrary to many representations about Dr. Merikangas and the scans, the following documents have been provided:

- A "Memo To File" from attorney Hudgins that reflects an August 13, 2009 telephone conference with attorney Woodward and Dr. Merikangas. According to this document, Dr. Merikangas relayed he did not believe that the defense was in a good position to present a mental health defense because of the government's rebuttal. Dr. Merikangas indicated that the examination of Runyon was not abnormal and that Runyon was not truthful. Dr. Merikangas indicated that unless there was something glaring in the MRI or PET scan, he did not recommend a mental health defense, and even if there were a

defect shown in the scans or testing, it would be a risk the defense counsel would have to weigh as to whether or not to present a mental health defense absent a very bad injury or defect.

- Billing records from attorney Woodward that reflect an entry entitled "Memo to file regarding Dr. Merikangas interview" on August 13, 2009; and an entry entitled "Memo to file regarding mental health evidence/interview with Dr. Merikangas" on August 16, 2009. To date, neither memo has been found and produced.

- Two invoices from Dr. Merikangas to attorney Hudgins, both from August 2009; one reflects "MRI and PET 8/17/2009 Review" for two hours at $100 per hour accompanied by a court reimbursement invoice signed by Dr. Merikangas that has the written description of "review of MRI and PET scans"; and the other invoice reflects "MRI and PET 8/17/2009" also for two hours at $100 per hour.

(ECF No. 793-1).

On February 15, 2023, Chavis emailed the district court and parties that she could not meet the deadline for production or answer the government's questions regarding discovery. The district court convened a hearing to assess the status of the discovery production. Bales took the lead in addressing the court, candidly conceding that the task was likely much larger than anticipated. She explained that, due to Chavis' actions earlier that day, the team had been unable to access its physical workspace or the internet.

Chavis explained her belief that files had been overlooked due to possible file-naming issues and her mistaken belief that the undisclosed items were duplicates. She admitted to preventing her colleagues from accessing the defense

11

files, which she characterized as her own.  Chavis explained that her co-counsel were leveling "false accusations" against her. (ECF No. 788-2 at 4).

After hearing from all three of Runyon's counsel, including Peiffer, the district court observed that there was a breakdown in Runyon's team and suggested that Runyon be consulted as to whether Chavis should move to withdraw.  Chavis then moved to withdraw from representation, which all parties, including Runyon, agreed should happen. Bales also moved to withdraw from her representation, citing the general advice of her supervisor and the possibility of an imputed conflict.  The court initially denied the motion pending briefing.

On February 17, 2023, Bales moved to withdraw.  (ECF No. 788).  The court granted Bales' motion, finding the appearance of imputed conflict.  (ECF No. 796).  The evidentiary hearing was continued so that proper disclosures could be made to the United States.  (ECF No. 796).

On February 24, 2023, the Federal Defender filed an affidavit with the court, outlining habeas counsels' agreed upon plan to transfer all files to VCRRC and Peiffer and her office.  (ECF No. 795).  On February 27, 2023, Peiffer submitted a declaration to the court, confirming that she had reached resolution regarding Runyon's file transfer from FDSET.  (ECF No. 797-1).  This declaration adopted the schedule set forth by FDSET (ECF No. 795-1), promising completion of the scanning and transfer of files by April 3, 2023.

Between October 2021 and February 3, 2023 (before the evidentiary hearing), habeas counsel produced 4,809 pages of information. Following the February 14, 2023, continuance, habeas counsel produced an additional 1,613 pages through February 20, 2023. Nothing further was produced, despite promises of a "rolling discovery plan" until June 1, 2023, and the government received approximately 315 pages followed by approximately 137 pages on June 15, 2023 (excepting approximately 300 pages that were entirely redacted). Nothing further has been received.

On April 12, 2023, Runyon filed a motion for the appointment of Kathryn Ali to represent him with Peiffer. (ECF No. 802). Runyon also sought "to be represented in this matter on a pro bono basis by attorneys from Covington & Burling LLP, whose pro hac vice motions are forthcoming." (ECF No. 803). Runyon alleged receiving "at least fifty-seven bankers boxes and a hard drive containing 187,284 documents" and acknowledged that the "hearing was stopped at least in part due to the production of documents not previously disclosed." (ECF No. 803 at 4). Runyon also claimed that "a number of expert and lay witnesses remain to be called." (ECF No. 803 at 5). Runyon also asserted that the requested appointment is critical for the parties "and for any subsequent appeal." (*Id*.).[1] The

---

[1] Before the district court's decision to continue the hearing, the government addressed the myriad of discovery issues and highlighted that the few pages turned over were apparently claim dispositive. The government, as the victim of the

court granted Ali's appointment "for the sole purpose of moving the case forward on the one issue now before the court for an evidentiary hearing." (ECF No. 810). Although no *pro hac vice* motion was, or has ever been, presented to the district court from the Covington attorneys, the court put the parties on notice that "the court does not intend to appoint, or to otherwise admit pro hac vice, any additional attorneys. To the extent that petitioner utilizes additional counsel in a supporting pro bono role, he will do so without the appointment or involvement of, or reimbursement from, the court." (ECF 810 at 2).

Meanwhile, on April 14, 2023, Runyon sought another continuance to submit a proposed discovery schedule, again discussing an obligation to "conduct an independent review to ensure that all appropriate disclosures are made." (ECF No. 806 at 6). The government requested a status conference, which was held on June 16, 2023. Ultimately, the court granted Runyon's requested continuance to complete discovery by August 31, 2023, and ordered that the hearing will recommence on November 1, 2023. (ECF No. 817).

Meanwhile, Peiffer filed a motion seeking to withdraw and substitute counsel, (ECF No. 814, 815, 816) which was heard at the June 16, 2023 hearing. Peiffer provided limited information in support of her motion. Peiffer provided a

---

violations, sought to waive further discovery for purposes of the limited hearing (ECF No. 793), deemed moot by the continuance. (ECF No. 799).

14

sealed, undated declaration (filed with her motion on June 7, 2023) in which she explained that her mother fell ill on April 28, 2023, requiring Peiffer's assistance. Without question, her personal circumstances have become challenging, as she and others seek to provide the requisite care and attention to her mother.

Peiffer informed the court of her general review of the Virginia Rules of Professional Conduct and a consultation with the Virginia State Bar, without specificity. The district court gave Peiffer the opportunity to expand on her motion and declaration; however, Peiffer did not provide additional factual information. Moreover, Peiffer did not address how her withdrawal affected her overall duties at VCRRC, how it affected other clients, and how she prioritized client representation. At the hearing on June 16, 2023, the court sought such clarity and allowed Peiffer every opportunity to remedy the lack of information before the court. Peiffer did not attest that she was withdrawing from other client representation; she did not address how she prioritized work; and while she has a modified schedule to provide her reasonable accommodations to care for her mother, she said that she will remain employed with the VCRRC. (Tr. at 6-8). The court noted that while Peiffer availed herself of a consultation with the bar, she did not disclose the substance of those communications; she did not provide a written opinion explaining how her perception of a personal conflict gave rise to a withdrawal from the representation—particularly at this late stage in the litigation;

15

and she did not identify whether she discussed her ethical obligations for providing Runyon with continuity of counsel. (Tr. at 7). Despite the district court's invitation to address the court's concerns (Tr. at 6), Peiffer never provided additional evidence on those issues and likewise never addressed whether she received advice regarding her ethical obligations to remain in the representation.

Runyon did "renew his request to be represented in these § 2255 proceedings by *pro bono* counsel from Covington." (ECF No. 815 at 5). The motion remains unclear as to which attorneys will formally seek admission, and no Covington attorney has in fact submitted a *pro hac vice* application.

Despite her difficult personal situation, Peiffer remains involved in other federal cases, including a case pending in the United States District Court for the Northern District of Mississippi – *Batiste v. Cain*, No. 1:22cv108. Peiffer was admitted *pro hac vice* in that case and was listed as counsel on an Amendment to Petition for a Writ of Habeas Corpus by a Prisoner in State Custody, filed on June 20, 2023. (ECF 31). That filing apparently prompted a *sua sponte* order by the district court, filed on June 21, 2023, that clarified an apparent misunderstanding as to "the nature of Ms. Peiffer's role in these proceedings." (ECF 32). The district court indicated that Peiffer was admitted *pro hac vice* as associate counsel at a reduced rate. *Id.* This Order has not prompted any motion to withdraw by Peiffer. In fact, the Superseding Scheduling Order in that case, also issued on June 21,

16

2023, requires an answer and reply to the Amended Petition within the next five months (90 days for an answer, and another 60 days for a reply). Additionally, the petitioner in this case (represented by Peiffer and other counsel) must file a memorandum of law within 90 days after service of the answer. In short, the schedule sets forth deadlines occurring over the next three to six months, which is the same time frame in this case.

**Analysis**

Peiffer does not dispute that her request to withdraw is governed by the "interests of justice" standard that the Supreme Court identified in *Martel*, a standard that covers counsel appointed under 18 U.S.C. § 3006A and 18 U.S.C. § 3599. Indeed, the district court's order, ECF No. 820, expressly relied on *Martel*, and its interest-of-justice standard governs even when, as here, a defendant on collateral review has no constitutional right to counsel. *Martel*, 565 U.S. at 661.

"As its name betrays, the 'interests of justice' standard contemplates a peculiarly context-specific inquiry"—so much so that the Supreme Court "doubt[ed] that any attempt to provide a general definition of the standard would prove helpful." *Id*. at 662. As an example, the Court explained that "[p]rotecting against abusive delay *is* an interest of justice." *Id*. at 661. Factors that circuits have considered "generally include: the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause

17

for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Id*. at 663; *see also United States v. Blackledge*, 751 F.3d 188, 194 (4th Cir. 2014).

But this case does not involve the typical scenario of disagreements between defense counsel and defendant. Rather, the "peculiarly context-specific inquiry" here took into account the stage of the proceedings, what had transpired before, and what remained to be litigated. Against that background, the court had to weigh Peiffer's competing ethical responsibilities to avoid having her personal obligations harm her client under Va. R. Prof'l Conduct 1.7(a)(2), at the same time not harm her client through her withdrawal given her institutional knowledge of the case, and fulfil her obligation not to withdraw except by leave of court under Va. R. Prof'l Conduct 1.16(c). The district court did not abuse its discretion in weighing these factors, and "[b]ecause a trial court's decision on substitution is so fact-specific, it deserves deference." *Martel*, 565 U.S. at 663–64.

First, the district court plainly did not abuse its discretion in restricting its attention to the limited substantive issue remaining before the court. The mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court," as well as "issues decided by the district court but foregone on appeal or

otherwise waived, for example because they were not raised in the district court." *United States v. Bell*, 5 F.3d 64, 66–67 (4th Cir. 1993). Certainly, misconduct by one of Runyon's attorneys that improperly strengthened the claim on which he won a remand cannot reasonably be treated as broadening the bases for § 2255 relief that Runyon could seek now.

Second, because the sole claim before the court addressed whether trial counsel was ineffective in presenting evidence of brain damage and mental health, the ineffectiveness standard necessarily is evaluated based on the facts available "as of the time of counsel's conduct." *Maryland v. Kulbicki*, 577 U.S. 1, 4 (2015) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). After a remand and an eight-day evidentiary hearing, where five proposed witnesses remain, the district court did not abuse its discretion in declining to view the remaining proceedings as a jumping off point for a brand new assessment, unavailable to Runyon's trial counsel, of Runyon's purported brain damage and mental health.

Third, the district court did not abuse its discretion in weighing Peiffer's competing ethical obligations in light of the evidence Peiffer presented to the court and concluding that her continued representation—which the court established on habeas counsels' own motion—provided Peiffer sufficient opportunity to address her other commitments and bring to bear her accumulated institutional knowledge

of the case. This determination by a judge well acquainted with the case, its posture and the needs of the defendant was not an abuse of discretion.

Under Va. R. Prof'l Conduct 1.7(a)(2), a lawyer should not represent a client when there is "a significant risk that the representation … will be materially limited … by a personal interest of the lawyer." But a court need not simply accept a lawyer's representations that other work and personal commitments require the lawyer to end a longstanding representation. The commentary to Rule 1.7 explains that conflicts must ripen from a potential conflict to an actual one:

> A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

Va. R. Prof'l Conduct 1.7 cmt. [8]. Sixth Amendment standards also incorporate this point. *See, e.g., Wilson v. Moore*, 178 F.3d 266, 280 (4th Cir. 1999) ("merely demonstrating a potential conflict of interest will not suffice"). And courts have discretion to determine whether a potential conflict should lead to disqualification of a lawyer. *United States v. Williams*, 81 F.3d 1321, 1324–25 (4th Cir. 1996).

Moreover, reasonableness is an objective standard. "[R]easonably when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer." Preamble to Virginia Rules of Professional

20

Conduct. Thus, the assessment of whether a lawyer has a personal interest conflict of interest under Virginia Rule 1.7(a)(2) necessarily involves an objective analysis of whether there is a significant risk that a lawyer's personal interest will foreclose the lawyer from taking action that a reasonably prudent and competent lawyer would take. *Cf., e.g., Sanford v. Commonwealth of Va.*, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009) (for motion to disqualify counsel under Virginia Rule 1.7, "the asserted conflict must be a real one and not a hypothetical one").

Again, Peiffer's request occurred late in the proceedings involving a narrow habeas remand, after a significant record has already been developed—a record with which Peiffer is well familiar having litigated the evidentiary hearing and participated in recent discovery productions to date. Peiffer stresses that the final days of the pending evidentiary hearing are in November, purportedly making her request to withdraw timely. But the district court was not limited to considering solely whether Peiffer spoke up promptly after her mother's diagnosis (which arose in April 2023), but also considering what remained to be litigated and the stage of the proceedings. Viewed that way, Peiffer's request did come at the eleventh hour.

The district court also appropriately inquired of Peiffer as to any updates on her then at least 10-day old declaration. Despite claiming that the situation was fluid and unpredictable, Peiffer had no significant update for the court that extended beyond her declaration.

The court acknowledged and endorsed Peiffer taking a reduced role with Ali ready (and willing) to assume lead counsel status, together with the services of the six lawyers from Covington on a pro bono basis. The court did expressly consider the impact on Runyon, as it determined that representation would benefit from an attorney who had significant experience in the proceedings and could provide that assistance to more recently appointed and obtained counsel.

Although Peiffer claims that Runyon will experience prejudice with her remaining in the case, the district court appropriately focused on the effect on Runyon of allowing an attorney to withdraw in the middle of an evidentiary hearing. And again Runyon remains represented by Ali—capable learned counsel—and has obtained the pro bono services of a large law firm, who have begun their robust assistance, and which the court did nothing to prohibit.

Peiffer references Rules 1.1, 1.3 and 1.7 in support of her motion, but neglects to address Rule 1.16, which requires leave of the court to withdraw. Clearly, the district court found that such withdrawal could not be accomplished without working on hardship on Runyon.

Finally, Peiffer fails to establish irreparable harm to herself or Runyon. "[S]imply showing some possibility of irreparable injury fails to satisfy" the stay standard. *Nken*, 556 U.S. at 434–35. Peiffer has the able assistance of seven

lawyers, and the discovery deadline is not until August 31, with the hearing resuming on November 1.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:  /s/
Richard D. Cooke
Assistant United States Attorney
919 East Main Street Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5471
Email: richard.cooke@usdoj.gov

Brian J. Samuels
Lisa McKeel
Assistant United States Attorney
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Telephone: (757) 591-4000
Facsimile: (757) 591-0866
Email: brian.samuels@usdoj.gov

**Certificate of Compliance**

I certify that I wrote this motion using 14-point Times New Roman typeface and Microsoft Word 2016. I further certify that this brief does not exceed 5,200 words (and is specifically 5,199 words) as counted by Microsoft Word, excluding the items identified in Federal Rule of Appellate Procedure 27(f).

By: /s/_____
Richard D. Cooke
Assistant United States Attorney
919 East Main Street Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5471
Email: richard.cooke@usdoj.gov