**No. 23-5**

IN THE
# United States Court of Appeals for the Fourth Circuit

In re: ELIZABETH JANE PEIFFER,

*Appellant*

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID ANTHONY RUNYON,

*Defendant*.

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 4:08-cr-00016-RBS-DEM
(The Honorable Rebecca Beach Smith)

## BRIEF OF APPELLANT

CATHERINE E. STETSON
TIARA BROWN
SIMON CHIN
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004-1109
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Appellant*

July 21, 2023

# DISCLOSURE STATEMENT

Under Fed. R. App. P. 26.1 and Local Rule 26.1, Appellant Elizabeth Peiffer represents the following:

- She is an individual, not a publicly held corporation or other publicly held entity.

- No publicly held corporation has a direct financial interest in the outcome of this litigation.

- This case does not arise out of a bankruptcy proceeding.

- This is not a criminal case in which there was an organizational victim.

/s/ Catherine E. Stetson
Catherine E. Stetson

**TABLE OF CONTENTS**

**Page**

DISCLOSURE STATEMENT ...........................................................................i

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION........................................................................1

STATEMENT OF THE ISSUE FOR REVIEW ........................................................3

INTRODUCTION .........................................................................................3

STATEMENT OF THE CASE........................................................................6

    A.   David Runyon Seeks Federal Habeas Relief ...........................6

    B.   The District Court Denies Appellant's Motion to Withdraw ......................10

SUMMARY OF THE ARGUMENT .......................................................16

STANDARD OF REVIEW .........................................................................20

ARGUMENT ..............................................................................................20

    I.    THE DISTRICT COURT ABUSED ITS DISCRETION BY DISREGARDING APPELLANT'S CLEAR CONFLICT OF INTEREST .................20

        A.   Ms. Peiffer's Continued Representation of Mr. Runyon Violates the Virginia Rules of Professional Conduct ....................21

        B.   The District Court Misapplied The Withdrawal Factors ...............23

        C.   Precedent Supports Reversing the District Court's Order ............29

    II.   THE DISTRICT COURT'S ORDER VIOLATES DEFENDANT'S RIGHTS............34

CONCLUSION.............................................................................................40

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Brandon v. Blech*,
560 F.3d 536 (6th Cir. 2009)........................................................................*passim*

*Christeson v. Roper*,
574 U.S. 373 (2015) (per curiam ................................................................. 23, 35

*Clark v. Davis*,
850 F.3d 770 (5th Cir. 2017)........................................................................ 35

*Cohen v. Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949) ..................................................................................... 1

*Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*,
310 F.3d 537 (7th Cir. 2002)........................................................................*passim*

*Gray v. Pearson*,
526 F. App'x 331 (4th Cir. 2013) ................................................................ 35

*Hunter v. Earthgrains Co. Bakery*,
281 F.3d 144 (4th Cir. 2002)........................................................................ 17, 25

*Juniper v. Davis*,
737 F.3d 288 (4th Cir. 2013)........................................................................ 19, 35

*Lawlor v. Zook*,
No. 2:15CV113, 2015 WL 4590827 (E.D. Va. July 28, 2015) ........................... 37

*Martel v. Clair*,
565 U.S. 648 (2012) ..................................................................................... 23, 32, 35

*McFarland v. Scott*,
512 U.S. 849 (1994)..................................................................................... 19, 34

*Sanford v. Maid-Rite Corp.*,
816 F.3d 546 (8th Cir. 2016)........................................................................*passim*

*United States ex rel. Thomas v. O'Leary*,
856 F.2d 1011 (7th Cir. 1988)...................................................................... 18, 28

*United States v. Barton*,
712 F.3d 111 (2d Cir. 2013) ........................................................................ 2

*United States v. Bellille*,
962 F.3d 731 (3d Cir. 2020) ................................................................*passim*

*United States v. Blackledge*,
751 F.3d 188 (4th Cir. 2014) ..............................................................*passim*

*United States v. Cronic*,
466 U.S. 648 (1984) ............................................................................ 19, 34

*United States v. Jennette*,
387 F. App'x 303 (4th Cir. 2010) ............................................................. 25

*United States v. Johnson*,
114 F.3d 435 (4th Cir. 1997) ......................................................... 18, 20, 28

*United States v. Muslim*,
944 F.3d 154 (4th Cir. 2019) .................................................................. 16, 24

*United States v. Oberoi*,
331 F.3d 44 (2d Cir. 2003) ..................................................................*passim*

*United States v. Plunkett*,
2023 WL 2929684 ....................................................................................... 2

*United States v. Runyon*,
707 F.3d 475 (4th Cir. 2013) ..................................................................... 6

*United States v. Runyon*,
994 F.3d 192 (4th Cir. 2021) ..................................................................... 6

*United States v. Sampson*,
No. CR. 01-10384, 2008 WL 2563374 (D. Mass. June 25, 2008) ..................... 37

*United States v. Smith*,
640 F.3d 580 (4th Cir. 2011) .................................................................. 18, 28

*United States v. Wenk*,
  771 F. App'x 229 (4th Cir. 2019) .................................................................. 29

*Whiting v. Lacara*,
  187 F.3d 317 (2d Cir. 1999).............................................................. 2, 29, 30, 32

*Will v. Hallock*,
  546 U.S. 345 (2006) ........................................................................................ 2

**STATUTES:**

18 U.S.C. § 3005 ............................................................................................. 37

18 U.S.C. § 3599 ....................................................................................... *passim*

18 U.S.C. § 3599(a)(1)(B) ............................................................................. 36

18 U.S.C. § 3599(a)(2)............................................................................... 19, 34

28 U.S.C. § 2255 ....................................................................................... *passim*

**RULES:**

E.D. Va. Crim. R. 57.4(J) ............................................................................... 21

Va. R. Pro. Conduct 1.1 ........................................................................... *passim*

Va. R. Pro. Conduct 1.3(a).......................................................................*passim*

Va. R. Pro. Conduct 1.7 ............................................................. 17, 20, 21, 22

Va. R. Pro. Conduct 1.7(a)............................................................................ 21

Va. R. Pro. Conduct 1.7(a)(2) ..................................................... 17, 21, 22, 31

Va. R. Pro. Conduct 1.16 ................................................................. 17, 20, 28

Va. R. Pro. Conduct 1.16(a)(1) ............................................................. 17, 23

Va. R. Pro. Conduct 6.2(a)....................................................................... 23

**Page(s)**

Va. Sup. Ct. R. 6 ....................................................................... 21

**OTHER AUTHORITIES:**

7A *Guide to Judiciary Policy* § 620.10.20(b)........................................37

*Request a Legal Ethics Opinion*, Virginia State Bar, *available at* https://vsb.org/Site/lawyers/leo-request.aspx ....................................................28

United States District Court Eastern District of Virginia, *Criminal Justice Act Plan* (approved Nov. 6, 2019) ................................................................36

United States District Court Western District of North Carolina, *Criminal Justice Act Plan*................................................................37

United States District Court Eastern District of Louisiana, *Revised Plan of July, 2018 For Furnishing Representation Pursuant To The Criminal Justice Act of 1964*................................................................37

In The

# United States Court of Appeals for the Fourth Circuit

---

In re: ELIZABETH JANE PEIFFER,

*Appellant*

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID ANTHONY RUNYON,

*Defendant*.

---

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 4:08-cr-00016-RBS-DEM
(The Honorable Rebecca Beach Smith)

---

**BRIEF OF APPELLANT**

---

**STATEMENT OF JURISDICTION**

This Court has jurisdiction over this appeal under the collateral order doctrine established in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949). To qualify as an immediately appealable collateral order, an interlocutory order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively

unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted).

The District Court order denying Appellant's motion to withdraw as counsel due to a conflict of interest meets all three requirements. First, the order "conclusively determined whether [Appellant must] continue to represent [her] client." *Sanford v. Maid-Rite Corp.*, 816 F.3d 546, 549 (8th Cir. 2016). Second, the "the withdrawal issue was 'completely separate from the merits' " of the underlying federal habeas proceeding. *Id.* (quoting *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999)). Third, the order is "effectively unreviewable because the harm of violating one's ethical obligations would be complete and could not be undone after [the hearing]." *United States v. Bellille*, 962 F.3d 731, 737 (3d Cir. 2020).

This Court recently observed that "several circuits have concluded that an attorney may immediately appeal the denial of a motion to withdraw because of the irreparable harm that befalls an attorney 'forced to continue representing a client against his or her wishes.' " *United States v. Plunkett*, No. 22-7225, 2023 WL 2929684, at *1 n. (4th Cir. Apr. 13, 2023) (quoting *Bellille*, 962 F.3d at 736); *see also United States v. Barton*, 712 F.3d 111, 116 (2d Cir. 2013) ("A district court's denial of an attorney's motion to withdraw as counsel . . . is . . . immediately appealable."); *Sanford*, 816 F.3d at 549 ("The district court's order denying [the] motion to withdraw satisfie[d] each of [the collateral order doctrine's] three

requirements."); *Brandon v. Blech*, 560 F.3d 536, 537 (6th Cir. 2009) (holding that a denial of a withdrawal motion "is just the sort of order the doctrine contemplates"); *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 310 F.3d 537, 539 (7th Cir. 2002) (same).

The basis for the District Court's subject-matter jurisdiction is 28 U.S.C. § 2255. The District Court issued the order from the bench on June 16, 2023, and as a written order on June 20, 2023. Appellant filed a timely notice of appeal on June 26, 2023.

## STATEMENT OF THE ISSUE FOR REVIEW

Whether the District Court abused its discretion by denying Appellant's motion to withdraw as counsel, where Virginia ethics counsel agreed that Appellant's duties as caretaker for her seriously ill mother and her responsibilities to her death-sentenced client during a critical stage of his habeas proceedings give rise to an actual conflict of interest.

## INTRODUCTION

This is a complex federal death penalty case with a multi-week evidentiary hearing scheduled to resume on November 1. In late April, appointed habeas counsel Elizabeth Peiffer's mother was diagnosed with Stage IV cancer. Ms. Peiffer immediately became a critical caregiver for her mother, and these obligations prevent her from continuing to competently and diligently represent her client, David

Runyon, an indigent petitioner who has been sentenced to death, in the coming months. After consulting with Virginia State Bar ethics counsel, Ms. Peiffer concluded she faces an actual conflict of interest between her caretaking duties and her responsibilities to Mr. Runyon. Accordingly, with the approval of her client and co-counsel, Ms. Peiffer moved to withdraw.

The District Court denied Ms. Peiffer's motion. It concluded Ms. Peiffer did not have a conflict and that her continued involvement was necessary to ensure "continuity" in Mr. Runyon's representation. JA2063. The court, however, disregarded Ms. Peiffer's sworn representations—as an officer of the court—about her lack of capacity and Bar counsel's recommendation that she withdraw. The court also disregarded that Ms. Peiffer's continued, conflicted representation would violate Mr. Runyon's rights as a death-sentenced person.

In the same order, the court ordered the completion of discovery by August 31, 2023, set an evidentiary hearing for November 1, 2023, and denied a stay pending appeal. The court also denied Mr. Runyon's motion to substitute new counsel in place of Ms. Peiffer, who had represented that they would be prepared to immediately step in and meet all existing deadlines. Given Ms. Peiffer's conflict of interest and the impending deadlines, Ms. Peiffer's continued representation of Mr. Runyon would violate her ethical and professional responsibilities under the applicable Virginia ethics rules. The court's denial of the motion to withdraw and

4

Mr. Runyon's concurrent motion for substitute counsel also violates Mr. Runyon's right to conflict-free counsel.

In the face of the fast-approaching discovery deadline and evidentiary hearing, the court's denial of the motion to withdraw and to substitute counsel has left Mr. Runyon in the position of proceeding into an evidentiary hearing with effectively a single attorney who has been on the case for only a few months. This lone attorney must handle all pre-hearing litigation and prepare at least five expert witnesses and several rebuttal witnesses relevant to Mr. Runyon's ineffective assistance of counsel claim, who were disclosed prior to the February 2023 hearing.

Mr. Runyon stands alone in this posture. As the record before the District Court showed, every other person on federal death row litigating a § 2255 petition has at least two (and sometimes more) active counsel of record. *See* JA1996-1997. Meanwhile, the Government has at least three actively participating counsel in these proceedings, two of whom have been involved since the trial and a third who was admitted *pro hac vice* without inquiry or comment by the District Court. Mr. Runyon is separately seeking a writ of mandamus from this Court directing the District Court to admit *pro hac vice* his chosen substitute counsel from Covington & Burling LLP. JA2179.

**STATEMENT OF THE CASE**

**A.     David Runyon Seeks Federal Habeas Relief.**

In 2009, David Anthony Runyon was convicted and sentenced to death in the United States District Court for the Eastern District of Virginia (No. 4:08-cr-00016). His convictions and sentences were affirmed on direct appeal, and his petition for certiorari was denied. *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013), *cert. denied*, 574 U.S. 813 (2014).

In 2015, Mr. Runyon moved to vacate his sentence pursuant to 28 U.S.C. § 2255, JA115, and amended that motion in 2016, JA382.  The District Court denied that amended motion without a hearing in January 2017.  JA690.  This Court granted a certificate of appealability and, in February 2021, vacated the dismissal of Mr. Runyon's § 2255 motion "to the extent that it dismissed without a hearing Runyon's claim of ineffective assistance of counsel for failure to investigate and present evidence of his brain damage and mental health," remanding that claim for a hearing. *United States v. Runyon*, 994 F.3d 192, 212 (4th Cir. 2021).

In November 2014, the District Court had appointed Michele Brace of the Virginia Capital Representation Resource Center (VCRRC) as habeas counsel, while denying appointment of any additional counsel, stating that "one attorney is sufficient," despite the complex and voluminous record.  JA80.  The court noted it

would consider appointing second counsel if "circumstances arise in the future to warrant the appointment." JA84.

A few months later, Ms. Brace moved for appointment of the Federal Defender Services of Eastern Tennessee, Inc. (FDSET) and Dana Hansen Chavis, the supervisor of FDSET's capital habeas unit, as co-counsel. JA98. Ms. Brace explained that second counsel was "necessary because . . . the remaining investigation, work with experts, claim identification, and drafting of pleadings exceeds Attorney Brace's capacity to competently develop and prepare the motion on her own." JA99. Ms. Brace further explained that VCRRC attorneys and staff were and would remain unavailable to assist her in Mr. Runyon's case. JA86-87 & n.1. The court granted the appointment of a second attorney—but declined to appoint FDSET itself: "The court does not appoint organizations to represent individual criminal defendants; rather, the court appoints individual attorneys to represent individual defendants." JA113.

In November 2021, Ms. Brace moved to withdraw for medical reasons and sought substitution of Elizabeth Peiffer, another VCRRC attorney. JA740. The court granted both requests. JA743.

Following this Court's remand, in January 2022, the parties agreed to and the District Court entered a discovery order requiring Mr. Runyon to provide

> all matters contained in the trial counsel file as related to trial defense counsel's investigation, strategy, and failure to present mitigation as set

forth in Petitioner's Habeas Claim 6, to include documents related to relevant communications with any expert consultants, mitigation consultations, and potential expert witnesses, as well as materials provided to or otherwise relied upon by mitigation and expert consultants and potential expert witnesses.

JA747. The parties engaged in discovery throughout 2022, and the court set an evidentiary hearing for February 2023. JA763.

In preparing for the evidentiary hearing, Ms. Peiffer moved repeatedly for *pro hac vice* admission on behalf of another Tennessee federal defender, Helen Susanne Bales. JA755, JA758, JA765, JA800. Ms. Peiffer explained that Mr. Runyon anticipated presenting, *inter alia*, more than twenty witnesses at his evidentiary hearing and that Ms. Bales's assistance would be necessary to provide adequate representation at the hearing. JA770. The court declined to admit Ms. Bales *pro hac vice* until February 7, 2023—the first day of the evidentiary hearing—and even then on the condition that her admission was permitted only for the specific purpose of presenting or cross-examining seven listed witnesses. JA801.

During the February 2023 evidentiary hearing, it became apparent that the Tennessee attorneys had not fully complied with their discovery obligations. JA1971-1972. The court determined that Ms. Chavis and Ms. Bales were conflicted and permitted them to withdraw, leaving only Ms. Peiffer to litigate Mr. Runyon's § 2255 proceeding. JA1972. The court also directed Gianna Maio, the Federal Defender of FDSET, and Ms. Peiffer "to come to an agreement on the logistics of

exchanging *all* physical and electronic case files that [were] in the possession of FDSET and/or its employees." JA1972.

At the same February 2023 hearing, the District Court noted the significant extent of the Tennessee defender's involvement in Mr. Runyon's case:

> We started with the Virginia Capital Resource Center here, and Ms. Brace was in charge, and then I believe that she was ill and had to retire, and I believe Ms. Peiffer has stepped in there. It seems like [Ms. Chavis] and Ms. Bales, and [Ms. Chavis] particularly, have done the lead work in this case; is that correct?

JA1812. Ms. Chavis confirmed to the court that the Tennessee attorneys had done the lead work in the case. JA1812.

Following the withdrawal of the Tennessee counsel from the case, a diligent search for co-counsel to assist Ms. Peiffer ensued.

In the meantime, in light of the discovery issues that surfaced at the hearing, Ms. Peiffer undertook the task of reviewing all files obtained from the Tennessee defender to determine whether any additional documents needed to be produced in discovery. JA1976. Since the beginning of April 2023, the Tennessee defender has sent Ms. Peiffer 70 banker boxes containing tens of thousands of paper files and more than 200,000 electronic files. JA2012-2013; JA2020-2021. The complete set included sundry files from a range of sources, including files of people who had worked on the case at some point since 2015. These files were disorganized, improperly scanned, and/or sent without an explanation concerning their origin,

9

necessitating an ongoing, time-consuming review to ensure that all appropriate disclosures are made. JA2021. It appeared that every person who had originally assembled the files either no longer worked at the Tennessee defender's office or was prohibited by the District Court from further involvement in Mr. Runyon's case—and therefore was unavailable to explain or confirm the organization of the files.

## B. The District Court Denies Appellant's Motion to Withdraw.

Given the large volume of files needing review, the potential for depositions, and the work required for the evidentiary hearing, Mr. Runyon moved in April 2023 to appoint Kathryn Ali as counsel. Mr. Runyon also notified the court that he had engaged attorneys from Covington & Burling LLP on a pro bono basis and that their *pro hac vice* motions would be forthcoming. JA1992; JA1994.

The court granted this motion in part, appointing Ms. Ali as second counsel, based on "the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case." JA2033-2034 (footnote omitted). The order expressly limited Ms. Ali's representation of Mr. Runyon, stating she was appointed "for the sole purpose of moving the case forward on the one issue now before the court for an evidentiary hearing." JA2034. Regarding the Covington attorneys, the court stated that it "does not intend to appoint, nor to otherwise admit, *pro hac vice*, any additional attorneys." JA2034.

Several weeks after Mr. Runyon moved to appoint Ms. Ali as counsel, Ms. Peiffer's seventy-five-year-old mother fell in her home. JA2229. Subsequent tests revealed she has Stage IV breast cancer that has metastasized to her hip, spine, ribs, lungs, and liver. JA2229-2230. Her condition has left her unable to safely move or care for herself without assistance. JA2229-2231. Although Ms. Peiffer's mother has begun treatment, it will be months before its effectiveness can be assessed. JA2232.

Ms. Peiffer immediately became a critical part of her mother's care team. This responsibility has significantly limited Ms. Peiffer's availability to work on this matter and will continue to do so for at least the next several months. JA2230-2232. Her mother has had radiation treatment, requires assistance to safely walk and care for herself, JA2232, and has now begun further treatments. It remains unclear what impact the progression of the disease will have on her health, the side effects the treatment may cause, and what additional care she will require. JA2232. As a result, it is extremely difficult for Ms. Peiffer to make plans or commitments for the foreseeable future. JA2229-2234. In this same period, Ms. Peiffer will be expected to diligently and competently represent Mr. Runyon in preparing for the fast-approaching discovery deadline and evidentiary hearing.

Upon review of the Virginia Rules of Professional Conduct, and after consultation with ethics counsel for the Virginia State Bar, Ms. Peiffer moved to

withdraw from Mr. Runyon's case given the significant constraints on her capacity and resulting conflicts of interest. JA2036. Ms. Peiffer substantiated the basis for her motion—including the substance and result of her consultation with Bar counsel—in a detailed, sworn, sealed declaration. *See* JA2228. Mr. Runyon agreed with Ms. Peiffer's decision to withdraw, JA2037, and in the same motion, sought to substitute attorneys from Covington, renewing his request that these attorneys be admitted *pro hac vice*. JA2039. The Government did not file any opposition to the motion.

The District Court denied the motion to withdraw at a status conference on June 16, 2023. The court opined that notwithstanding the opinion of ethics counsel, Ms. Peiffer in fact "ha[s] an ethical obligation not to withdraw[,]" JA2073, and that she would be "violating [her] duties to Mr. Runyon by not staying in his case," JA2066. The court did not consider the advice Ms. Peiffer received from ethics counsel, apparently because it was not presented in the form of a written "ethics opinion." JA2064.

Despite determining that Ms. Peiffer had a duty to Mr. Runyon not to withdraw, the court did not dispute that Ms. Peiffer's circumstances would require her to proceed "on a limited basis," JA2072, and in a "lesser role," JA2075. The court stated that although Ms. Peiffer "may not for a while be able to take the lead

here," JA2064, Ms. Peiffer's co-counsel "Ms. Ali is certainly capable of taking a leading role," JA2062.

Nonetheless, the court stated that Ms. Peiffer, as an attorney for VCRRC, must remain in the case for "institutional memory and continuity." JA2063. The court instructed Ms. Peiffer: "You don't necessarily have to do all the substantive work, but the continuity has to be there, and it has to be there now through you, and if not through you, through the Virginia Capital Resource Center." JA2072. At the same time, Ms. Peiffer, as a "local counsel of record," would remain a "responsible attorney[ ], reportable to the Court." JA2083-2084.

At the hearing, Ms. Peiffer explained that VCRRC had "operated under the Court's instructions that I was appointed to the case and not the office. The office institutionally has had very little involvement with the case. I have performed the brunt of the work in this case, the relationship with Mr. Runyon, and participation in the evidentiary hearing so far." JA2068. Despite Ms. Peiffer's explanation that other attorneys at VCRRC had not been significantly involved, the court stated: "I will do what I have to do to keep the Virginia Capital Resource Center in this case." JA2072. *But see* JA113 ("The court does not appoint organizations to represent individual criminal defendants; rather, the court appoints individual attorneys to represent individual defendants.").

Later at the same hearing, and notwithstanding its earlier acknowledgement that Tennessee counsel had done "the lead work" in the case, the court intimated that the ongoing discovery issues created by Tennessee counsel were attributable to VCRRC:

> [F]rankly, that was the responsibility of the Virginia Capital Resource Center, Virginia Capital Representation Resource Center, whatever, *because they were always lead counsel. . . .* So if there's any problem here, what happened is, it looks like to the Court, Virginia Capital Resource just relegated or delegated it all to Tennessee. Now they say, oh, we want out. This is not the right way to practice law, particularly in a case this serious.

JA2094 (emphasis added). The court went on to announce that "[t]he Court may need to look at your funding, because this is not right." JA2094-2095.

In issuing its ruling, the court concluded that the illness of Ms. Peiffer's mother was "not grounds to withdraw." JA2072. The court explained: "I'm not saying I'm not sympathetic but there are still ways to meet your obligations because that's what a person has had to do at some junctures." JA2066. Later at the hearing, the court told Ms. Peiffer: "[W]e all have problems. It's human nature." JA2071-2072.

During the same status conference, the District Court also denied Mr. Runyon's request to admit the Covington attorneys and made clear that any *pro hac vice* application would be denied. JA2081-2082. The court also ordered all discovery to be completed by August 31, 2023, and scheduled a multi-week

14

evidentiary hearing to begin on November 1, 2023.  JA2118-2119.  The court also denied a stay pending appeal.  JA2119.  The court reasoned, "There's just been too much going on and prejudice to all concerned would occur" from a stay.  JA2114.

On June 20, 2023, the District Court issued a written order.  JA2116.  The court stated it was in the "interests of justice" for Ms. Peiffer to remain in the case to "ensure that Petitioner receives adequate representation while maintaining continuity of counsel and the institutional knowledge" of the VCRRC.  JA2117 (citation omitted).  The court reiterated that Ms. Peiffer did not have a conflict of interest necessitating a withdrawal.  The court also considered the motion, filed at what it described as the "eleventh hour" of the proceedings, to be untimely.  JA2117.

Ms. Peiffer noticed this appeal, and personally paid a filing fee of $505, on June 26.  JA2120.  After receiving notice of Appellant's intention to move for expedited briefing and a stay on June 27, counsel for the Government responded on June 28 that they opposed both requests.  On June 30, Ms. Peiffer filed a motion to stay and to expedite the decision.  Mr. Runyon separately filed a mandamus petition on July 7, 2023, relating to the District Court's refusal to admit the Covington attorneys *pro hac vice*, along with his own motion to expedite and stay the proceedings below pending resolution of his petition.

## SUMMARY OF THE ARGUMENT

The question for this Court is whether the District Court abused its discretion by denying Appellant's motion to withdraw as counsel for Mr. Runyon in this death penalty proceeding. The answer is yes.

**I.** All three factors this Court considers when reviewing denials of withdrawal motions favor reversal. *See United States v. Blackledge*, 751 F.3d 188, 194 (4th Cir. 2014) ("[W]e consider three factors: (1) timeliness of the motion; (2) adequacy of the court's inquiry; and (3) whether the attorney/client conflict was so great that it had resulted in a total lack of communication preventing an adequate defense.") (internal quotation marks and citation omitted).

First, the motion was not untimely. In assessing timeliness, a court must consider "the temporal proximity of the motion to trial or another proceeding," as well as "the resulting delay on the overall proceedings." *United States v. Muslim*, 944 F.3d 154, 166 (4th Cir. 2019). Ms. Peiffer filed her motion almost five months before the resumption of the evidentiary hearing, which had not even been scheduled at the time. *See* JA2116; JA2118-2119. Furthermore, given Ms. Peiffer's limited capacity and the availability of substitute counsel—who stood ready and able to meet the deadlines set by the District Court, *see* JA2045-2051—permitting withdrawal would not have caused any delay. Ms. Peiffer did not simply present the court with a problem (her conflict of interest requiring withdrawal). She instead presented a

16

solution that (had the court accepted it) would have required no delay in the proceedings below. Because the court failed to consider and apply the relevant factors in its timeliness inquiry, it made "an error of law," which "is by definition an abuse of discretion." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002).

Second, the District Court failed to conduct an adequate inquiry because it completely disregarded Ms. Peiffer's sworn representations about her lack of capacity and the recommendation from Virginia State Bar ethics counsel that Ms. Peiffer withdraw. The District Court's conclusion that Ms. Peiffer does not have a conflict of interest necessitating withdrawal directly contradicts the plain text of the governing ethics rules. Ms. Peiffer's continued representation of Mr. Runyon under her present circumstances violates Virginia Rules of Professional Conduct 1.1, 1.3(a), and 1.7. *See also* Va. R. Pro. Conduct 1.16. Under Rule 1.7(a)(2), Ms. Peiffer has a "concurrent conflict of interest" because "there is significant risk that [Ms. Peiffer's] representation of [Mr. Runyon] will be materially limited by . . . a personal interest of [Ms. Peiffer]," namely, her interest in caring for her mother.

Ms. Peiffer's lack of capacity to provide competent, diligent, and prompt representation in a complex, capital habeas case also violates Rules 1.1 and 1.3(a). *See id.* 1.1 cmt. 5, 1.3(a). Under the Virginia rules, Ms. Peiffer is, therefore, ethically and professionally obligated to withdraw. *See id.* 1.16(a)(1) & cmt. 1. This

obligation was confirmed for Ms. Peiffer in consultation with the Virginia State Bar ethics counsel.  JA2233-2234; JA2064.  The court also failed to consider the support of Ms. Peiffer's client and co-counsel for the motion to withdraw and substitute, each of whom recognized that Ms. Peiffer's lack of capacity would leave Mr. Runyon's legal team short-handed.  *See* JA114.

Third, Ms. Peiffer's inability to competently and diligently represent Mr. Runyon will "prevent[] the ability to conduct an adequate defense."  *See United States v. Johnson*, 114 F.3d 435, 443 (4th Cir. 1997).  Adequate representation requires "more than just a warm body to stand next to the accused during critical stages of the proceedings."  *United States v. Smith*, 640 F.3d 580, 589 (4th Cir. 2011) (quoting *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1015 (7th Cir. 1988)).

Precedent across the courts of appeals, including from this Court, strongly supports reversal for abuse of discretion where an attorney has a clear conflict of interest or otherwise meets the criteria for withdrawal under the applicable ethics rules.  These rules of professional conduct must guide the court's review.

"[I]f forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility . . . it will be an abuse of discretion not to grant the motion to withdraw."  *United States v. Oberoi*, 331 F.3d 44, 47-48 (2d Cir. 2003).  In multiple cases, courts of appeals have reversed or vacated district court

orders that either misapplied or outright disregarded the professional rules governing withdrawal. *See, e.g.*, *Fidelity*, 310 F.3d at 540-541; *Oberoi*, 331 F.3d at 51-52; *Brandon*, 560 F.3d at 537-539; *Sanford*, 816 F.3d at 549-550; *Bellille*, 962 F.3d at 738-745. This Court should do the same here.

**II.** Ms. Peiffer's continued representation of Mr. Runyon under her present circumstances would also deprive Mr. Runyon of his right to conflict-free counsel. Because Mr. Runyon is an indigent person under a sentence of death, he is entitled to the appointment of counsel to assist him in litigating his motion for relief pursuant to 28 U.S.C. § 2255. *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 854-857 (1994). When, as here, counsel's capacity is sharply limited by conflicting personal obligations, that right is violated. *See United States v. Cronic*, 466 U.S. 648, 654, 655 n.14 (1984).

This Court has recognized that capital habeas petitioners have the right to conflict-free counsel. Under 18 U.S.C. § 3599, a federal habeas petitioner "is entitled to qualified, independent counsel at all stages of his capital habeas proceedings." *Juniper v. Davis*, 737 F.3d 288, 290 n.2 (4th Cir. 2013). A "clear conflict of interest" violates this right to independent counsel in federal habeas proceedings. *Id.* at 289 (citation omitted).

The District Court abused its discretion by failing to engage in an adequate inquiry about the violation of Mr. Runyon's rights. Despite Ms. Peiffer's detailed,

sworn declaration explaining at length her caretaking responsibilities for her mother and her representations that she therefore could no longer serve as competent counsel, the court did not ask what, if any, participation Ms. Peiffer has been able to have in Mr. Runyon's defense since she began caring for her mother and how much she anticipated being able to have going forward, especially leading up to the evidentiary hearing. The court also failed to ask Mr. Runyon, who was present at the hearing and supports Ms. Peiffer's withdrawal, whether he believed Ms. Peiffer could still adequately represent him.

Because all three factors of this Court's review favor Appellant, the District Court abused its discretion by denying the motion to withdraw. This Court should reverse.

## STANDARD OF REVIEW

This Court reviews the denial of a motion to withdraw for abuse of discretion. *Blackledge*, 751 F.3d at 193; *Johnson*, 114 F.3d at 442.

## ARGUMENT

**I.** **THE DISTRICT COURT ABUSED ITS DISCRETION BY DISREGARDING APPELLANT'S CLEAR CONFLICT OF INTEREST.**

Ms. Peiffer has an actual conflict of interest under the governing rules of professional conduct and thus is required to withdraw. *See* Va. R. Pro. Conduct 1.1, 1.3(a), 1.7, 1.16. Precedent strongly supports reversing a district court's denial of a

withdrawal motion where an attorney has a clear conflict of interest or otherwise meets the criteria for withdrawal under the applicable rules.

**A.** **Ms. Peiffer's Continued Representation of Mr. Runyon Violates the Virginia Rules of Professional Conduct.**

A district court's ruling on a motion to withdraw should be "guided by the professional rules of conduct." *Bellille*, 962 F.3d at 738. The District Court's conclusion that Ms. Peiffer does not have a conflict necessitating withdrawal directly contradicts the plain text of the Virginia Rules of Professional Conduct, which govern the jurisdiction. *See* E.D. Va. Crim. R. 57.4(J); Va. Sup. Ct. R. 6 § II. As confirmed by ethics counsel for the Virginia State Bar, JA2233-2234, Ms. Peiffer's continued representation of Mr. Runyon under the circumstances presented to the court violates at least three provisions of Virginia's governing ethical standards. *See* Va. R. Pro. Conduct 1.1, 1.3(a), 1.7.

"[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest." *Id.* at 1.7(a). Such a conflict exists here because "there is significant risk that [Ms. Peiffer's] representation of [Mr. Runyon] will be materially limited by . . . a personal interest of [Ms. Peiffer]," namely, her interest in caring for her mother. *Id.* at 1.7(a)(2). Ms. Peiffer's "[l]oyalty to [Mr. Runyon] is also impaired" because her responsibility to care for her mother will prevent her from "carry[ing] out an appropriate course of action for [Mr. Runyon]." *Id.* at 1.7 cmt. 8. Given this "concurrent conflict of interest," Ms. Peiffer's continued

representation of Mr. Runyon at this critical stage of his habeas proceedings violates her duties under Rule 1.7.

Ms. Peiffer's inability, under the present circumstances, to provide competent, diligent, and prompt representation also violates her duties under Virginia Rules of Professional Conduct sections 1.1 and 1.3(a). "Competent handling of a particular matter includes . . . adequate preparation." *Id.* at 1.1 cmt. 5. In any representation, "[a] lawyer shall act with reasonable diligence and promptness." *Id.* at 1.3(a). As the District Court recognized, the underlying habeas case is complex, and there is significant outstanding discovery. *See* JA2034. In a given case, "[t]he required attention and preparation are determined in part by what is at stake." Va. R. Pro. Conduct 1.1 cmt. 5. What is at stake here is a man's life. Litigating the habeas claims of a death-sentenced prisoner requires the utmost attention and preparation. *See* JA2034. Ms. Peiffer's caretaking obligations will prevent her from adequately participating in the completion of the discovery process or preparing for the upcoming evidentiary hearing. *See* JA2231-2234. These obligations will also make it difficult for Ms. Peiffer to communicate promptly with her client and to reliably arrange travel and court appearances, particularly when it comes to preparing witnesses over multiple days. *See* JA2231-2234.

As continued representation of Mr. Runyon would violate Rules 1.1, 1.3(a), and 1.7(a)(2) of the Virginia Rules of Professional Conduct, Ms. Peiffer is ethically

and professionally obligated to withdraw. *See* Va. R. Pro. Conduct 1.16(a)(1); *see also id.* at cmt. 1 ("A lawyer should not . . . continue representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion."). A violation of the Virginia Rules constitutes "good cause" for an attorney to seek to avoid a representation. *Id.* at 6.2(a). Ms. Peiffer's family situation renders her no longer capable of competently and diligently representing Mr. Runyon pursuant to 18 U.S.C. § 3599 and in accordance with her ethical duties. *See* JA2233-2234. Accordingly, it is in the "interests of justice" to allow Ms. Peiffer to withdraw and permit Mr. Runyon's chosen substitute counsel to appear as counsel of record. *See Martel v. Clair*, 565 U.S. 648, 658 (2012) ("interests of justice" standard applies to motions for substitution under 18 U.S.C. § 3599); *Christeson v. Roper*, 574 U.S. 373, 377 (2015) (per curiam) ("[S]ubstitution should be granted when it is in the 'interests of justice.' ") (citation omitted); *see also* JA2117 (applying "interests of justice standard" to withdrawal motion) (citation omitted).

## B. The District Court Misapplied the Withdrawal Factors.

The District Court abused its discretion by denying Ms. Peiffer's motion. In making this assessment, this Court considers three factors: "(1) timeliness of the motion; (2) adequacy of the court's inquiry; and (3) whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing

an adequate defense." *Blackledge*, 751 F.3d at 194 (internal quotation marks and citation omitted). All three factors favor reversal.

On the first factor—timeliness—the District Court concluded that the motion to withdraw was an "untimely filing . . . at the 'eleventh hour'." JA2117. Its conclusion appears to be based on its belief that "this case has been going on an inordinate amount of time, and it needs to move forward." *See* JA2071. But the very basis for Ms. Peiffer's motion to withdraw—her mother's unexpected cancer diagnosis—did not arise until late April. And it did not become clear until further testing and medical consultations were completed over the following weeks what would be required from Ms. Peiffer as a caretaker in the coming months. Ms. Peiffer filed her motion as soon as practicable—within just a few days—after obtaining the necessary information from her mother's doctors to support her decision, consulting with Bar counsel, and concluding that she had a conflict of interest requiring her withdrawal.

In any case, neither the duration of prior proceedings in a matter, nor a court's belief that a case is at the "eleventh hour" and should be near completion, is relevant to the timeliness inquiry. Instead, a court must consider "the temporal proximity of the motion to trial or another proceeding," as well as "the resulting delay on the overall proceedings." *Muslim*, 944 F.3d at 166. This Court has found a motion to withdraw made just weeks *before trial* to be timely. *See Blackledge*, 751 F.3d at

194 (citing *United States v. Jennette*, 387 F. App'x 303, 307 (4th Cir. 2010)).  Here, Ms. Peiffer filed her motion almost five months before the resumption of the evidentiary hearing, which had not even been scheduled at the time of the motion. *See* JA2116; JA2118-2119.  Furthermore, given Ms. Peiffer's limited capacity and the immediate availability of substitute counsel, *see* JA2045-2051, permitting withdrawal would not have caused delay.  Ms. Peiffer did not simply present the court with a problem (her conflict of interest requiring withdrawal).  She instead presented a solution that (had the court accepted it) would have required no delay in the proceedings below.

Because the court failed to consider and apply the relevant factors in its timeliness inquiry, it made "an error of law," which "is by definition an abuse of discretion." *Earthgrains*, 281 F.3d at 150.

The District Court failed to satisfy the second factor—adequacy of inquiry— as well.  When an attorney moves to withdraw, "the court must thoroughly inquire into the factual basis of any conflicts asserted by counsel." *Blackledge*, 751 F.3d at 194.  That was not done.  The court disregarded Ms. Peiffer's sworn and unrebutted representations about her lack of capacity and the recommendation from Virginia State Bar ethics counsel that Ms. Peiffer withdraw.  The court also did not reconcile its disregard with its acknowledgement that Ms. Peiffer would have to proceed on a

"limited basis," JA2072, and in a "lesser role," JA2075, except to propose that Ms. Peiffer's co-counsel, Ms. Ali, assume the duties Ms. Peiffer could not.

The court's reasoning that Ms. Peiffer's continued involvement was necessary for "continuity" and "institutional knowledge," JA2117, ignores the fact that Ms. Peiffer's knowledge of Mr. Runyon's case only began with her November 2021 appointment. *See* JA2043. The court also disregarded Ms. Peiffer's representations that although she does not have the capacity to continue serving as counsel of record, she would ensure her availability to answer questions to provide any necessity continuity. *See* JA2233-2234. The court also disregarded, but did not dispute, Ms. Peiffer's statement that she is not available to meaningfully assist in preparing Mr. Runyon's case for a hearing. The court instead suggested that another attorney in Ms. Peiffer's office could step in—further disregarding the fact that only Ms. Peiffer has had direct and substantial involvement in the case and a relationship with the client. *See* JA2068-2073; JA113 ("The court does not appoint organizations . . . [but] rather . . . appoints individual attorneys to represent individual defendants."); JA87 n.1 (Ms. Brace advising the court in 2015 that, "[o]ther than Attorney Brace, no lawyer or nonlegal staff member at the Virginia Capital Representation Resource Center has been—or will be—available to work on Runyon's case."); *see also* JA98; JA741 (Ms. Brace advising the court that Ms. Peiffer had "not previously worked on

[Mr. Runyon's case]."); JA2068 (Ms. Peiffer reminding the court that other attorneys at her office had not had substantial involvement in Mr. Runyon's case).

The court also failed to consider the support of Ms. Peiffer's client and co-counsel for the motion to withdraw and substitute, each of whom recognized that Ms. Peiffer's lack of capacity would leave Mr. Runyon's legal team short-handed. *See* JA2062. At the status hearing, the court made no inquiry of Mr. Runyon, who was present, *see* JA2059, about his desired legal representation. Instead, the court's apparent solution to Ms. Peiffer's caregiving responsibilities was to have Ms. Peiffer do less work and have Ms. Ali take the "lead role," *see* JA2062; JA2066; JA2072— effectively endorsing Ms. Peiffer's representation that her capacity will be materially limited, while still binding her to the case as a responsible counsel of record. *See* JA2083.

The court also failed to engage in any inquiry about the recommendation Ms. Peiffer received from ethics counsel. In response to Ms. Peiffer's representation that she felt obligated to withdraw after consulting with ethics counsel, the court summarily dismissed the argument: "I haven't received any ethics opinion." JA2064. That was the extent of the court's inquiry. The court's apparent requirement of a written ethics opinion ignores the fact that the Virginia State Bar's Standing Committee on Legal Ethics will issue a legal ethics opinion only for "a hypothetical set of facts" and "may decline to issue an opinion if the question raised

is the subject of collateral litigation." *Request a Legal Ethics Opinion*, Virginia State Bar, *available at* https://vsb.org/Site/lawyers/leo-request.aspx (last visited July 20, 2023). While an existing, written ethics opinion dispositive of the inquiry might be the gold standard, the court received a representation from Ms. Peiffer—an officer of the court, sworn under penalty of perjury—that she had concluded she had to withdraw after consultation with the Virginia State Bar's Ethics Department. JA2233-2234. The court should have accorded this significant weight. *See* JA2162 ("A 'lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.' " (quoting Va. R. Pro. Conduct 1.16 cmt. 3)).

On the third factor—the degree of conflict—Ms. Peiffer attested under oath that she lacks capacity to fulfill both her duties to her gravely ill mother and her death-sentenced client. Ms. Peiffer's inability to competently and diligently represent Mr. Runyon will "prevent[] the ability to conduct an adequate defense." *Johnson*, 114 F.3d at 443. Adequate representation requires "more than just a warm body to stand next to the accused during critical stages of the proceedings." *Smith*, 640 F.3d at 588 (quoting *O'Leary*, 856 F.2d at 1015). "A total lack of communication is not required," either; the relevant question is "whether the extent of the breakdown prevented the ability to conduct an adequate defense." *United*

28

*States v. Wenk*, 771 F. App'x 229, 230 (Mem.) (4th Cir. 2019) (per curiam) (cleaned up).

"[B]ecause the district court failed to engage in an adequate inquiry, its factual determination" that Ms. Peiffer is capable of providing Mr. Runyon adequate representation "is not entitled to clear error review." *Blackledge*, 751 F.3d at 195. But even if it were, this third factor still would favor reversal. As Ms. Peiffer has attested, her unpredictable circumstances will likely interfere with her ability to prepare for and litigate the evidentiary hearing. *See* JA2231-2234.

### C.     Precedent Supports Reversing the District Court's Order.

Precedent across the courts of appeals, including from this Court, supports reversal for abuse of discretion where an attorney has a clear conflict of interest or otherwise meets the criteria for withdrawal under the applicable ethics rules. This Court has held, in a post-trial appeal, that a district court abused its discretion by denying a withdrawal motion where the record showed that an attorney's conflict of interest prevented the mounting of an adequate defense. *Blackledge*, 751 F.3d at 197. The Second Circuit, on interlocutory appeal, has reversed on multiple occasions a district court order after determining that an attorney did, in fact, have a potential or functional conflict of interest under the Model Code of Professional Responsibility. *See Whiting*, 187 F.3d at 321-323; *Oberoi*, 331 F.3d at 48-52. The Sixth, Seventh, and Eighth Circuits have reversed denials of withdrawal motions on

interlocutory appeal after finding that an attorney met all the criteria for withdrawal under the relevant ethics rules and there was no severe countervailing prejudice. *See Brandon*, 560 F.3d at 537-539; *Fidelity*, 310 F.3d at 540-541; *Sanford*, 816 F.3d at 549-550.

In reviewing denials of withdrawal motions, courts of appeals have routinely engaged in extensive, *de novo* analysis of the applicable ethics rules. *See, e.g.*, *Whiting*, 187 F.3d 321-323; *Fidelity*, 310 F.3d at 540-541; *Brandon*, 560 F.3d at 537-539; *Sanford*, 816 F.3d at 549-550; *Bellille*, 962 F.3d at 738-740. As one such court explained, a district court's ruling on a motion to withdraw should be "guided by the professional rules of conduct," and therefore a reviewing court should "begin [its] analysis with the professional rules." *Bellille,* 962 F.3d at 738; *see also Sanford*, 816 F.3d at 549 ("In cases of withdrawal for failure to pay fees, every circuit court to address the question has looked to the rules governing professional conduct for guidance.") (internal quotation marks and citation omitted).

These rules of professional conduct should be the touchstone of a district court's analysis—and an appellate court's review. "[I]f forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility . . . it will be an abuse of discretion not to grant the motion to withdraw." *Oberoi*, 331 F.3d at 47-48. In reversing a district court order for abuse of discretion, the Seventh Circuit expressed its "[s]urpris[e]" that "the district judge

did not mention" the relevant rules of professional conduct when denying a withdrawal motion. *Fidelity*, 310 F.3d at 540. And in multiple cases, the courts of appeals have reversed or vacated district court orders that either misapplied or outright disregarded the professional rules governing withdrawal. *See, e.g.*, *id.* at 540-541; *Oberoi*, 331 F.3d at 51-52; *Brandon*, 560 F.3d at 537-539; *Sanford*, 816 F.3d at 549-550; *Bellille*, 962 F.3d at 738-745.

This Court should do the same here. The District Court's written order offered only the cursory statement that "for the reasons stated from the bench, while the court is sympathetic to Ms. Peiffer's family situation, the court does not find that she has a conflict of interest necessitating withdrawal under Virginia Rules of Professional Conduct 1.7(a)(2), 1.1, or 1.3(a)"—with no additional analysis. JA2117. The court's oral ruling did no better. The hearing transcript reveals conclusory reasoning that never mentions—let alone analyzes—the relevant ethics rules. In response to Appellant's argument that she has a conflict of interest necessitating withdrawal under the Virginia Rules, the court merely observed: "I haven't received any ethics opinion, and I don't know of any cases on point." JA2064. And in delivering its ruling, the court offered reasoning untethered from any analysis of the relevant rules or precedent:

> I'm very sympathetic to your situation. But the situation, in my mind, is not grounds to withdraw. If you feel you have a conflict, I don't feel you have a conflict. I don't see any conflict because a family member is ill. I just don't see a conflict. So I find that you don't have a conflict

> that prevents you from proceeding on with this case, even if on a limited
> basis, and I find that you don't have an ethical obligation to withdraw.

JA2072-2073. This was not a court that was "guided by the professional rules of conduct," *Bellille*, 962 F.3d at 738. And while the "interests of justice" standard applied by the court, JA2117 (citation omitted), "contemplates a peculiarly context-specific inquiry," *Martel*, 565 U.S. at 663, the inquiry is not amorphous, *see id.* (citing the "several relevant considerations . . . generally" considered by courts of appeals in reviewing substitution motions). In the specific context of withdrawal motions, precedent makes clear that the appropriate inquiry is "into the scope and nature" of the "ethical conflict," *Blackledge*, 751 F.3d at 196, as governed by the applicable ethical rules. *See Fidelity*, 310 F.3d at 540-541; *Oberoi*, 331 F.3d at 51-52; *Brandon*, 560 F.3d at 537-539; *Sanford*, 816 F.3d at 549-550; *Bellille*, 962 F.3d at 738-745. Given the District Court's failure of reasoning, this Court should step in and do what should have been done in the first place: analyze and properly apply the Virginia Rules of Professional Conduct.

Courts have identified a few reasons to defer to a district court's denial of a withdrawal motion, but none applies here. First, an appeals court may defer when "the prosecution of the suit is likely to be disrupted by the withdrawal of counsel." *Oberoi*, 331 F.3d at 47 (quoting *Whiting*, 187 F.3d at 320-321). Here, the motions to withdraw and to substitute counsel, taken together, presented the court with a way to address Appellant's situation without requiring any delay in proceedings.

Presenting the court with a ready-made solution to her conflict of interest, Appellant "sought to withdraw only when substitution of counsel would be relatively simple." *Fidelity*, 310 F.3d at 541. Furthermore, considerations of the potential for disruption should be overridden when, as here, "forcing an attorney to continue representation will cause a violation of the Code of Professional Responsibility." *Oberoi*, 331 F.3d at 47.

Second, appeals courts may defer when withdrawal "would work severe prejudice on the client or third parties." *Brandon*, 560 F.3d at 538 (citing *Fidelity*, 310 F.3d at 541). Withdrawal here would not result in severe prejudice to anyone. Appellant's client, Mr. Runyon, supported the motion to withdraw and to substitute counsel, JA2039, as did appointed co-counsel, and each would be better served by conflict-free counsel of Mr. Runyon's choosing. And notwithstanding the District Court's assertion that "prejudice to all concerned would occur," JA2114, neither the court nor the Government identified *any* prejudice, let alone "severe prejudice," aside from statements about "continuity" and "institutional memory," JA2063—which are solved by Ms. Peiffer's representation to the court that she could remain available to answer any questions after her withdrawal. JA2233-2234. What is more, these interests of continuity and institutional memory would not be served by forcing Ms. Peiffer and Mr. Runyon to remain in an attorney-client relationship in light of her diminished capacity to assist. *See supra* 26-27. Altogether, the great

weight of precedent strongly supports reversing the District Court for abuse of discretion.

## II.   THE DISTRICT COURT'S ORDER VIOLATES DEFENDANT'S RIGHTS.

In addition to violating Virginia's ethics rules, Ms. Peiffer's continued representation of Mr. Runyon under these circumstances—particularly absent substitute counsel—would deprive Mr. Runyon of his federal rights to assistance of counsel as a person facing the death penalty.

Because Mr. Runyon is an indigent person under a sentence of death, he is entitled to the appointment of counsel to assist him in litigating his motion for relief pursuant to 28 U.S.C. § 2255. *See* 18 U.S.C. § 3599(a)(2); *McFarland*, 512 U.S. at 854–857.

When, as here, counsel's capacity is sharply limited by conflicting personal obligations, that right is violated. *See Cronic*, 466 U.S. at 654, 655 n.14. Ms. Peiffer's limited capacity renders her performance inadequate, especially for a complex capital habeas proceeding at a critical stage. The impact of counsel's diminished representation is particularly grave where, as here, proceedings will determine whether a death-sentenced defendant received the Sixth Amendment's fundamental right to effective assistance of counsel at trial.

This Court has recognized that capital habeas petitioners have the right to conflict-free counsel. Under 18 U.S.C. § 3599, a federal habeas petitioner "is

entitled to qualified, independent counsel at all stages of his capital habeas proceedings." *Juniper*, 737 F.3d at 290 n.2; *see also Clark v. Davis*, 850 F.3d 770, 779 (5th Cir. 2017) ("Capital habeas petitioners have a statutory right to conflict-free counsel.") (citing *Juniper*, 737 F.3d 288; *Gray v. Pearson*, 526 F. App'x 331 (4th Cir. 2013); *Christeson*, 574 U.S. 373)). A "clear conflict of interest" violates this right to independent counsel in federal habeas proceedings. *Juniper*, 737 F.3d at 289-290. *See also Martel*, 565 U.S. at 661 ("[T]o ensure that the defendant's statutory right to counsel [under § 3599] was satisfied throughout the litigation[,] . . . the court would have to appoint new counsel if the first lawyer . . . developed a conflict with . . . the client.").

Mr. Runyon's entitlement to adequate, conflict-free representation is not satisfied here by the availability of Ms. Peiffer's co-counsel, Ms. Ali. Just weeks before, the District Court had determined that "[g]iven the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case," it was appropriate to appoint two attorneys for Mr. Runyon. JA2033-2034 (footnote omitted). Now, despite sworn statements from Ms. Peiffer that she is no longer in a position to diligently represent Mr. Runyon, the court has seemingly reversed course. This effectively leaves Mr. Runyon with only one counsel, appointed just two months ago, to prepare for and conduct a complex, multi-witness hearing on his § 2255 petition. Due to issues created by prior, now-withdrawn

counsel, much of the time Ms. Ali has spent thus far has necessarily been focused on attempting to resolve discovery issues, significantly limiting her ability to prepare for the approaching hearing. Mr. Runyon should not have to proceed in this crucial phase of his habeas case without adequate representation.

The absence of two attorneys of record runs counter to (i) the text of 18 U.S.C. § 3599, (ii) the text of the EDVA's Criminal Justice Act (CJA) plan, and (iii) norms in federal capital cases.

Federal habeas petitioners facing the death penalty are "entitled to the appointment of one or more attorneys." 18 U.S.C. § 3599(a)(1)(B). The District Court's CJA plan directs that, "[d]ue to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing *at least two attorneys*" to represent prisoners pursuing 28 U.S.C. § 2255 post-conviction petitions in federal death penalty cases. *See* United States District Court Eastern District of Virginia, *Criminal Justice Act Plan* § XIV(E)(2) (approved Nov. 6, 2019) (emphasis added).[1]

The Eastern District is not an outlier. The Federal CJA Guidelines recommend appointment of "at least two counsel" for § 2255 proceedings in capital

---

[1] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20CJA%20PLAN.pdf (last visited July 20, 2023).

cases. *See* 7A *Guide to Judiciary Policy* § 620.10.20(b). Many—and perhaps most—courts' CJA plans include similar directives. *See, e.g.*, United States District Court Western District of North Carolina, *Criminal Justice Act Plan* § XV(E)(2)[2] ("Due to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing at least two attorneys" in § 2255 federal death penalty proceedings.); United States District Court Eastern District of Louisiana, *Revised Plan of July, 2018 For Furnishing Representation Pursuant To The Criminal Justice Act of 1964* § IV(D)(2)[3] ("Pursuant to 18 U.S.C. § 3005, a person charged with a federal capital offense is entitled to the appointment of two attorneys."). And courts routinely appoint at least two attorneys to represent indigent people on death row litigating post-conviction proceedings. *See, e.g.*, *Lawlor v. Zook*, No. 2:15CV113, 2015 WL 4590827, at *2 (E.D. Va. July 28, 2015) (appointing three counsel in a capital habeas proceeding over objection of the government) (citing 7A *Guide to Judiciary Policy* § 620.10.20(b));[4] *United States v. Sampson*, No. CR. 01-10384, 2008 WL 2563374, at *3 (D. Mass. June 25, 2008)

---

[2] *Available at* https://www.ncwd.uscourts.gov/sites/default/files/general-orders/Criminal%20Justice%20Act%20Plan%20-%20Amended%202019.pdf (last visited July 20, 2023).

[3] *Available at* https://www.laed.uscourts.gov/sites/default/files/pdfs/CJA%20Plan%202018%20with%20Approval%20ELA.pdf (last visited July 20, 2023).

[4] *Lawler v. Zook* was a § 2254 case. Capital § 2255 cases like this one are invariably larger in scope.

(appointing three counsel in a § 2255 proceeding).  In fact, *every* indigent federal

capital defendant in the process of litigating a § 2255 motion in district court, with

the exception of Mr. Runyon, currently has two or more appointed counsel, with the

sole exception being where a large institutional Capital Habeas Unit is handling the

matter—in which case three or more attorneys from the Capital Habeas Unit usually

assist.[5]

---

[5] *See Gabrion # 09184-055 v. United States*, No. 1:15-cv-447 (W.D. Mich., filed Apr. 27, 2015); *United States v. Corley*, No. 3:02-cr-116 (N.D. Ind., filed Oct. 17, 2002); *Agofsky v. United States*, No. 1:07-cv-511 (E.D. Tex., filed July 23, 2007); *United States v. Mikos*, No. 1:10-cv-6331 (N.D. Ill., filed Oct. 4, 2010); *United States v. Lighty*, No. 8:03-cr-0457 (D. Md., filed Oct. 10, 2003); *Barnette v. United States*, No. 3:12-cv-327 (W.D.N.C., filed May 23, 2012); *Ebron v. United States*, No. 1:14-cv-539 (E.D. Tex., filed Oct. 27, 2014); *Garcia v. United States*, No. 1:13-cv-723 (E.D. Tex., filed Dec. 18, 2013); *Snarr v. United States*, No. 1:13-cv-724 (E.D. Tex., filed Dec. 18, 2013); *United States v. Hager*, No. 1:05-cr-264-3 (E.D. Va., filed June 9, 2005); *United States v. Lawrence*, No. 2:05-cr-11-1 (S.D. Ohio, filed Jan. 20, 2005); *Troya v. United States*, No. 9:16-cv-80700 (S.D. Fla., filed May 3, 2016); *Sanchez v. United States*, No. 9:16-cv-80693 (S.D. Fla., filed May 3, 2016); *Umaña v. United States*, No. 3:16-cv-57 (W.D.N.C., filed Feb. 2, 2016); *Taylor v. United States*, No. 1:19-cv-147 (E.D. Tenn., filed May 14, 2019); *United States v. Fields*, No. 6:03-cr-73-1 (E.D. Okla., filed Aug. 1, 2003); *United States v. Fackrell*, No. 1:16-cr-26-2 (E.D. Tex., filed Mar. 3, 2016); *United States v. Savage*, No. 2:07-cr-550-3 (E.D. Pa., filed Sept. 12, 2007); *Hall v. United States*, No. 4:21-cv-8001 (W.D. Mo., filed Mar. 2, 2021); *Coonce v. United States*, No. 6:20-cv-8000 (W.D. Mo., filed Dec. 8, 2020); *United States v. Cramer*, No. 1:16-cr-26-1 (E.D. Tex., filed Mar. 3, 2016); *United States v. Kadamovas*, No. 2:02-cr-220-2 (C.D. Cal., filed Mar. 5, 2002); *United States v. Mikhel*, No. 2:02-cr-00220 (C.D. Cal., Mar. 5, 2002); *United States v. Roof*, No. 2:15-cr-472-1 (D. S.C., filed July 22, 2015); *United States v. Torrez*, No. 1:11-cr-115 (E.D. Va., filed May 26, 2011).

Just as it failed to engage in an adequate inquiry about Ms. Peiffer's ethical conflict, the District Court equally failed to engage in an adequate inquiry about the violation of Mr. Runyon's rights. Despite Ms. Peiffer's representations that she could not act as competent counsel, the court did not ask what, if any, participation, Ms. Peiffer has been able to have in Mr. Runyon's defense since she began caring for her mother and how much she anticipated being able to have going forward, especially leading up to the evidentiary hearing. In fact, the court incorrectly assumed that Ms. Peiffer was seeking to withdraw from Mr. Runyon's case, while still substantially participating in other cases. *See* JA2069-2072. Nor did the court ask Mr. Runyon, who was present at the hearing and supports Ms. Peiffer's withdrawal, whether there was any change in position. The court abused its discretion by failing to examine the impact of Ms. Peiffer's time, capacity, and attention constraints on Mr. Runyon and his defense, as well as Mr. Runyon's interests and preferences regarding his choice of counsel.

*   *   *

The District Court was impermissibly dismissive of Ms. Peiffer's ethical conflict. It failed to correctly assess the timeliness of her withdrawal motion. It failed to analyze the governing ethical rules. It failed to assess the nature and scope of the conflict, which arises at a critical stage of Mr. Runyon's habeas proceedings. And it failed to inquire into the rights and preferences of Ms. Peiffer's death-

sentenced client.  The court's actions and omissions, taken separately or together, constitute a reversible abuse of discretion.

## CONCLUSION

For the foregoing reasons, the District Court's order denying withdrawal of Ms. Peiffer as counsel should be reversed and Defendant's petition requesting the admission of the Covington attorneys should be granted.  Additionally, the Government should bear the filing cost of Ms. Peiffer's notice of appeal, which she personally incurred.

July 21, 2023

Respectfully submitted,

/s/ Catherine E. Stetson

CATHERINE E. STETSON
TIARA BROWN
SIMON CHIN
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel:  (202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Appellant*

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this motion contains 9,239 words.

This foregoing complies with the typeface and type style requirements because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

July 21, 2023

/s/ Catherine E. Stetson
Catherine E. Stetson

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on July 21, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

July 21, 2023

/s/ Catherine E. Stetson
Catherine E. Stetson