No. 23-5

IN THE

# United States Court of Appeals for the Fourth Circuit

---

In re: ELIZABETH JANE PEIFFER,

*Appellant*

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID ANTHONY RUNYON,

*Defendant*.

---

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 4:08-cr-00016-RBS-DEM
(The Honorable Rebecca Beach Smith)

---

## JOINT APPENDIX VOLUME VI

---

RICHARD D. COOKE
919 East Main Street Suite 1900
Richmond, Virginia 23219
(804) 819-5471
richard.cooke@usdoj.gov

BRIAN J. SAMUELS
LISA MCKEEL
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
(757) 591-4000
brian.samuels@usdoj.gov

*Counsel for the United States*

CATHERINE E. STETSON
TIARA BROWN
SIMON CHIN
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004-1109
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

**VOLUME I**

District Court Docket Report ................................................................ JA1

Criminal Indictment (ECF 3) .............................................................. JA56

Memorandum Order (ECF 410)........................................................... JA73

Motion for Clarification of Sealing Procedure (ECF 425) ................. JA86

Memorandum Order (ECF 426)........................................................... JA89

Motion to Appoint Co-Counsel (ECF 432) ........................................ JA96

Memorandum in Support of Motion to Appoint Co-Counsel (ECF 433) .......... JA98

Order (ECF 435) ................................................................................. JA109

Motion to Vacate, Set Aside, or Correct Sentence (ECF 478) ........... JA115

Response to Motion to Vacate, Set Aside, or Correct Sentence
(ECF 497) ..................................................................................... JA241

**VOLUME II**

Amended Motion to Vacate, Set Aside, or Correct Sentence
(ECF 511) ..................................................................................... JA382

Response to Amended Motion to Vacate, Set Aside, or
Correct Sentence (ECF 536)......................................................... JA531

Opinion (ECF 560)............................................................................. JA690

Motion to Withdraw and to Appoint Substitute Counsel (ECF 648) .......... JA740

Order (ECF 649) ................................................................................. JA743

Agreed Pre-Evidentiary Hearing Scheduling Order (ECF 657)......... JA747

Notice of Compliance with Pre-Hearing Disclosures Order (ECF 687) .......... JA749

Notice of Compliance with Pre-Hearing Disclosures Order (ECF 690) .......... JA752

Motion to Appoint Co-Counsel (ECF 691) ........................................ JA755

Memorandum in Support of Motion to Appoint Co-Counsel (ECF 692) ........ JA758

Order (ECF 695) ................................................................................... JA763

Renewed Motion to Appear *Pro Hac Vice* (ECF 725) ................................. JA765

Memorandum in Support of Renewed Motion to Appear
*Pro Hac Vice* (ECF 726) ...................................................................... JA768

Order (ECF 751) ................................................................................... JA776

**VOLUME III**

Reply in Support of Petitioner's Motion for Witness to
Testify by Video (ECF 754) ............................................................... JA778

Attachment A to Reply in Support of Petitioner's Motion for Witness to
Testify by Video (ECF 754-1) ........................................................... JA788

Attachment B to Reply in Support of Petitioner's Motion for Witness to
Testify by Video (ECF 754-2) ........................................................... JA789

Attachment C to Reply in Support of Petitioner's Motion for Witness to
Testify by Video (ECF 754-3) ........................................................... JA795

Application to Appear *Pro Hac Vice* (ECF 764) .................................... JA800

Application to Appear *Pro Hac Vice* (ECF 772) .................................... JA801

Transcripts from Evidentiary Hearing, February 7, 2023 (ECF 774) ............. JA803

Transcripts from Evidentiary Hearing, February 8, 2023 (ECF 776) ............ JA1029

**VOLUME IV**

Transcripts from Evidentiary Hearing, February 9, 2023 (ECF 781) ............ JA1236

Transcripts from Evidentiary Hearing, February 10, 2023 (ECF 782) .......... JA1391

**VOLUME V**

Transcripts from Evidentiary Hearing, February 13, 2023 (ECF 784) .......... JA1603

Transcripts from Evidentiary Hearing, February 14, 2023 (ECF 785) .......... JA1790

Transcripts from Evidentiary Hearing, February 15, 2023 (ECF 786) .......... JA1829

Order (ECF 787) ....................................................................... JA1881

Renewed Motion to Withdraw (ECF 788)....................................... JA1884

Status Update Regarding Petitioner's Discovery Disclosures (ECF 789)...... JA1885

Response to Status Update Regarding Petitioner's
Discovery Disclosures (ECF 793) ...................................... JA1893

Exhibit A to Response to Status Update Regarding Petitioner's
Discovery Disclosures (ECF 793-1)..................................... JA1920

Transcripts from Evidentiary Hearing, February 22, 2023 (ECF 794) .......... JA1924

Notice Regarding Filing of Maio Declaration (ECF 795) .............................. JA1967

Order (ECF 796) ....................................................................... JA1969

Notice Regarding Filing of Peiffer Declaration (ECF 797)............................ JA1974

Declaration of Peiffer (ECF 797-1) ................................................. JA1976

Reply to Response of U.S. to Disclosure Status Updates (ECF 798)............. JA1979

Order (ECF 799) ....................................................................... JA1984

Petitioner's Unopposed Motion to Continue (ECF 800) ............................. JA1987

Order (ECF 801) ....................................................................... JA1991

Motion to Appoint Counsel (ECF 802) ............................................. JA1992

Memorandum in Support of Motion to Appoint Counsel (ECF 803) ............ JA1994

## **VOLUME VI**

Response to Order Requesting Status Report (ECF 804).............................. JA2003

Petitioner's Motion to Continue (ECF 805) ...................................... JA2007

Memorandum in Support of Petitioner's Motion to Continue (ECF 806) ..... JA2010

Order (ECF 807) ....................................................................... JA2018

Status Report and Proposed Schedule (ECF 808) ................................ JA2019

Response to Proposed Schedule (ECF 809) ...................................... JA2025

Order (ECF 810) ....................................................................... JA2033

Motion to Withdraw and to Substitute *Pro Bono* Counsel (ECF 814)............ JA2036

Memorandum in Support of Motion to Withdraw (ECF 815)........................ JA2039

Exhibit: Declaration of Peter Swanson (ECF 815, Ex. B).............................. JA2054

Transcript of June 16, 2023 Proceedings (ECF 819).................................... JA2057

Order (ECF 820) ........................................................................................ JA2116

Notice of Appeal (ECF 821)....................................................................... JA2120

Joint Response to Court Order (ECF 823)................................................... JA2122

Motion for Stay and to Expedite (23-5, Doc. 8) .......................................... JA2125

Declaration of Prof. George Rutherglen (23-5, Doc. 8, Addendum F) .......... JA2159

Petition for Writ of Mandamus (23-6, Doc. 3) ............................................ JA2179

## **VOLUME VII (Sealed)**

SEALED Declaration of Elizabeth Peiffer (ECF 815, Ex. A)........................ JA2228

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| DAVID ANTHIONY RUNYON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Criminal Action No.: 4:08cr16 |
| | ) | Civil Action No. :4:15cv108 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CAPITAL § 2255 PROCEEDINGS** |
| Respondent. | ) | |
| | ) | HON. REBECCA BEACH SMITH |

## UNITED STATES RESPONSE TO COURT ORDER (ECF NO. 801)

The United States, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Brian J. Samuels, and Lisa R. McKeel, Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice submits this response to the Court's Order of March 24, 2023 (ECF No. 801) directing counsel for both the United States and Petitioner David Runyon "to submit a joint proposed schedule for discovery and the continuation of the evidentiary hearing by close of business on Friday, April 14, 2023".

The United States has conferred with counsel for Petitioner who has informed counsel for the Government that he is unable to comply with the Court's Order at this time.

## BACKGROUND

Following the February 2023 continuance of the evidentiary hearing in this matter, the Court ordered the parties to confer and submit a joint scheduling order addressing remaining disclosures and continuance of the evidentiary hearing, no later than March 24, 2023. ECF No. 796. On March 23, 2023, Mr. Runyon sought a continuance through April 14, 2023. ECF No. 800.

1

**JA2003**

This Court granted the unopposed motion on March 24, 2023 and directed counsel to file a joint proposed scheduling order by close of business on April 14, 2023. ECF No. 801.

## DISCUSSION

Pursuant to the order granting the extension, counsel for Petitioner and counsel for the Government conferred on April 12, 2023, regarding this Court's Order granting Petitioner Runyon's motion to continue. A conference call was held on April 12, 2023, and habeas counsel notified the Government of its intent to seek appointment of additional attorneys, such motion later filed with this Court that same date. ECF Nos. 802 and 803 (memorandum in support). Habeas counsel further alluded to several general concerns with the transfer of documentation, onboarding of new counsel, and the ability to review and assess before completing disclosures relevant to the one claim for relief, pursuant to Mr. Runyon's 28 U.S.C. § 2255 amended petition. When pressed, habeas counsel was unable to determine an adequate timeline to initiate or complete disclosures or schedule dates to complete the evidentiary hearing.

Accordingly, the United States is unable to comply with this Court's order requiring the parties meet, confer, and submit a joint proposed schedule for discovery and the continuation of the evidentiary hearing. The United States has urged counsel for the Petitioner to submit a filing addressing the challenges and deficiencies in the anticipated production process. Upon receipt, the United States will review and respond, although submits that any request for additional delay should be granted only for good cause shown, in accordance with the local rules (L. Crim. R. 47).

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

2

**JA2004**

By:    _____/S/_____
        Brian J. Samuels
        Lisa R. McKeel
        Assistant United States Attorneys
        Carrie L. Ward, Trial Attorney
        Attorneys for the United States
        United States Attorney's Office
        Fountain Plaza Three, Suite 300
        721 Lakefront Commons
        Newport News, Virginia 23606
        Phone: (757) 591-4000
        Fax: (757) 591-0866
        Email: Brian.Samuels@usdoj.gov
        Email: Lisa.McKeel@usdoj.gov
        Email: Carrie.Ward@usdoj.gov

**JA2005**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of April, 2023, I electronically filed a true copy

of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to all

filers.

By:           /S/
Lisa R. McKeel
Assistant United States Attorney
Virginia Bar Number: 28652
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Lisa.McKeel@usdoj.gov

**JA2006**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

|  |  |
|---|---|
| DAVID ANTHONY RUNYON,<br><br>Petitioner,<br><br>v.<br><br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 4:15-cv-108<br><br>Initial Criminal No. 4:08-cr-16-3<br>CAPITAL § 2255 PROCEEDINGS<br>HON. REBECCA BEACH SMITH |

**PETITIONER'S MOTION FOR CONTINUANCE**
**OF APRIL 14, 2023, SCHEDULING SUBMISSION**

For the reasons stated in the accompanying Memorandum in Support filed herewith, including the especially large volume of materials transferred to counsel and the significant time and effort required for review, Petitioner requests a continuance of three weeks from April 14, 2023, *see* ECF No. 800, until close of business on May 5, 2023, to submit to the Court a proposed schedule for disclosure to the United States and a proposed date for resumption of the evidentiary hearing. A proposed order accompanies this motion.

Petitioner's counsel proposes to provide regular (*e.g.*, at least weekly) updates to the government during this three-week period regarding the progress of the initial review of the transferred case files, and until discovery is complete. Petitioner expects that these updates will facilitate an ongoing dialogue between Petitioner and the government regarding the proposed schedule such that they can submit a joint proposed schedule (or competing schedules, if they are

1

**JA2007**

unable to reach agreement) no later than May 5, 2023, and earlier if feasible.

Counsel for the United States has stated that the United States will take a position upon seeing this filing.

Respectfully Submitted,

/s/Elizabeth J. Peiffer

Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

2

**JA2008**

**CERTIFICATE OF SERVICE**

        I hereby certify that on April 14, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

                                           /s/ Elizabeth Peiffer

**JA2009**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

DAVID ANTHONY RUNYON,

        Petitioner,

    v.

UNITED STATES OF AMERICA,

        Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3
CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

**MEMORANDUM IN SUPPORT OF
PETITIONER'S MOTION FOR CONTINUANCE
OF APRIL 14, 2023, SCHEDULING SUBMISSION**

Counsel for Petitioner respectfully submits this Memorandum in Support of the Motion filed herewith, and to update the Court on Petitioner's receipt and initial review of recently transferred physical and electronic case files from former counsel. As explained in more detail below, the initial review of these files has revealed a tremendous volume of materials that will require significant time and effort to review. The undersigned counsel also learned this week that former counsel has identified additional case files that have not been sent. In light of these and other issues discussed below—which were unknown to undersigned counsel until materials were received from former counsel and reviewed this week—Petitioner believes that additional time is necessary to allow the undersigned counsel to receive and review the additional files, ascertain the

1

**JA2010**

scope and complexity of the review, and confer with the government on a document production plan that will enable the undersigned counsel, along with Petitioner's proposed co-counsel[1], *see* ECF No. 803, to conduct an efficient and reliable review of the transferred case files. Accordingly, Petitioner requests a continuance of three weeks from April 14, 2023, *see* ECF No. 800, until close of business on May 5, 2023, to submit to the Court a proposed schedule for disclosure to the United States and a proposed date for resumption of the evidentiary hearing. Counsel for the United States has stated that the United States will take a position upon reviewing the motion.

1.      Pursuant to this Court's order, ECF No. 796, Petitioner's counsel confirmed arrangements with the staff of the Federal Defender Services of Eastern Tennessee, Inc. to receive physical and electronic files in Mr. Runyon's case that have been in prior counsel's custody throughout this case.

2.      As described in the February 24, 2023, Declaration of Gianna Maio Regarding File Transfer, ECF No. 795-1, prior counsel confirmed with Petitioner's counsel that it would identify, assemble, and deliver via FedEx all boxes of paper files in Mr. Runyon's case. Prior counsel further confirmed with Petitioner's counsel that it would send via FedEx during the week of April 3, 2023, an external hard drive containing digital files related to Mr. Runyon's case, including prior counsel's internal "H drive file," files stored on the Summation and Eclipse software platforms, and digital versions of paper files that prior counsel had identified as pertinent to discovery for the

---

[1] The importance of co-counsel and a larger team is highlighted by current circumstances. Undersigned counsel became ill, and tested positive for COVID-19 on April 13, and was ordered by her doctor to isolate for a minimum of five days. Having counsel in place who can continue the document review process will mitigate disruptions during this time period.

2

**JA2011**

evidentiary hearing and arranged to have scanned into an electronic "pdf" format. *See* ECF No. 795-1.

3.      Mr. Runyon's paper files—totaling fifty-seven bankers boxes—were delivered via FedEx on April 6, 7, and 10, 2023. A hard drive containing 126 GB of data, including over 187,000 files, and a flash drive containing 14.2 GB of data, including nearly 9,000 files, were not delivered via FedEx until April 11—after the date anticipated by undersigned counsel. Because of the unexpectedly large volume of digital files, it has not been possible, to date, to determine the number of pages contained in the nearly 196,000 files from the hard drive and flash drive.

4.      Upon receipt of the electronic and paper files from prior counsel, Petitioner's counsel promptly began reviewing the files in order to provide better-informed opinions about the time needed to conduct a substantive review and make any additional productions to the government. This review is ongoing.

5.      Counsel's review to date has revealed the need for additional time to review the significant volume of materials in order to identify materials that need to be disclosed. In particular, the electronic data, consisting of 140 GB and 196,000 files, is an extremely large volume of data to review.[2] While the electronic files almost certainly overlap with the paper files and contain

---

[2] Based on a preliminary review, some of the files appear to be single-page TIFFs (i.e., documents that have been broken into individual pages) while other files are PDFs consisting of over 1,000 pages. Prior counsel also suggested on an April 14, 2023, call that the single-page TIFF files may be duplicative of the PDF files, which would greatly reduce the total volume of documents. Undersigned counsel will know more about how the number of "files" translates to the time required for review as counsel identifies which documents appear relevant to these proceedings. Articles analyzing discovery issues suggest that the average document review rate for an attorney (continued…)

many documents irrelevant to discovery or duplicative of other files, it will take the undersigned counsel time to determine which electronic files are likely to contain information relevant to the evidentiary hearing and need to be reviewed, and provide an estimate of how long this will take. As noted, it has not yet been feasible to determine the total number of pages contained in the drives due to the unexpectedly large volume of files.

6.      The preliminary review also revealed a number of unexpected complications with the materials received from former counsel. For example, the electronic and paper files are disorganized, and it is often unclear where the materials in the file came from, which makes it difficult to confidently estimate the time required to isolate documents that require disclosure. Further, in the course of reviewing the electronic files described as containing scanned materials from the paper file boxes, Petitioner's counsel discovered multiple instances in which the paper files were not fully or properly scanned. The preliminary review of the paper files also identified a high volume of material, more than 10,000 pages, that is potentially relevant to the claim currently before this Court that was not identified and scanned by former counsel.

7.      Additionally, on April 10, 2023, the undersigned counsel was notified by prior counsel about the discovery of additional materials from Mr. Runyon's case in its offices that will need to be reviewed by prior counsel and shipped to Petitioner's counsel. Prior counsel has

---

reviewer is 50 to 60 documents per hour. *See* eDiscovery Best Practices: Does Size Matter?, cloudnine, https://cloudnine.com/ediscoverydaily/electronic-discovery/ediscovery-best-practices-does-size-matter/ (last visited Apr. 13, 2023); Who Actually Is Reviewing My Documents?, Hilgers Graben, 3, https://hilgersgraben.com/wp-content/uploads/2020/02/Who-Actually-Is-Reviewing-My-Documents.pdf (last visited Apr. 13, 2023).

represented that these files appear to have been created after Mr. Runyon's trial. Prior counsel was not confident in the volume or contents of the additional case files but plans to ship these materials the week of April 17.

8.      Notwithstanding these issues, Petitioner's counsel has been diligently reviewing the hard-copy files to identify documents that may need to be produced. Nine bankers boxes and fifteen binders have now been sent to a discovery vendor for scanning. The condition of the paper files requires the use of a more manual, and thus more time-consuming, scanning process. The discovery vendor estimates the scans will be complete by April 21, although the vendor will deliver scans on a rolling basis. As scans become available, Petitioner's counsel, along with Petitioner's proposed co-counsel, will promptly review the documents on an individual basis to determine whether they have already been produced and, if not, whether they should be produced. Petitioner will begin making rolling productions of responsive documents to the government as soon as practicable.

9.      In tandem with the review of the paper files, Petitioner's counsel is working with e-discovery experts to develop a process for identifying responsive documents from the electronic data contained on the hard drive and flash drive. As part of this process, Petitioner will explore the viability of using software tools to de-duplicate files and otherwise facilitate an efficient review of the data.

10.      Although the review of the transferred case files will be more cumbersome than anticipated, with proper resources counsel believes an appropriate and efficient review can be made and provide the basis for identifying and disclosing remaining relevant discovery. As

**JA2014**

described in Petitioner's counsel's Memorandum in Support of the Motion to Appoint Counsel, ECF No. 803, attorneys and litigation support staff from Covington & Burling LLP can provide expertise and assistance to increase the efficiency of the review process and timely identification and production of relevant information to the government. For example, the Covington team has extensive experience in cases involving complex document management and review, and can provide additional staffing to assist in the review as well as necessary technical support. Further, Covington plans to cover certain non-reimbursable costs relating to this aspect of the representation, including, for instance, document scanning, storage, and production charges.

11.     Petitioner's counsel has been conferring with prior counsel, including by email and telephone this week, to understand the organization and contents of the provided case files in order to make the review more efficient. Prior counsel's efforts since late February have been helpful to facilitate the transfer of Mr. Runyon's case files; however, as described in the undersigned counsel's Declaration, ECF No. 797-1, Petitioner's counsel must conduct an independent review to ensure that all appropriate disclosures are made.

12.     In light of the aforementioned issues, Petitioner's counsel seeks additional time to assess the documents received from former counsel and requests leave to propose a schedule for discovery, and an expected date for resumption of the evidentiary hearing, on or before May 5, 2023. This additional time will allow Petitioner's counsel to make meaningful progress in the review of the materials received from prior counsel and provide the government with informed opinions about the time needed to complete the review and production of relevant materials.

13.     Petitioner's counsel proposes to provide regular (*e.g.*, at least weekly) updates to

6

**JA2015**

the government during this three-week period regarding the progress of the initial review of the transferred case files, and until discovery is complete. Petitioner expects that these updates will facilitate an ongoing dialogue between Petitioner and the government regarding the proposed schedule such that they can submit a joint proposed schedule (or competing schedules, if they are unable to reach agreement) no later than May 5, 2023, and earlier if possible.

Respectfully Submitted,

/s/ Elizabeth J. Peiffer

Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

7

**JA2016**

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/ Elizabeth Peiffer

**JA2017**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

DAVID ANTHONY RUNYON,            )
    Petitioner,            )            Original Criminal No. 4:08-cr-16-3
                      )            Original Civil No. 4:15-cv-108
    vs.            )            **CAPITAL § 2255 PROCEEDINGS**
                      )
UNITED STATES OF AMERICA,            )            HON. REBECCA BEACH SMITH
    Respondent.            )

**ORDER**

Petitioner David Anthony Runyon has filed a motion for a three-week continuance for filing a scheduling submission from April 14 to May 5, 2023. Mr. Runyon's counsel has indicated the volume of the transferred files is exceptionally large and delivered in paper as well as multiple electronic formats, and the additional time is needed for counsel to identify materials relevant to the discovery review.

The requested continuance is necessary to allow Petitioner's counsel to make meaningful progress in the review of the materials received from prior counsel and provide the government with informed opinions about the time needed to complete the review and production of relevant materials, and to propose a schedule for further discovery and the continuation of the evidentiary hearing.

For these reasons, the Court GRANTS Petitioner's motion and DIRECTS the parties to submit a joint proposed schedule for discovery and the continuation of the evidentiary hearing by close of business on ___May 5, 2023___.

IT IS SO ORDERED.

April 18, 2023

                                           /s/
                                   Rebecca Beach Smith
                                   Senior United States District Judge
REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

**JA2018**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

DAVID ANTHONY RUNYON,

           Petitioner,

v.

UNITED STATES OF AMERICA,

           Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3
CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

**STATUS REPORT AND PROPOSED SCHEDULE**

Counsel for Petitioner respectfully submits this Status Report and Proposed Schedule to update the Court on the progress of the review of former counsel's files, to propose a deadline for the production of documents to the government, and to notify the Court of an unexpected personal issue relating to the undersigned counsel's upcoming availability that may affect the timing of the evidentiary hearing.

Petitioner's undersigned and proposed co-counsel have made meaningful progress reviewing the paper and electronic files from former counsel and have been able to narrow the scope of files requiring further review. As discussed below, however, there are thousands of files requiring a manual—and time-consuming—review.  With the continued assistance of Petitioner's proposed co-counsel, Petitioner commits to complete review and production by August 31, 2023. In the meantime, Petitioner will produce documents on a rolling basis.

Due to uncertainties about co-counsel, as well as a recent family emergency described in further detail below, counsel cannot, at this time, propose a firm timeframe for continuation of the

1

**JA2019**

evidentiary hearing. Petitioner believes that, with the assistance of proposed co-counsel, Petitioner could be ready to resume the evidentiary hearing in October 2023, but this is contingent on the undersigned counsel's availability, which is uncertain at the present time.

Pursuant to this Court's order directing counsel for Petitioner and the government to "submit a joint proposed schedule for discovery and the continuation of the evidentiary hearing by close of business on May 5, 2023," *see* ECF No. 807, Petitioner's counsel has conferred with the government about this Proposed Schedule, but the government did not agree to join Petitioner's proposed submission.

1. As Petitioner has previously explained, *see* ECF No. 806, the preliminary review of the initial 57 bankers boxes received from Petitioner's former counsel (Federal Defender Services of Eastern Tennessee, Inc.) revealed a large amount of files that are potentially relevant to Claim 6 and thus require closer review. Upon receiving the boxes, Petitioner's counsel promptly reviewed the contents on a preliminary basis and identified nine bankers boxes and 15 binders needing further review. These boxes and binders were sent to a discovery vendor for efficient scanning, and they have yielded roughly 900 files consisting of more than 25,000 pages. These files were uploaded to an electronic document review platform hosted by Covington & Burling LLP ("Covington") (at Covington's expense), and Petitioner's counsel has begun a thorough and diligent review of these files on an individual basis.

2. On May 2, 2023, undersigned counsel received 13 additional bankers boxes from Petitioner's former counsel with thousands of paper files. While former counsel has indicated that these files are duplicative of materials previously provided to the undersigned counsel, counsel will need to review the files in order to confirm. Petitioner's counsel has begun reviewing these files on a preliminary basis, and it will send any potentially responsive files for scanning for a

2
**JA2020**

closer and more efficient review.

3.  In addition to reviewing Mr. Runyon's paper files—now totaling 70 bankers boxes—Petitioner's counsel has made substantial progress reviewing the 196,000 electronic files contained in former counsel's hard and flash drives. Counsel has conducted a preliminary review of the vast majority of these files, and thus far it has identified over 4,200 files, totaling more than 68,000 pages, that need further review. Roughly 7,600 files, totaling more than 139,000 pages, are still being reviewed on a preliminary basis to ascertain their relevance.

4.  Since the discovery vendor began delivering scanned files on a rolling basis, Petitioner's counsel has made significant progress in the document-by-document review of the paper files identified as potentially responsive, but there are hundreds of files remaining for review. In addition, Petitioner's counsel still must (a) conduct a substantive, document-by-document review of the thousands of electronic files it has identified as potentially responsive from former counsel's hard and flash drives, (b) complete the preliminary review of approximately 7,600 electronic files from these drives and the thousands of documents included in the recently received 13 bankers boxes, and (c) conduct a substantive, document-by-document review of any potentially responsive files identified in that preliminary review.

5.  The substantive, document-by-document review of the paper and electronic files has been time consuming, and Petitioner expects it will continue to be. Many of the documents are handwritten or contain handwritten notes, or are otherwise not text-searchable. And some of the paper files consist of multiple documents in one PDF spanning several hundred pages, as materials were scanned at the folder level in an attempt to create an organizational system for the discovery vendor.

6.  Moreover, it is likely that some, perhaps many, documents that Petitioner identifies

**JA2021**

as falling within the scope of the Court's discovery order will have already been produced to the government. Any de-duplication against the previously produced documents is a manual and burdensome process requiring a keyword search of all prior disclosures for each identified document, or an inventory comparison for non-searchable documents. Because this impacts the speed at which Petitioner can produce documents to the government, Petitioner has raised this concern with the government, but the parties have not yet reached agreement on de-duplication.

7.     In light of the aforementioned issues, Petitioner proposes to complete document production by **August 31, 2023**. Petitioner's counsel submits that this date strikes an appropriate balance between the need for the case to resume and the duty of Petitioner's counsel to conduct a diligent and thorough independent review of a very voluminous set of files. Petitioner will continue to conduct the review as expeditiously as possible, with the goal of avoiding any extensions due to unforeseen issues that may arise during the review itself and completing the production sooner if possible. Moreover, as previously noted, Petitioner will produce documents to the government on a rolling basis, with an initial production expected this month.

8.     Regrettably, this past week, the undersigned counsel's 75-year-old mother suffered a fall. Related scans revealed that she has Stage IV cancer. The undersigned counsel is currently caring for her mother, who needs significant assistance and is unable to walk or stand on her own. A treatment plan for the undersigned counsel's mother remains uncertain pending further medical evaluation, making it difficult for the undersigned counsel to commit to an in-person hearing date at this time. Because the undersigned counsel is currently caring for her mother, she also is unavailable to appear in court in person until further notice; she would be available to appear via video if the Court wishes to have a status conference.

9.     At present, undersigned counsel is the only counsel of record for Petitioner.

Petitioner has filed a motion to appoint Ms. Kathryn Marshall Ali of Ali & Lockwood LLP as co-counsel, ECF No. 802, which remains pending, and Petitioner also seeks to be represented in this proceeding by Covington on a pro bono basis, *see id.* Should the Court grant the motion for appointment and Covington's forthcoming *pro hac vice* motions, the undersigned counsel tentatively expects Petitioner to be ready for the evidentiary hearing in October 2023. In view of the uncertainty surrounding the undersigned counsel's availability, Petitioner proposes that counsel update the Court with its availability for the evidentiary hearing in 90 days, by which time the undersigned counsel hopes to know more about her mother's medical condition and long-term treatment and care needs.

10. For these reasons, Petitioner respectfully requests that this Court adopt his proposed deadline for completion of document production by August 31, 2023, and order the parties to submit a proposed date for the continuation of the evidentiary hearing by August 3, 2023. Should the Court deem it helpful, the undersigned counsel is available to participate in a status conference via video or telephone.

Dated: May 5, 2023                                   Respectfully submitted,

                                                     /s/ _____

                                                     Elizabeth J. Peiffer, VSB No. 71353
                                                     Capital Representation Resource Center
                                                     1155 Seminole Trail #6391
                                                     Charlottesville, VA 22906
                                                     Telephone (434) 817-2970
                                                     Fax (434) 817-2972
                                                     epeiffer@vcrrc.org

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

*/s/* Arianna Zoghi

6

**JA2024**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

DAVID ANTHIONY RUNYON, )
)
    Petitioner )
)
    v. ) Criminal Action No.: 4:08cr16
) Civil Action No. :4:15cv108
UNITED STATES OF AMERICA, )
) **CAPITAL § 2255 PROCEEDINGS**
    Respondent. )
) HON. REBECCA BEACH SMITH

## <u>UNITED STATES RESPONSE TO PETITIONER'S PROPOSED SCHEDULE</u>

The United States, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, Brian J. Samuels, and Lisa R. McKeel, Assistant United States Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice, submits this response to the Petitioner's Status Report and Proposed Schedule. ECF No. 808. As of the date of this filing, Petitioner has not produced any additional discovery to the United States. The United States objects to a further four month delay for completion of discovery in this matter.

The parties have also not been able to successfully discuss and determine a date for resumption of the evidentiary hearing. Given the delays that been incurred in this matter since February 2023, the lack of any definitive resolution for resumption of discovery production and a continuation of the evidentiary hearing and the narrowness of the issue on remand, the United States respectfully requests that the Court hold a prompt status hearing so that these various issues may be addressed directly with the Court.

1

**JA2025**

**BACKGROUND**

Following the February 2023 continuance of the evidentiary hearing in this matter, the Court ordered the parties to confer and submit a joint scheduling order addressing remaining disclosures and continuance of the evidentiary hearing, no later than March 24, 2023. ECF No. 796. On March 23, 2023, Petitioner sought a continuance through April 14, 2023, which was not opposed by the United States. ECF No. 800. This Court granted the motion on March 24, 2023, and directed counsel to file a joint proposed scheduling order by close of business on April 14, 2023. ECF No. 801. On April 14, 2023, Petitioner sought an additional continuance (ECF No. 805), which the United States did not oppose, and the Court granted the motion, ordering a joint schedule be submitted no later than May 5, 2023. ECF. No. 807. The Petitioner has sought appointment of additional counsel, namely Ms. Kathryn Ali and generally referenced a future pro hac vice motion to appoint pro bono attorneys associated with a law firm, "tentatively" expecting Petitioner to be ready to complete the hearing in October 2023. ECF Nos. 802 and 803.

On April 18, 2023, this Court ordered the parties "to submit a joint proposed schedule for discovery and the continuation of the evidentiary hearing by close of business on Friday, May 5, 2023." ECF No. 807. Thereafter, the United States conferred with counsel for Petitioner, but was unable to arrive at a joint schedule for either discovery or a resumption of the evidentiary hearing. Petitioner subsequently filed his Status Report and Proposed Schedule on May 5, 2023. ECF No. 808. Although Petitioner contends that meaningful progress reviewing files from former counsel has been accomplished, there apparently remain thousands of files that require manual review. Petitioner proposes a production completed by August 31, 2023 – some four months away from the filing of the status report and over six months following the suspension of the evidentiary hearing in February 2023. Petitioner proposes that the parties submit a proposed date for the

2

**JA2026**

continuation of the evidentiary hearing by August 3, 2023, nearly a month before the Petitioner pledges to complete production of discovery.

## DISCUSSION

Pursuant to the orders granting the various extensions between February and May 2023, counsel for Petitioner and counsel for the United States have conferred on several occasions regarding the status of discovery and Petitioner's needs moving forward. Petitioner's counsel has consistently identified the volume of incoming discovery, uncertainties as to whether or when Petitioner's counsel will take full possession of the file, the needs for new counsel (upon appointment) to conduct an independent review of materials and familiarize themselves with the case.   Current counsel has not addressed the performance by prior counsel, Federal Defenders Service of Eastern Tennessee (FDSET) to adhere their pledge to complete transfer of Petitioner's file.[1]  It appears that there have been problems in completing the transfer of files that have caused additional delays.  In any case and for whatever reason, it seems apparent that the pledge made by FDSET, via declaration and subsequent to their permitted withdrawal, of a timely, efficiency and complete production of materials has not been fully realized.  And in the nearly three months since FDSET sought and was granted withdrawal, the United States has not received any additional discovery.  Each conference the United States has had with counsel for Petitioner focuses on these claimed challenges and inability to chart a path forward.

In his present status report, Petitioner again focuses heavily on the sheer volume of materials in Mr. Runyon's files. FDSET apparently kept the files in various forms, albeit much of

---

[1]  In its affidavit submitted to the Court, FDSET indicated that ""by March 17,2023, FDSET will re-scan all files related to the penalty phase."  ECF No. 795-1, para. 6. "My March 17, 2023, FDSET will organize the contents of Mr. Runyon's internal file, or H drive file." Id., para. 8. Remaining digital files will be exported to VCRRC by March 31, 2023. Id., para. 9. Discovery would complete by the week of April 3, 2023. Id., para. 10.

it is duplicative.  As was evident from the discovery produced to date and introduced as exhibits during the interrupted evidentiary hearing, some documents were "OAF" or "original attorney files."  The United States received thousands of documents in disclosures from prior counsel and hundreds more when the initial lapse was identified in mid-February.  FDSET was to do an initial review that would  help narrow the scope for current counsel to review.

Petitioner's latest status report does not identify ongoing needs with any specificity, beyond the need for independent "document-by-document review of any potentially relevant files." The status report identifies thousands of files from former counsel, but does not specify in any meaningful detail whether the files are relevant to the guilt phase, penalty phase, or even earmarked as relevant to the limited claim pending before this Court – beyond a "large amount of files that are potentially relevant to Claim 6 and thus require closer review."

This ambiguity seems to conflict with the agreed upon plan submitted by FDSET, which would include indexes identifying relevant materials and an initial review of materials to identify relevant documents.  However, the claimed sheer volume of materials would indicate that the bulk of the materials cannot bear relevance or be necessary to the limited nature of the remaining Claim 6, which is focused on counsel's communications and strategies involving mental health experts at sentencing. That limitation certainly calls into question whether there exists good cause for an additional four months' delay, particularly when this newest request comes without assurances that the proposed August 31, 2023, is a date certain, even to complete discovery, much less resume the evidentiary hearing.  It would be somewhat unheard of for the United States to request such an extension to review and produce discovery in a criminal case.  Petitioner's counsel cannot be starting completely from scratch here given counsel's association with the case for some time and the substantial preparation for the evidentiary hearing prior to its interruption.

**JA2028**

The United States is understanding to the ongoing challenges Petitioner and his counsel have suffered since February 2023 (and certainly sympathetic to the personal issues) and has not opposed prior reasonable requests for accommodation. However, it seems a worthy discussion to refocus all parties on the statutory and procedural limitations that define the proceeding at issue. This delay should permit for the prompt and efficient disclosure of needed discovery, not for Petitioner to renew and retool his presentation related to the claim at issue.

This remaining Claim was brought pursuant to 28 U.S.C. § 2255, which has a strict one-year period to investigate and bring forth claims.  The Petitioner initially asserted a great many other claims, which were denied and dismissed by the Court and the Court of Appeals – leaving just this one remaining.  But the Petitioner now asserts that he needs over six months just to review for additional discovery on just this *one* claim, which is taking advantage of his own failure to provide these disclosures.

The Fourth Circuit remanded for hearing in February 2021.  The hearing commenced and quickly adjourned in February 2023.  Petitioner's original Claim 6 was limited by the Fourth Circuit's mandate. All that remains before this Court is whether Mr. Runyon's trial counsel "provided ineffective assistance by failing to investigate and present mitigating evidence of Runyon's brain injury and potential mental illness." The Fourth Circuit ordered this remand in February 2021, to "resolve material facts in dispute involving inconsistencies beyond the record." *Id.*at 208-209.  The parties operated under this Court's orders regarding discovery and mandated an open and continuous discovery process. Despite those efforts, Petitioner's discovery violations were noted at the hearing on February 14, 2023, with documentation that utterly contradicted facts presented to the Court of Appeals and which relied upon the assertion that trial counsel "never

5

**JA2029**

provided the [brain] scans to Dr. Merikangas." *United States v. Runyon,* 994 F.3d 192, 205 (4th Cir. 2021).

On February 14, 2023, Petitioner disclosed documentary evidence that would summarily resolve the "material facts in dispute." Specifically, Dr. Merikangas' own billing records that reflected time reviewing the brain scans and discussing said scans with trial counsel. Additionally, Petitioner belatedly provided trial counsel's memorandum to file, documenting that discussion, and noting that Dr. Merikangas strongly advised against presenting a mental health defense. Upon receipt, the Government attempted to waive further discovery in order to proceed to resolution on the limited claim at issue. ECF No. 798 (Ordered moot by the Court's subsequent directives, ECF No. 799).

Prior counsel's performance at the evidentiary hearing did suggest an effort to expand upon the limited remand by investigating claims raised and denied by the Fourth Circuit. For example, claims involving childhood trauma and generational trauma did not receive a certificate of appealability; yet were explored at length through lay witnesses during Petitioner's case in chief in the evidentiary hearing. The United States respectfully requests that this Court use a status conference to ensure the parties' understanding of the law of the mandate, which forbids "relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case." *Ellis v. United States*, 313 F.3d 636 (1st Cir. 2002) A status conference may ensure that the parties are properly advised that "a lower court generally is bound to carry the mandate of the upper court into execution and may not consider the questions which the mandate laid at rest." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (cleaned up). "Few legal precepts are as firmly established as the doctrine that the mandate of a higher court is 'controlling as to matters within its compass.'" *Juniper v. Hamilton*, 529

6

**JA2030**

F.Supp.3d 466, 482 (E.D. Va., March 29, 2021)(Internal citations omitted). Since Petitioner has attempted to do just that, his calculation as to what constitutes good cause for a proper continuance should thus be limited by the statutory and procedural bars governing this evidentiary hearing.

Accordingly, the United States requests a status conference to be held promptly, so that all parties can discuss and determine an appropriate way ahead. One that lies within the scope of the mandate, the letter of the law, and complies with the Court's intentions and directives.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____/S/_____

Brian J. Samuels
Lisa R. McKeel
Assistant United States Attorneys
Carrie L. Ward, Trial Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

7

**JA2031**

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th  day of May, 2023,  I electronically filed a true

copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to

all filers.


By:     <u>    /S/     </u>
       Brian J. Samuels
       Assistant United States Attorney
       Virginia Bar Number: 65898
       Attorney for the United States
       United States Attorney's Office
       Fountain Plaza Three, Suite 300
       721 Lakefront Commons
       Newport News, Virginia 23606
       Phone: (757) 591-4000
       Fax: (757) 591-0866
       Email: Brian.Samuels@usdoj.gov

**JA2032**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DAVID ANTHONY RUNYON,

          Petitioner,

v.

                                      CIVIL NO. 4:15cv108
                      [ORIGINAL CRIMINAL NO. 4:08cr16]

UNITED STATES OF AMERICA,

          Respondent.

## ORDER

This matter comes before the court on Petitioner's "Motion for Appointment of Counsel for Proceedings Pursuant to 28 U.S.C. § 2255," filed April 12, 2023, and its accompanying memorandum in support. See ECF Nos. 802, 803. In his Motion, Petitioner requests that Kathryn Ali, Ali & Lockwood LLP, be appointed to assist with Petitioner's ongoing habeas representation. See ECF No. 802 at 1. Petitioner is currently represented by Elizabeth Peiffer of the Virginia Capital Representation Resource Center ("VCRRC").

While the court is not required to appoint more than one attorney to represent Petitioner in his habeas proceedings, the court may do so, "with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation." See 18 U.S.C. § 3599(a)(2), (d). Given the seriousness of the capital penalty in this case, the amount of discovery yet

JA2033

to be completed,[1] and the complexity of the case, the court will exercise its discretion to appoint a second attorney to represent Petitioner. See id. Moreover, Kathryn Ali is well-qualified to provide such representation, given her eleven years of capital habeas experience, including matters involving brain injuries and medical experts. See ECF No. 803 at 6.

Therefore, pursuant to 18 U.S.C. § 3599(d), the court **APPOINTS** Kathryn Ali as second counsel for Petitioner in this matter, but for the sole purpose of moving the case forward on the one issue now before the court for an evidentiary hearing. Petitioner is **ADVISED** that the court does not intend to appoint, nor to otherwise admit pro hac vice, any additional attorneys. To the extent that Petitioner utilizes additional counsel in a supporting pro bono role, he will do so without the appointment or involvement of, or reimbursement from, the court.

Petitioner and the United States have still not agreed to a proposed schedule for discovery and the continuance of the evidentiary hearing, despite several extensions from the court.

---

[1] The VCRRC was initially appointed to represent Petitioner in his habeas proceedings on November 5, 2014, and has served as Petitioner's lead counsel since that time. See ECF No. 410. Although the Federal Defender Services of Eastern Tennessee were appointed as co-counsel, ECF No. 435, and were rightly involved in the discovery process, the court is disappointed that the VCRRC did not maintain sufficient oversight of their co-counsel, which has led to extensive delays in this matter, to the inconvenience and expense of Petitioner, the United States, the public, and the court.

**JA2034**

See ECF Nos. 801, 807 (Orders granting extensions). Nevertheless, Petitioner has independently suggested that discovery continue through August 31, 2023, with the evidentiary hearing to resume in October 2023. ECF No. 808 (Petitioner's "Status Report and Proposed Schedule"). The United States objects to such a lengthy extension and requests that the court hold a status hearing so that these issues "may be addressed directly with the court." ECF No. 809.

Considering the several extensions already granted by the court, the United States' request for a hearing, and now the appointment of Kathryn Ali to represent Petitioner, a status hearing is appropriate. As such, counsel are **DIRECTED** to schedule a hearing before the court with the Calendar Clerk, to be held within thirty (30) days of the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Order to counsel for Petitioner and the United States Attorney at Newport News.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

May 17, 2023

3

**JA2035**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

DAVID ANTHONY RUNYON,

Petitioner

v.

UNITED STATES OF AMERICA,

Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3
CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

**MOTION FOR ATTORNEY ELIZABETH PEIFFER TO WITHDRAW DUE TO
UNFORESEEN PERSONAL CIRCUMSTANCES AND FOR LEAVE TO SEEK *PRO
HAC VICE* ADMISSION AND SUBSTITUTION OF *PRO BONO* COUNSEL**

For the reasons stated in the accompanying Memorandum in Support, and pursuant to 18

U.S.C. § 3599(e), Petitioner David Anthony Runyon and undersigned counsel, Elizabeth Peiffer,

move for Ms. Peiffer's withdrawal and for leave to seek *pro hac vice* admission and substitution

of attorneys from Covington & Burling LLP ("Covington") in these proceedings.

Several weeks after Mr. Runyon filed his Motion for Appointment of Counsel, *see* ECF

Nos. 802 & 803, Ms. Peiffer's mother was suddenly diagnosed with Stage IV breast cancer, which

has metastasized to other parts of her body including her bones, lungs, and liver. Further

developments in recent days have made clear that Ms. Peiffer's responsibilities as a caregiver will

prevent her from continuing to competently and diligently perform her role as counsel for Mr.

Runyon and create conflicts of interest between her responsibilities to care for her mother and

those as counsel to Mr. Runyon.

In light of this unexpected change in circumstances, and for the reasons explained in the

1

**JA2036**

accompanying memorandum, Ms. Peiffer respectfully requests leave to withdraw and be dismissed as counsel in these proceedings, and Mr. Runyon respectfully renews his request to be represented in this matter on a *pro bono* basis by substitute counsel from Covington.

Counsel have consulted with Mr. Runyon on this matter, who supports the requested substitution. Counsel also notified counsel for the United States on June 5 of their intent to file this Motion. Counsel for the United States responded on June 7 to state that they had not had a chance to confer internally concerning this Motion and may not be able to do so until the week of June 12.

Dated: June 7, 2023

Respectfully Submitted,

/s/ Elizabeth J. Peiffer

Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

Kathryn M. Ali, VSB No. 97966
Ali & Lockwood LLP
300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Telephone (202) 651-2475
katie.ali@alilockwood.com

**JA2037**

**CERTIFICATE OF SERVICE**

   I hereby certify that on June 7, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

              /s/ <u>Kathryn M. Ali</u>

**JA2038**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

|  |  |
|---|---|
| DAVID ANTHONY RUNYON, <br><br> Petitioner <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | Case No. 4:15-cv-108 <br><br> Initial Criminal No. 4:08-cr-16-3 <br> CAPITAL § 2255 PROCEEDINGS <br> HON. REBECCA BEACH SMITH |

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY ELIZABETH PEIFFER TO WITHDRAW DUE TO UNFORESEEN PERSONAL CIRCUMSTANCES AND FOR LEAVE TO SEEK *PRO HAC VICE* ADMISSION AND SUBSTITUTION OF *PRO BONO* COUNSEL**

For the reasons set forth below and pursuant to 18 U.S.C. § 3599(e), Petitioner David Anthony Runyon and undersigned counsel, Elizabeth Peiffer, move for Ms. Peiffer's withdrawal and for leave to seek *pro hac vice* admission and substitution of attorneys from Covington & Burling LLP ("Covington") in these proceedings.

Several weeks after Mr. Runyon filed his Motion for Appointment of Counsel, *see* ECF Nos. 802 & 803, Ms. Peiffer's mother was suddenly diagnosed with Stage IV breast cancer, which has metastasized to other parts of her body including her bones, lungs, and liver.[1] Significant uncertainties regarding treatment and prognosis remain, but medical consultations and other

---

[1] Although Ms. Peiffer's mother was preliminarily diagnosed on April 28, that diagnosis was not immediately confirmed by an oncologist, and the treatment and care plan remained uncertain pending further medical evaluation. *See* Ex. A, Sealed Decl. of Elizabeth Peiffer ¶¶ 3-7 (hereafter, "Peiffer Decl."). It now is clear that Ms. Peiffer's mother will need substantial and ongoing care, and that Ms. Peiffer needs to be available to serve as a caregiver during treatment. Undersigned counsel endeavored to consult with Mr. Runyon, notify the United States, and file this Motion as soon as practicable in light of these fluid and evolving circumstances.

**JA2039**

developments in recent days have made clear that Ms. Peiffer's responsibilities as a caregiver will prevent her from continuing to competently perform her role as counsel for Mr. Runyon and will create conflicts of interest between her responsibilities to care for her mother and those as counsel to Mr. Runyon.

In light of this unexpected change in circumstances, and for the reasons explained in more detail below, Ms. Peiffer respectfully requests leave to withdraw and be dismissed as counsel in these proceedings, and Mr. Runyon respectfully renews his request to be represented in this matter on a *pro bono* basis by substitute counsel from Covington, led by Peter Swanson and Nicholas Xenakis.

Counsel have consulted with Mr. Runyon on this matter, who supports the requested substitution. Counsel also notified counsel for the United States on June 5 of their intent to file this Motion. Counsel for the United States responded on June 7 to state that they had not had a chance to confer internally concerning this Motion and may not be able to do so until the week of June 12.

## I. Recent Unforeseen Changes In Ms. Peiffer's Personal Circumstances Require Her To Withdraw From This Litigation.

As laid out more fully in the attached sealed declaration, on April 28, 2023, Ms. Peiffer's 75-year-old mother fell while walking down a hallway in her home. A series of medical tests, X-rays, and CT scans conducted after that fall revealed that Ms. Peiffer's mother has Stage IV breast cancer that has metastasized to bones in her hip, spine and ribs, as well as to each of her lungs and her liver. Peiffer Decl. ¶¶ 3-7.

Ms. Peiffer's mother's medical condition has left her unable to move safely without assistance and has highlighted the need for substantial accommodations at her home. *Id.* ¶¶ 8-12.

**JA2040**

Although Ms. Peiffer's mother has begun treatment, it will be at least three to four months before the effectiveness of that treatment can be assessed. *Id.* ¶ 14. These unanticipated and very serious developments have made significant demands on Ms. Peiffer's time, attention, and availability, and she has determined that it will be difficult for her to make plans or commitments for the foreseeable future due to her mother's unpredictable medical situation. *Id.* ¶¶ 4, 9-18. She has concluded, after consulting with counsel for the Virginia State Bar, that she is required to withdraw. *Id.* ¶ 18.

A. **The Law and Governing Professional Rules Support Ms. Peiffer's Motion.**

In light of these developments, and in the absence of an extended continuance, "there is a significant risk that [Ms. Peiffer's] representation of [Mr. Runyon] will be materially limited by . . . a personal interest of [Ms. Peiffer]," namely, her interest in caring for her mother. *See* Va. R. Prof. Conduct 1.7(a)(2). Ms. Peiffer's "loyalty to [Mr. Runyon] is also impaired" because her responsibility to care for her mother will prevent her from "carry[ing] out an appropriate course of action for [Mr. Runyon]." *See* Va. R. Prof. Conduct 1.7, cmt. 8. Thus, Ms. Peiffer has a "concurrent conflict of interest," and continued representation of Mr. Runyon would violate her duties under the Virginia Rules of Professional Conduct. *See* Va. R. Prof. Conduct 1.7(a).

Ms. Peiffer is also unable to provide competent and diligent representation to Mr. Runyon in this death penalty case in accordance with her duties under Virginia Rules of Professional Conduct 1.1 and 1.3(a). "Competent handling of a particular matter includes . . . adequate preparation." *See* Va. R. Prof. Conduct 1.1, cmt. 5. As this Court has recognized, this case is complex, and there is significant outstanding discovery. *See* Order at 2, ECF No. 810. Further, "[t]he required attention and preparation [in a case] are determined in part by what is at stake[.]" *See* Va. R. Prof. Conduct 1.1, cmt. 5. As a death penalty case, this matter requires the most

3

**JA2041**

heightened attention and preparation. *See* Order at 2, ECF No. 810. Ms. Peiffer's caretaking obligations will prevent her from adequately preparing for the continued hearing and will make it difficult to reliably arrange travel and court appearances, particularly when it comes to the presentation of witnesses over multiple days. Peiffer Decl. ¶¶ 11-18.

Continued representation under these circumstances therefore would violate Rules 1.1, 1.3(a), and 1.7(a)(2) of the Virginia Rules of Professional Conduct, necessitating Ms. Peiffer's withdrawal. *See* Va. R. Prof. Conduct 1.16(a)(1); *see also id.*, cmt. 1 ("A lawyer should not . . . continue representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion."). Continued representation under these circumstances—particularly in the absence of substitute counsel—would also deprive Mr. Runyon of his rights as a person facing the punishment of death. *See* U.S. Const. amends. 5, 6, 8.

Because of these evolving developments and circumstances beyond her control, Ms. Peiffer no longer has the capacity to competently and diligently represent Mr. Runyon pursuant to 18 U.S.C. § 3599 and in accordance with her ethical duties. Peiffer Decl. ¶ 18. In these circumstances and due to Ms. Peiffer's unavailability, it is in the "interests of justice" to allow Ms. Peiffer to withdraw from this case and to provide Mr. Runyon with substitute counsel. *See Martel v. Clair*, 565 U.S. 648, 658 (2012) (holding that "interests of justice" standard applies to motions for substitution under 18 U.S.C. § 3599); *Christeson v. Roper*, 574 U.S. 373, 377 ("[A] motion for substitution should be granted when it is in the 'interests of justice.'"); *see also* 2/22/2023 Tr. at 1099, 1105 (applying "interests of justice standard" to motion to withdraw).

II.     **In Light Of These Unexpected Changed Circumstances, Mr. Runyon Renews His Request To Be Represented By *Pro Bono* Counsel From Covington.**

As a result of the unexpected developments described in Section I—which arose after Mr. Runyon filed his Motion for Appointment of Counsel and evolved in material ways after the Court

**JA2042**

granted that Motion in part—Mr. Runyon respectfully renews his request to be represented in these § 2255 proceedings by *pro bono* counsel from Covington. At the time this Court previously "advise[d] that the court does not intend to appoint, nor to otherwise admit pro hac vice, any additional attorneys," Mr. Runyon was represented by appointed counsel Ms. Peiffer, who joined Mr. Runyon's legal team in November 2021, with the appointment of Kathryn Ali to join as "second counsel." ECF No. 810 at 2. Now, however, Ms. Peiffer is no longer able to competently fulfill her obligations as appointed counsel for Mr. Runyon, and Mr. Runyon therefore seeks permission for substitute *pro bono* counsel from Covington to represent him as counsel of record.

### A. Designating More Than One Attorney to Serve as Counsel of Record is Critical.

Because he is an indigent person under a sentence of death who lacks the funds to hire an attorney or to pay any costs related to the prosecution of a proceeding under 28 U.S.C. § 2255, Mr. Runyon is entitled to the appointment of counsel to assist him in litigating his motion for relief pursuant to 28 U.S.C. § 2255. *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 854–57 (1994). If Ms. Peiffer is permitted to withdraw from the litigation, Mr. Runyon will be represented only by Ms. Ali, who has been appointed solely for the limited "purpose of moving the case forward on the one issue now before the court for an evidentiary hearing," ECF No. 810 at 2.

This is a complex proceeding. Indeed, in appointing Ms. Ali, the Court determined that "[g]iven the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case," it was appropriate for Mr. Runyon to have more than one counsel of record. *See* ECF No. 810 at 1–2. That ruling was—and is—manifestly correct. The claim remanded for further proceedings—trial counsel's failure to investigate and present evidence of Mr. Runyon's psycho-social history, brain damage, and mental health—involves complicated

**JA2043**

scientific, factual, and legal issues, including several neurological and psychological evaluations of Mr. Runyon, the facts concerning trial counsel's mitigation investigation, and whether trial counsel's conduct comported with prevailing professional standards. The record in this case is voluminous—spanning hundreds of thousands of pages—and the continued evidentiary hearing will involve numerous expert and lay witnesses.

Further, the withdrawal of Tennessee counsel and Ms. Peiffer's unavailability leave Mr. Runyon without *any* counsel who has worked on the case for more than a few months. While Ms. Ali is working diligently to learn the case, she is new to this long-running litigation. And unfortunately, due to issues created by prior, now-withdrawn counsel, much of the time dedicated so far by Mr. Runyon's team has necessarily been focused on attempting to right the ship on discovery and document production issues, thus limiting their ability to focus on preparing for the continued evidentiary hearing. Mr. Runyon should not have to bear the consequences of his former counsel's conduct, especially given that this is a capital case and may be his last opportunity to present evidence.

This situation stands in stark contrast to counsel for the United States, who have been involved in this case for more than fifteen years—since Mr. Runyon's original trial—and at least three of whom (Mr. Samuels, Ms. McKeel, and Ms. Ward, who is appearing *pro hac vice*) have suggested they intend to appear at the June 16 status conference and otherwise appear to be actively engaged in the litigation. This disparity is particularly notable given that it is Mr. Runyon who bears the burden of proof in this proceeding.

Permitting additional, substitute counsel to appear would also be consistent with this District's Criminal Justice Act ("CJA") Plan, which directs that "[d]ue to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing at least

6

**JA2044**

two attorneys" to represent prisoners pursuing 28 U.S.C. § 2255 post-conviction petitions in federal death penalty cases. *See* United States District Court for the Eastern District of Virginia Criminal Justice Act Plan § XIV.E.2 (approved Nov. 6, 2019) (hereafter, "E.D. Va. CJA Plan").[2] *See also* ECF No. 803 at ¶ 5 (noting that this District's CJA Plan is consistent with Guide to Judicial Policies and Procedures, which recommends appointment of "at least two counsel" for § 2255 proceedings in capital cases, 7 Guide to Judicial Policies and Procedures, ch. VI, § 6.01(A)(2), as well as CJA Plans of many (if not most) other courts).[3] And it would align with the uniform practices of every court currently handling a § 2255 proceeding involving an indigent federal capital defendant, every one of which has two or more counsel, with the sole exception being where a large institutional Capital Habeas Unit is handling the case, in which instance three or more lawyers from the Capital Habeas Unit usually assist. *See* ECF No. 803 at 3–4 & n.5.

## B. Permitting Covington *Pro Bono* Attorneys to Serve as Counsel of Record Will Facilitate An Orderly And Efficient Completion of This Proceeding.

Here, attorneys from Covington led by Mr. Swanson and Mr. Xenakis are prepared, with the Court's permission, to step in as *pro bono* counsel for Mr. Runyon in light of Ms. Peiffer's change in circumstances and resulting request to withdraw, and need only to be admitted to the District *pro hac vice*.[4]

Although the Court has discretion to control its courtroom, there is a general presumption that well-qualified attorneys will be granted *pro hac vice* admission absent some compelling

---

[2] *Available at* https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20CJA%20PLAN.pdf (last visited June 5, 2023).

[3] It should be noted that counsel appointed pursuant to § 3599 are responsible not only for litigating § 2255 proceedings, but also for "all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." 18 U.S.C. § 3599(e).

[4] The proposed Covington team includes, in addition to Mr. Swanson and Mr. Xenakis, Santiago Zalazar, Eric O'Brien, Meaghan Ryan, and Tyler VanderMolen.

reason. *Cf., e.g.*, *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-CV-15, 2015 WL 13733927, at *4 (E.D. Va. Nov. 18, 2015), *report and recommendation adopted in part*, No. 2:15CV015, 2016 WL 184397 (E.D. Va. Jan. 15, 2016) (acknowledging that "[i]t is up to each individual court to set its own standard" for "approving or denying an attorney's *pro hac vice* admission," but citing cases suggesting that there must be some legitimate, specific basis for denial, such as "uncivil behavior or abusive language by an attorney;" "an attorney's impact on judicial economy," as in a situation "where a party's out-of-state counsel has continually thwarted the progress of the litigation;" or where there have been "conflicts of interest or clear-cut violations of the rules").[5]

Here, no such reason exists, and significant considerations weigh in favor of permitting *pro hac vice* admission. The Covington team is well-qualified to represent Mr. Runyon in this § 2255 proceeding, and the individual lawyers satisfy all requirements for admission *pro hac vice* to this Court. *See* Ex. B, Decl. of Peter J. Swanson ¶¶ 4-6 (hereafter, "Swanson Decl."). Both Mr. Swanson and Mr. Xenakis have experience in criminal matters, including death penalty matters, and Mr. Xenakis previously worked as a federal public defender in this District. *See* ECF No. 803 at ¶¶ 14-16 (describing the experience of Covington team members with respect to complex litigation, expert-heavy cases involving extensive document review, and death penalty and post-

---

[5] Other federal courts employ an even stronger presumption, holding that "[a]bsent a showing of unethical conduct rising to a level that would justify disbarment, the court ***must admit*** the attorney" seeking pro hac vice admission. *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) (emphasis added) (citing *In Re Evans*, 524 F.2d 1004 (5th Cir. 1975)); *see also Sanders v. Russell*, 401 F.2d 241, 245 (5th Cir. 1968) (while "district courts have broad discretion in prescribing requirements for admission to practice before them," they lack discretion to "limit[] the number of pro hac vice appearances"); *id.* at 246 ("It is difficult to see how the concern of the District Court in decorum, dignity, competency, good character or amenability to service and discipline is served by a numerical limitation . . . lack of necessity— in the judge's view—simply is not and cannot be a proper basis for exclusion [of additional out-of-district counsel] . . . The trial court cannot substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests.") (cleaned up).

**JA2046**

conviction matters).[6] Covington has agreed to represent Mr. Runyon on a *pro bono* basis, and it does not intend to seek reimbursement from the Court for its fees or costs incurred in connection with such representation. Swanson Decl. ¶ 3. Counsel for Mr. Runyon have conferred with Geremy Kamens, the Federal Public Defender for the Eastern District of Virginia, who has recommended Covington as capable and available to assist in litigating Mr. Runyon's § 2255 proceedings at no cost to the Court, a factor this District's CJA Plan specifically instructs that the Court "should consider." *See* E.D. Va. CJA Plan § XIV.E.4 ("When appointing counsel in a capital § 2255 matter, the court should consider the recommendation of the Federal Public Defender, who will consult with the Federal Capital Habeas § 2255 Project.").

The only reason the Covington lawyers cannot simply enter their appearances and join Mr. Runyon's team as counsel of record without first seeking permission is that they are not admitted to practice before this Court. But this should not be a barrier to their ability to represent Mr. Runyon, who has selected the Covington team members as his *pro bono* counsel of choice. On the contrary, this is precisely why the process for *pro hac vice* admission exists.

This District's CJA Plan expressly contemplates foreign lawyers serving as counsel of record in § 2255 proceedings like this one. Although the CJA Plan requires CJA panel members in *non-capital* cases to be "members in good standing of the federal bar of this district and the Fourth Circuit Court of Appeals" and "maintain an office in this district," E.D. Va. CJA Plan IX.C.3.a & b, no such requirement exists for counsel seeking appointment in capital § 2255 proceedings. To the contrary, the CJA Plan expressly permits "[o]ut of district counsel" to be

---

[6] During his tenure with the Office of the Federal Public Defender for the Eastern District of Virginia, Mr. Xenakis was admitted to practice *pro hac vice* before this Court.  Mr. Xenakis is also admitted as a member of the bar of the United States Court of Appeals for the Fourth Circuit, on which he served as a law clerk, and argued cases in that Court while a member of the Office of the Federal Public Defender.

**JA2047**

appointed "in capital § 2255 cases to achieve high quality representation together with cost and other efficiencies."[7] *Id.* at XIV.E.6.

"High quality representation," cost reductions, "and other efficiencies" are precisely what Covington offers here. The Court is aware of the discovery issues that arose during the February 2023 hearing. As described in the Memorandum in Support of the Motion to Appoint Counsel, ECF No. 803, attorneys and litigation support staff from Covington, in conjunction with Mr. Runyon's counsel of record, have been working diligently to address these issues and conduct an efficient and reliable review of the voluminous case files transferred from prior counsel.

To date, Mr. Runyon's current counsel have received a total of seventy bankers boxes with tens of thousands of files as well as a hard drive containing 126 GB of data, including over 187,000 files, and a flash drive containing 14.2 GB of data, including nearly 9,000 files, from former counsel. The paper and electronic files received from former counsel were disorganized and required Mr. Runyon's current counsel to conduct a preliminary review of these files to identify a narrower set of materials requiring potential disclosure under the Court's discovery order. That review was conducted promptly, resulting in the identification of roughly 900 documents from fifty-seven of the bankers boxes and roughly 4,300 files from the hard and flash drives.[8] Covington attorneys, along with Mr. Runyon's counsel of record, have made significant progress regarding the necessary document-by-document review of the roughly 900 paper documents to identify materials that require production, and they completed a production to the government on May 31,

---

[7] Covington counsel are not seeking formal CJA appointment in this case but the same principles apply to retained *pro bono* counsel.

[8] As described in Petitioner's Status Report and Proposed Schedule, ECF No. 808, Mr. Runyon's former counsel sent fifty-seven bankers boxes on April 6, 7, and 10, 2023. The review of these fifty-seven boxes identified nearly 900 documents that are potentially relevant to Claim 6 and require further review. On May 2, 2023, Mr. Runyon's counsel received an additional thirteen bankers boxes from Mr. Runyon's former counsel. The review of the files from the thirteen additional boxes is ongoing and may result in additional files that require further review.

2023.  Covington plans to enlist a dedicated team of attorneys to complete an expedited first-level review of the remaining roughly 4,300 electronic files.  Covington attorneys and staff already have dedicated hundreds of hours to Mr. Runyon's case, and the firm has covered a number of out-of-pocket expenditures related to document scanning, storage, and production. Covington will continue to provide expertise, cost reductions, and other efficiencies to ensure the timely identification and production of relevant information to the government.

Permitting Covington *pro bono* lawyers to formally appear in the case would help to ensure both that this litigation can move forward efficiently and that Mr. Runyon is adequately represented in his § 2255 proceedings. Absent admission *pro hac vice*, the role that Covington attorneys can play in this case and the ability of counsel to expeditiously proceed to an evidentiary hearing will be limited in significant ways. For example:

- Based on the hearing record and documents reviewed to-date, it appears that there are at least five expert witnesses and several lay witnesses relevant to Mr. Runyon's ineffective assistance of counsel claim who were disclosed prior to the February 2023 hearing but who have not yet testified due to the interruption of proceedings. If Ms. Ali is the only lawyer permitted to formally appear and examine witnesses and present evidence, the lion's share of witness and exhibit preparation work will necessarily fall on her, which would unduly limit her ability to prepare for the hearing and could slow these proceedings down considerably. Among other things, it would significantly limit the number of witnesses who could be prepared during any particular day (whereas, if multiple counsel are permitted to examine witnesses, multiple witnesses could be prepared simultaneously on parallel tracks). Permitting multiple attorneys to present evidence and examine witnesses will help facilitate an orderly and efficient presentation to the Court.

- Likewise, if Ms. Ali is the sole counsel of record, she will be solely responsible for arguing any discovery or other disputes that may arise in the coming months, which will detract from her ability to prepare witnesses and otherwise prepare for the upcoming hearing.

- Permitting attorneys from Covington to serve as counsel of record will also ensure that they can assist with and appear on any briefing concerning both discovery-related issues and the ultimate merits of Mr. Runyon's remaining claim.

- To the extent the United States seeks to depose any of Mr. Runyon's witnesses, a ruling that precludes any attorney other than Ms. Ali to prepare any such witnesses and defend their depositions will be inefficient for similar reasons. For example, this would prevent the counsel team from being able to proceed with multiple depositions on parallel tracks.

- Permitting attorneys from Covington to serve as counsel of record would mean that Covington counsel are officially speaking for Mr. Runyon and subject to the Court's authority, and thus presumably would give the United States more confidence and trust in dealing with Covington concerning outstanding discovery disputes, hearing logistics, and other issues. *See, e.g.*, *Belue v. Leventhal*, 640 F.3d 567, 576–77 (4th Cir. 2011) (noting that "pro hac vice attorneys are 'held to the same professional responsibilities and ethical standards as regular counsel,' particularly in this modern era where "[t]he legal profession has become a national one, and justice in any true sense must transcend the parochial . . .") (citation omitted).

These considerations are particularly weighty here given that Mr. Runyon has selected and retained Covington as his *pro bono* counsel. The principles underlying the Sixth Amendment support honoring his selection.

The Sixth Amendment protects the right of a non-indigent defendant to select the counsel of his choice. *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006); *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Amendment also guarantees indigent defendants like Mr. Runyon the right to be represented by qualified, chosen counsel "willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625 (1989). Because this choice is the very "root meaning of the constitutional guarantee," *Gonzalez-Lopez*, 548 U.S. at 147–48, the Supreme Court has instructed that when a defendant is denied qualified counsel of his choice, it is a structural constitutional violation and does not matter whether a subsequent trial has otherwise been fair. *Id.* at 146 ("[The Sixth Amendment] commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best."). Under the current

12

circumstances, refusing to permit Mr. Runyon's counsel of choice to fully participate in his representation would also deprive Mr. Runyon of the care and attention he and his case deserve given that he is facing the punishment of death. *See* U.S. Const. amends. 5, 6, 8.

Mr. Runyon understands that this right is not unlimited. But Supreme Court precedent makes clear that none of those limitations applies to his choice of the Covington lawyers to represent him. Mr. Runyon has not chosen counsel who lacks bar membership, has a conflict, is unwilling to carry on the representation, or fails the ethical standards of profession. *See Wheat*, 486 U.S. at 159–60. On the contrary, Covington's attorneys are members in good standing of their respective bars, have already signed a representation agreement with Mr. Runyon and begun work on his case, and are free from ethical conflicts and disciplinary history.

That the members of the Covington team are out-of-state attorneys should not interfere with Mr. Runyon's choice of counsel. *See, e.g.*, *United States v. Ensign*, 491 F.3d 1109, 1114–15 (9th Cir. 2007) ("We have held that a defendant's right to the counsel of his choice includes the right to have an out of-state lawyer admitted pro hac vice.") (internal quotations omitted); *Fuller v. Diesslin*, 868 F.2d 604, 607 (3d Cir. 1989) ("[W]e conclude that the right to counsel pro hac vice is encompassed analytically within the right to counsel of choice, and as such should be examined within the analytic framework generally employed in right to counsel of choice cases."). Out-of-district admission in this case will not "hinder the efficacious administration of justice." *United States v. Panzardi Alvarez*, 816 F.2d 813, 817–18 (1st Cir. 1987). Once again, the opposite is true: the Covington attorneys possess the requisite resources to professionally and efficiently review and disclose discovery as well as the courtroom experience to conduct the evidentiary hearing in an efficient and orderly manner.

**JA2051**

**CONCLUSION**

For the foregoing reasons, Ms. Peiffer respectfully requests that the Court grant her request to withdraw from this litigation, and Mr. Runyon respectfully requests that the Court grant leave for the Covington lawyers to file *pro hac vice* motions and be substituted as counsel of record in this litigation.

Dated: June 7, 2023

Respectfully Submitted,

/s/ Elizabeth J. Peiffer

Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

Kathryn M. Ali, VSB No. 97966
Ali & Lockwood LLP
300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Telephone (202) 651-2475
katie.ali@alilockwood.com

**JA2052**

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 7, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

             /s/ Kathryn M. Ali

**JA2053**

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

|  |  |  |
|---|---|---|
| David Anthony Runyon,<br>　　　Petitioner,<br><br>v.<br><br>United States of America,<br>　　　Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Original Criminal No. 4:08-cr-16-3<br>Original Civil No. 4:15-cv-108<br>**Capital § 2255 PROCEEDINGS**<br><br>HON. REBECCA BEACH SMITH |

### Declaration of Peter A. Swanson

I, Peter A. Swanson, hereby declare as follows:

1. I am a partner in the Washington, D.C. office of Covington & Burling, LLP ("Covington"). I provide this declaration in support of the Motion for Attorney Elizabeth Peiffer to Withdraw Due to Unforeseen Personal Circumstances and for Leave to Seek Pro Hac Vice Admission and Substitution of Pro Bono Counsel ("Motion").

2. In the Motion, Petitioner requests, *inter alia*, leave to seek *pro hac vice* admission and substitution of attorneys from Covington.

3. Petitioner has retained Covington as counsel in connection with the above-captioned matter. Covington has agreed to represent Mr. Runyon on a *pro bono* basis and does

**JA2055**

not intend to seek reimbursement from the Court for its fees or costs incurred in connection with this representation.

4. The proposed Covington team for this matter includes myself, Nicholas Xenakis, Santiago Zalazar, Eric T. O'Brien, Meaghan Ryan, and Tyler G. VanderMolen.

5. I meet the requirements for *pro hac vice* admission set out in Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(D). The other proposed team members have represented to me that they satisfy the requirements for *pro hac vice* admission set out in Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(D), and to the best of my knowledge, information, and belief, they do satisfy these requirements.

6. If the Motion is granted, the proposed Covington team members will promptly file *pro hac vice* admission applications and pay the required fee.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and understanding.

Executed on June 6, 2023, at Washington, DC.

Peter A. Swanson
Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-5111
pswanson@cov.com

2

**JA2056**

N THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

- - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA, )
)
v. ) CRIMINAL ACTION NO.
) 4:08cr16
DAVID ANTHONY RUNYON, )
)
     Defendant. )
)
     AND )
)
DAVID ANTHONY RUNYON, )
)
     Petitioner, ) CIVIL ACTION NO.
) 4:15cv108
V. )
)
UNITED STATES OF AMERICA, )
)
     Respondent. )
)

- - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS

(Status hearing)

Norfolk, Virginia

June 16, 2023


BEFORE:  THE HONORABLE REBECCA BEACH SMITH
        United States District Judge


JODY A. STEWART, Official Court Reporter

**JA2057**

APPEARANCES:

      UNITED STATES ATTORNEY'S OFFICE
      By:  Brian Samuels
           Lisa R. McKeel
           Assistant United States Attorneys
           Counsel for the United States


      VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER
      By:  Elizabeth J. Peiffer
               And
      ALI & LOCKWOOD LLP
      By:  Kathryn M. Ali
           Counsel for the Defendant

(Hearing commenced at 12:04 p.m.)

THE CLERK: In case number 4:15cv108, David Anthony Runyon, petitioner, versus United States of America, respondent; and case number 4:08cr16, United States of America versus David Anthony Runyon.

Mr. Samuels and Ms. McKeel, is the government ready to proceed?

MR. SAMUELS: The government is ready. Good afternoon, Your Honor.

THE COURT: Good afternoon.

THE CLERK: Ms. Peiffer, Ms. Ali, is the defense ready to proceed?

MS. ALI: Yes, Your Honor. Good afternoon.

THE COURT: Good afternoon.

Counsel, I will briefly review the current status of where we've been since the last hearing, and I will then address outstanding matters. I would recognize Mr. Runyon. You are David Anthony Runyon?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So Mr. Runyon is here with his counsel, and counsel for the United States are present. On February 7, 2023, Petitioner's evidentiary hearing began following the Fourth Circuit's remand on the limited issue of whether Petitioner's trial counsel, "Failed to provide him with effective assistance in violation of the Sixth Amendment by

failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of the trial."

That's from *United States v. Runyon*, 924 F.3d 192 at 204. It's a 2021 Fourth Circuit case. I will not go through all of the lengthy history that has occurred to date, but the last time that we convened on this case was in February of 2023. Petitioner's counsel from the Federal Public Defender services in Eastern Tennessee were withdrawn from the case, and for the reasons I ruled on the bench, as stated from the bench and in court and for further reasons, that have occurred in the Eastern District of Tennessee. On February 24, 2023, the Court continued the evidentiary hearing.

The Court by written order also directed Ms. Peiffer and the United States, "To come to an agreement regarding the discovery schedule moving forward, including the necessary lengths of any continuance of the evidentiary hearing and to submit the proposed schedule to the Court by close of business on Friday, March 24, 2023." That order is ECF Number 796.

On March 23, 2023, petitioner, by counsel, filed an unopposed motion to continue the scheduling deadline until April 14, 2023, which the Court granted the following day. On April 14, 2023, petitioner, by counsel, filed a motion to

continue the scheduled deadline until May 5, 2023, which the Court granted on April 18th, 2023. On May 5, 2023, petitioner filed a status report and proposed schedule in which counsel suggested that discovery should be due on August 31, 2023, and that the evidentiary hearing could begin in October of 2023. The United States responded to that status report on May 17, 2023. In its response the United States objected to that length of a delay and, "Requested that the Court hold a prompt status hearing to discuss the status of discovery and the lack of agreement regarding the continuation of the evidentiary hearing." So that was why we were initially here today, and we certainly will get to that.

In the meantime, on April 12, 2023, petitioner, by counsel, moved to appoint a second attorney, Kathryn Ali, and the Court granted that motion, and Ms. Ali was appointed on May 17, 2023. I note that the Court had the discretion whether to appoint Ms. Ali or not, because the second attorney is discretionary, and the defendant was already represented by Ms. Peiffer and the Virginia Capital Resources Center, who have been in this case for some time since it started the collateral proceedings.

Then on June 7, 2023, Ms. Peiffer moved to withdraw from her representation of the petitioner due to her mother's cancer diagnosis. I would note that there is an

outstanding motion to seal Ms. Peiffer's declaration, and I have reviewed that because it contains personal information relating to her mother's diagnosis and care.

Is there any objection to the Court sealing that document?

MR. SAMUELS: No, ma'am.

THE COURT: Ms. Peiffer, I assume that you still want that sealed?

MS. PEIFFER: Yes, Your Honor. Thank you.

THE COURT: Well, I grant the outstanding motion to seal, and that declaration will be sealed.

Now, the first issue we will take up is Ms. Peiffer's withdrawal, and I will tell you at a threshold level that I am not inclined to allow you to withdraw at this point, Ms. Peiffer, and there are a number of reasons. I will state my reasons. You can then respond.

There is no indication here that you are not still going to be with the Virginia Capital Resource Center, and if you're going to be with that Center, even if you can't at this juncture necessarily take a lead role, Ms. Ali is certainly capable of taking a lead role. She was a law clerk in this court for Judge Doumar. She has experience in death penalty cases, and that is why the Court admitted her, because of her experience, and she moved, as did Ms. Peiffer, to allow her in. That was allowing her in on

the Court's discretion without having any information in regard to Ms. Peiffer's mother's condition.

So at a threshold level, there are already two attorneys in this case, and Ms. Ali is certainly qualified. If she's not, she shouldn't have submitted all that she did to the Court saying she was totally qualified to go forward with this case, and those submissions were verified, her experience by the Court, and the Court is familiar with her, her having served as a law clerk in this court. I didn't work directly with her, but I certainly am familiar with her.

Secondly, as I said, there is no indication that Ms. Peiffer is leaving the Virginia Capital Resource Center or that the Virginia Capital Resource Center is in any way closing. Every case needs some kind of institutional memory and continuity, in other words, an attorney that's been with the case. I am certainly not inclined to let an attorney or the Capital Resource Center withdraw. Ms. Brace started this habeas with the Center, then the Court was assured she was ill. The Court was assured that Ms. Peiffer would take over and proceed in this case, and that the Virginia Capital Resource Center would proceed.

Certainly, at this juncture, this case started in 2008. It started a bit before that, but filed in 2008, and so, consequently, at this juncture this Court is not

inclined to let the habeas attorney withdraw. I'm very sympathetic to Ms. Peiffer's family illness. I'm sympathetic to family situations, and she may not for a while be able to take the lead here, but you've got very capable co-counsel. Now, if you want to make some remarks to that, certainly, Ms. Peiffer, I will let you, and I will let the United States respond.

Ms. Peiffer.

MS. PEIFFER: Your Honor, since most of the explanation and reasons why I believe I'm required to withdraw as set forth in the motion and declaration, I'll have very brief responses to Your Honor's comments. The first is that, although I had elected to, after reviewing the ethical rules and consulting with the bar of ethics department, I believe it is appropriate and necessary for me to withdraw because I can't fulfill my ethical obligations to Mr. Runyon due to my personal conflict of interest that has arisen and disabled by that conflict of interest and particularly to the Rules 1.1, 1.3 and 1.7, I feel obligated to withdraw, and I have done that after consultation with ethics counsel at the bar.

THE COURT: I haven't received any ethics opinion, and I don't know of any cases on point. Are you staying with the Virginia Capital Resource Center? Are you employed by them?

MS. PEIFFER: Your Honor, I am currently employed by the Capital Representation Resource Center. I have not been working my normal schedule. I have been unable to work my normal schedule since April 28th due to my involvement and responsibilities for caring for my mother, and my schedule has been very unpredictable, and I have had a great degree of flexibility, and because of that, that is why I believe that I am not able to competently represent Mr. Runyon because of the degree of unpredictability that has taken over my schedule and my life at this point due to my mother's illness.

I have not been working in the way that I would need to to prepare for his evidentiary hearing or to support Ms. Ali as co-counsel in the case. I have not been able to do that due to my other obligations. I have the option of taking compassionate relief from the Resource Center, and I will do so if that's needed to address my mother's medical situation.

But the situation is evolving and changing, and I'm not -- to be frank with the Court, it changes every day, and I am not sure of my stance for the future, but that degree of unpredictability and my concern that I cannot adequately represent Mr. Runyon with an approaching evidentiary hearing and the work that would need to be done to prepare for that is to prepare and to follow the Court's orders regarding the

discovery in this case, I don't feel like I can fulfill those obligations, and that's why I did move to withdraw in this case.

THE COURT: The Court is of the opinion you are not fulfilling your obligation to withdraw. There's probably not a person in this room that has not had a close family member very will or had a difficult family situation, including the undersigned judge, a very similar family situation, and I'm not saying I'm not sympathetic but there are still ways to meet your obligations because that's what a person has had to do at some junctures, and as far as I'm concerned, that's why you have Ms. Ali to take a lead role.

You would be, in my opinion, violating your duties to Mr. Runyon by not staying in this case because you have the institutional memory, and it doesn't mean that you have to work on the case every day, but there are computers, there are e-mails, there's telephones. Ms. Ali is in the State of Virginia. Her office is in Northern Virginia, as I understand it, and you're in Charlottesville. So there are certainly means to communicate, and nobody is saying that you have to be lead counsel necessarily, but you're co-counsel, and if you leave, I'm still going to require the Capital Resource Center to be in this case. So you can let Mr. Lee know that. You can't take on a case like this and then the attorneys one by one -- there is an obligation.

You have the records, you've done the discovery, you've filed the motions.  One of the experts is now deceased.  One of the attorneys, I believe, had cancer.  This case is getting too stale at this point.  We've got to continue on with it, and we are going to continue on with it, absent another reason other than you've told me.  If it was your health, that would be different.  It may be hard on you.  But nobody is saying that you've got to file the briefs and do everything because you've got Ms. Ali, your co-counsel.

So nobody from the bar has told me you have to withdraw.  I've looked at the caselaw.  There is a family illness, but that doesn't mean if you take leave, then Mr. Lee will have to step in, even if you take compassionate leave, you are still with the Resource Center.  So at this juncture, unless I hear something more persuasive, I'm going to deny your motion.  In my opinion, the interest of justice requires that you and the Capital Resource Center stay in this case.

Let me hear from the United States, but at this juncture, unless I hear something more persuasive from you, and you're saying you don't have anything any more than what you've told me.  I'm not granting withdrawal.

MS. PEIFFER:  Your Honor, may I address several of your points, response?

THE COURT:  You can, but don't repeat.  Be as quick

as possible. We have other matters to address.

MS. PEIFFER: Absolutely. The first regarding the Resource Center, we have operated under the Court's instructions that I was appointed to the case and not the office. The office institutionally has had very little involvement with the case. I have performed the brunt of the work in this case, the relationship with Mr. Runyon, and participation in the evidentiary hearing so far.

THE COURT: Wait just a minute, please. I want to interject something. Ms. Brace was let out because she was ill, and you took Ms. Brace's place. You were both with the Capital Resource Center. So Ms. Brace was with this case, the continuity through the habeas action, and appeared in this case at the inception of it. She got out right at the inception of when we had to have the evidentiary hearing. She was in the case as was the Capital Resource Center. So she got out with the understanding that the Capital Resource Center would still be in the case, and you would be the attorney from the Capital Resource Center. I agreed to let you all associate the Federal Public Defender of Tennessee and you lost control of that one.

MS. PEIFFER: Well, Your Honor, I was appointed from the Resource Center, but the other attorneys at the Resource Center did not have a substantial involvement in the case. And that was -- they are currently impacted by my

situation, which also has made me unavailable to work on our other cases.  We are a very small office of only three attorneys.  So my inability to work at full capacity, and the need to accommodate that on our other cases, and my reduced contribution, has had a proportionately great effect on the office.  And in the interest of efficiency and moving it forward, which I know is in the interest of all of the parties, that was why we suggested substitute counsel who would be able to move the case forward on the schedule that we had proposed, which we would not be able to do if I was involved -- I would not be able to commit to a hearing because of my current situation and to just -- I'm trying to keep it brief as directed by Your Honor, but I just want to clarify, I believe I am currently operating under a conflict of interest because I am -- my personal commitment and my personal responsibilities are creating a significant risk that the representation of Mr. Runyon is materially limited. So that is the reason why I believe, and the bar advised, that it is appropriate, and that's why I moved to withdraw from the representation.

THE COURT:  As far as the Court is concerned, if the Capital Resource Center did you not have enough resources, it needs to seek more.  That's number one. Number two, I would be interested, and I may inquire, if necessary, a list of all the cases that you have because

JODY A. STEWART, Official Court Reporter

this is certainly one of the oldest cases that you have. So if you are taking on new cases, and you're putting Mr. Runyon's case behind those, that is unethical, in my opinion.

In other words, if you're taking on new capital cases, and you're not getting out of more recent capital cases that haven't been nearly as far as this case, that is not right. This case had a full jury trial. He was convicted with three segments for a death penalty case. The jury rendered the verdict, not the Court. The law required the jury to render the death penalty verdict, and not the Court, which is then directed under the law to impose that sentence of the jury.

The case went to the Fourth Circuit on appeal and was affirmed. Then it went to the Supreme Court, with cert. denied. Then it came back here. It was a habeas petition that had things even in there alleging that the attorneys hadn't used the correct font. That was actually one of the numerous grounds. Then it gets ruled on by this court, and it goes to the Fourth Circuit on appeal. Everything is upheld but the one issue of whether the two attorneys were ineffective because they didn't pursue or produce certain evidence on potential mental health issues. They testified. The habeas evidentiary hearing started at lasted seven to eight days. They, the attorneys, have testified here why

they didn't and what was going on.

Then when Ms. Chavis appeals, it comes out on the objection of the government that certain documents haven't been seen, certain documents haven't been produced, and the record will show this. Then, as I understand it, a closet with at least 40 bankers boxes of evidence was found at the Tennessee Federal Public Defender's office that Ms. Chavis had put there.

So, consequently, this case has been going on an inordinate amount of time, and it needs to move forward, and the Court itself has not dragged its feet. This came back to court on this one issue in 2021, and then I continually notified counsel we need to set a hearing. I set a hearing, I believe, at the insistence of the government about a year later. So it needs to keep moving along. People are going to have problems. That is one of the issues now. There are problems. There are problems with the experts, one has died. There's problems with the trial attorneys getting ill. At least they have testified at this point. Then there were problems with, and it wasn't the government, withholding discovery information. It was the petitioner's counsel withholding that. That was a nightmare for the Court, for Mr. Runyon, and for everybody involved with what occurred and with the case.

So, consequently, we all have problems. It's human

nature. I know you have a problem, Ms. Peiffer, but there are attorneys and other people in that office, and there is you, you can communicate. You can communicate with Ms. Ali, who is extremely competent. So she's in the case, and the case can move forward. If she has a question about something thus far, at least she has someone to ask. Can you tell me why this was filed? You don't necessarily have to do all the substantive work, but the continuity has to be there, and it has to be there now through you, and if not through you, through the Virginia Capital Resource Center. Mr. Lee, the director of the Center, is an attorney.

I will do what I have to do to keep the Virginia Capital Resource Center in this case. Three attorneys and Mr. Lee apparently have not stopped taking new cases. I'd be interested in the cases that you have. I bet you don't have many that go back to 2008. I would be very interested.

So unless you can produce something other than what you have told the Court that, number one, I understand your situation. I'm very sympathetic to your situation. But the situation, in my mind, is not grounds to withdraw. If you feel you have a conflict, I don't feel you have a conflict. I don't see any conflict because a family member is ill. I just don't see the conflict. So I find that you don't have a conflict that prevents you from proceeding on with this case, even if on a limited basis, and I find that you don't

have an ethical obligation to withdraw.  I find you have an ethical obligation not to withdraw at this late juncture.

Now, is there anything else?

MS. PEIFFER:  I'll consult with my co-counsel, Your Honor.

All right.  Nothing further at this point, Your Honor.

THE COURT:  All right.  Thank you.

Mr. Samuels, Ms. McKeel.

MR. SAMUELS:  Thank you, Judge.  Your Honor, we certainly have a great sympathy for Ms. Peiffer's family situation.  When we were investigating this case, and we were doing the early litigation on it, Ms. McKeel, my colleague, had some very difficult family situations, as well, during that time that we worked through.

But the concern that the United States has is the concern that the Court had referenced, which is the issue of continuity, the issue of institutional memory.  I think it is just important to note that Ms. Brace was appointed in this case back in 2015 from the Virginia Capital Resource Center at the onset of the habeas proceedings.  Ms. Peiffer assumed her responsibilities in late 2021, and that was through the Court's order, ECF 649, and the Court permitted that substitution with the understanding that it would not cause a further delay in the proceedings.

I think it's also important to note that since Ms. Peiffer has been involved in late 2021, it's been about a year and a half, there has been significant ground plowed in this case. There has been a lot of discovery exchanged. We went a long way down the road on this evidentiary hearing. The lawyers testified. Lay witnesses testified. There were many prehearing pleadings that were filed.

The concern of the United States is that there be a thread in counsel's team, in habeas counsel's team, that's linking to what has been done before, and that would be Ms. Peiffer, Your Honor. So for those reasons, we agree that she should be involved in this and not the capacity that she was, but she does provide the link between what's going to go on in the future and what has happened in the past. She has had a lot of contact with the attorneys at the Federal Defender's office, and that's where all these discovery issues and these disclosures should stem from, so we do think it's an important link to maintain, Your Honor. Thank you.

THE COURT: One thing that I would add is that if Ms. Peiffer or the Virginia Capital Resource Center is not in the case, they have the electronic database of this case, and so if something comes up, they know where to go. In other words, it is not just transferring a database, it's having the memory and the knowledge to know where to go and

get things.

So the reasons that I've said, as far as I'm concerned, I just don't see anything that would serve the interests of justice in Mr. Runyon's case to allow Ms. Peiffer to withdraw. She can certainly take a lesser role, as Mr. Samuels and the Court indicated, and the Court understands that. But certainly to completely withdraw and to withdraw basically the firm, the group that has been representing Mr. Runyon throughout these habeas proceedings, would not serve the interest of justice from his standpoint, in my opinion.

Now, is there anything else that you want to say, Ms. Ali?

MS. ALI: Just briefly, Your Honor, if I may. I understand that the Court has -- I think I understand the Court has ruled on the motion.

THE COURT: No, I'm asking you if you have any comment about the motion. I've indicated upfront how I feel about the motion, and it's been pending, and that's why I didn't just rule on it. I knew we are going to have this hearing, and I wanted to articulate my reasons on record, and if you all wanted to respond, I certainly will consider any response. I have left out Ms. McKeel, but Mr. Samuels has responded.

MS. ALI: I won't repeat the argument that

Ms. Peiffer made. I'll just add, you know, we think that it is critical that Mr. Runyon have more than one counsel here for the reasons that we said in our motion, and I understand that technically if Ms. Peiffer is still in the case, then he's got two appointed counsel. But functionally, that's not going to be the case. Ms. Peiffer has really had significant constraints on her time over the last month since all of this unfolded, and my understanding that that will continue for at least the next three to four months.

The Court acknowledged in the order appointing me, and I'll note also that I was appointed in that order as second counsel solely for the purposes of this hearing. This is a complex case. There is a lot of discovery yet to be completed, and I am getting up to speed. I'm trying to learn the case, but I'm not sure that Ms. Peiffer continuing to be in the case functionally serves those two counsel. The Court made a judgment in the appointment order that it was appropriate for him to have two counsel.

I understand that that doesn't mean that both have to be serving a lead counsel function. But Ms. Peiffer is not in a position, as I understand it, and based on the constraints on her time, to really competently represent Mr. Runyon in any capacity right now. I understand the Court's comments about the office and the Resource Center and Mr. Lee, but they are aware of the case. They have been

doing some work on the case, but they are not -- they do not have the personal relationship with Mr. Runyon. They are not up to speed on all the developments in the case, and they have not been involved in the way that Ms. Peiffer has.

So I'm not sure -- it's not a substitute to have somebody else from that office come in, especially -- we put all this in our motion, but we have substitute counsel standing ready to come into the case. I see Your Honor shaking your head, so I'm happy to move on.

THE COURT: I haven't responded to that yet, but that's a different issue whether I'm going to let five attorneys come in here *pro hac vice*. We had a problem with that before with Ms. Bales, Ms. Chavis, and the Tennessee Public Defender. I did that against my better judgment, but we will get to that in a minute. There are five attorneys sitting in here. Do you know what a hearing is like with various attorneys jumping up and down and, well, Ms. Bales prepared this witness so she has to do it, and the record will go back and show that, and then there was conflict between the *pro hac vice* counsel.

I mean, there were a lot of problems, even admitting Ms. Bales from the Federal Public Defender's office in Tennessee. They would say, well, I didn't prepare that witness. I can't do that. And this person has been admitted *pro hac vice*, so they need to do it. We will get

to that in a minute, but that is not bearing, in my opinion, on whether Ms. Peiffer stays in the case or not. If you want me to, I'll do an amended order and make you lead counsel, and I'll make you both co-counsel. I'll do it right now. Then you two can decide how you split your responsibilities.

MS. ALI: Again, I'm not going to repeat the arguments Ms. Peiffer made, but I think the Court understands our position. We put it in our motion. But from our perspective, it is not a substitute for him having two counsel. I understand the Court's position that it is discretionary, but as we put in our motion, the CJA plan for this district specifically says that the Court should consider having at least two counsel in a capital 2255, and as we said in our motion as well, every other person litigating -- every other person litigating a capital 2255 has at least two lead counsel of record and in many instances many more than two.

So Mr. Runyon would really functionally only have one counsel of record in the case if Ms. Peiffer is not permitted to withdraw and no additional counsel are permitted to appear as counsel of record. Mr. Runyon would be standing alone in that posture.

THE COURT: I don't agree with you because this habeas has gone on, and is at the final stage. It's not

like the inception of a habeas case where all of -- I've forgotten, what was it 60 grounds or something was fully briefed, ruled upon, argued, and so forth. I don't know how many grounds, I'd have to look back. This isn't the inception of a habeas case where the petition hasn't been filed. It's been heard on appeal. It's now here on one narrow ground. So this is quite distinctive and distinguishable from what you're saying because this is not a new habeas proceeding from the inception where -- I don't know how many hundred pages I wrote where I went through every single ground, and it went up to the Fourth Circuit and one ground came back, and that's the only ground. So it's a very narrow habeas case at this point, and, in fact, that's why I was hesitant to even appoint a second counsel in the middle of the evidentiary hearing, because it is within my discretion. It is not required, and the Virginia Capital Resource Center and Ms. Peiffer, since it got to this narrow issue, have been in this case, and Ms. Brace from the Center before that. On all of that, I still appointed you, and exercised my discretion, but it's not required, and it's only on one narrow issue. If you're not up to it, tell me. I'll let you withdraw. We will get somebody else. Are you up to it, Ms. Ali?

MS. ALI: I am prepared to stay in this case and represent Mr. Runyon, as I have agreed to do and as I

represented to the Court.

THE COURT:  All right.

MS. ALI:  Nothing further, Your Honor.

THE COURT:  Anything further from anyone?

MR. SAMUELS:  Not from the United States, Your Honor.  Thank you.

THE COURT:  Ms. Peiffer, anything further from you?

MS. PEIFFER:  Not at this time.

THE COURT:  Well, for the reasons that I've stated, I deny Ms. Peiffer's motion to withdraw as counsel.  I designate the two attorneys as co-counsel, and they can determine how to divide the responsibilities as between them in Mr. Runyon's case at this juncture.  As for the reasons I've said, Ms. Peiffer must remain in the case, but I'm not going to repeat them all.  The institutional memory of the whole Virginia Capital Resource Center that's been in this case since 2015 is necessary, in my opinion, to serve the interests of justice for Mr. Runyon.

So, consequently, I would also suggest if the Virginia Capital Resource Center -- this is a suggestion -- is overworked, then they review their cases and decide that they can't take on any new cases, but you don't drop cases that you have been in for coming on soon almost nine to ten years.  So you just can't drop cases.  You stop adding cases.  But for any reason, for all the reasons I've said, I

exercise my discretion and find that in the interest of justice, and the interest of justice that I am interested in is Mr. Runyon and the continuity of counsel for his case, particularly on this very narrow issue of whether his trial counsel was ineffective for not pursuing the mental health route in the case.

Again, I appointed Ms. Ali, and she can -- they can serve as co-counsel.

The next matter I think we need to look at it, in Ms. Peiffer's motion to withdraw she renews her request for Covington, it's a very large national firm, attorneys to be admitted *pro hac vice* to represent petitioner *pro bono*. I would note that despite this request, no *pro hac vice* motions have been filed at this time. So you can't be admitted *pro hac vice* until the individual attorneys file a motion to this effect. That's number one.

Number two, I see no reason to admit, at least it appears five attorneys in here to be *pro hac vice* because that can put the hearing out of control. To the extent they want to volunteer their time to you, Ms. Ali and Ms. Peiffer, they can. There is nothing that keeps them from acting *pro bono*. They can certainly, if their firm wants it and permits it, they can act *pro bono*. They can advise you, and you and Ms. Peiffer can use them however you deem appropriate. But I see no reason to start admitting

attorneys *pro hac vice* to be here for this continued evidentiary hearing. The record will show what happened before with the *pro hac vice* situation. So, consequently, I welcome any *pro bono* help you can get. That's up to you, Ms. Peiffer and Ms. Ali, whether you need *pro bono* help. Number one, that's up to you. Number two, it's up to their attorneys and their law firm. I permit the attorneys to be *pro bono*, but the Court is not inclined to admit them *pro hac vice* in this case. They can be present at the hearing, whatever you decide, but not as counsel in the case. There is no requirement that they be admitted *pro hac vice* to be present. So if they want to file the motions, you can file them, but be prepared for my decision, unless there are other factors to consider.

My decision at this juncture is no for the above reasons. Now let's go to why we were supposedly here in the first place, which is to look at the schedule going forward for discovery and a continued evidentiary hearing date.

You asked for the conference, status conference, Mr. Samuels, and I'll let you speak first.

MR. SAMUELS: I did, Your Honor, and thank you. I'd just like to put on the record where we are with this. Since we took our break at the end of February, and I believe at that time the Court had ordered the government and Ms. Peiffer at the time to come together and to come up

with a prosed schedule for the disclosure of additional materials and resumption of the evidentiary hearing by March 24th, but we have been unable to do that, Your Honor. The government has agreed to, I believe, two extensions of the Court's original order. We moved it first to April 14th and then to May 5th, and then there was a status report, I believe, filed by Mr. Runyon's counsel that asked us to commit to August 31st for a deadline for turning over materials.

Your Honor, this is about six months after we paused the hearing. Let me tell the Court what we have received to date and the manner of it so the Court can understand some of the challenges we have had. We have received two disclosures of documents. Both of those only since we set this hearing. We had asked for the hearing on May 17th. The Court granted that, I believe the same day, and said we had to do it within 30 days. We are at the end of that time period, the end of the 30 days. We received the first disclosure on May 31st. These disclosures are coming to us, Your Honor, through Covington's document platform, so they are involved in the case.

THE COURT: They can't be coming through that platform. They can assist *pro bono*. But if you're not admitted in a case as counsel, you're not on the docket sheet as any type of counsel of record, and local counsel of

record are responsible. The responsible attorneys, reportable to the Court, are Ms. Ali and Ms. Peiffer.

MR. SAMUELS: To be clear, Your Honor, it is Ms. Ali that is informing us that the documents are ready, but then we have to go through a platform that I understand is Covington's platform to actually get the documents. That has caused us a little bit of a delay in the first instance where we didn't actually get the documents until June 1st.

The second one we received notice of yesterday at 4:00. We were not able to get that until this morning. There are these indices that have accompanied the disclosures. The first set of documents was about 315 pages, and the second set was about 437. The indices don't really tell us anything about what the documents are or where they came from other than they came from some Winston & Strawn boxes, but we don't know their relation to the penalty phase of this case or whose folder they came from or anything like that, which did seem to us as contrary to what the Federal Defender in Tennessee said they would do, which is they would have all these indices when they produced the documents. There's no indication as to whether these documents have been turned over to us before, and as we have gone through them, we have recognized a good number of them are documents we have seen before and have been introduced in the hearing.

In the first production there were about 25 pages or so that were entirely redacted. I don't mean partially redacted. I mean the page is blacked out, and we don't really understand why that has occurred.

But in the second production, I mentioned 437 pages, over 250 of those 437 pages are fully redacted, fully blacked out. I know there has been a claim of disorganization that occurred with the Federal Defender's Office in Tennessee, but it just seems that that disorganization is being passed on to the government.

And to put this in perspective, Your Honor, I brought with us these binders at the end of our table there. Those binders, and there is several of them, they constitute about 1,600 documents. Those are the documents that we received between February 14th and February 21st. No redactions. There were a number of key documents in there that should have been provided that we would have used at the hearing.

Now it has taken counsel four months to give us these 700 documents, many of which we already have, a good number of which are redacted. We have to go through these hundreds of documents to determine what has already been produced.

Now, Ms. Ali has kept us updated. She sends us e-mails, but it does appear, Your Honor, that the goalpost

and problems that they are having are constantly shifting here. With every e-mail there are more documents or more problems or more review needed. I think we started with 45 boxes, and then we moved to 57, then we moved them to 70. Certain boxes are needing to be scanned. I think again Covington has been involved in that.

There are now new digital devices and CDs being found, and the phrase that we have come to expect is that this is a tremendous volume of materials that would require significant time and effort to review and also unexpected complications and disorganized materials.

Your Honor, we have asked for the status conference because we need to get this done. We are here on this narrow issue. We believe we have most of the documents that are germane to this hearing, including very critical documents that had been withheld that very much undercut some of the claims that had been made, particularly with respect to what Dr. Merikangas knew with respect to these brain scans. That was such a critical piece of the argument that was presented to the Fourth Circuit, and even Dr. Merikangas, in his affidavit, said he never got these brain scans. Then we later found out that he did.

We would like to get a firm schedule where we can expect these documents. We don't think the burden of deciding what has been given to us and what has not been

given to us should fall on us.  If there are going to be these serious redactions that are done, perhaps they can be submitted to the Court *in camera* because it does seem like those are excessive.  We just want a date where this can be set so we can plan for the resumption of this evidentiary hearing.

We had asked habeas counsel to also proffer how they expect this hearing is going to go.  We have gone a long road on this.  We have put in trial counsel.  We are up to the point.  I think we are about to do experts.  But given what has been disclosed, given this new information, that does seem to impact how they would proceed with their claim that trial counsel was ineffective.

We think before we restart this hearing, there should be some sort of proffered explanation how they intend to proceed, given what we have uncovered in these new documents, Your Honor.  We would propose a sooner date for the full disclosure of the documents, perhaps in a month's time, and then working to set this evidentiary hearing.

I know there has been some discussion with former trial counsel, Mr. Woodward and Mr. Hudgins.  They do have some avoid dates in July and August.  We would really like to move forward and get this scheduled, Your Honor.  We think we need the Court's assistance to move this along. I'm sorry it's come to that, Your Honor.

THE COURT: Well, I am too. I'm quite disappointed.

MR. SAMUELS: I understand.

THE COURT: I would say that, number one, it is petitioner's burden here. This is a habeas proceeding. This is his burden, not the United States' burden. That's number one. Number two, you only produce relevant documents. The Court is not going to sift through all the documents in this case. We have had a full trial. We have had a full habeas petition briefed and ruled upon, and you're not going to do "a document dump." That's not the way this is going to proceed. And if it proceeds that way after I have said it's not going to proceed that way, I'm warning everybody we are going to have some possible sanction or contempt proceedings because this is just not proper and contrary to the Court's orders.

The documents may not come from Covington. If you want to get them, Ms. Ali, and you want to sift through them for relevance, then you do it with whatever help you can get in your office or *pro bono*, but we are not going to have attorneys who aren't even admitted in the case producing them directly to the government through their servers and their indices. You are responsible for their production to opposing counsel and the Court. You're in the case, Ms. Ali, and you're in the case, Ms. Peiffer, and it is your

role as attorneys to produce relevant documents. This is not happening here. This is everything that could possibly be. It's just not going to be. If the Court has to sit down and look through hundreds of these documents and determines there are a lot of irrelevant documents after I said you produce only relevant documents to the issue at hand, we are going to have problems. Not only are we going to look to sanctions or contempt, we are going to look to it from whoever is doing this. Because this isn't right. We've got one narrow issue, and there were just a couple of things with a couple of doctors and information. We've heard already all the testimony from the lay witnesses.

MR. SAMUELS: Your Honor, if I can clear something, I do think there has been an effort to narrow down the documents from the much larger subset so that they are trying to give us relevant documents, but the problem is they can't tell us whether they have given us the documents before. So then we have to look through and decide are these new documents or there's documents we have seen before. There is no way to cross-reference it, and that creates the difficulty, Your Honor. Thank you, Judge.

THE COURT: Ms. Ali.

MS. ALI: Thank you, Your Honor. If I could just respond to some of the points that Mr. Samuels made. The first is I think, as he just attempted to explain, I don't

think the complaint here is that we are doing a document dump. I think we have been making enormous effort to only produce relevant documents and that actually explains the redactions issue. Under the protective order in this case, only material relevant to claim six can be produced. The language of the protective order prevents disclosure of information not relevant to claim six, and so that explains the redaction.

Some of the documents, and trial counsel, for example, let's say it's a memo with guilt phase information and penalty phase information about all kinds of things. We have made -- we have endeavored to comply with the protective order here to redact information that is not relevant to claim six. So that is the only basis of redactions in this case, that is the only reason the United States is getting information that is redacted, and I have explained that to Mr. Samuels in e-mail exchanges.

In terms of the aegis location and not understanding the provenance of the documents, we share those problems. We share that frustration. The documents that we received from counsel, which we didn't receive from Tennessee counsel until April, some of them have an index, and where that exists, we, of course, provided it to the government, and where it doesn't exist, we have tried to create it.

But we can't create documents that don't exist, and we are trying to provide the documents in as orderly and efficient fashion as possible. But these files were -- I think it will not surprise Your Honor, given the water under the bridge here -- incredibly disorganized. I have never seen anything like it.

These are boxes full of loose documents where we don't know if these were Tennessee counsel's files, which has required an enormous effort to review these documents. We don't know where they came from. We don't have an index, just as the United States doesn't have an index. We are also trying to get to the bottom of this, but if the documents don't say, some of them are undated, unsigned memos. If they don't say what they are, we can't fix that. We can't create that out of thin air.

I think in terms of the volume, I understand the government's frustration that the ground keeps shifting. We share that frustration. We received 57 bankers boxes between April 6 and the 10th. These are the boxes that we have described as ECF 808 in the status report. We completed an initial review of that volume very quickly, and I narrowed it down to something around 1,000 documents that are potentially relevant to claim six.

We then made an effort to identify which documents have been turned over to prior counsel, but, again, we are

really limited in our ability to do that because Tennessee counsel had primary responsibility or maybe exclusive responsibility over the documents, and not only did they just provide us documents in the disorganized fashion that I just explained, but the attorneys who were involved with preparing those documents, collecting those documents, keeping those documents in Tennessee aren't there anymore. So the people who are providing us the documents also themselves had nothing to do with the documents.

So the chain of custody is broken here, and we don't have a way to fix that. Just as the government is frustrated, we were also frustrated. We learned in May that the Tennessee counsel had additional documents that had not been provided to us that we had never heard about before, and we received 13 additional boxes in the beginning of May. We were told that these were paper files, and while they were, there were 13 boxes full of files. In those boxes were also electronic files on USB drives that we didn't know anything about on -- I'm sorry, on USB drives, on CDs and including on floppy disks. So we are now trying to get through that electronic volume.

But just as the government is frustrated that the number of documents keeps changing, we are dealing with the same problem, and we trying to get through them as quickly as possible, but that is -- we are doing the very best that

we can, Your Honor, under the circumstances, but we are making significant effort to try to only produce documents that are relevant to claim six to produce a narrow set of material and to provide documents that have not been turned over to the government. Again, that's difficult for us to do.

There is no way that -- you know, typically in a big case you would have metadata or some way to de-duplicate electronic documents. We don't have that there. This is all a manual review and is a manual review being done by people who weren't involved in the prior production.

So our ability to de-duplicate manually is significantly limited in that way. So I can assure the Court that we are making every effort possible to get through the documents as quickly as possible to make an orderly production, to be incredibly responsive when the government has raised issues, both in terms of accessing the documents, but also question the provenance of documents or redactions, but the situation is what it is.

I will say, you know, I think I do my job, counsel's job now in the case to try to clean this up, to try to right the ship here on discovery. I understand what happened in the past with the documents is appalling, and we are here to try to fix it, and we are doing our very best, but there are -- just as the government is frustrated, we

are also frustrated by the continuing issues. I think, I hope we have got to the bottom -- that we have received the last of the boxes, but, you know, if you had asked me on May 1st are there more documents coming, I would have said I think we have everything, and then we find out there is more. So we are also dealing with change in circumstances, and, you know, trying to keep things moving forward as quickly and efficiently as possible.

THE COURT: I understand, Ms. Ali, and very much appreciate your efforts. But, frankly, that was the responsibility of the Virginia Capital Resource Center, Virginia Capital Representation Resource Center, whatever, because they were always lead counsel. Tennessee was only appointed *pro hac vice*. None of the Tennessee counsel. If you look at the docket, they were Ms. Chavis was *pro hac vice*, then Ms. Bales was *pro hac vice*. So they were only admitted *pro hac vice*.

So they weren't who the Court would look to. The Court has always looked to the Virginia Capital Resource Center, and that's another reason. So if there is any problem here, what happened is, it looks like to the Court, Virginia Capital Resource just relegated or delegated it all to Tennessee. Now they say, oh, we want out. This is not the right way to practice law, particularly in a case this serious. The Court may need to look at your funding,

because this is not right.

The Virginia Capital Resource Center was in this case. I'm looking at the docket of this case. They came in, and it was first Ms. Brace. She got out. Then Ms. Peiffer came in, and then Ms. Ali. So you've got two lead attorneys that you didn't have before. All of this came up with the *pro hac vice* attorneys where everything was relegated to them. Ms. Chavis, *pro hac vice*; Ms. Bales, *pro hac vice*. So, in any event, it looks like to me that the Virginia Capital Resource Center just dropped the ball.

So as far as I'm concerned, lead counsel was responsible for documents, and you're responsible now. Ms. Peiffer is responsible. You took on this case. You represented to the Court you could handle it. The dates were set when you came in. The Court kept granting you continuances, and we are just not going to go through and re-invent this entire situation. It's one narrow issue now.

I am also going to say something about what also came up at the last hearing and whether there were misrepresentations to the Fourth Circuit Court of Appeals. That is extremely serious, because it appeared Ms. Chavis had argued something there or somebody had argued something there, I'd have to go back and look at the record, but it implied things that as turned out to be not fact from the documents finally presented but not earlier disclosed. So

there may be real problems here.

This is concerning to the Court because it was implied that Mr. Hudgins had done one thing when in point of fact, the facts were the other way. There were certain reports, there were representations. It was beginning to come out. And that's when everything fell apart, when they were ordered to produce certain things, and so forth. So they were *pro hac vice* counsel. The case apparently was relegated to them or delegated to them, whichever word you want to use. And it's Virginia Capital Resource Center that has been the lead counsel throughout this habeas petition, and now you are apparently co-counsel, and it's got to be straightened out, Ms. Ali.

We have got to proceed, and I am hopeful you can work all of this out by the end of the proceedings in this court. And if you're going to familiarize yourself with this case, Ms. Ali, you've got to go through the documents and decide what is relevant. You have looked at them to determine what is relevant?

MS. ALI: Yes, Your Honor, of course. Again, I don't take Mr. Samuels to be saying that we are producing any documents that are not relevant. I think his complaints was primarily about the pace of the production and the redactions, which were the points that I was trying to address. Part of it, there is a tension between speed and

an orderly process. Part of the reason this has taken a long time, because there is an enormous volume of documents, and we are making an enormous effort on our end to narrow it down to things that are only relevant and to comply with the requirements of the protective order, which require redacting material that is not relevant to claim six.

So that explains it. The volume of production that we have been making to the government is far from a document dump. We have been trying to produce only documents that are relevant to claim six and documents that have not been produced in the past.

On the latter point, we are having issues because of all of the various points I have raised where we just -- there is no easy way to cross-check documents. We are attempting to do that manually but it is -- there is no way to make it a perfect process in terms of not producing things that have already been produced, and, of course, we want to err on the side of making sure that anything that is relevant to claim six, if we cannot be certain it has been produced to the government before, that we are producing it this time so that we avoid the problems we had the last time around.

THE COURT: Okay. Mr. Samuels.

MR. SAMUELS: Your Honor, to use an example of what I'm talking about, in the latest production we got this

morning, we got certain reports of interview at the front of the production, and then we got the same reports of interview at the back of the production. I understand that there has to be some leeway and some possible duplication here, because then at the back of the document here, I've got 90 pages of this, just black pages. I mean, if this is not relevant, I don't know that I need it, and there may be two pages in there.

THE COURT: Pass those up to the Court, please.

MR. SAMUELS: Yes, ma'am.

THE COURT: The black pages. How many pages is it?

MR. SAMUELS: I think this is 90 pages, Your Honor. There might be a couple of pages in there that are not redacted, but that is 90 out of these some over 250 in this production that are fully redacted in that manner. I don't know what those are. I don't know where they come from. I don't know what they pertain to. That was concerning when we got that this morning, Your Honor, and I haven't had a chance to talk with Ms. Ali about it because we just uncovered it, but I did want to raise it.

THE COURT: Looks like there is one page with something on it in all of this.

MR. SAMUELS: There may be one or two, Your Honor, and then the rest, and I believe that came from one electronic file. When we printed it out, it came that way.

MS. ALI: I'm happy to explain, Your Honor.

THE COURT: All right. Do so, please.

MS. ALI: So part of the issue here is that the files we received from prior counsel, I don't mean to be a broken record, but they were disorganized. Sometimes what we received, rather than individual documents, five-page memo, a 20-page interview notes, something like that, we received just loose files or huge files where lots of documents have been produced together.

We don't want to -- because the provenance of the document is important, it felt to us like the better course was to keep the documents in the format, unless it was very clear that certain portions of the document could be -- were separate documents, to produce the entire document.

I think if we had produced just one page out of 100-page document, where even if you only got one page were relevant, I would probably hear complaints that we produced an incomplete portion of the document. But we don't know what these documents -- the way that they were scanned to us was often at the folder level, and so we would get documents in one file. Sometimes hundreds or thousands of pages.

We are happy to sit down and meet and confer with the government about how to proceed in a way that complies with the mandate of the protective order and, of course, discovery order. But they have not asked for that, and when

they have come to us with questions, we have been very responsive. I understand that they didn't uncover the issue until this morning, so we haven't had a chance to discuss, but I think that this is something that we can work out with the government through a meet and confer process about that.

If they don't want to receive information redacted that is not relevant to claim six, we can talk about a different solution, but what we are trying to do is comply with the letter of the protective order, which requires redacting material that is not relevant to claim six. When we were receiving documents from prior counsel, they look like this. It may be that one page out of 100 documents.

THE COURT: Well, then it's your duty to receive them, to go through them and pull out the documents. This is unacceptable. I'm looking at this. If you say, well, they will ask why we only produced one page. You have only produced one page, because the rest of it is completely blacked out. That's all you have produced, that I can see, is one page. The rest of the 90 pages are just blacked out pages. I'm going to make all of it an exhibit. Do you have a copy of this page?

MR. SAMUELS: I do, Your Honor.

THE COURT: That's the only page that I see in here that has anything on it. I'm flipping through. But that's petitioner's counsel's duty. You don't just send -- you're

wasting paper. Just sending this bulk over the line, oh, we produced 100 some documents. But you didn't. This is not producing a document. These are blacked out of complete pages. There is one in here, and it's from John Babineau, and it looks like it's about Dr. Cunningham. It's his CV, and it's just a very short e-mail. I'll put this back in the packet where it came from, and I'm going to make the entire packet Court Exhibit Number 1 because this is no way to produce discovery. This is Court Exhibit Number 1.

(Court Exhibit 1 received in evidence.)

MS. ALI: Your Honor, the way that we typically would produce documents is that if a document is a single document, we don't just take a piece of it off. I think that there is an e-mail with an attachment. The attachment is not relevant to claim six. The e-mail potentially is relevant to claim six. So we produced that. But if we don't produce a complete document, that also is not how you produce discovery.

So we are trying to comply with ordinary ESI protocols, with the protective order in this case, but I will meet and confer with counsel for the government about the process going forward to make this more efficient and streamlined. What we are trying to do here is not "pepper" the government with documents. We are trying to get them only what is relevant to claim six out of an enormous volume

of sort of raw materials that we have received. We are trying to comply with the sort of ordinary production protocols and the protective order, which is why the documents are being produced that way. It is time consuming to go through and check for redactions. If there is a more streamlined process to do that, we are happy to discuss with the government and maybe put in the protective order, if that's what we decide in terms of moving forward. But, again, we haven't had a chance to discuss this because this is the first we are hearing of it.

THE COURT: It sounds to the Court that all the habeas documents were turned over to the Federal Public Defender in Tennessee, and they obviously were not sorted and prepared to go forward for an evidentiary hearing that was a year and a half after the case had come back. It was certainly sufficient time to go through the documents on the one issue. That's what it sounds like to me, is that these are just closets of documents that were, I guess, part of the whole habeas petition, and we had this hearing set, and nobody took the time or the effort to go through them and sort them for the hearing that was set a year and a half after the case was remanded.

MS. ALI: I can only speak to the documents as we receive them. I don't, of course, know what they looked like before, but the documents as we received them were not

organized in a way that one would expect in a case like this where the provenance of the documents is important.

Sometimes trial counsel -- the reason the review is time-consuming is that in some instances you have boxes of files that are clearly from one place or another, and in other instances you have material from the 2255 mixed in with trial counsel file, and it is not clear whether they are original documents or copies. So we are -- I can only provide the Court my word that we are doing our very best to go through that and try to separate out, find everything that is responsive to claim six and produce only that in compliance with the discovery order and the protective order in this case.

THE COURT: I know that you're doing everything you can, Ms. Ali, and I'm not saying you are not because I think you are. My concern is exactly with what we were talking about at the inception of this hearing. I mean, this could go on and on and on. The attorneys will say, I just got into this case. Well, I don't have the continuity of the case. I wasn't there when these documents were in the closet. That's correct, but it bolsters the Court's earlier ruling because you didn't even know what was presented to the Fourth Circuit from these documents.

This is becoming a real problem, and so that's certainly one of the reasons that the Capital Resource

Center, Ms. Peiffer for now, but that Center has to be responsible and stay in the case. I believe it's funded by the state. I believe the state resources go to the Virginia Capital Resource Center. So it's being funded by public funds, including federal funds for this case. They are responsible. They are attorneys, and they have ethical responsibilities and they are responsible ultimately. They have been in this case, as I said, since the beginning of the habeas proceeding. The docket reflects that. The Tennessee attorneys were only *pro hac vice*, and then now everybody is blaming it all on the *pro hac vice* attorneys. Do you see what happens?

Okay. Let me hear from Mr. Samuels, any suggestions he has. Ms. Ali has given hers.

MR. SAMUELS: She has, Your Honor. Your Honor, I won't belabor the other issues. I'm happy to try and work with Ms. Ali and Ms. Peiffer to see what we can resolve on indices, production, and that sort of thing. But I point those out, Your Honor, just as an example of how the organization, and the need, I think, to set a firm deadline here on when the disclosures are going to be complete so that we can move forward with the resumption of the evidentiary hearing.

The concern I have, and again I don't want to go back into everything that the defender's office in Tennessee

have, but I understood that some of these materials are put in different electronic databases and were available for searching. This does seem to be a new wholesale search that has taken time. I just think that we all work better with a deadline, Your Honor. We all work better with a firm date for this to be completed. I would ask the Court and ask Ms. Ali as to when she can commit to completing this disclosure.

She has provided us some updates and told us we have gone through certain boxes, we've got so many left to go. Maybe several documents from one pocket of information, but documents doesn't necessarily equal page numbers. What can they commit to in terms of producing and finishing the production of the documents, and when can we get on track for resuming the evidentiary hearing?

I think we had gone a long way on that evidentiary hearing. There may be some things that the United States wants to pursue with former trial counsel now that we have the new information we have. That's why, again, I suggested that there be some sort of outline from habeas counsel as to how they expect the evidentiary hearing to proceed given the disclosures that do seem to effect some of the claims -- the claim that's being pursued here.

So I would like a firm date, an expectation from habeas counsel as to what and how they expect that hearing

to go and then to be able to move forward and reset that hearing, Your Honor.

THE COURT: Ms. Ali.

MS. ALI: What we had committed to or said that we thought we could finish discovery in the prior status update was the end of August for producing -- getting through all the documents and making all of our productions to the government.

At the time we made that representation, it was everybody's understanding that Ms. Peiffer would continue to serve as new counsel in the case, and that I would be coming in the case as second counsel, and that we would both be working together on this. I think if I am alone trying to get through these documents and make progress here, I'm not sure about that. At the time we made that representation, that was also before we had received the additional documents, unexpectedly received these additional documents from Tennessee counsel, which as I mentioned, not only was a significant volume of paper but also, you know, you pull the file out, and out falls a flash drive with electronic file on it. So we then have to go through and determine are these duplicates, things we already have, or are they new documents.

So I think I would like to be able to say that we can commit to that -- we can -- despite those additional

significant hurdles, that we can stick with the August 31st deadline, and I think if I may, Your Honor, the issue of witness availability came up briefly when Mr. Samuels was speaking. It's my understanding he has been in touch with former trial counsel to get their availability. We also endeavored to reach out to trial counsel. We have Mr. Woodward, but Mr. Hudgins said he would prefer to speak with the government.

Of the experts that were scheduled to testify in February but did not for all the reasons that are on the record, the first block of availability where everybody would be available is -- are the first three weeks of November. So there are pockets when one or two or some of the experts are available before that. But the first time when everybody would be available over a five- or seven- or ten-day period, are the first three weeks of November. So I don't know if -- it may make sense to start there and work backward. Obviously, we defer to the Court on how to schedule this, but we are committed to trying to get it done. We are committed to try to look at the documents as quickly as possible.

I will represent to the Court, I will represent to the United States, that if we get an August 31st deadline, we are not going to drag our feet. We want to get through the documents too. This is something we want to get past as

well.  This is the threshold issue that we need to get past to really be able to start preparing for the hearing.

So we have been laser focused on that, we have been spending, I think at this point, you know, many hundreds, if not thousands of hours trying to get through these documents, which were delivered to us in a manner that nobody expected, and we are working hard to get through this, to get this case to a hearing.

But I also can't control the witness availability.  I'm happy to walk through -- I have the specific conflict from all the witnesses, but these are -- they are going to testify at trials, or out of the country, things like that.

THE COURT:  I don't need that information now.  Counsel, the first thing is you need to meet and confer, it seems to me, and only counsel that are admitted in this case will be part of the meet and confer.  You are fully admitted.  I looked at the docket sheet, and you are listed as a lead counsel on the docket sheet, both of you are.  Ms. Peiffer and Ms. Ali are listed as lead counsel.  I only require that one of you be there to meet and confer, but it's only record counsel.  Whatever *pro bono* help you get, you get.  But nobody has been admitted *pro hac vice*, and nobody's been admitted as a lead counsel except the two of you, Ms. Peiffer and Ms. Ali.  So the meet and confer will be between record counsel.  That would be one or the other

or both. Ms. McKeel and Ms. Samuels. Ms. Ward, she's got COVID.

MR. SAMUELS: She does, Your Honor.

THE COURT: She is with the Justice Department.

MR. SAMUELS: She is with the capital case section up there.

THE COURT: Either one of you, Ms. Peiffer or Ms. Ali, and you can meet and confer, and that needs to be done and completed on or before June 28th. I would make it a week from today, but there is a holiday in there, and this gives you a few extra days. So you meet and confer on or before June 28th, and you get what we have talked about, schedule on what you plan to present, the way the presentation is to go, and how you're going to exchange your documents, and any discussions that you need to make that you've mentioned here today, any discussions about the protective order, any discussions about how you're going to exchange the documents, any discussions about how you're going to do to the presentation, organization of the documents, what you've talked about today. You both said it would be helpful at this juncture to sit down and meet and confer.

If you are not able to do that, and you cannot get along or whatever, I don't anticipate that with either set of counsel, but you need to notify the Court no later than

5:00 p.m., none of this midnight filing, and I'm going to start setting times deadlines, timing deadlines because my experience has been that you leave your chambers at 7:00, and you come back the next morning, and there have been filings all night or up until midnight. Because we can see the time filings come in.

Since we are dealing with the summer, we are dealing with the holiday season, and I need to know if there is any reason for us to convene because you have not been able to properly meet and confer. So you need to report to the Court. You can do it jointly or you can do it separately. But you need to report to the Court on or before 5:00 p.m. on June 28th, 2023. The discovery in this case is to be completed on or before August 31, 2023.

The evidentiary hearing in this case will begin November 1, 2023. We are not going to repeat any of the evidence that has been presented unless there is additional on that particular point. In other words, we are not going to repeat evidence, but can add to it. I didn't get the number of days, but we were in here how many days?

MR. SAMUELS: I think from the 7th through the 14th, Your Honor.

THE COURT: We are not going to be repeating that evidence. That evidence is of record in this case. So somebody needs to be aware of that, and I'm not saying you

can't call the trial attorneys again or whatever, but we are not going to have repeat evidence. The hearing will start on November 1, and you all try to, in your scheduling, get an idea of how long it's going to take because it will start on November 1 and just keep right through until it's done, not taking a break.

I have two trials in that period, but they are civil trials, and I will move them. So you should block out November 1 through the 10th at minimum. I think the 10th is a holiday, but we may have to be here. So I would certainly hope that we can finish it by early the next second week of November. That way you can be lining up your witnesses and your schedule. We start at 11:00 each day. That way the Court can take care of the business that it has to routinely do, and the witnesses can get here. I know one set of counsel is coming from Newport News, and at least on a daily basis, which can be a problem. And Ms. Ali will be here from Northern Virginia and Ms. Peiffer from Charlottesville.

Is there anything further? So you've got your deadlines. You've got your deadlines for meet and confer with a report to the Court June 28th, 5:00 p.m., 2023. Discovery completed on or before August 31, 2023, and the hearing to start November 1 at 11:00 a.m. 2023. Do you have any questions?

MR. SAMUELS: I do, Your Honor. We can include

this as part of our meet and confer, but I think as part of this we may have some motions regarding the scope of the resumed hearing, but that's something we can bring to the Court at a later date if acceptable. Thank you, Judge.

MS. ALI: If I could just be briefly heard, Your Honor. I understand the Court has ruled on Ms. Peiffer's request to withdraw from this case. I make an oral motion that the Court stay that ruling pending appeal. Here we think we are likely to proceed on the merits. I understand the Court disagrees, but for the reasons that we stated in our motion and on the record here, most notably, we think there is a significant risk that Ms. Peiffer's continued representation will be materially limited, but that means she is operating under a conflict of interest here under Virginia Rule 1.1, 1.3(a) and 1.7(a)(2).

Again, for the reasons stated in our motion earlier today, we think Mr. Runyon will be irreparably harmed if he is not permitted to have additional counsel of record here given the circumstances that Ms. Peiffer is operating under in which she is not able to competently represent him going forward. At the same time we have lined up potential substitute counsel. I understand the Court has indicated that Your Honor will deny -- I mean, likely to deny.

THE COURT: Let me just say. I said you could have any *pro bono* help that you want, but I'm not inclined to

admit all these attorneys that you want *pro hac vice* in the case. We had a number of problems before with that. That's all I've said. You can get the help that you need. It's just you're responsible. The Court looks to counsel of record, lead counsel. That's where a Court looks to hold the attorney responsible.

So, consequently, I'm not going to admit *pro hac vice* because they don't have the same level of responsibility to the Court. We need lead counsel, and we've got two lead counsel. I also said that another attorney from Virginia Capital Resource Center could come into the case. So Ms. Peiffer doesn't have to be here for everything between now and then. As I understand it, her mother is very ill. She has Stage IV cancer. I don't know what her prognosis will be, and I'm not going there. But Ms. Peiffer has to stay in the case. You can take the lead, Ms. Ali. Moreover, she can ask to have someone else admitted from the Virginia Capital Resource Center to be substituted for her on the case. I have said that. The Court, and Mr. Runyon, and the government need the continuity of the Virginia Capital Resource Center, that has been in this case since 2015, as counsel, as co-lead attorney.

So that is what I said. You have not offered any substitute for Ms. Peiffer, just she gets out, and the whole

Capital Resource Center gets out, and that is what is not acceptable to the Court. I will not stay my order. My order remains. If you want to -- if Mr. Lee or Ms. Peiffer wants to submit substitute counsel from the Virginia Capital Resource Center, that's fine, and I will approve. But I'm not going to stay my order to let the Virginia Capital Resource Center out of this case completely at this late juncture. There's just been too much going on and prejudice to all concerned would occur. The motion to withdraw is not timely, is not in the interest of justice for Mr. Runyon, and I've considered all of your arguments. I'm not going to stay my ruling.

MS. ALI: Understood, Your Honor. Thank you.

THE COURT: Pardon?

MS. ALI: Understood, Your Honor.

THE COURT: All right. Is there anything else?

MR. SAMUELS: No, Your Honor, not from the United States. Thank you.

THE COURT: Then the Court stands in recess until Tuesday.

(Hearing adjourned at 1:37 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

X_____/s/_____x

Jody A. Stewart

X_____6-20-2023 _____x

Date

JODY A. STEWART, Official Court Reporter

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**DAVID ANTHONY RUNYON,**

        **Petitioner,**

**v.**
                             **CIVIL NO. 4:15cv108**
                **[ORIGINAL CRIMINAL NO. 4:08cr16-3]**

**UNITED STATES OF AMERICA,**

        **Respondent.**

**ORDER**

At the request of the United States, the parties convened before the court on June 16, 2023, for a status hearing to address the parties' inability to reach an agreement regarding the timeline for discovery and the continuation of Petitioner's evidentiary hearing. See ECF Nos. 809 at 7; 796 (Order directing the parties to reach such an agreement)[1]; 817 (Minute Entry). Petitioner was present throughout the hearing. The court heard argument of counsel regarding (1) issues with discovery and in agreeing to a proposed schedule; and (2) Ms. Elizabeth Peiffer's Motion to Withdraw and Substitute Pro Bono Counsel, which was filed on June 7, 2023. ECF No. 814.

---

[1] After the court's initial order directing the parties to reach an agreement on a proposed schedule, the court subsequently granted three motions and requests to continue the deadline for such. See ECF Nos. 801, 807, 810.

**JA2116**

## I.

For the reasons stated from the bench, the court finds that Ms. Peiffer's withdrawal would not be in the "interests of justice." Martel v. Clair, 565 U.S. 648, 652 (2012); see Christeson v. Roper, 574 U.S. 373 (2015). To the contrary, in order to ensure that Petitioner receives adequate representation while maintaining continuity of counsel and the institutional knowledge of the Virginia Capital Representation Resources Center ("VCRRC")[2], the court finds that it is in the "interests of justice" for Ms. Peiffer to remain as counsel for Petitioner. See id.

Further, for the reasons stated from the bench, while the court is sympathetic to Ms. Peiffer's family situation, the court does not find that she has a conflict of interest necessitating withdrawal under Virginia Rules of Professional Conduct 1.7(a)(2), 1.1, or 1.3(a). See ECF No. 815 at 3-4 (Memorandum in Support of Ms. Peiffer's Motion to Withdrawal). Moreover, the court has considered the untimely filing of the Motion to Withdraw at the "eleventh hour" in these proceedings, and has fully heard the matter with all of the reasons and argument for Ms. Peiffer's withdrawal, together with the prejudice resulting to Petitioner and the United States, which opposed the withdrawal. The court concludes that the "interests of justice" would not be served by granting the Motion to

---

[2] The Virginia Capital Representation Resource Center has lead Petitioner's habeas proceedings since November 5, 2014. See ECF No. 410 (Order appointing Ms. Michele Brace of the VCRRC).

**JA2117**

Withdraw. Accordingly, Ms. Peiffer's Motion to Withdraw, ECF No. 814, is **DENIED**.[3]

Ms. Peiffer and Ms. Ali shall remain counsel for Petitioner, distributing their duties as they see fit, as co-lead counsel. Ms. Peiffer and Ms. Ali may continue to utilize the services of pro bono attorneys, but no applications/motions from the individual attorneys for pro hac vice admission are currently before the court, as none have been submitted.[4] The court has expressed an intention, at this juncture, not to admit any additional attorneys to represent Petitioner in this limited matter on remand from the Fourth Circuit,[5] but it has no specific and proper applications to consider, with time being of the essence. See infra Part II.

## II.

Next, after hearing argument of counsel and for the reasons stated from the bench, the court **ORDERS** that all discovery be

---

[3] For the reasons stated from the bench, the court **GRANTED** Ms. Peiffer's Motion to Seal, ECF No. 812, regarding the declaration in support of her Motion to Withdrawal, ECF No. 814.

[4] Attached hereto as Exhibit A is a blank application form required by the Local Rules of this court. See Local Rule 83.1(E). The application has necessary information for consideration by the court to exercise its discretion for any individual pro hac vice appointment.

[5] The Fourth Circuit remanded this matter on only one limited issue: Whether Petitioner's trial counsel "failed to provide him with effective assistance, in violation of the Sixth Amendment, by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of trial." United States v. Runyon, 994 F.3d 192, 204 (4th Cir. 2021).

**JA2118**

completed by 5:00 P.M. on August 31, 2023. The evidentiary hearing shall resume on November 1, 2023, at 11:00 A.M., and shall begin at 11:00 A.M. each day thereafter, until completion. The parties are **DIRECTED** to meet and confer, on or before June 28, 2023, to agree on the form and method of document exchange; to address any issues with and resolutions thereto of the Protective Order, ECF No. 652; and to discuss the format, scope, and presentation of evidence at Petitioner's evidentiary hearing. If no agreement can be reached, or if further issues otherwise necessitate an additional status hearing, the parties are **DIRECTED** to notify the court of such need by 5 P.M. on June 28, 2023, after which the court will set a status hearing.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for Petitioner, the United States Attorney at Newport News, and Mr. Robert Lee of the Virginia Capital Representation Resource Center. Finally, the court **DENIED** a stay of this Order pending appeal at the conclusion of the hearing, for the reasons of record for its rulings.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

June 20, 2023*

* This Order was effective immediately after issued from the bench on June 16, 2023, at 1:40 P.M., at which time the hearing was adjourned.

4

JA2119

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

IN RE: PEIFFER

_____

DAVID ANTHONY RUNYON,

        Petitioner

    v.

UNITED STATES OF AMERICA,
        Respondent.

Case No. 4:15-cv-108

Initial Criminal No. 4:08-cr-16-3
CAPITAL § 2255 PROCEEDINGS
HON. REBECCA BEACH SMITH

**NOTICE OF APPEAL**

    Counsel Elizabeth Peiffer hereby gives notice of her intention to appeal to the United States Court of Appeals for the Fourth Circuit this Court's Order, entered June 20, 2023 (ECF No. 820), denying her Motion to Withdraw (ECF No. 814).

Dated: June 26, 2023

Respectfully Submitted,

/s/ Elizabeth J. Peiffer

Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

1

**JA2120**

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 26, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

           /s/ Elizabeth J. Peiffer

**JA2121**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | Criminal Action No.: 4:08cr16 |
| | ) | Civil Action No. :4:15cv108 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **CAPITAL § 2255 PROCEEDINGS** |
| Respondent. | ) | |
| | ) | HON. REBECCA BEACH SMITH |

**JOINT RESPONSE TO COURT ORDER ECF 820**

The United States and Petitioner David Anthony Runyon, by and through their respective counsel, submit this response to the Court's Order (ECF 820) requiring the parties to meet and confer by June 28, 2023.

The parties participated in a conference call on Friday June 24, 2023, and have engaged in follow-up email exchanges. The parties have discussed the form and method of document exchange and any ramifications of the Protective Order, ECF 652. The parties' discussion is ongoing as is the discovery production by the Petitioner, which will be completed by August 31, 2023. There are no discovery issues that require an additional status hearing at this time.

As the discovery is not complete, the parties are not able to fully engage in a consensus on the format, scope and presentation of the evidence at the petitioner's evidentiary hearing. The parties will continue to confer on these subjects as discovery proceeds. Should the parties be unable to agree on the issue of the format and scope of the evidentiary hearing following the completion of discovery, we will seek resolution of any issues well before the resumption of the evidentiary hearing currently scheduled to begin on November 1, 2023.

1

**JA2122**

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY


By:      /S/
Brian J. Samuels
Lisa R. McKeel
Assistant United States Attorneys
Carrie L. Ward, Trial Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov


By:      /S/
Kathryn M. Ali
Ali & Lockwood LLP
300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
Phone (202) 651-2475
Email: katie.ali@alilockwood.com

Elizabeth J. Peiffer
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Phone: (434) 817-2970
Fax: (434) 817-2972
Email: epeiffer@vcrrc.org
Attorneys for Petitioner


2


**JA2123**

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of June 2023, I electronically filed a true copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to all filers.

By: _____/S/_____
Lisa R. McKeel
Assistant United States Attorney
Virginia Bar Number: 28652
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Lisa.McKeel@usdoj.gov

3

**JA2124**

No. 23-5

IN THE

# United States Court of Appeals for the Fourth Circuit

In re: ELIZABETH JANE PEIFFER,

*Appellant*

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID ANTHONY RUNYON,

*Defendant*.

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 4:08-cr-00016-RBS-DEM
(The Honorable Rebecca Beach Smith)

**APPELLANT'S MOTION FOR STAY
PENDING APPEAL AND FOR EXPEDITED REVIEW**

CATHERINE E. STETSON
TIARA BROWN
SIMON CHIN
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, D.C. 20004-1109
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Appellant*

June 30, 2023

JA2125

**DISCLOSURE STATEMENT**

Under Fed. R. App. P. 26.1 and Local Rule 26.1, Appellant Elizabeth Peiffer represents the following:

- She is an individual, not a publicly held corporation or other publicly held entity.

- No publicly held corporation has a direct financial interest in the outcome of this litigation.

- This case does not arise out of a bankruptcy proceeding.

- This is not a criminal case in which there was an organizational victim.

/s/ Catherine E. Stetson
Catherine E. Stetson

JA2126

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ..................................................................................i

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................3

ARGUMENT ..........................................................................................................8

    I.  APPELLANT WILL LIKELY PREVAIL ON APPEAL.................................................9

        A. Ms. Peiffer's Continued Representation of Defendant
           Violates the Virginia Rules of Professional Conduct ...........................9

        B. The District Court's Order Violates Petitioner's Rights.....................16

    II.  THE EQUITIES OVERWHELMINGLY FAVOR A STAY .........................................18

        A. Appellant and Defendant Face Irreparable Harm ...............................19

        B. The Public Interest Favors a Stay........................................................20

    III.  THIS COURT SHOULD EXPEDITE REVIEW ....................................................22

CONCLUSION.....................................................................................................23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

CERTIFICATE OF CONFIDENTIALITY

ADDENDUM:

    Addendum A—District Court's Order (ECF 820)

    Addendum B—Transcript of Status Hearing (ECF 819)

    Addendum C—Memorandum in Support of Motion to Withdraw (ECF 815)

**JA2127**

# TABLE OF CONTENTS—Continued

<u>**Page**</u>

Addendum D—Sealed Declaration of Elizabeth Peiffer (ECF 815, Ex. A)

Addendum E—Declaration of Peter Swanson (ECF 815, Ex. B)

Addendum F—Declaration of Prof. George Rutherglen

**JA2128**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES:**

*Caplin & Drysdale, Chartered v. United States*,
 491 U.S. 617 (1989)........................................................................21

*Christeson v. Roper*,
 574 U.S. 373 (2015)........................................................................11

*Hunter v. Earthgrains Co. Bakery*,
 281 F.3d 144 (4th Cir. 2002) .........................................................12

*Martel v. Clair*,
 565 U.S. 648 (2012)........................................................................11

*McFarland v. Scott*,
 512 U.S. 1256 (1994).......................................................................20

*McFarland v. Scott*,
 512 U.S. 849 (1994)...................................................................16, 21

*Nken v. Holder*,
 556 U.S. 418 (2009)......................................................................8, 20

*Teague v. Lane*,
 489 U.S. 288, *reh'g denied*, 490 U.S. 1031 (1989)...........................22

*United States v. Blackledge*,
 751 F.3d 188 (4th Cir. 2014) ..............................................11, 12, 15

*United States v. Cronic*,
 466 U.S. 648 (1984)........................................................................16

*United States v. Gonzalez-Lopez*,
 399 F.3d 924 (8th Cir. 2005), *aff'd and remanded*, 548 U.S. 140
 (2006)............................................................................................21

*United States v. Gonzalez-Lopez*,
 548 U.S. 140 (2006)........................................................................21

**JA2129**

**TABLE OF AUTHORITIES—Continued**

**Page(s)**

*United States v. Jennette*,
  387 F. App'x 303 (4th Cir. 2010) ........................................................12

*United States v. Muslim*,
  944 F.3d 154 (4th Cir. 2019) ..............................................................12

*United States v. Plunkett*,
  No. 22-7225, 2023 U.S. App. LEXIS 8853 (4th Cir. Apr. 13, 2023) ................19

*United States v. Runyon*,
  707 F.3d 475 (4th Cir. 2013) .................................................................3

*United States v. Runyon*,
  574 U.S. 813 (2014) ...............................................................................3

*United States v. Runyon*,
  994 F.3d 192 (4th Cir. 2021) .................................................................3

*United States v. Smith*,
  640 F.3d 580 (4th Cir. 2011) ...............................................................15

*United States v. Wenk*,
  771 F. App'x 229 (4th Cir. 2019) ........................................................11

**STATUTES:**

18 U.S.C. § 3599 ...............................................................................11, 19, 20

18 U.S.C. § 3599(a)(2)...............................................................................16

28 U.S.C. § 2255 .............................................................................*passim*

**RULES:**

4th Cir. R. 12(c) ..........................................................................................22

Va. Code Ann. § 1.1 (West 2000).........................................................9, 10

Va. Code Ann. § 1.1, cmt. 5 (West 2000)................................................10

iv
JA2130

## TABLE OF AUTHORITIES—Continued

**Page(s)**

Va. Code Ann. § 1.3(a) (West 2000) ................................................................9, 10

Va. Code Ann. § 1.7 (West 2000)........................................................................9

Va. Code Ann. § 1.7(a) (West 2000) ....................................................................9

Va. Code Ann. § 1.7(a)(2) (West 2000) ..........................................................9, 10

Va. Code Ann. § 1.7, cmt. 8 (West 2000)............................................................9

Va. Code Ann. § 1.16(a)(1) (West 2000) ...........................................................10

Va. Code Ann. § 1.16, cmt. 1 (West 2000).........................................................10

Va. Code Ann. § 1.16, cmt. 3 (West 2000).........................................................15

Va. Code Ann. § 6.2(a) (West 2000) ..................................................................10

**OTHER AUTHORITY:**

*Request a Legal Ethics Opinion*, Virginia State Bar,
  https://vsb.org/Site/lawyers/leo-request.aspx ...............................................15

JA2131

IN THE

# United States Court of Appeals for the Fourth Circuit

---

In re: ELIZABETH JANE PEIFFER,

*Appellant*

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID ANTHONY RUNYON,

*Defendant*.

---

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 4:08-cr-00016-RBS-DEM
(The Honorable Rebecca Beach Smith)

---

## APPELLANT'S MOTION FOR STAY
## PENDING APPEAL AND FOR EXPEDITED REVIEW

---

### INTRODUCTION

This is a complex federal death penalty case with a multi-week evidentiary hearing scheduled to resume on November 1. In late April, appointed habeas counsel Elizabeth Peiffer's mother was diagnosed with Stage IV cancer. Ms. Peiffer immediately became a crucial caregiver for her mother, and these obligations prevent her from continuing to competently and diligently represent her client, David

1

**JA2132**

Runyon, in the coming months.  After consulting with Virginia State Bar ethics counsel, Ms. Peiffer concluded she faces a conflict of interest between her caretaking duties and her responsibilities to Mr. Runyon.  Accordingly, with the support of her client and co-counsel, Ms. Peiffer moved to withdraw.

The District Court denied Ms. Peiffer's motion.  It concluded Ms. Peiffer did not have a conflict and that her continued involvement was necessary to ensure "continuity" in Mr. Runyon's representation.  The court, however, disregarded Ms. Peiffer's sworn representations—as an officer of the court—about her lack of capacity and Bar counsel's recommendation that she withdraw.  The court also disregarded that Ms. Peiffer's continued, conflicted representation would violate Mr. Runyon's rights as a death-sentenced person.

In the same order, the court ordered the completion of discovery by August 31, 2023, set an evidentiary hearing for November 1, 2023, and denied a stay pending appeal.  Given Ms. Peiffer's conflict of interest and the impending deadlines, Ms. Peiffer arguably violates her ethical duties every day she remains in the case.  Mr. Runyon also faces irreparable harm by being denied adequate representation during this crucial phase of his habeas proceedings.

Appellant requests a stay of proceedings pending resolution of this appeal. Appellant also moves for expedited review by this Court.

2
**JA2133**

## BACKGROUND

In 2009, David Anthony Runyon was convicted and sentenced to death in the United States District Court for the Eastern District of Virginia (No. 08-cr-00016). His convictions and sentences were affirmed on direct appeal, and his petition for certiorari was denied, *United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013), *cert. denied*, 574 U.S. 813 (2014).

Mr. Runyon moved to vacate his sentence pursuant to 28 U.S.C. § 2255 in 2015, ECF No. 478, and amended that motion in 2016, ECF No. 511. The District Court denied that motion without a hearing in January 2017. ECF No. 560. This Court granted a certificate of appealability and, in February 2021, vacated the dismissal of Mr. Runyon's section 2255 motion "to the extent that it dismissed without a hearing Runyon's claim of ineffective assistance of counsel for failure to investigate and present evidence of his brain damage and mental health," remanding that claim for a hearing. *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021).

In 2014, the District Court appointed Michele Brace of the Virginia Capital Representation Resource Center (VCRRC), as habeas counsel, while denying appointment of any additional counsel, stating that "one attorney is sufficient," despite the complex and voluminous record. ECF No. 410 at 8. The court noted it would consider appointing second counsel if "circumstances arise in the future to warrant the appointment." *Id.* at 12.

3

JA2134

In 2015, Ms. Brace moved for appointment of the Federal Defender Services of Eastern Tennessee, Inc. (FDSET) and Dana Hansen Chavis, the supervisor of FDSET's capital habeas unit, as co-counsel. ECF No. 433 at 1. Ms. Brace explained that second counsel was "necessary because . . . the remaining investigation, work with experts, claim identification, and drafting of pleadings exceeds Attorney Brace's capacity to competently develop and prepare the motion on her own." *Id.* at 2. Ms. Brace further explained that VCRRC's caseload precluded it from providing Ms. Brace with assistance in Mr. Runyon's case. *See* ECF No. 425 at 2 n.2. The court granted the appointment of a second attorney—but declined to appoint FDSET itself: "The court does not appoint organizations to represent individual criminal defendants; rather, the court appoints individual attorneys to represent individual defendants." ECF No. 435 at 5.

In November 2021, Ms. Brace moved to withdraw for medical reasons and sought substitution of Elizabeth Peiffer, another VCRRC attorney. ECF No. 648. The court granted both requests. ECF No. 649.

During a February 2023 evidentiary hearing, it became apparent that one or both FDSET attorneys had not fully complied with their discovery obligations. The court accordingly determined that FDSET counsel were conflicted. They immediately withdrew, leaving only Ms. Peiffer to litigate Mr. Runyon's section 2255 proceedings.

4
**JA2135**

In April 2023, Mr. Runyon moved to appoint Kathryn Ali as counsel and notified the court that attorneys from Covington & Burling LLP had agreed to represent him (*pro bono*) as counsel of record with *pro hac vice* motions forthcoming. *See* ECF Nos. 802, 803.  The court granted this motion in part, appointing Ms. Ali as second counsel, based on "the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case." *See* ECF No. 810 at 1-2.  Regarding the Covington attorneys, however, the court advised it "does not intend to appoint, nor to otherwise admit, *pro hac vice*, any additional attorneys." *Id.*

In late April 2023, Ms. Peiffer's seventy-five-year-old mother fell in her home. Decl. of Elizabeth Peiffer ¶ 3 (Peiffer Decl.), ECF No. 815-1.  Subsequent tests revealed she has Stage IV breast cancer that has metastasized to her hip, spine, ribs, lungs, and liver. *Id.* ¶¶ 3-7.  Her condition has left her unable to safely move or care for herself without assistance. *Id.* ¶¶ 8-12.  Although Ms. Peiffer's mother has begun treatment, it will be months before its effectiveness can be assessed. *Id.* ¶ 14.  Ms. Peiffer is a crucial part of her mother's care team for the foreseeable future.  In this same period, Ms. Peiffer will be expected to meaningfully and competently represent Mr. Runyon in preparing for the approaching discovery deadline and evidentiary hearing.

Ms. Peiffer's mother's diagnosis and subsequent developments have made significant demands on Ms. Peiffer's time, attention, and availability. *Id.* ¶¶ 10-13. Her mother has had radiation treatment, requires assistance to safely walk and care for herself, *id.* ¶ 14, and will soon begin further treatments, *id.* ¶ 15. It remains unclear what impact the progression of the disease will have on her health, and what side effects the treatment may cause. *Id.* As a result, it is extremely difficult for Ms. Peiffer to make plans or commitments for the foreseeable future. *Id.* ¶¶ 4, 9-18.

Upon review of the Virginia Rules of Professional Conduct, and after consultation with ethics counsel for the Virginia State Bar, Ms. Peiffer reached the difficult conclusion that it was necessary to withdraw from Mr. Runyon's case given the significant constraints on her capacity and potential for serious conflicts of interest. *Id.* ¶ 18.

Ms. Peiffer accordingly immediately moved to withdraw and to substitute attorneys from Covington, whom Mr. Runyon has retained as *pro bono* counsel. ECF No. 814. She substantiated the basis for her motion—including her consultation with Bar counsel—in a sworn sealed declaration. *See* Peiffer Decl.

The court denied the motion, concluding Ms. Peiffer does not have "a conflict of interest necessitating withdrawal." ECF No. 820 at 2. The court did not consider the advice Ms. Peiffer received from ethics counsel, apparently because it was not presented in the form of a written "ethics opinion." Tr. of Proceedings, June 16,

6

**JA2137**

2023 at 8 (June 16, 2023 Tr.).  The court also considered the motion, filed at what it described as the "eleventh hour" of the proceedings, to be untimely.  ECF No. 820 at 2.

In the same order, the court ordered all discovery to be completed by August 31, 2023, and scheduled a multi-week evidentiary hearing to begin on November 1, 2023.  ECF No. 820 at 3-4.  The court also denied a stay pending appeal.  *Id.* at 4. The court reasoned, "There's just been too much going on and prejudice to all concerned would occur" from a stay.  June 16, 2023 Tr. at 58.

On June 26, 2023, Ms. Peiffer noticed this appeal.  ECF No. 821.  After receiving notice of Appellant's intention to file these motions on June 27, counsel for the Government responded on June 28 that they oppose these requests.

In the face of a fast-approaching discovery deadline and subsequent evidentiary hearing in this death penalty case, the denial of Ms. Peiffer's motion has left Mr. Runyon with one attorney with serious impairments to her capacity and another who has been involved in his case fewer than three months.  Meanwhile, the Government has three actively participating counsel in these proceedings, two of whom have been involved since the trial.  Mr. Runyon stands alone in this posture; to counsel's knowledge, every other federal death row prisoner litigating a section 2255 petition has at least two (and in many instances, many more) active counsel of record.

7

**JA2138**

## ARGUMENT

To obtain a stay pending appeal, a movant must establish that (1) she is likely to succeed on the merits; (2) she and her client will be irreparably harmed absent a stay; (3) a stay will not substantially injure the Government; and (4) a stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Factors one and two "are the most critical." *Id.* The third and fourth factors "merge when the Government is the opposing party." *Id.* at 435. Appellant hits all these marks: The District Court's denial of her motion to withdraw, in the face of serious ethical conflicts, was unsupportable, and her continued participation in the case will cause both her and her client irreparable harm. The Government will not be prejudiced by a brief continuance, and the public has an abiding interest in ensuring non-conflicted and adequate counsel in *any* criminal case—especially a capital case.

To ensure the stay is limited and the proceedings below are not unduly delayed, this Court should expedite review. Appellant did not seek withdrawal to cause delay, and had the court allowed the Covington attorneys to substitute for Ms. Peiffer, Mr. Runyon would have had no difficulty meeting the District Court's schedule.

8

**JA2139**

## I.    APPELLANT WILL LIKELY PREVAIL ON APPEAL.

### A.    Ms. Peiffer's Continued Representation of Defendant Violates the Virginia Rules of Professional Conduct.

The District Court's conclusion that Ms. Peiffer does not have a conflict necessitating withdrawal directly contradicts the plain text of the Virginia Rules of Professional Conduct.  As confirmed by ethics counsel for the Virginia State Bar, Peiffer Decl. ¶ 18, Ms. Peiffer's continued representation of Mr. Runyon under the circumstances presented to the court violates at least three provisions of Virginia's governing ethical standards.  *See* Va. Code Ann. §§ 1.1, 1.3(a), 1.7 (West 2000).

"[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest."  *Id.* § 1.7(a).  Such a conflict exists here because "there is a significant risk that [Ms. Peiffer's] representation of [Mr. Runyon] will be materially limited by . . . a personal interest of [Ms. Peiffer]," namely, her interest in caring for her mother.  *See id.* § 1.7(a)(2).  Ms. Peiffer's "loyalty to [Mr. Runyon] is also impaired" because her responsibility to care for her mother will prevent her from "carry[ing] out an appropriate course of action for [Mr. Runyon]."  *See id.* § 1.7, cmt. 8.  Given this "concurrent conflict of interest," Ms. Peiffer's continued representation of Mr. Runyon violates her duties under Rule 1.7.

Ms. Peiffer's inability, under the present circumstances, to provide competent, diligent, and prompt representation also violates her duties under Virginia Rules of Professional Conduct sections 1.1 and 1.3(a).  "Competent handling of a particular

9
JA2140

matter includes . . . adequate preparation." *Id.* § 1.1, cmt. 5.  In any representation, "[a] lawyer shall act with reasonable diligence and promptness." *Id.* § 1.3(a).  As the District Court recognized, the underlying habeas case is complex, and there is significant outstanding discovery.  *See* ECF No. 810 at 2.  In a given case, "[t]he required attention and preparation are determined in part by what is at stake."  Va. Code Ann. § 1.1, cmt. 5.  What is at stake here is a man's life.  Preparing the habeas claims of a death row inmate for an evidentiary hearing and subsequent proceedings requires the utmost attention and preparation.  *See* ECF No. 810 at 2.  Ms. Peiffer's caretaking obligations will prevent her from adequately completing discovery or preparing for the upcoming evidentiary hearing.  *See* Peiffer Decl. ¶¶ 11-18.  These obligations will also make it difficult for Ms. Peiffer to communicate promptly with her client and to reliably arrange travel and court appearances, particularly when it comes to preparing witnesses over multiple days.  *See id.*

As continued representation of Mr. Runyon would violate Rules 1.1, 1.3(a), and 1.7(a)(2) of the Virginia Rules of Professional Conduct, Ms. Peiffer is ethically and professionally obligated to withdraw.  *See* Va. Code Ann. § 1.16(a)(1) (West 2000); *see also id.*, cmt. 1 ("A lawyer should not . . . continue representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion.").  A violation of the Virginia Rules constitutes "good cause" for an attorney to seek to withdraw from a representation.  *See id.* § 6.2(a).

Ms. Peiffer's family situation renders her no longer capable of competently and diligently representing Mr. Runyon pursuant to 18 U.S.C. § 3599 and in accordance with her ethical duties. *See* Peiffer Decl. ¶ 18. Accordingly, it is in the "interests of justice" to allow Ms. Peiffer to withdraw and permit Mr. Runyon's chosen substitute counsel to appear as counsel of record. *See Martel v. Clair*, 565 U.S. 648, 658 (2012) ("interests of justice" standard applies to motions for substitution under 18 U.S.C. § 3599); *Christeson v. Roper*, 574 U.S. 373, 377 (2015) (per curiam) ("[S]ubstitution should be granted when it is in the 'interests of justice.' ") (citation omitted); *see also* ECF No. 820 at 2 (applying "interests of justice standard" to withdrawal motion).

The District Court abused its discretion by denying Ms. Peiffer's motion. In making this assessment, this Court considers three factors: "(1) timeliness of the motion; (2) adequacy of the court's inquiry; and (3) whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense." *United States v. Blackledge*, 751 F.3d 188, 194 (4th Cir. 2014) (internal quotation marks and citation omitted). For the third factor, "a total lack of communication is not required: rather an examination of whether the extent of the breakdown prevented the ability to conduct an adequate defense is the necessary inquiry." *United States v. Wenk*, 771 F. App'x 229, 230 (Mem.) (4th Cir. 2019) (per curiam) (cleaned up). All three factors favor reversal. And because the District

11

**JA2142**

Court made an error of law in its timeliness determination, that "is by definition an abuse of discretion." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002).

On the first factor—timeliness—the District Court concluded that the motion to withdraw was an "untimely filing . . . at the 'eleventh hour'." ECF No. 820 at 2. Its conclusion appears to be based on its belief that "this case has been going on an inordinate amount of time, and it needs to move forward." *See* June 16, 2023 Tr. at 15. But the basis for Ms. Peiffer's motion to withdraw—her mother's sudden cancer diagnosis—did not arise until late April. Ms. Peiffer filed her motion as soon as practicable—within just a few days—after obtaining the necessary information from her mother's doctors to support her decision, consulting with Bar counsel, and concluding that she had a conflict of interest requiring her withdrawal.

In any case, neither the duration of prior proceedings in a matter, nor a court's belief that a case is at the "eleventh hour" and should be near completion, is relevant to the timeliness inquiry. Instead, a court must consider "the temporal proximity of the motion to trial or another proceeding," as well as "the resulting delay on the overall proceedings." *United States v. Muslim*, 944 F.3d 154, 166 (4th Cir. 2019). This Court has found a motion to withdraw made just weeks *before trial* to be timely. *See Blackledge*, 751 F.3d at 194 (citing *United States v. Jennette*, 387 F. App'x 303, 307 (4th Cir. 2010)). Here, Ms. Peiffer filed her motion almost five months before

the resumption of the evidentiary hearing, which had not even been scheduled at the time of the motion. *See* ECF No. 820 at 1, 3-4. Furthermore, given Ms. Peiffer's limited capacity and the availability of substitute counsel, *see* ECF No. 815 at 7-13, permitting withdrawal would not have caused delay. Ms. Peiffer did not simply present the court with a problem (her conflict of interest requiring withdrawal). She instead presented a solution that (had the court accepted it) would have required no delay in the proceedings below. Because the court failed to consider and apply the relevant factors in its timeliness inquiry, it made "an error of law," which "is by definition an abuse of discretion." *Earthgrains*, 281 F.3d at 150.

On the second factor, the District Court failed to conduct an adequate inquiry. The court completely disregarded Ms. Peiffer's sworn representations about her lack of capacity and the recommendation from Virginia State Bar ethics counsel that Ms. Peiffer withdraw. The court's reasoning that Ms. Peiffer's continued involvement was necessary for "continuity" and "institutional knowledge," ECF No. 820 at 2, ignores both the reality that Ms. Peiffer is not available to meaningfully assist in preparing Mr. Runyon's case for a hearing and Ms. Peiffer's representations that while she does not have capacity to continue serving as counsel of record, she would ensure her availability to answer questions to provide any necessary continuity. The court instead suggested that another attorney in Ms. Peiffer's office could step in—disregarding the fact that among the attorneys in her office, only Ms. Peiffer has had

13
**JA2144**

significant involvement in the case and a relationship with the client, and that Ms. Peiffer's current circumstances have put a significant strain on her office, which comprises only two other attorneys. *See* June 16, 2023 Tr. at 12-17; ECF No. 435 at 5 ("The court does not appoint organizations . . . [but] rather . . . appoints individual attorneys to represent individual defendants.").

The court also failed to consider the support of Ms. Peiffer's client and co-counsel for the motion to withdraw and substitute, both of whom recognized that Ms. Peiffer's lack of capacity would leave Mr. Runyon's legal team short-handed. *See id.* at 6. At the status hearing, the court made no inquiry of Mr. Runyon, who was present, *see* June 16, 2023 Tr. at 3, about his desired legal representation. Instead, the court's apparent solution to Ms. Peiffer's caregiving responsibilities was to have Ms. Peiffer do less work and have Ms. Ali take the "lead role," *see id.* at 6, 10, 16—effectively endorsing Ms. Peiffer's representation that her capacity will be materially limited.

The court also failed to engage in any inquiry about the recommendation Ms. Peiffer received from ethics counsel. In response to Ms. Peiffer's representation that she felt obligated to withdraw after consulting with ethics counsel, the court summarily dismissed the argument: "I haven't received any ethics opinion." *Id.* at 8. That was the extent of the court's inquiry. The court's apparent requirement of a written ethics opinion ignores the fact that the Virginia State Bar's Standing

14

**JA2145**

Committee on Legal Ethics will issue a legal ethics opinion only for "a hypothetical set of facts" and "may decline to issue an opinion if the question raised is the subject of collateral litigation." *Request a Legal Ethics Opinion*, Virginia State Bar, https://vsb.org/Site/lawyers/leo-request.aspx (last visited June 30, 2023). While an existing ethics opinion dispositive of the inquiry might be the gold standard, the court received a representation from Ms. Peiffer—an officer of the court, sworn under penalty of perjury—that she had concluded she had to withdraw after consultation with the Virginia State Bar's Ethics Department. Peiffer Decl. ¶ 18. This should have been accorded significant weight by the court. *See* Va. Code Ann. § 1.16, cmt. 3 ("[A] lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.").

On the third factor, Ms. Peiffer attested she lacks capacity to fulfill her duties to her gravely ill mother and her death-sentenced client. Ms. Peiffer's inability to competently and diligently represent Mr. Runyon thus will lead to "a 'breakdown' of attorney-client communication so great that the principal purpose of the appointment—the mounting of an adequate defense incident to a fair trial—[will be] frustrated." *United States v. Smith*, 640 F.3d 580, 588 (4th Cir. 2011). "[B]ecause the district court failed to engage in an adequate inquiry, its factual determination" that Ms. Peiffer is capable of providing Mr. Runyon adequate representation "is not entitled to clear error review." *Blackledge*, 751 F.3d at 195. But even if it were, this

third factor still would favor reversal. As Ms. Peiffer has attested, her unpredictable circumstances will likely interfere with her ability to communicate and visit reliably with her client as necessary in preparing for and litigating the evidentiary hearing. *See* Peiffer Decl. ¶¶ 12-18.

Given that all three factors favor Ms. Peiffer, as well as the District Court's error of law, this Court is likely to hold that the District Court abused its discretion.

**B.      The District Court's Order Violates Petitioner's Rights.**

In addition to violating Virginia's ethics rules, Ms. Peiffer's continued representation of Mr. Runyon under these circumstances—particularly absent substitute counsel—would deprive Mr. Runyon of his federal constitutional and statutory rights to assistance of counsel as a person facing the death penalty.

Because Mr. Runyon is an indigent person under a sentence of death, he is entitled to the appointment of counsel to assist him in litigating his motion for relief pursuant to 28 U.S.C. § 2255. *See* 18 U.S.C. § 3599(a)(2); *McFarland v. Scott*, 512 U.S. 849, 854–857 (1994).

When, as here, counsel's capacity is sharply limited by conflicting personal obligations, that right is violated. *See United States v. Cronic*, 466 U.S. 648, 654, 655 n.14 (1984). Ms. Peiffer's limited capacity renders her performance inadequate, especially for a complex habeas proceeding in a capital case. The impact of counsel's diminished representation is particularly grave where, as here, proceedings

16
**JA2147**

will determine whether a death-sentenced defendant received the Sixth Amendment's fundamental right to effective assistance of counsel.

Just last month, the District Court determined that "[g]iven the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case," it was appropriate to appoint two attorneys for Mr. Runyon. ECF No. 810 at 1-2. Now, despite sworn statements from Ms. Peiffer that she is no longer in a position to assist, the court has seemingly reversed course. This effectively leaves Mr. Runyon with only one counsel, appointed less than two months ago, to litigate his section 2255 petition. Due to issues created by prior, now-withdrawn counsel, much of the time Ms. Ali has spent thus far has necessarily been focused on attempting to resolve discovery issues, limiting her ability to prepare for the approaching hearing. Mr. Runyon should not have to proceed in this crucial phase of his habeas case without adequate representation from one of his attorneys.

The absence of two attorneys of record runs counter to (i) the text of 18 U.S.C § 3599, (ii) the text of the EDVA's CJA plan (which directs that "[d]ue to the complex, demanding, and protracted nature of death penalty proceedings, the court should consider appointing at least two attorneys" to litigate § 2255 post-conviction petitions in federal capital cases), and (iii) norms in federal capital cases; every other person in the United States litigating a capital section 2255 has at least two counsel of record, and in many instances more. *See* ECF No. 803 at 2–4 & n.5.

On the first and third factor of the analysis into whether the District Court abused its discretion, the same arguments apply here. On the second factor, the court additionally failed to engage in an adequate inquiry about the violation of Mr. Runyon's constitutional and statutory rights. Despite Ms. Peiffer's representations that she could not act as competent counsel, the court did not ask what, if any, participation, Ms. Peiffer has been able to have in Mr. Runyon's defense since she began caring for her mother and how much she anticipated being able to have going forward, especially leading up to the evidentiary hearing. In fact, the court assumed (wrongly) with no further inquiry that Ms. Peiffer was seeking to withdraw from Mr. Runyon's case, while still substantially participating in other cases. *See* June 16, 2023 Tr. at 13-16. Nor did the court ask whether Mr. Runyon, who was present at the hearing and supports Ms. Peiffer's withdrawal under the circumstances, believed Ms. Peiffer could still adequately represent him. The court erred in failing to examine the impact of Ms. Peiffer's time, capacity, and attention constraints on Mr. Runyon and his defense, as well as Mr. Runyon's beliefs about the adequacy of his representation.

## II.   THE EQUITIES OVERWHELMINGLY FAVOR A STAY.

The harm to Ms. Peiffer, Mr. Runyon, and the public interest overwhelmingly favor a stay, which would result in no harm to the Government.

18

**JA2149**

### A.    Appellant and Defendant Face Irreparable Harm.

In the absence of a stay, Mr. Runyon and Ms. Peiffer would face significant, certain, and irreparable harm from being forced into an ethically compromised attorney-client relationship that would deprive Mr. Runyon of his rights to adequate representation. As the record before the District Court showed, and as Professor George Rutherglen of the University of Virginia School of Law confirms, Ms. Peiffer will face continual conflicts of interest over at least the next several months, as she is forced to choose between caring for her mother and preparing for Mr. Runyon's defense. *See* Rutherglen Decl. at 4. Every day Ms. Peiffer remains in the case is arguably a violation of her ethical duties to her client—a violation that cannot be undone. *See United States v. Plunkett*, No. 22-7225, 2023 U.S. App. LEXIS 8853, at *3 n.* (4th Cir. Apr. 13, 2023) (citation omitted) ("[I]rreparable harm . . . befalls an attorney 'forced to continue representing a client against his or her wishes.' ").

Mr. Runyon also faces irreparable harm. Without a stay, he would continue to be the only person litigating a capital section 2255 motion scheduled for an evidentiary hearing with, effectively, only one counsel of record. *See* ECF No. 803 at 3–4 & n.5. The court acknowledged as recently as mid-May 2023 that this is a complex case with a massive record and that appointing two lawyers was appropriate. ECF No. 810 at 1-2. The discovery deadline and evidentiary hearing are fast-approaching. Every day Mr. Runyon is forced to continue with inadequate

19
**JA2150**

counsel is one fewer day he has to prepare with competent counsel. That is time and an opportunity Mr. Runyon cannot recover.

**B.     The Public Interest Favors a Stay.**

When the Government is the opposing party, the third and fourth stay factors—the harm to the opposing party and the public interest—"merge"; the Government's interest *is* the public interest. *Nken*, 556 U.S. at 435. Here, the public interest overwhelmingly favors a stay. Forcing Ms. Peiffer and Mr. Runyon to remain in a conflicted attorney-client relationship, with impending deadlines, would undermine the public interest in ensuring adequate representation in capital cases, vindicating Mr. Runyon's right to counsel of choice, and serving the interests of justice and finality.

A stay is critical to ensure Mr. Runyon receives adequate representation. "Our system of justice . . . depends for its legitimacy on the fair and adequate representation of all parties at all levels of the judicial process . . . When we execute a capital defendant in this country, we rely on the belief that the individual was guilty, and was convicted and sentenced after a fair trial." *McFarland v. Scott*, 512 U.S. 1256, 1264 (1994) (Blackmun, J., dissenting from denial of certiorari). Federal habeas proceedings are critically important for the correction of constitutional errors in capital cases. *Id.* at 1263. Indeed, in enacting 18 U.S.C. § 3599, Congress determined that access to counsel is critical during federal habeas proceedings. *See,*

*e.g.*, *McFarland*, 512 U.S. at 859 ("By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty."). Here, however, one of Mr. Runyon's two attorneys of record is incapacitated by a conflict of interest that renders her unable to provide adequate representation. This Court should stay proceedings to ensure that Mr. Runyon does not have to proceed in this critical phase of his case with inadequate counsel.

There is also a strong public interest in vindicating Mr. Runyon's right to his counsel of choice. Mr. Runyon has the right to be represented by qualified, chosen counsel "willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–625 (1989). Here, Mr. Runyon selected attorneys from Covington as substitute counsel, with whom he has developed a relationship of trust and confidence. Unless the proceedings are stayed, he will be deprived of his right to be represented by his chosen counsel, in violation of his constitutional rights. *See, e.g.*, *United States v. Gonzalez-Lopez*, 399 F.3d 924, 928–930 (8th Cir. 2005), *aff'd and remanded*, 548 U.S. 140 (2006) (citation omitted) ("As a general rule, 'defendants are free to employ counsel of their own choice and the courts are afforded little leeway in interfering with that choice.' ").

The Government should recognize there is a public interest in ensuring Mr. Runyon receives adequate representation. If these issues concerning Mr. Runyon's counsel are not resolved now, they could present bases for relief in the future, thus undermining "the principle of finality which is essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989). Once again, there would have been no delay had the motions to withdraw and substitute been granted. The interests of justice would not be undermined by a brief continuance.

## III.    This Court Should Expedite Review.

Local Rule 12(c) allows parties to move to expedite an appeal for briefing and oral argument. Expedited review is warranted here because of the public interest in a speedy resolution to this appeal and an expeditious conclusion to Mr. Runyon's habeas proceedings. The United States opposes this request.

Appellant proposes the Court enter the following expedited schedule, which still gives the Government a full 30 days to prepare and file its brief:

Appellant's opening brief: July 21, 2023

Joint appendix: July 21, 2023

Appellee's response brief: August 21, 2023

Appellant's reply brief: September 1, 2023

Oral argument: During the September 19-24 sitting

**JA2153**

# CONCLUSION

For the foregoing reasons, the Court should grant a stay of proceedings and of the June 20, 2023, order pending appeal and grant expedited consideration.

June 30, 2023

Respectfully submitted,

/s/ Catherine E. Stetson

CATHERINE E. STETSON
TIARA BROWN
SIMON CHIN
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004
Tel:  (202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Appellant*

23
**JA2154**

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this motion contains 5,166 words.

This foregoing complies with the typeface and type style requirements because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

June 30, 2023                                   /s/ Catherine E. Stetson
                                              Catherine E. Stetson

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on June 30, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

June 30, 2023 /s/ Catherine E. Stetson

Catherine E. Stetson

**JA2156**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
**CERTIFICATE OF CONFIDENTIALITY, LOCAL RULE 25(c)**

No. _____23-5_____    Caption: In re: Elizabeth Jane Peiffer

Appellant
(appellant, appellee, petitioner, respondent, other)

certifies the following information regarding sealing of the document(s) described below:

1. Identify document(s) filed (e.g., sealed appendix volume, sealed version of brief):

Sealed Version of Motion

2. Is sealing of document(s) necessary?

☐ No
☑ Yes, to protect material sealed under the Privacy Policy for Electronic Case Files, or
by statute, rule, regulation, or order

3. Date(s) of order(s) sealing the material or, if there is no order, the authority relied upon to treat the material as sealed:

June 16, 2023 Order to Seal Declaration, Judge Rebecca Beach Smith, United States District Court for the Eastern District of Virginia, David Anthony Runyon v. United States of America (No. 4:15-cv-108).

4. Terms of order sealing the material, including who is permitted access to sealed material (if filed ex parte, document must be marked SEALED and EX PARTE):

Declaration of Elizabeth J. Peiffer ordered sealed.

5. (For SEALED APPENDIX)  Sealed record material has been separated from any unsealed record material and placed in a separate, sealed volume of the appendix.

☐ Yes

6. (For SEALED BRIEFS, SEALED DOCUMENTS)  Two versions of document are filed: Sealed version with sealed material highlighted and public version with sealed material redacted.

☑ Yes

01/15/2020  SCC                          1 of 2
**JA2157**

## CERTIFICATE OF SERVICE

I certify that on <u>June 30, 2023</u> the sealed document(s) identified in this Certificate of Confidentiality were served on the following parties or counsel of record outside of CM/ECF at the addresses listed below. Service may be made by direct email or other electronic means with the prior written consent of the party to be served. <u>In consolidated criminal cases</u>, identify which sealed appendix volumes were served on each party or attorney.

Brian James Samuels
brian.samuels@usdoj.gov

Richard D. Cooke
richard.cooke@usdoj.gov

Lisa Rae McKeel
lisa.mckeel@usdoj.gov

Carrie Lee Ward
carrie.ward@usdoj.gov


| /s/ Catherine E. Stetson | 06/30/23 |
|---|---|
| Signature | Date |

**JA2158**

# Addendum F

IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

DAVID ANTHONY RUNYON,    )
    )
         Petitioner,    )
    )    Case No. _____
    v.    )
    )
UNITED STATES OF AMERICA,  )
    )
         Respondent.    )
    )

**DECLARATION OF GEORGE RUTHERGLEN**

1.      Since 1976, I have been a full-time faculty member at the University of Virginia School of Law, where I am currently a Distinguished Professor of Law. Upon graduation from law school, I served as a law clerk at the United States Court of Appeals for the Ninth Circuit for Judge J. Clifford Wallace and at the United States Supreme Court for Justices William O. Douglas and John Paul Stevens. Since 1980, I have been an active member of the Virginia State Bar and I am admitted to practice before the state and federal courts in Virginia and before the United States Supreme Court.

2.      In various cases, I have served as an expert on legal ethics, including issues of conflict of interest. I have also represented prisoners making claims of ineffective assistance of counsel. At our law school, I have also made several presentations to faculty and alumni on legal ethics, derived from the courses I have taught on Professional Responsibility and Civil Procedure. From 1990 to 1994, I served as Chair of the Advisory Committee on Fourth Circuit Rules.

JA2160                A94

3.     In preparing this affidavit, I have examined the Memorandum in Support of Motion for Attorney Elizabeth Peiffer to Withdraw Due to Unforeseen Personal Circumstances and for Leave to Seek *Pro Hac Vice* Admission and Substitution of *Pro Bono Counsel* (hereafter Motion to Withdraw); the Transcript of Proceedings (Status hearing) (hereafter Transcript); the Virginia Rules of Professional Conduct; and the Rules of the United States District Court for the Eastern District of Virginia.

4.     Under Virginia Rule of Professional Conduct 1.7(a)(2), "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest," which exists if "there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a third person or by a personal interest of the lawyer." A significant risk that the representation will be materially limited includes, under Rule 1.1, the risk that a lawyer will not be able to "provide competent representation to a client," including the "thoroughness and preparation reasonably necessary for the representation." In addition, under Rule 1.3(a), the obligation that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

Under the comment to Rule 1.1, "[c]ompetent handling of a particular matter . . . includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transaction ordinarily require more elaborate treatment than matters of lesser consequence." Rule 1.1 comment [5]. The stakes for Mr. Runyon in this case could not be higher, since he was convicted and sentenced to death and the § 2255 motion challenges his conviction and sentence.

2

JA2161                                                                                      A95

5.      Ms. Elizabeth Peiffer served as co-counsel of record for petitioner, Mr. Runyon, in this case. On April 28, 2023, she learned that her mother had Stage IV breast cancer, which subsequent tests confirmed to have spread to bones in her hip, spine, and ribs, and to each of her lungs and to her liver. On June 7, 2023, she filed the motion to withdraw from representation of Mr. Runyon because of her mother's condition, which makes her mother unable to move safely without assistance and requires drastic medical treatment, whose extent and effectiveness cannot be ascertained for at least three to four months. Motion to Withdraw at 2-3. After obtaining confirmation from ethics counsel for the Virginia State Bar, Ms. Peiffer concluded that she could not continue to represent Mr. Runyon consistently with her obligations to care for her mother.

6.      Ms. Pfeiffer's withdrawal from representation requires leave of court under Rule 1.16(c). The conclusion that "representing the client is likely to result in violation of the Rules of Professional Conduct or other law" constitutes good cause for granting leave. Rule. 6.2(a). Moreover, a "lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient." Rule 1.16 comment [3]. And in this case, Ms. Peiffer consulted with ethics counsel from the Virginia Bar, who similarly advised that she withdraw, as she attested in a sworn declaration.

7.      Nevertheless, the District Court denied the motion to withdraw, opining that co-counsel, Ms. Kathryn Ali, could take on the role of lead counsel in place of Ms. Peiffer. Transcript at 10. Ms. Ali, however, does not, by herself, have the resources to handle the complicated issues of document production, not to mention those on the merits, that would be required of her. Motion to Withdraw at 5-6, Transcript at 35-38. This is especially so given the August 31 deadline for producing the documents in this case. Transcript at 50.

3

8.    The record before the District Court also showed that the conflicts of interest created by the medical condition of Ms. Pfeiffer's mother will continually arise, at least over the next three to four months, which encompasses the deadline for completing discovery at the end of August. And, of course, the treatment of Ms. Pfeiffer's mother could extend much longer, reaching the upcoming hearing on the merits of Mr. Runyon's motion. Since her mother's diagnosis, Ms. Pfeiffer's "schedule has been very unpredictable." Transcript at 9, leading to a substantial risk that she will be unable to attend conferences and hearings and to engage in the preparation necessary to effectively represent Mr. Runyon at those proceedings. The denial of her motion to withdraw will not put an end to these issues, but rather creates the near certainty that they will come up again in more urgent form as her representation is compromised by specific events arising from her mother's very serious illness. Such issues could come up in renewed motions to withdraw based on specific circumstances that prevent Ms. Pfeiffer's participation in this case, and if not in that form, in the impaired representation of Mr. Runyon would go officially unnoticed and become practically irreparable as this case proceeds.

9.    In addition to violating the Commonwealth's ethics rules, Ms. Peiffer's continued representation of Mr. Runyon under these circumstances—particularly in the absence of substitute counsel—would deprive Mr. Runyon of his rights as a defendant sentenced to death. He can effectively litigate his claims only through an attorney not distracted and preoccupied with a severe family medical emergency.

10.    All these impending problems could have been addressed by allowing attorneys from the firm of Covington & Burling to appear *pro hac vice* and to serve as lead counsel. The District Court observed that such a motion had not yet been properly made, but that if it were, she would

4

be strongly inclined to deny it. Transcript at 21-22, 56-57. Her reasons had to do with prior experience in this case with attorneys admitted *pro hac vice*, who complicated prior hearings and apparently were blamed by other counsel for delays in the case, Transcript at 21-22, 48. The Court also added that attorneys admitted *pro hac vice* "don't have same level of responsibility to the Court" as those regularly admitted to practice in the Eastern District of Virginia. Transcript at 57.

11.     The attorneys previously admitted *pro hac vice* in this case have no known relationship with the attorneys at Covington & Burling seeking admission *pro hac vice*. For purposes of ethics, conflicts of interest, competence, and discipline, the actions of one attorney can be attributed to another only in very limited circumstances, none of which are present in this case. Conflicts of interest can be imputed from one attorney in a law firm to others in the same firm. Rule 1.10. Attorneys have duties with respect to attorneys whom they supervise and they cannot participate in another attorney's violation of the rules of professional responsibility. Rule 5.1. More generally, an attorney engages in professional by violating the rules of profession responsibility through the acts of another. Rule 8.4. In the present case, no evidence supports the conclusion that the attorneys seeking admission *pro hac vice* have any tendency to engage in the same conduct as the attorneys previously admitted in this case, let alone any deficiency in their ability to represent Mr. Runyon.

12.     The Court also offered the opinion that attorneys admitted *pro hac vice* "don't have the same level of responsibility to the Court" as attorneys regularly admitted to practice before the Court. Transcript at 57. But the Local Rules for the Eastern District of Virginia make it clear that attorneys in either category have exactly the same responsibility to conform to the same

5

procedural rules and are subject to the same form of discipline. Rules of the United States District Court for the Eastern District of Virginia Rule 83.1(E)(2), (M). The Court leaves unexplained its conclusion that it can exercise less control over attorneys admitted *pro hac vice*. Judging by the transcript of the hearing on the motion to withdraw, the Court is perfectly capable of exercising control over any attorneys who appear before her.

13.     A last reason offered by the Court to deny the motion to withdraw is that it "is not timely." Transcript at 58. This argument would have force if timeliness were measured from the beginning of this case, in 2008. Transcript at 7-8. But Ms. Peiffer filed the motion to withdraw as soon as the seriousness of her mother's condition was ascertained after April 28, 2023. She acted within weeks, not years of obtaining notice of the reason for finding a conflict of interest.

14.     There are sound reasons to grant Ms. Peiffer's motion to withdraw and no reasons to deny it.

Executed this 28th day of June 2023, in Charlottesville, Virginia.

_____
George Rutherglen

JA2165                                                                              A99

Appendix

Resume of George Rutherglen

Home Address:                2533 Midway Farm Rd.
                             Charlottesville, VA   22901
                             Telephone:  (434) 977-0687

Office Address:              University of Virginia
                             School of Law
                             580 Massie Road
                             Charlottesville, VA   22903-1789
                             Telephone:  (434) 924-7015

Personal Data:               Born September 12, 1949, in Portland, Oregon
                             Married to Jessica Feldman
                             Two children, Susannah and Michael

Education:                   J.D., 1974, Boalt Hall, University of California, Berkeley
                                   Order of the Coif
                                   Articles Editor, California Law Review

                             A.B. (Philosophy), 1971, University of California, Berkeley
                                   Undergraduate at M.I.T.:   1967-70
                                   Phi Beta Kappa

Employment:                  Distinguished Professor of Law, 2003-
                                   Barron F. Black Research Professor 2015-18
                                   Earle K. Shawe Professor of Employment Law, 2020-
                                   2011-14, 1997-98
                                   Edward F. Howrey Research Professor, 2004-09
                                   O.M. Vicars Professor, 1994-2002
                                   Earle K. Shawe Professor of Employment Law, 2001-02
                                   Edward F. Howrey Research Professor, 2000-01
                                   F. Palmer Weber Research Professor, 1995-97
                                   John Allan Love Professor, 1990-94
                                   John V. Ray Research Professor, 1991-94
                                   Professor of Law, 1982-1990
                                   Associate Professor, 1980-82
                                   Assistant Professor, 1976-80
                                   Director, Graduate Program for Judges, 1995-2001

                             Law Clerk to Justices William O. Douglas and John Paul Stevens

7

**JA2166**                                                            **A100**

Supreme Court of the United States 1975-76

Law Clerk to Judge J. Clifford Wallace
     United States Court of Appeals for the Ninth Circuit
     1974-75

Professional Associations:    Virginia State Bar
     Editorial Board, Journal of Maritime Law and Commerce

     Chair, Maritime Law Section of the AALS, 1999-2000
     Chair, Advisory Committee on Fourth Circuit Rules, 1990-94

Courses Taught:    Admiralty
     Civil Procedure
     Civil Rights
     Class Actions
     Conflict of Laws
     Employment Discrimination
     Federal Courts
     International Civil Litigation
     Philosophy of Law
     Professional Responsibility

Publications:    Civil Rights in the Shadow of Slavery
     (Oxford University Press 2013)

     Civil Rights Actions:   Enforcing the Constitution
     (Foundation Press 5th ed. 2022) (and earlier editions) (with
     Peter W. Low, John C. Jeffries, Jr., and
     Pamela S. Karlan)

     Transnational Civil Litigation:   Principles and Prospects
     (West 2d ed. 2022) (and earlier edition)

     Employment Discrimination Law:   Visions of Equality in Theory
     and Doctrine (5th ed. Foundation Press 2021) (and earlier
     editions)

     Major Issues in the Federal Law of Employment
     Discrimination and Annotated Bibliography
     (Federal Judicial Center 5th ed. 2012) (and earlier editions)

     The United States Courts of Appeals:   Reexamining
     Structure and Process After a Century of Growth
     (1989) (as consultant to the ABA Standing Committee

8

**JA2167**          **A101**

on Federal Judicial Improvements)

Protecting Recent Immigrants and Aliens from
Discrimination in Employment:   The American
Experience, Internal Labor Organization (1994)

Admiralty, Human Rights, and International Law, 62 Va. J. Int'l
L. 181 (2021)

Universal Injunctions:   Why Not Follow the Rule, 107 Va. L. Rev.
Online 300 (2021)

Statutes of Limitations: Claims Forgotten, Forgiven, or Foregone,
72 Rutgers U. L. Rev. 1 (2019)

Disaggregated Discrimination and the Rise of Identity Politics,
26 Wm. & Mary J. Race, Gender, and Soc'l Justicce
391 (2020)

Territoriality and Its Troubles in The Restatement and Beyond:
The Past, Present and Future of U.S. Foreign
Relations Law 3711 (Paul B. Stephan & Sarah H.
Cleveland 2020)

Reconstruction in Legal Theory, Minn. L. Rev. Online (2020)

Self-Portrait in a Complex Mirror: Review of The Making of a
Justice: Reflections on My First 94 Years by John Paul
Stevens, Va. L. Rev. Online.

The Problem with Procedure: Some Inconvenient Truths about
Aspirational Goals, 56 San Diego L. Rev. 1  (2019)

The Rights of Aliens under the United States Constitution:   At the
Border and Beyond, 57 Va. J. Int'l L. 707 (2018)

In What Sense a Coup?   A Review of The Framers' Coup: The
Making of the United States Constitution by Michael J.
Klarman, 34 J. L. & Pol. 117 (2018)

The Rule of Recognition in Reconstruction:   A Review of
*Secession on Trial:   The Treason Prosecution of Jefferson
Davis*, Va. L. Rev. online (2017)

9

**JA2168**                                          **A102**

The Rights of Aliens under the United States Constitution:   At the Border and Beyond, 57 Va. J. Int'l L. 707 (2018).

What Happened to the Framers of the Federal Rules? Generational Change and the Transformation of the Rulemaking Process, J. Sup. Ct. Hist. 193 (2017)

The Origins of Arguments Against Reverse Discrimination: Lessons from the Civil Rights Act of 1866, in "The Greatest and Grandest Act":   The Civil Rights Act of 1866 from Reconstruction to Today (Christian Samito, ed. 2018)

The Constitution and Slavery Overseas, 39 Seattle U. L. Rev. 695 (2016)

Thirteenth Amendment, in 5 American Governance 189 (Stephen L. Schechter ed., Macmillan Reference USA, 2016)

Fisher II:   Whose Burden, What Proof?, 20 The Green Bag 2d 19 (2016).

Personal Jurisdiction and Political Authority, 32   J.L. & Pol. 1 (2016)

The Rights of Aliens under the United States Constitution:   At the Border and Beyond, 57 Va. J. Int'l L. 707 (2018).

The Civil Rights Act of 1964, in The American Middle Class:   An Economic Encyclopedia of Progress and Poverty (2017)

"The Great Task Remaining Before Us":   Lincoln and Reconstruction, in The Gettysburg Address: Perspectives on Lincoln's Greatest Speech 191 (Sean Conant, ed., Oxford University Press, 2015).

Private Rights and Private Actions:   The Legacy of Civil Rights in the Enforcement of Title VII, 95 B.U. ` L. Rev. 733 (2015).

Concrete or Abstract Conceptions of Discrimination, in Philosophical Foundations of Discrimination Law 115 (Deborah Hellman & Sophia Moreau eds., Oxford University Press, 2013).

10

**JA2169**                                                    **A103**

Sovereignty, Territoriality, and the Enforcement of Judgments (with James Y. Stern), in Foreign Court Judgments and the United States Legal System (Paul Stephan, ed. 2014).

Title VII as Precedent:   Past and Prologue for Future Legislation, 10 Stan. J.C.R. & C.L. 159 (2014).

The Civil Rights Act of 1964, in The American Middle Class: An Economic Encyclopedia of Progress and Poverty (Robert Rycroft ed., forthcoming 2014).

The Way Forward After *Wal-Mart*, 88 Notre Dame L. Rev. 871 (2012).

Sovereign Immunity in Benedict on Admiralty (2019) (and earlier editions)

The Thirteenth Amendment, The Power of Congress, and the Shifting Sources of Civil Rights Law, 112 Colum. L. Rev. 1551 (2012)

Constitutionalizing Employees' Rights:   Lessons From the History of the Thirteenth Amendment, 27 Wis. J. Gender & Society 162 (2012)

*Wal-Mart*, *AT&T Mobility*, and the Decline of the Deterrent Class Action, Va. L. Rev. Online (2012)

*Ricci v. DeStefano*: Affirmative Action and the Lessons of Adversity, 2009 Sup. Ct. Rev. 83

Textual Corruption in the Civil Rights Cases, 34 J. Sup. Ct. Hist. 164 (2009)

Public Employee Speech in Remedial Perspective, 34 J. L. & Pol. 129 (2008)

Private Action, State Action, and the Thirteenth Amendment, 94 Va. L. Rev. 1367 (2008)

Structural Reform Revisited, 95 Calif. L. Rev. 1387 (2007) (with John C. Jeffries, Jr.)

11

The Badges and Incidents of Slavery and the Power of Congress
to Enforce the Thirteenth Amendment, in The Promises of
Liberty: The History and Contemporary Relevance of the
Thirteenth Amendment (Alexander Tsesis, ed., Columbia
University Press 2010)

Civil Rights in Private Schools:   The Surprising Story of
*Runyon v. McCrary*, in Civil Rights Stories (Myriam E.
Gilles & Risa Goluboff, eds. Foundation Press 2007)

Lawyer for the Organization:   An Essay on Legal Ethics, 1 Va.
L. & Bus. Rev. 141 (2006)

Deforming the Federal Rules: An Essay on What's Wrong with
the Recent *Erie* Decisions, 92 Va. L. Rev. 707 (2006)
(with Earl Dudley)

Disparate Impact, Discrimination, and the Essentially Contested
Concept of Equality, 74 Ford. L. Rev. 2313 (2006)

Private Law and Public Reason, 92 Va. L. Rev. 1503 (2006)

Distributing Justice: The September 11th Victim Compensation
Fund and the Legacy of the Dalkon Shield Claimants Trust,
12 Va. J. Soc. Pol'y & Law 673 (2005)

Controversy, Consensus, and the Concept of Discrimination,
49 St. Louis U. L.J. 1021 (2005)

The Improbable History of Section 1981: Clio Still Bemused and
Confused, 2003 Sup. Ct. Rev. 303

Custom and Usage as Action Under Color of State Law:
An Essay on the Forgotten Terms of Section 1983, 89
Va. L. Rev. 925 (2003)

Teaching Procedure, Past and Prologue, 47 St. Louis U. L.J.
13 (2003)

Structural Uncertainty Over Habeas Corpus and the
Jurisdiction of Military Tribunals,
5 Green Bag 2d 397 (2002)

Future Claims in Mass Tort Cases:   Deterrence,

12

**JA2171**                                                    **A105**

Compensation, and Necessity,
88 Va. L. Rev. 1989 (2002)

*International Shoe* and the Legacy of Legal Realism,
2001 Sup. Ct. Rev. 347

Dead Ships, 30 J. Maritime L. & Comm. 677 (1999)

Ironies, Inconsistencies, and Intercollegiate Athletics:
Title IX, Title VII, and Statistical Evidence of
Discrimination, 1 Va. J. Sports & L. 177 (1999)
(with Earl Dudley)

A Farewell to Tournaments?   The Need for an Alternative
Explanation of Law Firm Structure and Growth,
84 Va. L. Rev. 1695 (1998) (with Kevin Kordana)

The Influence of Feminism on American Law: The
Case of Employment Discrimination, America Ho
(1998) (Japanese journal of American law)

Pleasure Boating and Admiralty: Increasing Conformity
and Decreasing Significance, 29 J. Maritime
L. & Comm. 305 (1998)

Affirmative Action in Faculty Appointments: A Guide
for the Perplexed, in Diversity and Community
in the Academy (C. Wolf-Devine, ed. 1997)

The Federal Rules for Admiralty and Maritime Cases:
A Verdict of Quiescent Years, 27 J. Maritime
L. & Comm. 581 (1996)

Disabilities, Discrimination, and Reasonable Accommodation,
46 Duke L.J. 1 (1996) (with Pamela S. Karlan)

Better Late Than Never:   Notice and Opt-Out at the
Settlement Stage of Class Actions,
71 N.Y.U. L. Rev. 258 (1996)

From Race to Age:   The Expanding Scope of Employment
Discrimination Law, 24 J. Legal Stud. 491 (1995)

Sexual Harassment:   Ideology or Law? 18 Harv. J.L. & Pub.

13

**JA2172**                                                    **A106**

Policy 487 (1995)

Discrimination and Its Discontents,
81 Va. L. Rev. 117 (1995)

The Theory of Comparable Worth as a Remedy for
Discrimination, 82 Geo. L.J. 135 (1993)

Reconstructing *Erie*:   A Comment on the Perils of
Legal Positivism, 10 Constitutional
Commentary 255 (1993)

Not With a Bang But A Whimper:   Collisions, Comparative
Fault, and the Rule of *The Pennsylvania*,
67 Tul. L. Rev. 733 (1992)

Reconsidering Burdens of Proof:   Ideology, Evidence,
and Intent in Individual Claims of Employment
Discrimination, 1 J. Soc. Policy & L. 43 (1993)

After Affirmative Action:   Conditions and Consequences
of Ending Preferences in Employment,
1992 U. Ill. L. Rev. 339

Dilemmas and Disclosure:   A Comment on Client Perjury,
19 Am. J. Crim. L. 267 (1992)

Admiralty and Bankruptcy Revisited:   Effects of the
Bankruptcy Reform Act of 1978,
65 Tulane L. Rev. 503 (1991)

The Contemporary Justification for Maritime Arrest
and Attachment, 30 Wm. Mary L. Rev. 541 (1989)

Affirmative Action Under the Constitution and Title VII:
From Confusion to Convergence, 35 U.C.L.A. L. Rev. 301
(1988) (with Daniel R. Ortiz)

Disparate Impact Under Title VII:   An Objective Theory
of Discrimination, 73 Va. L. Rev. 1297 (1987)

Claims of Employment Discrimination Under
Title VII of the Civil Rights Act of 1964,
in Statistical Methods in Discrimination

14

Litigation (D. Kaye & M. Aickin, eds. 1986)

Procedures and Preferences:   Remedies for Employment
Discrimination, 5 Rev. Litigation 73 (1986)

Notice, Scope, and Preclusion in Title VII Class Actions,
69 Va. L. Rev. 11 (1983)

Conflicts of Law and Morality–The Relevance of Moral
Reasoning, 67 Va. L. Rev. (1980)

Title VII Class Actions, 47 U. Chi. L. Rev.   688 (1980)

Sexual Equality in Fringe-Benefit Plans,
65 Va. L. Rev. 199 (1979)

In What Sense a Coup?   A Review of The Framers' Coup: The
Making of the United States Constitution by Michael J.
Klarman, 34 J. L. & Pol. 117 (2018)

Book Review, We Shall Overcome, L. & Hist. Rev. (2010)

Book Review, Friendly Adversaries, 77 Judicature 49 (1993)

Book Review, Abolition in a Difference Voice,
78 Va. L. Rev. 1463 (1992)

Book Review, Legal Theory and the Common Law,
76 Va. L. Rev. 1441 (1990)

Book Review, Theories of Free Speech,
7 Ox. J. Leg. Stud. 115 (1987)

Note, Parolee's Right to Bail,
62 Calif. L. Rev. 521 (1974)

Presentations:          Funding Legal Services
University of Virginia School of Law
May 11, 2018

Legal Ethics in the Cloud:   Protecting Confidential Information in
the Age of the Internet
University of Virginia School of Law
May 8, 2015

15

**JA2174**                                          **A108**

Current Issues in Legal Ethics
    University of Virginia School of Law
    May 4, 2012 and May 1, 2009 (with George Cohen)

Legal Ethics in the Electronic Age
    University of Virginia School of Law
    May 4, 2007 (with George Cohen)

Legal Ethics:   Attorney for the Organization
    University of Virginia School of Law
    May 5, 2006, May 4, 2007 (with George Cohen)

Diversity and Professional Ethics
    University of Virginia School of Law
    Nov. 3-4, 2005

Current Issues in Professional Responsibility,
    University of Virginia School of Law, June 29, 2001

Evidence, Procedure, and Class Action Issues,
    Workshop on Employment Law for Federal Judges
    Federal Judicial Center and New York University,
    March 16-17, 2000

When Is a Precedent Not a Precedent?
    Appellate Judges Seminar, Appellate Judges
    Conference of the ABA, April 21, 1999

Practical Solutions to Real World Ethical Problems,
    Virginia Bar Association,
    Sept. 15-16, 1995

Legal Ethics in Employment Law,
    Virginia Bar Association,
    Oct. 18, 1994

The Corporate Attorney-Client Privilege,
    Virginia Bar Association, July 30, 1993

Current Issues in Legal Ethics, University of
    Virginia School of Law, July 14, 1992

Current Issues in Legal Ethics, University of

16

**JA2175**                                                **A109**

Virginia School of Law, March 6, 1992

Recent Developments in the Federal Law of
      Employment Discrimination,
      Orientation Seminar for Federal Judges
      Federal Judicial Center, Sept. 1, 1987

Individual Claims of Discrimination in Employment
      Under Title VII, ALI-ABA, June 12, 1987

Recent Developments in the Federal Law of      Employment
      Discrimination, Seminar for Appellate Judges
      Federal Judicial Center, Oct. 30, 1986

Statistics for Judges and Attorneys
      U.S. Department of Labor, May 28, 1986

Selected Cases:      Morse v. Republican Party of Virginia,
      517 U.S. 186 (1996)

Neitzke v. Williams, 490 U.S. 319 (1989)

Seaboard System Railroad v. Caldwell,
      238 Va. 148, 380 S.E.2d 910 (1989),
      *cert. denied*, 493 U.S. 1095 (1990)

*In re* A.H. Robins, Bergstrom v. Dalkon Shield
      Claimants Trust 91 F.3d 128 (4th Cir. 1996)

Raymond Lee X v. Murray, 888 F.2d. 1387
      (4th Cir. 1989) (table)

Pressly v. Hutto, 875 F.2d. 316 (1987) (table)

Nusbaum v. Terrangi, 210 F.Supp.2d 784 (E.D.Va.2002)

Presentations:      Funding Legal Services
      University of Virginia School of Law
      May 11, 2018

Legal Ethics in the Cloud:   Protecting Confidential Information in
the Age of the Internet

17

**JA2176**                    **A110**

University of Virginia School of Law
May 8, 2015

Current Issues in Legal Ethics
University of Virginia School of Law
May 4, 2012 and May 1, 2009 (with George Cohen)

Legal Ethics in the Electronic Age
University of Virginia School of Law
May 4, 2007 (with George Cohen)

Legal Ethics:   Attorney for the Organization
University of Virginia School of Law
May 5, 2006, May 4, 2007 (with George Cohen)

Diversity and Professional Ethics
University of Virginia School of Law
Nov. 3-4, 2005

Current Issues in Professional Responsibility,
University of Virginia School of Law, June 29, 2001

Evidence, Procedure, and Class Action Issues,
Workshop on Employment Law for Federal Judges
Federal Judicial Center and New York University,
March 16-17, 2000

When Is a Precedent Not a Precedent?
Appellate Judges Seminar, Appellate Judges
Conference of the ABA, April 21, 1999

Practical Solutions to Real World Ethical Problems,
Virginia Bar Association,
Sept. 15-16, 1995

Legal Ethics in Employment Law,
Virginia Bar Association,
Oct. 18, 1994

The Corporate Attorney-Client Privilege,
Virginia Bar Association, July 30, 1993

Current Issues in Legal Ethics, University of
Virginia School of Law, July 14, 1992

**JA2177**                                                          **A111**

Current Issues in Legal Ethics, University of
     Virginia School of Law, March 6, 1992

Recent Developments in the Federal Law of
     Employment Discrimination,
     Orientation Seminar for Federal Judges
     Federal Judicial Center, Sept. 1, 1987

Individual Claims of Discrimination in Employment
     Under Title VII, ALI-ABA, June 12, 1987

Recent Developments in the Federal Law of Employment
     Discrimination, Seminar for Appellate Judges
     Federal Judicial Center, Oct. 30, 1986

Statistics for Judges and Attorneys
     U.S. Department of Labor, May 28, 1986

**JA2178**                                                                                    **A112**

No. ____

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

In re DAVID ANTHONY RUNYON,
*Petitioner*

From the United States District Court
for the Eastern District of Virginia

*United States v. Runyon,* No. 4:08-cr-00016
(The Honorable Rebecca Beach Smith)

## PETITION FOR WRIT OF MANDAMUS

Kathryn M. Ali
ALI & LOCKWOOD LLP
300 New Jersey Avenue, N.W.
Suite 900
Washington, D.C. 20001
(202) 651-2475
katie.ali@alilockwood.com

Nicholas J. Xenakis
*Counsel of Record*
Peter A. Swanson
Santiago M. Zalazar
Eric T. O'Brien
Meaghan A. Ryan
Tyler G. VanderMolen
Rachel D. Bercovitz
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4957
(202) 662-6000
nxenakis@cov.com

*Counsel for Petitioner*

JA2179

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

STATEMENT OF FACTS ..........................................................................8

    A.    The Withdrawal of Mr. Runyon's Habeas Counsel ...............8

    B.    The District Court's Counsel Rulings ...................................11

REASONS WHY THE WRIT SHOULD ISSUE .....................................18

    I.    Mr. Runyon Has a Clear and Indisputable Right to Have His Chosen Counsel Be Admitted *Pro Hac Vice*. ...................................18

    A.    Mr. Runyon Has a Right to Retain Out-of-District Counsel For His Capital Habeas Proceeding. ......................19

    B.    The District Court Clearly Abused Its Discretion in Barring Any *Pro Hac Vice* Admissions For Mr. Runyon's Counsel. ..................................................................21

    II.    Mr. Runyon Has No Other Adequate Means to Vindicate His Right to Counsel of Choice.................................................................28

    III.    Granting This Writ Is Appropriate under the Exceptional Circumstances of the Case. .........................................................34

CONCLUSION ........................................................................................41

CERTIFICATE OF COMPLIANCE......................................................42

(i)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-15, 2015
  WL 13733927, at *4 (E.D. Va. Nov. 18, 2015), *R&R
  adopted in part*, No. 2:15-cv-015, 2016 WL 184397 (E.D.
  Va. Jan. 15, 2016) ................................................................... 22

*Belue v. Leventhal,*
  640 F.3d 567 (4th Cir. 2011) ................................................. 26

*Bills v. United States,*
  11 F. App'x 342 (4th Cir. 2001) ............................................ 25

*Cheney v. U.S. Dist. Ct.,*
  542 U.S. 367 (2004) ............................................................... 18

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.,*
  586 F.3d 703 (9th Cir. 2009) ................................................. 33

*D.H. Overmyer Co. v. Robson,*
  750 F.2d 31 (6th Cir. 1984) ................................................... 22

*In re Evans,*
  524 F.2d 1004 (5th Cir. 1975) ............................................... 33

*In re Federal Savings & Loan Insurance Corp.,*
  No. 88–3814, 1988 WL 76272 (4th Cir. July 11, 1988) .......... 33, 34, 38

*In re Fluor Intercontinental, Inc.,*
  803 F. App'x 697 (4th Cir. 2020) ..................................... 30, 32

*Fuller v. Diesslin,*
  868 F.2d 604 (3d Cir. 1989) ............................................. 20, 21

*Martel v. Clair,*
  565 U.S. 648 (2012) ............................................................... 19

(ii)

*In re Murphy-Brown, LLC*,
    907 F.3d 788 (4th Cir. 2018)..................................................18

*Powell v. Alabama*,
    287 U.S. 45 (1932)............................................................19

*In re Pruett*,
    133 F.3d 275 (4th Cir. 1997)..................................... 32, 38, 39

*Roma Constr. Co. v. Russo*,
    96 F.3d 566 (1st Cir. 1996) .......................................... 25, 27

*Sanders v. Russell*,
    401 F.2d 241 (5th Cir. 1968)................................................27

*Schlumberger Techs., Inc. v. Wiley*,
    113 F.3d 1553 (11th Cir. 1997)............................................22

*SEC v. Rajaratnam*,
    662 F.3d 159 (2d Cir. 2010) ..............................................38

*Thomas v. Cassidy*,
    249 F.2d 91 (4th Cir. 1957) (per curiam)........................... 22, 32

*U.S. Bd. of Parole v. Merhige*,
    487 F.2d 25 (4th Cir. 1973)................................................37

*In re U.S. for an Order Pursuant to 18 U.S.C. Section
    2703(D)*,
    707 F.3d 283 (4th Cir. 2013)..............................................18

*In re United States*,
    791 F.3d 945 (9th Cir. 2015)........................... 22, 24, 32, 33

*United States v. Ensign*,
    491 F.3d 1109 (9th Cir. 2007).............................................20

*United States v. Gonzales-Lopez*,
    548 U.S. 140 (2006)..........................................................20

*United States v. Menner*,
    374 F. App'x 446 (4thCir. 2010) (unpublished) ...................22

(iii)

**JA2182**

*United States v. Panzardi Alvarez,*
  816 F.2d 813 (1st Cir. 1987) .................................................................28

*United States v. Runyon,*
  707 F.3d 475 (4th Cir. 2013), *cert. denied,* 574 U.S. 813
  (2014)..................................................................................................8

*United States v. Runyon,*
  994 F.3d 192 (4th Cir. 2021)...........................................................8, 35

*Willliams v. Stirling,*
  914 F.3d 302 (4th Cir. 2019).............................................................36

## Statutes

18 U.S.C. § 3599 ........................................................................ *passim*

28 U.S.C. § 1291 ..................................................................................32

28 U.S.C. § 1292 ..................................................................................32

28 U.S.C. § 2255 ........................................................................ *passim*

## Other Authorities

District Court for the Eastern District of Virginia Local Civil
  Rule 83.1(E) .................................................................... 23, 30, 39

District Court for the Eastern District of Virginia Local
  Criminal Rule 57.4(E)....................................................... 23, 30, 38

Motion for Stay Pending Appeal, *In re: Elizabeth Peiffer,*
  No. 23-5, ECF No. 8 (4th Cir. June 30, 2023) ....................................36

Virginia's Criminal Justice Act Plan,
  https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20
  CJA%20PLAN.pdf .................................................................. 21, 24

## INTRODUCTION

Petitioner David Anthony Runyon respectfully petitions this Court for a writ of mandamus concerning the district court's refusal to allow his counsel at Covington & Burling LLP ("Covington") to appear in his capital habeas proceeding. Mr. Runyon is an indigent petitioner who has been sentenced to death. He retained Covington to represent him on a pro bono basis, with Kathryn Ali of Ali & Lockwood, after his lead counsel withdrew due to conflicts of interest in early 2023. While the district court appointed Ms. Ali pursuant to 18 U.S.C. § 3599, the court has repeatedly stated that it will reject any *pro hac vice* applications submitted by Mr. Runyon's attorneys from Covington, thereby preventing them from appearing on his behalf and participating in the evidentiary hearing currently scheduled to begin on November 1, 2023.

The Covington attorneys meet all of the requirements for *pro hac vice* admission under the applicable local rules, and neither the district court nor the government has raised any questions regarding the Covington attorneys' ethics, professionalism, or conduct. Moreover, as pro bono counsel, Covington is not seeking compensation for its work on Mr. Runyon's case and does not require the district court's approval

1

under § 3599. The district court, however, has erected what amounts to a categorical bar against *pro hac vice* admissions for Mr. Runyon. Notably, this bar appears to be one-sided, as one of the government's attorneys is admitted *pro hac vice*.

The district court has provided no reasoned explanation for its refusal to admit the Covington attorneys. During a recent status conference, the court suggested that *pro hac vice* counsel do not owe the same professional obligations to the court as members of the court's bar. That is legal error under this Court's precedent. The court also expressed concerns that Mr. Runyon's former counsel were admitted *pro hac vice* and subsequently had to withdraw after discovery issues came to light. But that is not a proper basis for barring *pro hac vice* admissions for entirely new counsel who have no relationship to Mr. Runyon's former counsel and for whom there is no basis to question their ethics and professionalism. Finally, the court noted a concern about having too many attorneys at the hearing. But the court may not substitute its judgment for Mr. Runyon's as to the number of attorneys representing him, and in any case, this concern does not support a blanket refusal to admit even a single lawyer *pro hac vice*.

2

**JA2185**

The district court's bar on *pro hac vice* counsel is causing Mr. Runyon irreparable harm. As it stands now, Mr. Runyon is the only person on federal death row litigating a 28 U.S.C. § 2255 petition with a single active counsel of record. Although Mr. Runyon has two appointed counsel—Ms. Ali and Elizabeth Peiffer of the Capital Representation Resource Center ("CRRC")—Ms. Peiffer recently moved to withdraw after her mother was suddenly diagnosed with Stage IV cancer, creating a conflict of interest that materially limits her representation of Mr. Runyon. The district court denied Ms. Peiffer's request to withdraw, even though the Covington lawyers were prepared to step into the case.[1] But the court's refusal to permit Ms. Peiffer to withdraw does not change the reality that she lacks the capacity to meaningfully work on Mr. Runyon's case for at least the next several months, leaving him with only a single lawyer, Ms. Ali, who was appointed less than two months ago.

The government, by contrast, has at least three counsel actively participating in this matter—two of whom have been working on this case since the trial—and the resources of the Department of Justice at

---

[1] This denial is the subject of a pending interlocutory appeal by Ms. Peiffer. *See In re: Elizabeth Peiffer*, Case No. 23-5 (4th Cir 2023).

its disposal. This disparity is particularly notable given that it is Mr. Runyon who bears the burden of proof in his § 2255 proceeding, which involves complex medical, legal, and factual issues.

In view of these circumstances, Mr. Runyon is entitled to mandamus. *First*, Mr. Runyon has a clear and indisputable right to have the Covington attorneys admitted *pro hac vice* in this proceeding. While courts have discretion in considering *pro hac vice* applications, a court may not categorically reject all such applications without a valid reason. By erecting an arbitrary and one-sided bar to any *pro hac vice* admissions for Mr. Runyon, the district court clearly abused its discretion.

*Second*, Mr. Runyon has no other adequate means for relief.  In the absence of mandamus relief, Mr. Runyon will be forced to proceed to an evidentiary hearing—possibly his last opportunity to present evidence in this federal death penalty proceeding—without his counsel of choice. As courts have recognized, the harm from such a denial of counsel cannot be effectively remedied through an appeal at the conclusion of the case.

*Third*, mandamus is an appropriate exercise of this Court's supervisory authority to prevent this irreparable harm, which is closely linked to the district court's order requiring Ms. Peiffer to continue

4

**JA2187**

representing Mr. Runyon despite her conflict of interest. Mandamus is also warranted to give guidance to courts on the standards they must apply in exercising their discretion over *pro hac vice* applications, particularly in capital cases.

## RELIEF SOUGHT

For the reasons explained below, Mr. Runyon respectfully requests that the Court grant his petition and direct the district court to admit the Covington attorneys upon submission of *pro hac vice* applications demonstrating that they satisfy the requirements of the local rules.

# ISSUE PRESENTED

Whether this Court should exercise its supervisory authority to correct the district court's categorical bar on out-of-state attorneys from appearing in this capital habeas proceeding on behalf of Mr. Runyon, where (a) such attorneys meet all of the requirements for *pro hac vice* admission under the court's local rules; (b) the attorneys do not seek appointment or compensation pursuant to 18 U.S.C. § 3599; (c) the district court's bar would limit Mr. Runyon's counsel of record to a newly appointed attorney and an attorney who suffers from a conflict of interest that materially limits her representation of Mr. Runyon; and (d) the harm to denying Mr. Runyon's choice of counsel cannot be adequately remedied on appeal.

## STATEMENT OF FACTS

In 2009, Mr. Runyon was convicted and sentenced to death in the United States District Court for the Eastern District of Virginia (No. 08-cr-00016). His convictions and sentences were affirmed on direct appeal. *United States v. Runyon*, 707 F.3d 475, 520–21 (4th Cir. 2013), *cert. denied*, 574 U.S. 813 (2014). In 2015, Mr. Runyon moved to vacate his sentence pursuant to 28 U.S.C. § 2255, ECF No. 478; he amended that motion in 2016, ECF No. 511. The district court denied Mr. Runyon's motion without a hearing in January 2017. ECF No. 560. This Court granted a certificate of appealability, and in February 2021, it vacated the dismissal of Mr. Runyon's § 2255 motion "to the extent that it dismissed without a hearing [on] Runyon's claim of ineffective assistance of counsel for failure to investigate and present evidence of his brain damage and mental health," remanding that claim for a hearing. *United States v. Runyon*, 994 F.3d 192, 197, 212 (4th Cir. 2021).

### A.    The Withdrawal of Mr. Runyon's Habeas Counsel

In November 2014, the district court appointed Michele Brace of the CRRC as habeas counsel. ECF No. 410 at 12. A few months later, Ms. Brace moved for appointment of Dana Hansen Chavis of the Federal Defender Services of Eastern Tennessee, Inc. ("FDSET") as co-counsel.

ECF No. 433 at 1. Ms. Brace had explained that CRRC attorneys and staff were and would remain unavailable to assist her in Mr. Runyon's case. *See* ECF No. 425 at 2 n.2. Because Ms. Chavis is not a member of the Virginia Bar, following her appointment, ECF No. 435, Ms. Brace moved for *pro hac vice* admission for Ms. Chavis, ECF No. 436, which the district court granted, ECF No. 438.

In November 2021, Ms. Brace moved to withdraw for medical reasons and sought substitution of Elizabeth Peiffer, another CRRC attorney. ECF No. 648. The district court granted both requests. ECF No. 649.

Following this Court's remand, in January 2022, the parties agreed to a discovery order, which the district court entered, requiring Mr. Runyon to provide "all matters contained in the trial counsel file as related to trial defense counsel's investigation, strategy, and failure to present mitigation as set forth in Petitioner's Habeas Claim 6, to include documents related to relevant communications with expert consultants, mitigation consultants, and potential expert witnesses, as well as materials provided to or otherwise relied upon by mitigation and expert consultants and potential expert witnesses." ECF No. 657 at 2. The

parties engaged in discovery throughout 2022, and the court set an evidentiary hearing for February 2023. ECF No. 695.

In February 2023, Ms. Peiffer moved for *pro hac vice* admission on behalf of another FDSET lawyer, Helen Susanne Bales. ECF No. 764. Ms. Peiffer explained that Mr. Runyon anticipated presenting, *inter alia*, tens of witnesses at his evidentiary hearing such that Ms. Bales's assistance was necessary to provide adequate representation at the hearing. ECF No. 726 at 3. The district court admitted Ms. Bales *pro hac vice*, but only for the specific purpose of presenting or cross-examining seven listed witnesses. ECF No. 772.

During the February 2023 evidentiary hearing, it became apparent that FDSET attorneys had not fully complied with their discovery obligations. ECF No. 796 at 3–4. The court determined that FDSET counsel were conflicted and permitted them to withdraw, leaving only Ms. Peiffer to litigate Mr. Runyon's § 2255 proceeding. *Id.* at 4. The court also directed FDSET and Ms. Peiffer "to come to an agreement on the logistics of exchanging *all* physical and electronic case files that [were] in the possession of FDSET and/or its employees." *Id.* A diligent search for co-counsel to assist Ms. Peiffer ensued.

10

**JA2193**

In light of the discovery issues that surfaced at the hearing, Mr. Runyon's counsel needed to review all of FDSET's files in order to determine whether any additional documents needed to be produced under the discovery order. ECF No. 797-1. Since April 2023, FDSET has sent Ms. Peiffer 70 bankers boxes containing tens of thousands of paper files and more than 200,000 electronic files. ECF No. 806, ¶¶ 3–5; ECF No. 808, ¶¶ 1–3. These files were disorganized, improperly scanned, and/or sent without an explanation concerning their origin, necessitating an ongoing, time-consuming review to ensure that all appropriate disclosures are made. ECF No. 808, ¶ 5.

## B.    The District Court's Counsel Rulings

Given the large volume of files needing review, the potential for depositions, and the work required for the evidentiary hearing, Mr. Runyon engaged Covington in April 2023 to represent him in his § 2255 proceeding on a pro bono basis. To spearhead the Covington team, Petitioner chose Mr. Peter Swanson and Mr. Nicholas Xenakis, both of whom have extensive experience with complex litigation matters,

11
**JA2194**

including death penalty and post-conviction matters.[2]  Ex. 2 (Mem. in Supp. of Mot. for Appointment, ECF No. 803), ¶¶ 15–16. Mr. Xenakis is a former attorney with the Office of the Federal Public Defender for the Eastern District of Virginia. *Id.* ¶ 16.

That same month, Mr. Runyon moved to appoint Ms. Ali as counsel and notified the district court that he had also engaged Covington, whose *pro hac vice* motions would be forthcoming. Exs. 1 (Mot. for Appointment, ECF No. 802); Ex. 2 ¶¶ 13–17. The district court granted this motion in part, appointing Ms. Ali as "second counsel," based on "the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case." Ex. 3 (Appointment Order, ECF No. 810) at 1–2. Regarding the Covington attorneys, however, the district court stated that it "does not intend to appoint, nor to otherwise admit, pro hac vice, any additional attorneys." *Id.* at 2.

Several weeks after Mr. Runyon moved to appoint Ms. Ali as counsel, Ms. Peiffer's mother was unexpectedly diagnosed with Stage IV

---

[2] Covington attorneys have met with Mr. Runyon—virtually and in person—several times. And since April 2023, Covington has spent more than 1,300 hours assisting with various tasks, including drafting, document review and production, and legal research.

breast cancer. Ex. 5 (Mem. in Supp. of Mot. to Withdraw, ECF No. 815) at 1; Ex. 6 (Ex. A to Mem. in Supp. of Mot. to Withdraw, ECF No. 815-1), ¶¶ 3–7. Ms. Peiffer immediately became a critical part of her mother's care team. As a result of her condition, Ms. Peiffer's mother is unable to safely move or care for herself without assistance. Ex. 5 at 2; Ex. 6 ¶¶ 8–12, 14. This has significantly limited Ms. Peiffer's availability to work on this matter and will continue to do so for at least the next several months. In the meantime, the deadlines in Mr. Runyon's case, including the evidentiary hearing scheduled for November 1, 2023, are fast-approaching.

Upon review of the Virginia Rules of Professional Conduct, and after consultation with ethics counsel for the Virginia State Bar, Ms. Peiffer moved to withdraw from Mr. Runyon's case given the significant constraints on her capacity and resulting conflicts of interest. Ex. 4 (Mot. to Withdraw, ECF No. 814). Mr. Runyon agreed with Ms. Peiffer's decision to withdraw, *id.* at 2, and in the same motion, sought to substitute attorneys from Covington, renewing his request that these attorneys be admitted *pro hac vice*, *id.* The motion attached a declaration attesting that each Covington attorney meets the requirements for *pro*

13
**JA2196**

*hac vice* admission set forth in the local rules.[3] *See* Ex. 7 (Ex. B to Mem. in Supp. of Mot. to Withdraw, ECF No. 815-2), ¶¶ 4–6. The government did not file any opposition to the motion.

During a status conference on June 16, 2023, the district court opined that Ms. Peiffer would be "violating [her] duties to Mr. Runyon by not staying in his case," Ex. 8 (Status Conference Tr., ECF No. 819) at 10:13–14, and that notwithstanding the advice Ms. Peiffer received from ethics counsel, she in fact "ha[s] an ethical obligation not to withdraw[,]" *id.* at 17:1–2. Despite these statements, the court did not dispute that Ms. Peiffer's circumstances would require her to proceed "on a limited basis," *id.* at 16:25, and in a "lesser role," *id.* at 19:5–6. The court denied Ms. Peiffer's motion, concluding that she does not have "a conflict of interest necessitating withdrawal." Ex. 9 (June 20, 2023, Order, ECF No. 820) at 2.

---

[3] Given that the district court had already indicated it would deny their *pro hac vice* applications, Ex. 3 at 2, the Covington attorneys did not submit applications in connection with the motion, because a denial would potentially need to be disclosed when seeking admission to other courts.

During the same status conference, the district court denied Mr. Runyon's request to admit the Covington attorneys and made clear that any *pro hac vice* application would be denied:

> Number two, I see no reason to admit, at least it appears five attorneys in here to be *pro hac vice* because that can put the hearing out of control. To the extent they want to volunteer their time to you, Ms. Ali and Ms. Peiffer, they can. There is nothing that keeps them from acting *pro bono*. They can certainly, if their firm wants it and permits it, they can act *pro bono*. They can advise you, and you and Ms. Peiffer can use them however you deem appropriate. **But I see no reason to start admitting attorneys *pro hac vice* to be here for this continued evidentiary hearing**. The record will show what happened before with the *pro hac vice* situation. So, consequently, I welcome any *pro bono* help you can get. That's up to you, Ms. Peiffer and Ms. Ali, whether you need *pro bono* help. Number one, that's up to you. Number two, it's up to their attorneys and their law firm. I permit the attorneys to be *pro bono*, but **the Court is not inclined to admit them *pro hac vice* in this case**. They can be present at the hearing, whatever you decide, but not as counsel in the case. There is no requirement that they be admitted *pro hac vice* to be present. So if they want to file the motions, you can file them, but **be prepared for my decision**, unless there are other factors to consider. **My decision at this juncture is no** for the above reasons.

Ex. 8. at 25:17–26:16 (emphasis added); *see also id.* at 21:12–20 ("We had a problem with that before with Ms. Bales, Ms. Chavis, and the

15
**JA2198**

Tennessee Public Defender. I did that against my better judgment, but we will get to that in a minute. There are five attorneys sitting in here. Do you know what a hearing is like with various attorneys jumping up and down and, well, Ms. Bales prepared this witness so she has to do it, and the record will go back and show that, and then there was conflict between the *pro hac vice* counsel.").

Later in the hearing, the court expressed its belief that any Covington attorney admitted *pro hac vice* would not have the same level of responsibility to the court as one admitted to the district court bar:

> The Court looks to counsel of record, lead counsel. That's where a Court looks to hold the attorney responsible. **So, consequently, I'm not going to admit *pro hac vice* because they don't have the same level of responsibility to the Court.**

*Id.* at 56:24–57:9 (emphasis added).

At the same time, however, the district court made clear that only counsel of record could communicate with the government, produce documents, and participate in meet and confers. *Id.* at 27:19–25, 28:1–2, 32:17–25, 33:1–9, 53:7–22.

The district court ordered all discovery to be completed by August 31, 2023, and it scheduled a multi-week evidentiary hearing to begin on

16
**JA2199**

November 1, 2023. Ex. 9 at 3–4. The district court's subsequent written order also reiterated its intention "not to admit any additional attorneys to represent Petitioner." *Id.* at 3.

**JA2200**

## REASONS WHY THE WRIT SHOULD ISSUE

A writ of mandamus is an extraordinary remedy available under limited circumstances. *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 289 (4th Cir. 2013). Three conditions must be satisfied for a court to issue a writ of mandamus: (1) the petitioner has shown a "clear and indisputable" right to the requested relief; (2) the petitioner must "have no other adequate means to attain the relief he desires"; and (3) the court deems the writ "appropriate under the circumstances." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004); *see also In re Murphy-Brown, LLC*, 907 F.3d 788, 795 (4th Cir. 2018). Although the standard is "demanding," it is "not insuperable." *Cheney*, 542 U.S. at 369. It is met here.

## I.    Mr. Runyon Has a Clear and Indisputable Right to Have His Chosen Counsel Be Admitted *Pro Hac Vice*.

The district court's arbitrary bar on Mr. Runyon's use of *pro hac vice* counsel violates his constitutional and statutory rights, runs afoul of the law governing *pro hac vice* admissions, and constitutes a clear abuse of the court's discretion over attorney admissions.

### A. Mr. Runyon has a right to retain out-of-district counsel for his capital habeas proceeding.

Section 3599(a)(2) of Title 18 "guarantees that indigent defendants in federal capital cases will receive the assistance of counsel, from pretrial proceedings through stay applications." *Martel v. Clair*, 565 U.S. 648, 658 (2012). The Supreme Court has explained that "Congress's efforts in § 3599 to enhance representation in capital cases" include situations where a "court would have to appoint new counsel if the first lawyer developed a conflict with or abandoned the client." *Id.* at 661; *see also id.* at 658 (motions for substitution under § 3599 are evaluated under an "interests of justice" standard).

Although "Congress declined to track the Sixth Amendment" in the statute, § 3599 provides broader protections than the Sixth Amendment by granting counsel to petitioners who would not otherwise have a constitutional right to it. *Martel*, 565 U.S. at 662. And because § 3599 establishes a "right to counsel" for an indigent habeas petitioner, it follows that the petitioner "should be afforded a fair opportunity to secure counsel of his choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932). As the Supreme Court has explained, the right to counsel of one's choice is an independent right: "[t]he right to select counsel of one's choice . . . has

19
**JA2202**

never been derived from the Sixth Amendment's purpose of ensuring a fair trial.  It has been regarded as the root meaning of the constitutional guarantee." *United States v. Gonzales-Lopez*, 548 U.S. 140, 147–48 (2006).

Here, Mr. Runyon has the right to retain Covington as his counsel for his capital habeas proceedings, and the "deprivation of [Mr. Runyon's right was] complete when [he] was erroneously prevented from being represented by the lawyer he wants." *Id.* at 148. Although § 3599 does provide a court with discretion over *appointments* for indigent petitioners, Covington does not seek appointment pursuant to § 3599. Thus, the statute does not give the district court any basis to deny Mr. Runyon's selection of Covington as additional counsel in this proceeding.

Nor does the fact that the Covington attorneys are out-of-district permit the district court to deny Mr. Runyon his counsel of choice. As other circuits have held, the right to counsel of choice includes the right to have out-of-state counsel appear *pro hac vice. See, e.g., United States v. Ensign,* 491 F.3d 1109, 1114 (9th Cir. 2007) ("We have held that a defendant's right to the counsel of his choice includes the right to have an out of-state lawyer admitted *pro hac vice.*" (cleaned up)); *Fuller v.*

*Diesslin*, <u>868 F.2d 604, 607</u> (3d Cir. 1989) ("[W]e conclude that the right

to counsel *pro hac vice* is encompassed analytically within the right to

counsel of choice, and as such should be examined within the analytic

framework generally employed in right to counsel of choice cases."). In

fact, the U.S. District Court for the Eastern District of Virginia's

Criminal Justice Act ("CJA") plan expressly provides for this: "Out-of-

district counsel, including federal defender organization staff, who

possess the requisite expertise may be considered for appointment in

capital § 2255 cases to achieve high quality representation together with

cost and other efficiencies." CJA Plan § XIV.E.6;[4] *see also* 7 Guide to

Judicial Policies and Procedures, § 620.10.20(b) (recommending

appointment of "at least two counsel" for § 2255 proceedings in capital

cases).

**B.    The district court clearly abused its discretion in barring any *pro hac vice* admissions for Mr. Runyon's counsel.**

While courts have discretion over *pro hac vice* admissions, this

discretion is not unlimited. As the Ninth Circuit has held: "At a

---

[4]                           Available                          at: https://www.vaed.uscourts.gov/sites/vaed/files/EDVA%20CJA%20PLAN. pdf.

21

minimum, a court's decision to deny *pro hac vice* admission must be based on criteria reasonably related to promoting the orderly administration of justice . . . or some other legitimate policy of the courts . . . ." *In re United States*, 791 F.3d 945, 957 (9th Cir. 2015). Such criteria typically focus on unethical, unprofessional, or vexatious conduct by the attorney seeking *pro hac vice* admission. *See, e.g.*, *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997) ("Absent a showing of unethical conduct rising to a level that would justify disbarment, the court ***must admit*** the attorney." (emphasis added)); *D.H. Overmyer Co. v. Robson*, 750 F.2d 31, (6th Cir. 1984) ("[T]his circuit and others have upheld a lower court's denial of *pro hac vice* status when some evidence of ethical violations was present.").

For example, this Court has explained that it is not error to deny admission because of "unlawyerlike conduct." *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) (per curiam); *see also United States v. Menner*, 374 F. App'x 446, 447 (4th Cir. 2010) (unpublished) (per curiam) (upholding admission requirement in U.S. District Court for the Eastern District of Virginia that "foreign counsel associate with local counsel before they may be admitted to the bar of a court," which would be

satisfied here with the involvement of Ms. Ali); *A1 Procurement, LLC v. Thermcor, Inc.*, No. 2:15-cv-15, 2015 WL 13733927, at *4 (E.D. Va. Nov. 18, 2015), *R&R adopted in part*, No. 2:15-cv-015, 2016 WL 184397 (E.D. Va. Jan. 15, 2016) (citing cases showing that there must be some legitimate, specific basis for denial, such as "uncivil behavior or abusive language by an attorney"; "an attorney's impact on judicial economy," as in a situation "where a party's out-of-state counsel has continually thwarted the progress of the litigation"; or where there have been "conflicts of interest or clear-cut violations of the rules").

The district court's refusal to permit *pro hac vice* admissions for Mr. Runyon's counsel was not rooted in any of these concerns. As an initial matter, Mr. Runyon demonstrated that the Covington attorneys meet the criteria for *pro hac vice* admission set forth in the court's local rules. *See* Ex. 7, ¶¶ 4–6 (stating that Covington attorneys satisfy all the requirements for *pro hac vice* admission set out in Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(E)). Neither the court nor the government has expressed concerns about the attorneys' ethics, professionalism, or conduct, and the government has not raised any objection to their admission. Nor will the Covington attorneys, who are

available to participate in the upcoming hearing, cause any delay in the proceeding.

Moreover, Mr. Runyon's counsel informed the district court that they had conferred with the Federal Public Defender for the Eastern District of Virginia, who supports lawyers from Covington serving as Mr. Runyon's counsel. Ex. 5 at 9. Although the court's CJA plan provides that "[w]hen appointing counsel in a capital § 2255 matter, the court should consider the recommendation of the Federal Public Defender, who will consult with the Federal Capital Habeas § 2255 Project," CJA Plan § XIV.E.4, the district court failed to consider the Federal Public Defender's recommendation.[5]

In barring Mr. Runyon's use of *pro hac vice* counsel, the district court did not articulate any reasons specific to the Covington attorneys, much less any legitimate policy or administrative concern. Instead, the court appeared to create a blanket rule against *pro hac vice* admissions for Mr. Runyon. This alone constitutes a clear abuse of discretion. *See In re United States*, 791 F.3d at 950, 957 (finding clear abuse of discretion

---

[5] The Federal Capital Habeas Project concurs that the Covington attorneys should serve as Mr. Runyon's counsel.

where district court had policy of denying *pro hac vice* admission for out-of-state government attorneys); *cf. Bills v. United States*, <u>11 F. App'x 342, 343</u> (4th Cir. 2001) (holding that district court could not impose categorical bar to attorney appearing *pro hac vice* in the district).

The court's bar on *pro hac vice* admissions is especially arbitrary where, as here, it does not appear to apply to the government. *See Roma Constr. Co. v. Russo*, <u>96 F.3d 566, 577</u> (1st Cir. 1996) (district court abused its discretion in denying *pro hac vice* admission for plaintiff's attorney, where "defendants were represented by more than ten attorneys, the plaintiffs by two"). The government has one attorney (AUSA Carrie Lee Ward) who is actively participating in the proceeding and is admitted *pro hac vice*. ECF No. 645.

The district court offered three reasons for refusing any *pro hac vice* admissions for Mr. Runyon's counsel, none of which is valid.

*First*, the district court committed legal error in stating that out-of-district counsel do not "have the same level of responsibility to the Court." Ex. 8 at 57:8–9. This Court has held that "*pro hac vice* attorneys are held to the same professional responsibilities and ethical standards as regular

25
**JA2208**

counsel." *Belue v. Leventhal*, 640 F.3d 567, 576 (4th Cir. 2011) (cleaned up).

*Second*, it is improper for the district court to bar the Covington attorneys from admission based on the conduct of Mr. Runyon's previous counsel, with whom the Covington attorneys have no connection. The proposed Covington attorneys have significant experience in capital cases and other complex litigation matters, Ex. 2, ¶¶ 15–16, and the law firm is committed to professionalism, skill, and thoroughness in all of its matters. Missteps by prior, unrelated counsel do not provide a valid basis for assuming that similar problems will arise with these attorneys.

In fact, the opposite is true given the substantial resources the firm can bring to bear—and has already brought to bear—on this case. For example, the district court record showed that both Mr. Swanson and Mr. Xenakis have experience in criminal matters, including death penalty matters, and Mr. Xenakis was previously an attorney in the Office of the Federal Public Defender for the Eastern District of Virginia. *See* Ex. 2 ¶ 16. And the Covington team has already contributed hundreds of hours and covered significant out-of-pocket expenses, including in connection

with the review of the voluminous documents received from FDSET. *See* Ex. 5 at 10–11.

*Third*, the district court's concern about the number of lawyers representing Mr. Runyon, Ex. 8 at 25:17–19, is not a valid reason for denying a litigant's preferred counsel. *See Roma Constr.*, 96 F.3d at 577 (finding abuse of discretion where "district court stated that 'we already have one *pro hac vice* and we're not going to take more than one on a case" (cleaned up)); *Sanders v. Russell*, 401 F.2d 241, 245–46 (5th Cir. 1968) ("It is difficult to see how the concern of the District Court in decorum, dignity, competency, good character or amenability to service and discipline is served by a numerical limitation . . . lack of necessity— in the judge's view—simply is not and cannot be a proper basis for exclusion [of additional out-of-district counsel] . . . The trial court cannot substitute its judgment for that of the litigant in the choice or number of counsel that the litigant may feel is required to properly represent his interests.").

Not only does the district court's concern interfere with Mr. Runyon's right to select how many (non-appointed) attorneys he desires, but it bears no reasonable relationship to *pro hac vice* admissions. The

same concern would be present if Mr. Runyon had retained multiple lawyers already admitted to the district court bar. To the extent the court's concern was grounded in the number of attorneys examining witnesses at the hearing, that is an issue the court may address as the hearing approaches.

* * *

In short, out-of-district *pro hac vice* admission in this case will not "hinder the efficacious administration of justice," *United States v. Panzardi Alvarez*, <u>816 F.2d 813, 817</u>–18 (1st Cir. 1987), but rather will further it. The district court not only failed to cite a single reasonable basis for denying the Covington lawyers *pro hac vice* admission, but it also failed—at every turn—to consider the benefits that the Covington lawyers would bring to the case. All of these errors confirm that the court's rulings constitute a clear abuse of discretion.

## II.    Mr. Runyon Has No Other Adequate Means to Vindicate His Right to Counsel of Choice.

A writ of mandamus is the only avenue available to Mr. Runyon to remedy the district court's improper refusal to admit his chosen counsel *pro hac vice*. There are two reasons for this.

28
**JA2211**

*First*, Mr. Runyon has exhausted all reasonable avenues for relief before the district court, which has made clear on three occasions that it will not allow any of his attorneys to appear *pro hac vice*. As discussed above, Mr. Runyon first raised his intent to have the Covington attorneys represent him when he moved to appoint Ms. Ali as his counsel. In its order appointing Ms. Ali, the court unequivocally stated that it "does not intend to appoint, nor to otherwise admit *pro hac vice*, any additional attorneys." Ex. 3 at 2.

Mr. Runyon then renewed his request to admit the Covington attorneys after it became clear that Ms. Peiffer would be unable to continue representing him in light of her mother's cancer diagnosis and the resulting conflict of interest. Mr. Runyon's and Ms. Peiffer's motion to withdraw requested substitution of the Covington attorneys for Ms. Peiffer. Ex. 4. The district court ruled on that motion orally at the June 2023 status conference, and the court's comments left no doubt what would happen if the Covington attorneys proceeded to file *pro hac vice* applications: "So if they want to file the motions, you can file them, ***but be prepared for my decision***, unless there are other factors to consider. My decision at this juncture is ***no*** for the above reasons." Ex. 8 at 26:12–

16 (emphasis added). The district court's subsequent written order reiterated its intention "not to admit any additional attorneys to represent Petitioner." Ex. 9 at 3.

In view of the district court's clear and repeated statements that it will deny any *pro hac vice* applications, there would be no purpose served by requiring the Covington attorneys to file such applications before Mr. Runyon may seek mandamus. As this Court has explained, mandamus does not require a party to take an action in the district court that "would be futile." *See In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 700 (4th Cir. 2020). The submission of applications for admission *pro hac vice* would be "inadequate in light of the district court's suggestion that such an effort would be futile." *Id.*

As explained above, a declaration attached to Mr. Runyon's motion to withdraw and substitute demonstrated that the Covington attorneys meet all of the requirements for *pro hac vice* admission set out in Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(E). *See* Ex. 7, ¶¶ 4–6. The district court's *pro hac vice* application—a one-page form that identifies the federal district courts in which the attorney has been admitted and attests to the requirements in the local rules—will not

30
**JA2213**

provide the district court with any additional information about these attorneys necessary to the court's decision. *See* Ex. 9 (attaching application as Exhibit A). Mr. Runyon's motion to withdraw and substitute also provided detailed arguments on the law regarding *pro hac vice* admissions and the right to counsel, and it offered reasons for why the admission of the Covington attorneys would be beneficial in the case. Ex. 5 at 4–13. These sworn statements and arguments were before the district court when it reaffirmed its decision not to admit the attorneys.

If the Covington attorneys were to submit *pro hac vice* applications, the district court's inevitable denial of the applications would have negative and lasting consequences for them. Many courts require disclosure of previous denials of admission applications when applying for admission or *pro hac vice* admission.[6] The Covington attorneys have "little or no incentive to risk" the negative consequences of the all but assured denial here, so the "the district court's error" in refusing to admit

---

[6] *See, e.g.*, *Motion for Admission Pro Hac Vice and Affidavit*, W.D.N.C, https://www.ncwd.uscourts.gov/sites/default/files/general/ProHacViceFo rm.pdf) (requiring applicants to certify that they have "never been denied admission *pro hac vice* in this or any other jurisdiction . . ."); *Application/Affidavit for Pro Hac Vice admission*, D.S.C., https://view.officeapps.live.com/op/view.aspx?src=http%3A%2F%2Fwww .scd.uscourts.gov%2FForms%2FPro_Hac_Vice%2FPro_Hac_Vice_Applic ation_(Word).doc&wdOrigin=BROWSELINK (requiring applicants to attach a copy of any order of denial of *pro hac vice* admission).

attorneys *pro hac vice* "would escape review entirely." *In re Pruett*, <u>133 F.3d 275, 280</u> n.10 (4th Cir. 1997); *see also Fluor Intercontinental*, <u>803 F. App'x at 700</u> ("As to appealing from a contempt order, we have previously held that such an appellate remedy is hardly 'adequate.'" (cleaned up)).

*Second*, an appeal is not an adequate means to remedy the district court's *pro hac vice* decision. A district court's denial of *pro hac vice* admission "is neither a final order appealable under <u>28 U.S.C. § 1291</u> . . . nor an interlocutory order appealable under <u>28 U.S.C. § 1292.</u>" *In re United States*, <u>791 F.3d at 958</u>–59. This Court has likewise expressed "grave doubt whether the denial of [*pro hac vice*] permission is appealable." *Thomas*, <u>249 F.2d at 92</u>.

Nor can the denial of Mr. Runyon's counsel be effectively addressed in an appeal at the conclusion of the district court proceeding. *See Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, <u>586 F.3d 703, 710</u> (9th Cir. 2009) ("[A] lost choice of counsel cannot be adequately remedied through means other than mandamus and the resultant harm is not correctable on appeal."). By that point, Mr. Runyon will have been forced to litigate the remainder of his proceeding, including an evidentiary hearing, without his counsel of his choice. The harm will have been done, and it "is not

32

JA2215

correctable on appeal." *Id.*; *see also In re United States*, <u>791 F.3d at 960</u> (finding that mandamus for denial of *pro hac vice* admission would have been appropriate but for district court's "voluntary cessation"); *In re Evans*, <u>524 F.2d 1004, 1008</u> (5th Cir. 1975) (granting mandamus where district court improperly denied motion for *pro hac vice* admission).

These circumstances are similar to those faced by the Court in *In re Federal Savings & Loan Insurance Corp.*, No. 88–3814, <u>1988 WL 76272</u>, at \*5 (4th Cir. July 11, 1988) (unpublished). There, the petitioner sought mandamus to challenge (a) the district judge's refusal to recuse himself where the circumstances of the case called into question his impartiality and (b) the court's revocation of the petitioner's counsel's *pro hac vice* admission. *Id.* at \*3. The respondent argued that the petitioner had "avenues other than mandamus in which to seek vindication." *Id.* This Court granted the petition, finding that recusal was required and mandamus relief was appropriate. *Id.* at \*3–\*4.

Here, too, the district court's denial of Ms. Peiffer's request to withdraw and repeated refusal to admit *pro hac vice* Mr. Runyon's counsel from Covington has left Mr. Runyon in the position of proceeding headlong toward an evidentiary hearing with effectively a single attorney

who has been on the case for only a few months; he will not be able to remedy this situation on appeal. And he stands alone in this posture. As the record before the district court showed, every other person on federal death row litigating a § 2255 petition has at least two (and sometimes more) active counsel of record. *See* Ex. 2 ¶ 5. There is "but one method"—mandamus—"that will restore" his right to use his counsel of choice. *In re Federal Savings & Loan Insurance Corp.*, 1988 WL 76272, at *4.

## III. Granting This Writ Is Appropriate under the Exceptional Circumstances of the Case.

There are several exceptional circumstances that justify a writ of mandamus here, including the unfair prejudice Mr. Runyon will endure and the seriousness of the issues at stake in his case, the heightened need for this Court's intervention to ensure proper judicial administration, the fact this case presents an issue of first impression, and the extreme limitations that the district court has imposed on Covington's representation of Mr. Runyon. Mandamus is appropriate to address and rectify each of these concerns.

**Unfair prejudice to Mr. Runyon's complex capital case.** The claim that this Court remanded—*i.e.*, "ineffective assistance of counsel for failure to investigate and present evidence of his brain damage and

mental health," *Runyon*, <u>994 F.3d at 212</u>—involves complicated medical, factual, and legal issues, including several neurological and psychological evaluations of Mr. Runyon, the facts concerning trial counsel's mitigation investigation, and whether trial counsel's conduct comported with prevailing professional standards. *See id.* at 208–09, 212. The district court recognized the case's high stakes and complexity when it appointed Ms. Ali as second counsel. Ex. 3 at 1–2 (noting "the seriousness of the capital penalty in this case, the amount of discovery yet to be completed, and the complexity of the case").

Mr. Runyon's forthcoming evidentiary hearing will address not only whether trial counsel "made a strategic choice not to pursue the potentially mitigating evidence after a reasonable investigation," but also whether that failure to investigate prejudiced Mr. Runyon. *Runyon,* <u>994 F.3d at 208</u>–09. These questions implicate several experts apart from the two directly mentioned in the opinion itself (Dr. Mirsky and Dr. Merikangas), and it will be necessary to have multiple experts present the appropriate complex and technical evidence about Mr. Runyon's brain damage and mental health. There will also be an expert on the prevailing professional standards of conduct. Separate from the expert

35
**JA2218**

witnesses, there will likely be further examination of trial counsel to evaluate their decisions or the lack thereof. *See id.* at 208 (observing that the facts of this case are "much like those that we recently considered in *Williams*, where 'evidence of [fetal alcohol syndrome] was reasonably available, but counsel failed to connect the indicators suggesting further investigation.'" (quoting *Willliams v. Stirling*, <u>914 F.3d 302, 315</u> (4th Cir. 2019))).

There is also substantial discovery—namely, review and production of documents—that must be completed by August 31, 2023. As noted above, FDSET provided 70 bankers boxes of paper documents and more than 200,000 electronic files that Mr. Runyon's counsel is continuing to review.

At present, Mr. Runyon has only one counsel of record (Ms. Ali) who is available to complete discovery and to prepare for and participate in the evidentiary hearing. Given her conflict of interest, Ms. Peiffer cannot adequately or effectively represent Mr. Runyon. *See* Mot. for Stay Pending Appeal at 9–18, *In re: Elizabeth Peiffer*, No. 23-5, ECF No. 8 (4th Cir. June 30, 2023). That leaves Ms. Ali to complete discovery and handle the hearing, but she only began work on this long-running case within

36

**JA2219**

the past few months, and she has had to spend most of her time to date on discovery and document production, thus limiting her ability to prepare for the upcoming evidentiary hearing. A single counsel of record appointed just months before an evidentiary hearing would be inadequate in any § 2255 proceeding—let alone a proceeding such as this one that involves complicated medical, legal, and factual issues, a lengthy history, and a voluminous record.

The prejudice to Mr. Runyon is even greater considering that at least three lawyers are actively participating on behalf of the government, two of whom have been involved since the trial in this matter. Mr. Runyon bears the burden of proof in this proceeding, and his life hangs in the balance. Yet the district court's arbitrary counsel rulings have given the government a substantial advantage.

**Heightened need for judicial administration.** This Court has held that mandamus is appropriate "when supervisory control of the district court is 'necessary to the proper judicial administration of the federal system.'" *In re Fed. Sav. & Loan*, 1988 WL 76272, at *3 (quoting *U.S. Bd. of Parole v. Merhige*, 487 F.2d 25, 30 (4th Cir. 1973)). Our system of justice depends on the ability of litigants to retain counsel to represent

37

**JA2220**

them in federal litigation, and in enacting § 3599, Congress determined that counsel plays an essential role in federal capital habeas proceedings. *See supra*, § I.A. These circumstances justify the extraordinary remedy of mandamus.

**Issue of first impression.** Mandamus is also appropriate because this case presents "an issue of first impression that involves the power of the district court," and "an issue likely to be faced by other district courts but for which there is scant authority, and it is of a nature that is likely to escape effective review." *Pruett*, 133 F.3d at 281 (granting mandamus where district court issued *ex parte* discovery order); *see also SEC v. Rajaratnam*, 662 F.3d 159, 171 (2d Cir. 2010) (mandamus is appropriate where petition order raises a "novel and significant question of law" whose resolution "will aid in the administration of justice").

As explained above, the district court has refused to admit attorneys who indisputably meet the requirements for *pro hac vice* admission under Local Civil Rule 83.1(E) and Local Criminal Rule 57.4(E), and the reasons for the court's refusal are not grounded in the local rules or any other authority. Like the *ex parte* discovery order in *Pruett*, this appears to be an issue of first impression; it involves the

38

**JA2221**

power of the district court; and it is likely to escape effective appellate review after the evidentiary hearing has taken place. *See* 133 F.3d at 281.

**Extreme limitations on Covington's ability to represent Mr. Runyon.** Finally, the district court's suggestion that Covington may contribute to the case, even if not counsel of record, is no answer to an improper refusal to admit them as counsel of record. *See* Ex. 9 at 3 ("Ms. Peiffer and Ms. Ali may continue to utilize the services of *pro bono* attorneys . . ."). Instead, it only highlights how limited the Covington attorneys' involvement can be absent this Court's intervention. If the Covington attorneys are not counsel of record, they will be unable to present and question witnesses at the evidentiary hearing, argue any motions, or otherwise address the court during hearings or status conferences. The district court further made clear that the attorneys may not produce discovery to the government or otherwise communicate with the government as representatives of Mr. Runyon. Ex. 8 at 27:23–28:1 ("But if you're not admitted in a case as counsel, you're not on the docket sheet as any type of counsel of record, and local counsel of record are responsible."); *id.* at 52:15–16 ("[O]nly counsel that are admitted in this case will be part of the meet and confer.").

This leaves Mr. Runyon without the counsel he selected to perform the most critical tasks in this proceeding (at no cost to the court). The fact that Covington is able to provide some help in the background—while Ms. Ali is forced to handle the evidentiary hearing by herself—does not ameliorate the dual harms to Mr. Runyon of losing the counsel he selected for the hearing and increasing the burden on his existing counsel.

40

**JA2223**

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant the petition and direct the district court to admit the Covington attorneys in these federal death penalty proceedings upon submission of *pro hac vice* applications demonstrating that they satisfy the requirements of the local rules.

July 7, 2023

Kathryn M. Ali
ALI & LOCKWOOD LLP
300 New Jersey Avenue, N.W.
Suite 900
Washington, D.C. 20001
(202) 651-2475
katie.ali@alilockwood.com

Respectfully submitted,

Nicholas J. Xenakis
Peter A. Swanson
Santiago M. Zalazar
Eric T. O'Brien
Meaghan A. Ryan
Tyler G. VanderMolen
Rachel D. Bercovitz
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4957
(202) 662-6000
nxenakis@cov.com

*Counsel for Petitioner*

41

# CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitations of <u>Federal Rule of Appellate Procedure 21(d)(1)</u> because it contains 7,761 words.

2. This petition complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: July 7, 2023          Respectfully submitted,

/s/ *Nicholas J. Xenakis*

Nicholas J. Xenakis
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4957
(202) 662-6000
nxenakis@cov.com

*Counsel for Petitioner*

42
**JA2225**

## CERTIFICATE OF SERVICE

I certify that on this 7th day of July, 2023, a copy of the foregoing

Petition for Writ of Mandamus and exhibits were served by Federal

Express on the following:


The Honorable Rebecca Beach Smith
United States Courthouse
2400 West Avenue
Newport News, VA 23607

Brian J. Samuels
Lisa R. McKeel
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: brian.samuels@usdoj.gov
Email: lisa.mckeel@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Phone: (202) 923-7154
Fax: (202) 305-9779
Email: carrie.ward@usdoj.gov

Elizabeth J. Peiffer
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906


**JA2226**

Phone: (434) 817-2970
Fax: (434) 817-2972
Email: epeiffer@vcrrc.org

\*    \*    \*

Dated: July 7, 2023                    Respectfully submitted,

/s/ *Nicholas J. Xenakis*

Nicholas J. Xenakis
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth
Street, N.W.
Washington, D.C. 20001-4957
(202) 662-6000
nxenakis@cov.com

*Counsel for Petitioner*

**JA2227**

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on July 21, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

July 21, 2023

/s/ Catherine E. Stetson

Catherine E. Stetson