**No. 23-5**

IN THE

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

In re: Elizabeth Jane Peiffer,
                                   *Appellant*.

United States of America,
                                   *Plaintiff-Appellee*,
          v.

David Anthony Runyon,
                                   *Defendant*.

On Appeal from the United States District Court for the Eastern District of
Virginia
No. 4:08-cr-00016-RBS-DEM
(The Honorable Rebecca Beach Smith)

**AMICUS CURIAE BRIEF
OF JAMES M. MCCAULEY, ESQ., AND PROFESSOR JAMES E.
MOLITERNO
IN SUPPORT OF APPELLANT'S BRIEF**

Matthew L. Engle
DONOVAN & ENGLE, PLLC
1134 East High St., Unit A
Charlottesville, Virginia 22902
Phone: (800) 428-5214
Fax: (434) 465-6866
matthew@donovanengle.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

IDENTITY AND INTERESTS OF AMICUS CURIAE .......................................... 1

STATEMENT OF FACTS ................................................................................ 4

ARGUMENT ................................................................................................. 8

    I. Under the Applicable Rules of Professional Conduct, the Described Circumstances Require Ms. Peiffer to Withdraw from Representing Mr. Runyon ................................................................. 8

    II. The District Court's Justifications for Refusing Withdrawal and Substitution of Counsel Are Not Consistent with the Rules of Professional Responsibility, Common Practice, or the Record in Mr. Runyon's Case ...................................................................... 12

CONCLUSION .............................................................................................. 20

CERTIFICATE OF COMPLIANCE .................................................................... 21

CERTIFICATE OF SERVICE ........................................................................... 22

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES:**

*United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021) ............................................ 5
*United States v. Runyon*, Crim. No. 4:08cr16 (E.D. Va. Nov. 4, 2014) ..........*passim*

**CODES:**

18 U.S.C. § 3599 .................................................................................................. 4,18
28 U.S.C. § 2254 ...................................................................................................... 16
28 U.S.C. § 2255 ...................................................................................................... 4,5

**OTHER AUTHORITIES:**

7 Guide to Judicial Policies and Procedures, ch. VI, § 6.01 .................................. 14
THE AMERICAN LEGAL PROFESSION IN CRISIS: RESISTANCE AND
 RESPONSES TO CHANGE (Oxford Univ. Press 2014) ...................................... 3
CASES AND MATERIALS ON THE LAW GOVERNING LAWYERS (4th ed.
 Lexis, 2012) ...................................................................................................... 3
CJA Guideline § 6.01 ................................................................................................ 5
GLOBAL ISSUES IN LEGAL ETHICS (West 2013, with Paton) .................................... 3
*Request a Legal Ethics Opinion*, Virginia State Bar,
 https://vsb.org/Site/lawyers/ leo-request.aspx (last visited July 12,
 2023) ................................................................................................................. 11
United States District Court for the Eastern District of Virginia Criminal
 Justice Act Plan § XIV.E.2 (approved Nov. 6, 2019) ................................. 13
Va. R. Prof. Conduct 1.2 ........................................................................................ 13
Va. R. Prof. Conduct 1.7 ...................................................................................*passim*
Va. R. Prof. Conduct 1.10 ...................................................................................... 17
Va. R. Prof. Conduct 1.16 ................................................................................ 9,10,12
Va. R. Prof. Conduct 1.18 ...................................................................................... 17

**IDENTITY AND INTERESTS OF AMICUS CURIAE**

James Michael McCauley is the former head of the Ethics Department of the Virginia State Bar (VSB). Beginning in 1989, he served at the Virginia State Bar for six years as an Assistant Bar Counsel investigating and prosecuting lawyer misconduct. In March 1995, Mr. McCauley became Ethics Counsel for the VSB until his retirement in November 2022. His responsibilities included interpreting the Rules of Professional Conduct, writing Legal Ethics Opinions, and answering attorney inquiries on the ethical practice of the law.

Throughout his career he has been a leader nationally and internationally in the development and interpretation of the ethical obligations of lawyers, and educated lawyers, judges, and the general public on the professional responsibilities of lawyers and the legal profession. For example, he taught Professional Responsibility for nineteen years at the T.C. Williams School of Law at the University of Richmond in Richmond, Virginia. He served on the American Bar Association's Standing Committee on Legal Ethics and Professionalism, and as a member on the Virginia State Bar's Mandatory Professionalism Course faculty. Mr. McCauley has served as a consultant to the Ankara and Istanbul Bars in 2005 and the regulatory Bar in the Republic of Georgia in 2013 and 2017. He was a Fellow of the Virginia Law and the American Bar Foundations, and a member of the John Marshall Inn of Court in Richmond, Virginia. In 2013, Mr. McCauley was appointed

by Chief Justice Kinser of the Supreme Court of Virginia to serve on the Special Committee to Study Criminal Discovery Rules. He also was elected in 2014 to the Board of Directors, Lawyers Helping Lawyers, and recognized in the Class of 2018 "Leaders in the Law" sponsored by the Virginia Lawyers Weekly.

Since 2022, Mr. McCauley has been in private practice, continuing to advise and represent people on matters related to the ethical practice of law.

James E. Moliterno is the Vincent Bradford Professor of Law Emeritus at Washington & Lee School of Law in Lexington, Virginia. For twenty-one years prior to joining the Washington & Lee faculty in 2009, he was the Tazewell Taylor Professor of Law, Director of the Legal Skills Program, and Director of Clinical Programs at the College of William & Mary in Williamsburg, Virginia. He served as Vice Dean at William & Mary from 1997–2000. He has taught legal ethics courses and professional skills courses at six law schools over the past forty-one years. A member of the American Law Institute, he has held committee leadership roles in both the Association of American Law Schools and the American Bar Association. He was the 2012 recipient of the Rebuilding Justice Award from the Institute for the Advancement of the American Legal System (IAALS) in recognition of his career-long legal education reform work.

Professor Moliterno is author or co-author of ten books including THE AMERICAN LEGAL PROFESSION IN CRISIS: RESISTANCE AND RESPONSES TO CHANGE

(Oxford Univ. Press 2014), GLOBAL ISSUES IN LEGAL ETHICS (West 2013, with Paton) and CASES AND MATERIALS ON THE LAW GOVERNING LAWYERS (4th ed. Lexis, 2012). He is also the author of numerous articles on legal ethics and the teaching of legal ethics. Under Professor Moliterno's direction, the William & Mary Legal Skills Program was recognized as a model for the teaching of professional skills and ethics, and received the inaugural ABA Gambrell Professionalism Award in 1991.

Professor Moliterno has engaged in substantial international legal ethics and legal education reform work, designing new lawyer and judge ethics courses in Serbia, Armenia, Georgia, Czech Republic, North Macedonia, Japan, Indonesia, and Thailand. He has trained law professors in China, Thailand, Georgia, Armenia, and Serbia. He has trained judges in Kosovo and both judges and prosecutors in Slovakia and Indonesia. He has worked to revise the lawyer ethics code in Thailand and Georgia and lectured extensively on international lawyer ethics topics in Spain, Czech Republic, and Slovakia. He has prepared course materials that are in use in Georgia, Slovakia, Serbia, Armenia, Thailand, Czech Republic, Japan, Australia, Indonesia, and China.

Mr. McCauley and Professor Moliterno (hereinafter "Amici") have throughout their careers promoted the fair and informed application of ethical rules and principles in the legal profession, including litigation and attorneys'

representations of clients. In addition to their interests in well-informed analyses of professional responsibilities, is their common belief that reasonable and balanced applications of rules and principles of ethics to real life circumstances are critical to maintaining appropriate levels of confidence in clients, lawyers, and the general public in outcomes the legal system produces.

The parties consented to the filing of this brief.

## STATEMENT OF FACTS

Amici will avoid repeating facts set out in Appellant's Brief, ECF No. 20. The argument below is based on those facts and the materials cited therein, with the exception of Ms. Peiffer's declaration, which was filed under seal.

Generally, Amici note that David Runyon was convicted and sentenced to death in the United States District Court for the Eastern District of Virginia in 2009. In November 2014, pursuant to 18 U.S.C. § 3599, the district court appointed Michele Brace to represent Mr. Runyon in proceedings under 28 U.S.C. § 2255. Memorandum Order, *United States v. Runyon*, Crim. No. 4:08cr16 (E.D. Va. Nov. 4, 2014) ECF No. 410 (hereinafter "E.D. Va. ECF No.").[1] Six months later, the court refused to appoint as co-counsel Federal Defender Services of Eastern Tennessee

---

[1] Although the district court clerk assigned a distinct case number to proceedings under 28 U.S.C. § 2255—4:15cv108— the court continued to enter documents filed in the § 2255 proceeding in the criminal case docket.

(FDSET) because "[t]he court does not appoint organizations to represent individual criminal defendants; rather the court appoints individual attorneys to represent individual defendants." Order at 5, E.D. Va. ECF No. 435. But the court found circumstances in the case warranted appointment of a second attorney and appointed Dana Hansen Chavis, an attorney at FDSET, as Ms. Brace's co-counsel. *Id.* at 5–6; *see also* CJA Guideline § 6.01(A).

In 2017, the district court denied Runyon's motions for discovery and his motion for relief pursuant to 28 U.S.C. § 2255 without an evidentiary hearing. Op., E.D. Va. ECF No. 560. In 2021, this Court vacated the district court's dismissal of Mr. Runyon's post-conviction petition and remanded the case to the lower court to conduct an evidentiary hearing on allegations that Mr. Runyon's Sixth Amendment right to counsel was violated by trial counsel's failure to adequately investigate and present evidence of Mr. Runyon's mental health, including evidence of brain damage. *United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021).

In November 2021, Elizabeth Peiffer was substituted as counsel when Ms. Brace retired from the practice of law. E.D. Va. ECF No. 649. The evidentiary hearing was scheduled for February 2023. In the midst of the February 2023 evidentiary hearing, Ms. Chavis and a second attorney from FDSET, who had been admitted pro hac vice at the start of the hearing to handle designated witnesses, were both allowed to withdraw from the representation, leaving Ms. Peiffer as sole

counsel. The hearing was suspended, and Mr. Runyon was directed he could propose co-counsel.

In April 2023, Mr. Runyon moved for the appointment of Kathryn Ali and advised the court that he had arranged for attorneys from Covington & Burling LLP to represent him pro bono and upon admission pro hac vice. E.D. Va. ECF Nos. 802–03. The court found that the seriousness and complexity of the case, along with the high volume of discovery to be analyzed, justified appointment of a second lawyer, and appointed Ms. Ali. E.D. Va. ECF No. 810. However, the court stated that it did not intend to admit counsel pro hac vice. *Id.*

Later in April, Ms. Peiffer's mother, who is seventy-five years old, injured her hip in a fall at her home and received x-rays. Br. Appellant at 10–12.[2] These x-rays led to further medical tests that revealed that Ms. Peiffer's mother has Stage IV breast cancer that metastasized to her hip, ribs, spine, lungs, and liver. *Id.* She could not walk safely without assistance, and soon began the regimen of treatment to address her cancer. Ms. Peiffer, who lives near her parents, immediately became an essential part of her mother's care. *Id.*

---

[2] The brief refers to a declaration from Ms. Peiffer filed under seal. Amici rely on representations regarding its contents made in Ms. Peiffer's motion to withdraw and supporting memorandum filed in the district court, E.D. Va. ECF Nos. 814, 815, and in Appellant's Brief, ECF No. 20.

In light of the immediate and anticipated demands on her time, resources, and energy in caring for her mother, and the significant and competing demands in preparing for an evidentiary hearing in a federal death penalty case, Ms. Peiffer concluded that she must withdraw from Mr. Runyon's case. *Id.* She consulted ethics counsel for the Virginia State Bar (VSB), who independently concluded withdrawal was mandatory in Ms. Peiffer's circumstances. *Id.* With the support of Mr. Runyon and Ms. Ali, Ms. Peiffer sought leave in the district court to withdraw. E.D. Va. ECF Nos. 814, 815.

The district court denied Ms. Peiffer's motion to withdraw. E.D. Va. ECF No. 820. It found that withdrawal was not required, Order at 2, E.D. Va. ECF No. 820; June 16, 2023 Tr. at 16 ("June 16 Tr."), and faulted Ms. Peiffer for not providing an ethics opinion from the VSB's ethics counsel to support her motion, June 16 Tr. at 8, 11. The court acknowledged that Ms. Peiffer's representation of Mr. Runyon might be limited by her responsibilities to assist her mother, but found this acceptable because Ms. Peiffer's duties in the representation could be shifted to co-counsel, Ms. Ali, *id.* at 6, 16 (Peiffer can proceed on the case "on a limited basis"), 19 (Peiffer "can certainly take a lesser role"), or to another lawyer at the not-for-profit that employs Ms. Peiffer, *see, e.g.*, *id.* at 16. Despite these acknowledgements, the court found the interests of justice required Ms. Peiffer to remain representing Mr. Runyon. Order at 2, E.D. Va. ECF No. 820. The Court ordered that all discovery

be completed by August 31, 2023, and set a multi-week evidentiary hearing to begin on November 1, 2023.

## ARGUMENT

**I.     Under the Applicable Rules of Professional Conduct, the Described Circumstances Require Ms. Peiffer to Withdraw From Representing Mr. Runyon**

Under the Virginia Rules of Professional Conduct, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Va. R. Prof. Conduct 1.7(a). As applicable in Ms. Peiffer's circumstances, such a conflict exists if "there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to . . . a third person or by a personal interest of the lawyer." *Id.* 1.7(a)(2).

The personal conflict of interest and resultant risk of material limitation on Ms. Peiffer's representation of Mr. Runyon is clearly set out in her motion to withdraw and supporting memorandum. E.D. Va. ECF Nos. 814, 815. While it is impossible to predict long-term developments in Ms. Peiffer's mother's health, Ms. Peiffer made clear that immediate demands on her time, attention, energy, and ability to travel are significant and unlikely to abate during her mother's cancer treatments for at least three or four months—and the court set a crucial deadline on August 31, 2023, and set a multi-week evidentiary hearing to begin on November 1, 2023, which would require preparation. These demands create a significant risk that Ms. Peiffer's

representation of Mr. Runyon will be materially limited, and require her to withdraw from the representation.

The district court acknowledged on the record that Ms. Peiffer's representation would be limited by her circumstances. *See, e.g.*, June 16 Tr. at 6, 16 (Peiffer can proceed on the case "on a limited basis"), 19 (Peiffer "can certainly take a lesser role"). It is important to note that an attorney's representation as an officer of the court about the impact of a conflict in the representation should be given great weight where, as here, there is no evidence to the contrary. The fact that some other counsel might profess his or her capacity to carry on without material limitation in similar circumstances, as referenced by the district court, *see, e.g.*, June 16 Tr. 10, 15–16 ("we all have problems"), is not relevant to assessing the impact on Ms. Peiffer's representation of Mr. Runyon. The requirement that Ms. Peiffer withdraw from representing Mr. Runyon was rightly confirmed in her consultation with ethics counsel for the Virginia State Bar.

Because continuing in the representation in her conflicted circumstances would violate Rule 1.7, Ms. Peiffer's withdrawal also is required under Rule 1.16(a)(1), which mandates withdrawal when "the representation will result in violation of the Rules of Professional Conduct."[3]

---

[3] There also is a reasonable possibility that prolonged and exhausting mental and physical demands on Ms. Peiffer as a result of caring for her mother through her

Despite these undisputed bases for withdrawal, the district court found that Ms. Peiffer does not have a conflict of interest requiring her to withdraw, and, in fact, was ethically obligated to continue her representation of Mr. Runyon. Order at 2, ECF No. 820; June 16 Tr. at 16. This finding is diametrically opposed to Ms. Peiffer's actual ethical obligations to Mr. Runyon and the interests of justice, as well as to the preferences of Mr. Runyon and co-counsel. Because Mr. Runyon has not consented to Ms. Peiffer staying on the case but providing something far less that a full and effective representation of his interests, she is required to withdraw from the representation.

There was no evidence to rebut Ms. Peiffer's evidence and reasonable assertions that her circumstances presented a significant risk that her representation would be materially limited. If a lawyer has a conflict the lawyer must withdraw from the representation unless the conflict is curable with the client's informed consent under Rule 1.7(b). It would be manifestly unfair and unreasonable to even seek consent from Mr. Runyon under these circumstances. See Cmt. [19] to R. 1.7:

> A client may consent to representation notwithstanding a conflict. However, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.

---

cancer treatments could result in a material impairment in her ability to adequately prepare for the November 2023, evidentiary hearing in this death penalty case which, in and of itself, would require withdrawal. *See* R. 1.16(a)(2).

While the court may say that Ms. Peiffer "can certainly take a lesser role," June 216 Tr. at 19, a material limitation must be cured by the client's informed consent under Rule 1.7(b). Moreover, whether client consent is sufficient to cure a conflict under Rule 1.7 must be viewed from the perspective of a disinterested lawyer under Cmt. 19 . How could it be reasonable for Mr. Runyon to consent to limiting Ms. Peiffer's representation in such an important matter? Rule 1.7 is for the client's protection and any limitation on the representation must be fully explained and agreed to by the client. Moreover, client consent is ineffective if a disinterested lawyer would not seek the client's consent in the first place.

The district court based its denial of the motion to withdraw, in part, on Ms. Peiffer's failure to provide a legal ethics opinion from the Virginia State Bar on her conflict of interest. June 16 Tr. at 8, 11. But it is the policy of the Virginia State Bar's Committee on Legal Ethics to issue legal ethics opinions only for "a hypothetical set of facts and "may decline to issue an opinion if the questions raised is the subject of collateral litigation." *Request a Legal Ethics Opinion*, Virginia State Bar, https://vsb.org/Site/lawyers/ leo-request.aspx (last visited July 12, 2023). In the experience of Amici, it is essentially unheard of for ethics counsel to issue a Legal Ethics Opinion on an issue arising from active litigation. In Mr. McCauley's thirty years of service as ethics counsel to the bar, he does not recall a single instance in which a legal ethics opinion was provided to address a matter in pending litigation.

11

**II.    The District Court's Justifications for Refusing Withdrawal and Substitution of Counsel Are Not Consistent with the Rules of Professional Responsibility, Common Practice, or the Record in Mr. Runyon's Case**

A few months after the suspension of the February 2023 evidentiary hearing, Mr. Runyon was able to acquire counsel who could substitute for Ms. Peiffer and were ready and able to continue the proceedings within the timetable ultimately established by the district court for resumption of the evidentiary hearing. *See* Appellant's Mot. Stay at 8, ECF No. 8; June 16 Tr. at 21. This solution, however, was rejected by the district court. In Amici's estimation, the district court's justifications for refusing withdrawal and substitution and imposing on Mr. Runyon and Ms. Peiffer the continuation of the conflicted relationship are not consistent with rules of professional conduct or common practice, and do not appear to be supported by the record in this case.

The Court's approval of Ms. Peiffer continuing in the representation of Mr. Runyon on a "limited basis," June 16 Tr. at 16, or in a "lesser role," *id.* at 19, essentially conceded that her conflicted circumstances created a "significant risk" the representation will be "materially limited," Va. R. Prof. Conduct 1.7(a)(2), and effectively reduced Mr. Runyon to the assistance of only one counsel.[4] The court

---

[4] By absolving Ms. Peiffer of her normal responsibilities in the representation the district court might have insulated her from potential ethical sanctions, R. 1.16(c), but did nothing to resolve the conflict between Ms. Peiffer and Mr. Runyon. And, by the end of the hearing, the court appeared to take back its approval of Ms.

cannot force Mr. Runyon to accept less than full representation if there is a significant risk that the representation will be materially limited. Moreover, consistent with Rule 1.2(b), the lawyer may not limit the scope of the representation if the limited scope representation would violate other rules of conduct including the duty to represent the client competently under Rule 1.1. See comment [7] to Rule 1.2. This irresolvable dilemma is solved by the solution Mr. Runyon proposed through substitution of counsel.

This also is not consistent with the recognition that two or more counsel are needed in light of case-specific factors in this federal death penalty case in: i.) the district court's May 17, 2023, Order appointing second counsel, E.D. Va. ECF No. 810; ii.) the court's published policy regarding the appointment of at least two lawyers in § 2255 proceedings in death penalty cases, United States District Court for the Eastern District of Virginia Criminal Justice Act Plan § XIV.E.2 (approved

---

Peiffer's "lesser role," *see, e.g.*, June 16 Tr. 39 ("Ms. Peiffer is responsible [for documents]"); 48 ("Ms. Peiffer for now . . . has to be responsible and stay in the case"), leaving the scope of her responsibilities unclear, and raising the threat of sanctions if her representation of Mr. Runyon does not meet the district court's approval, *id.* 32. For example, after Mr. Runyon's counsel provided a disclosure document that was almost entirely redacted in compliance with the November 30, 2021, Agreed Protective Order, ECF No. 652 ("Documents shall be redacted if they address other aspects of counsel's representation of the Petitioner that are not necessary for resolution of the Petitioner's claims about counsel's conduct"), the district court "warn[ed] everybody we are going to have some possible sanction or contempt proceedings [if this happens again] because this is just not proper and contrary to the Court's orders." June 16 Tr. at 32.

Nov. 6, 2019) (hereinafter "E.D. Va. CJA Plan") ("[d]ue to the complex, demanding, and protracted nature of death penalty proceedings"); iii.) the published guidelines of the federal judiciary, 7 Guide to Judicial Policies and Procedures, ch. VI, § 6.01(A)(2); or iv.) the reported universal practice of other federal courts, *see* E.D. Va. ECF No. 803 at 3–4 & n.5.

The district court held that allowing Ms. Peiffer to take a lesser role in light of her circumstances was not, and would not become, a problem because Mr. Runyon's case was no longer at its inception, June 16 Tr. at 22–23, and Ms. Peiffer's duties could be assumed by co-counsel, Ms. Ali, *id.* at 6, 8, 10 ("Ms. Ali to take the lead role), 22 (amending order to make Ms. Ali "lead counsel"), 57. But, just a month earlier, the court had ruled that, due to the seriousness of the imposed death sentence, the volume of discovery to be reviewed, and the complexity of the case, appointment of a second qualified attorney "for the sole purpose of moving the case forward on the one issue now before the court for an evidentiary hearing" was warranted. Order at 1–2, E.D. Va. ECF No. 810. Thus, the court already had found the current and anticipated demands of Mr. Runyon's case sufficiently justified appointment of second counsel.

Absent extraordinary circumstances like causing prolonged delay in proceedings, a motion to withdraw based on a conflict requires a binary decision: if there is significant risk of a material limitation in the representation, withdrawal

should be granted. Here, the district court was influenced by a number of extraneous and irrelevant factors, often based on interpretations of these factors that were not supported by the record of this case.

For example, the district court maintained that Ms. Peiffer or another lawyer from the not-for-profit firm where Ms. Peiffer is employed must remain in the case because she or the other lawyer would ensure "institutional memory" of Mr. Runyon's case and continuity of counsel. *See, e.g.*, June 16 Tr. 10, 16, 24, 57. But the record shows that the lawyer initially appointed to represent Mr. Runyon, Michele Brace, is no longer employed by the not-for-profit and no longer practices law. She made clear to the district court shortly after her appointment in 2014 that no one else from the not-for-profit was or would be working on Mr. Runyon's case. *See* Def.'s Mot. Clarification of Procedure Related to Documents Under Seal at 2, n. 1, E.D. Va. ECF No. 425 ("Other than Attorney Brace, no lawyer or nonlegal staff member at the Virginia Capital Representation Resource Center has been—or will be—available to work on Runyon's case."); *see also* Mem. Supp. Mot. Appointment of Co-counsel at 6, E.D. Va. ECF No. 433. She also made clear to the court in 2021, when moving for substitution of counsel, that Ms. Peiffer had only "very general knowledge of Runyon's case" and had "not previously worked on it." Pet'r's Mot. to Allow Attorney Brace to Withdraw at 2, E.D. Va. ECF No. 648. Ms. Peiffer also advised the court that, because another death-sentenced client had a jurisdictional

statutory deadline of February 14, 2023, to file a petition pursuant to 28 U.S.C. § 2254, her ability to participate in the preparation of an evidentiary hearing set on October 18, 2022, to begin on beginning on February 7, 2023, would be substantially limited. November 2, 2022 Tr. at 7–11, ECF No. 700. The district court was reminded again recently that other attorneys at the not-for-profit had not had substantial involvement in Mr. Runyon's case. June 16 Tr. at 12. Whatever memories Ms. Brace had of her representation of Mr. Runyon are no longer accessible to her former employer and there is no factual or ethical basis to impute that knowledge to lawyers who did not work with her on the case.[5]

The manner in which the court appointed individual counsel in this case—and refused to appoint organizations or law firms—is correct. Relationships and ethical obligations are between individual lawyers and clients and not between legal

---

[5] The attorney who represented Mr. Runyon in § 2255 proceedings for the longest period of time was Dana Chavis, appointed in May 2015. E.D. Va. ECF No. 435. She, as recognized by the district court, had "done the lead work in this case," Evid. Hrg. Tr. 1008, and presumably would have had the most institutional memory of the proceedings. However, the district court allowed Ms. Chavis to withdraw from the case and ordered that she "have no further involvement with [Mr. Runyon's] case," including access to "documents, exhibits, memoranda, conversations, and so forth," Order at 1, E.D. Va. ECF No.787, eliminating any benefit her memory could provide. In contrast, Ms. Peiffer had assured the court in moving to withdraw that she would make herself available to assist with transition of the case to other counsel. Br. Appellant at 33, ECF No. 20 (citing sealed declaration).

organizations or law firms and the clients represented by lawyers in those organizations or firms. This is because legal organizations do not represent clients and the rules of professional responsibility are not imposed on legal organizations.[6] The client-lawyer relationship is between the individual client and individual lawyer, and the rules of professional responsibility address that interpersonal relationship. For example, if a lawyer leaves a firm, lawyers remaining at the firm are free to represent new clients with interests materially adverse to those of the former lawyer's clients, so long as the new representation is not in the same or substantially related matter in which the former lawyer represented her client, and other lawyers at the firm do not possess confidential information about the matter. Va. R. Prof. Conduct 1.10(b). Similarly, a lawyer can represent a client even when a second lawyer in the same organization or law firm has acquired information that would disqualify the second lawyer from representing the client, so long as sufficient "screening" procedures are employed. Va. R. Prof. Conduct 1.18.

Contrary to the court's previous ruling that it would "not appoint organizations to represent" Mr. Runyon, Order at 5, E.D Va. ECF No. 435, the district court claimed at the June 16 hearing that it had previously appointed the

---

[6] Clients can contract with law firms for services, thereby creating contractual obligations the parties can enforce, but there is no contract with a law firm in these proceedings. Even were such an arrangement in place, the ethical duties remain between the client and the particular attorneys involved in the representation.

organization where Ms. Brace worked at the time it appointed Ms. Brace. June 16 Tr. at 12, 23, 24, 38 ("Virginia Capital Resource Center . . . were always lead counsel");[7] *see also* Order at 2 n.2, E.D. Va. No. 820. A review of the orders appointing counsel in this case, however, shows the court to have appointed attorneys by name only, consistent with its stated policy, and do not show that the court appointed any organization to represent Mr. Runyon. E.D. Va. ECF Nos. 410 ("The court hereby substitutes and appoints Ms. Michele Brace as counsel, pursuant to 18 U.S.C. § 3599, to represent the Defendant on collateral review in this court."), 435 ("The court hereby appoints Ms. Dana Hansen Chavis as habeas co-counsel, pursuant to 18 U.S.C. § 3599, to represent the Defendant on collateral review in this court, subject to her admission to practice pro hac vice."), 649 ("the court GRANTS the Motion to Withdraw and APPOINTS Ms. Peiffer as substitute counsel to represent Petitioner in his ongoing habeas corpus proceeding."), 722 (grant Susanne Bales *pro hac vice* application limited to specific witnesses).

Amici are aware of nothing in the record that gave notice of an alteration to the district court's appointment policy prior to the court's most recent claims that the court appointed the organization where Ms. Brace was employed in 2014, or that

---

[7] This was contradicted by the district court's comments that the Virginia Capital Representation Resource Center had not acted as lead counsel and, instead, had "relegated or delegated it all to Tennessee," June 16 Tr. at 38, or "dropped the ball," *id.* at 39.

the organization—as separate and distinct from appointed counsel—assumed responsibility as lead counsel. In Amici's experience, a departure from the policy would be inconsistent with common practice of appointing counsel in criminal cases.

Based largely on presumptions about institutional memory, the district court also mentioned continuity of counsel as a basis for denying withdrawal. In addition to the court's apparent failure to consider the stated preference of Mr. Runyon and co-counsel for substitute counsel over Ms. Peiffer, *see* Mot. for Attorney Elizabeth Peiffer to Withdraw at 2, E.D. Va. ECF No. 814; Mem. Supp. Mot. for Attorney Elizabeth Peiffer to Withdraw at 2, E.D. Va. ECF No. 815; June 16 Tr. at 19–21, the court also did not address Ms. Peiffer's explicit acknowledgement of her ongoing duties in transitioning Mr. Runyon's case and her assurances she would remain available to Mr. Runyon's counsel at their request, Br. Appellant at 33, ECF No. 20 (citing sealed declaration).

Finally, the district court's order and comments at the status conference do not indicate that the court considered Mr. Runyon's support for the request for withdrawal and substitution, *see* Mem. Support Mot. Attorney Elizabeth Peiffer to Withdraw at 2, E.D. Va. No. 815, or the support of appointed co-counsel. Mr. Runyon and co-counsel have the most significant interests in factors emphasized by the district court like continuity of counsel and institutional memory, and their balancing of interests should be given great weight. Mr. Runyon had a clear and

reasonable preference for attorneys from Covington & Burling—who are not conflicted in their representation, and who have consulted with him multiple times and are "standing ready to come into the case," *see* June 16 Tr. at 21; Mem. Supp. Mot. Attorney Elizabeth Peiffer to Withdraw at 7–13, E.D. Va. ECF No. 815—over a conflicted attorney (Ms. Peiffer) or an attorney who had not previously been substantially involved in his case (such as a colleague of Ms. Peiffer at the Capital Representation Resource Center), *id.* at 12.

## CONCLUSION

For the foregoing reasons, Amici believe this Court should vacate the district court's Order, E.D. Va. ECF No. 820, and direct the lower court to grant the withdrawal of counsel as requested.

*Matthew L. Engle*
*Counsel for Amici*
Matthew L. Engle
DONOVAN & ENGLE, PLLC
1134 East High St., Unit A
Charlottesville, Virginia 22902
Phone: (800) 428-5214
Fax: (434) 465-6866
matthew@donovanengle.com

# CERTIFICATE OF COMPLIANCE

Undersigned hereby affirms that this brief complies with Fed. R. App. Pro. Rules 29 (a)(5) and 32(g)(1).

Undersigned further affirms, pursuant to Fed. R. App. Pro. Rule 29(a)(4)(E), that no party's counsel authored the brief in whole or part, and no party, party's counsel, or person other than amici or amici's counsel, funded the preparation of submission of the brief.

/s/_____
Matthew L. Engle

# CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/E.D. Va. ECF system on July 28, 2023. All counsel of record are registered CM/E.D. Va. ECF users, and service will be accomplished by the CM/E.D. Va. ECF system.

/s/

Matthew L. Engle