IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-5

IN RE: ELIZABETH JANE PEIFFER

*Appellant.*

UNITED STATES OF AMERICA,
*Appellee,*

v.

DAVID ANTHONY RUNYON,

*Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia
at Newport News
*The Honorable Rebecca Beach Smith, Senior District Judge*

SUPPLEMENTAL APPENDIX

Jessica D. Aber
United States Attorney

Brian J. Samuels
Lisa McKeel
Assistant United States Attorneys

Richard D. Cooke
Assistant United States Attorneys
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-5400

*Attorneys for the United States of America*

**Table of Contents**

                                                                                    **Page**

Appeal Record No. 23-5, Doc 26.................................................................................1

Appeal Record No. 23-6, Doc 77.................................................................................2

Joint Motion for Entry of Pre-Evidentiary Hearing Scheduling Order,
ECF 656 ........................................................................................................................4

Petitioner's Second Motion for Discovery, ECF 737 ................................................7

Motion Requesting Early Production of Jencks, ECF 739 ......................................16

Motion Requesting Early Production of Jencks, ECF 767 ......................................19

Order, ECF 775 ..........................................................................................................20

United States Evidentiary Hearing Memorandum, ECF 743 .................................22

Response to United States Evidentiary Hearing Memorandum, ECF 771 .............42

FILED: July 24, 2023

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 23-5
(4:08-cr-00016-RBS-DEM-3)
(4:15-cv-00108-RBS)

———————————

In re: ELIZABETH JANE PEIFFER

        Appellant

-------------------------------

UNITED STATES OF AMERICA

        Plaintiff - Appellee

v.

DAVID ANTHONY RUNYON

        Defendant

———————————

O R D E R

———————————

Elizabeth Peiffer, one of the defendant's counsel, has appealed the district court's interlocutory order denying her motion to withdraw as counsel. Simultaneously, Runyon filed a petition for a writ of mandamus, challenging the same order. *See* No. 23-6. Peiffer has also filed a motion for stay pending appeal and for expedited review.

We deny Peiffer's motion for a stay and grant her motion for expedited review, directing the Clerk of Court to establish an appropriate briefing schedule.

        For the Court

        /s/ Patricia S. Connor, Clerk

**SA001**

FILED: July 24, 2023

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 23-6
(4:08-cr-00016-RBS-DEM-3)
(4:15-cv-00108-RBS)

_____

In re: DAVID ANTHONY RUNYON

        Petitioner

-------------------------------

33 LAW FIRMS; ASSOCIATION OF PRO BONO COUNSEL; CATO
INSTITUTE; DEBEVOISE & PLIMPTON LLP; GEORGE H. KENDALL

        Amici Supporting Petitioner

_____

O R D E R

_____

During the course of a hearing on the issue that we remanded to the district court in the related habeas proceeding under 28 U.S.C. § 2254 and in the midst of ongoing discovery during a break in that hearing, Elizabeth Peiffer filed a motion with the court, requesting that she be relieved as a counsel for the defendant because of some home issues that had arisen. After considering Peiffer's motion and recognizing the difficulties created by her home issues, the district court nonetheless denied her motion in the interests of justice, focusing on the need for the institutional memory of the Virginia Capital Representation Resource Center and the continuity of counsel. The court also appointed

**SA002**

Kathryn Ali of Ali & Lockwood LLP and noted that she was being assisted by six lawyers at Covington & Burling, LLP, serving pro bono.  Finally, the court decided not to authorize the Covington & Burling lawyers to appear pro hoc vice as counsel for Runyon because doing so could "put the hearing out of control."  The court observed that in an ordinary habeas proceeding, it would be appropriate to appoint only one counsel and that, because this was a capital case, it decided to appoint two. The court nonetheless "welcome[d]" the pro bono help, inviting the lawyers to assist and to be present in the courtroom during all proceedings.

Because the defendant is receiving ample legal assistance in this habeas proceeding and the district court's decision fell well within its discretion in the circumstances, we deny the petition for a writ of mandamus.

The motion for a stay pending our decision is denied as moot.

Entered by order of Judge Wilkinson, Judge Niemeyer, and Judge Gregory.

For the Court

/s/ Patricia S. Connor, Clerk

2

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| Petitioner, | ) | No. 4:15-cv-108 |
| | ) | Original Criminal No. 4:08-cr-16-3 |
| v. | ) | |
| | ) | CAPITAL §2255 PROCEEDINGS |
| UNITED STATES OF AMERICA, | ) | HON. REBECCA BEACH SMITH |
| Respondent. | ) | |

**JOINT MOTION FOR ENTRY PRE-EVIDENTIARY HEARING
SCHEDULING ORDER**

The United States of America and the Petitioner, DAVID ANTHONY RUNYON, by and

through counsel, hereby move this honorable Court for the entry of the attached Pre-Evidentiary

Hearing Scheduling Order that will address certain scheduling and discovery matters in

anticipation of an evidentiary hearing and other proceedings pertaining to the Petitioner's Section

2255 motion.

Respectfully submitted,

DAVID ANYTHONY RUNYON                    JESSICA D. ABER
Petitioner                               United States Attorney


_____/s/_____            _____/s/_____
Elizabeth J. Peiffer                     Lisa R. McKeel
Virginia Bar No. 71353                   Virginia Bar No. 28652
Virginia Capital Representation          Assistant United States Attorney
 Resource Center                         United States Attorney's Office
2421 Ivy Road, Suite 301                 Fountain Plaza Three, Suite 300
Charlottesville, VA 22903                721 Lakefront Commons
Phone: (434) 817-2970                    Newport News, Virginia 23606
Fax: (434) 817-2972                      Phone: (757) 591-4000
Email: epeiffer@vcrrc.org                Fax: (757) 591-0866
*Counsel for David Anthony Runyon*       Email: Lisa.McKeel@usdoj.gov
                                         *Attorney for the United States of America*

1

**SA004**

_____/s/_____
Dana C. Hansen Chavis
*Pro hac vice*
Asst. Federal Community Defender
Federal Defender Services of
Eastern Tennessee, Inc.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Phone: (865) 637-7979
Fax: (865) 637-7999
E-mail: Dana_Hansen@fd.org
*Counsel for David Anthony Runyon*

_____/s/_____
Brian J. Samuels
Virginia Bar No. 65898
Assistant United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
*Attorney for the United States of America*

2

**SA005**

CERTIFICATE OF SERVICE

I certify that on January 27, 2022, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system who will send notice to the current and former

counsel of record.

By:          /s/
Brian James Samuels
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: 757-591-4000
Fax: 757-591-0866
Email: Brian.Samuels@usdoj.gov

3

**SA006**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

|  |  |  |
|---|---|---|
| David Anthony Runyon, | ) | |
| Petitioner, | ) | Original Criminal No. 4:08-cr-16-3 |
| | ) | Original Civil No. 4:15-cv-108 |
| v. | ) | **Capital § 2255 PROCEEDINGS** |
| | ) | |
| United States of America, | ) | HON. REBECCA BEACH SMITH |
| Respondent. | ) | |
| | ) | |
| | ) | |

**Petitioner's Second Motion for Discovery
and Consolidated Memorandum of Law**

Petitioner David Runyon, by counsel, hereby moves for discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 26 of the Federal Rules of Civil Procedure, Rule 16 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), the Due Process Clause of the Fifth Amendment, and the Eighth Amendment. In this Motion, Runyon asks for the production of materials relating to Dr. Daniel Martell, materials related to the government's meeting(s) with trial counsel, and an updated witness and exhibit list. The following Memorandum shows that Petitioner should be allowed the requested discovery.

**PROCEDURAL HISTORY**

On December 23, 2020, the United States Court of Appeals for the Fourth Circuit remanded this case "in order to further develop the evidence regarding counsel's mitigation investigation." *United States v. Runyon*, 994 F.3d 192, 216 (4th Cir. 2020) (Gregory, J., concurring in part and dissenting in part). The Court found that the "record remain[ed] unclear" and "the relevant evidence [was] murky." *Runyon*, 994 F.3d at 208.

1

**SA007**

On March 21, 2022, Runyon filed his first discovery motion, requesting: (1) records of communication between the prosecution team and the prosecution's mental health experts; (2) depositions and subpoenas duces tecum for the government's mental health experts; and (3) for habeas counsel to be physically present at the government's interviews with trial counsel. *See* Pet'r's First Mot. for Discovery and to Protect Pet'r's Ability to Assert Attorney-Client Privilege and Confidentiality of Work Product, and Consolidated Mem. of Law, ECF No. 670 (Mar. 21, 2022). While that motion was pending, the government met with Runyon's trial counsel outside of habeas counsel's presence, so Runyon amended his request to ask for disclosure of the substance of the conversations with trial counsel, including notes, written documents, and emails surrounding the meetings. *See* Pet'r's Reply to Resp. to Pet'r's First Mot. for Discovery and to Protect Pet'r's Ability to Assert Attorney-Client Privilege and Confidentiality of Work Product, and Consolidated Mem. of Law, at 9, ECF No. 673 (Apr. 11, 2022). The government voluntarily turned over items relating to the first request, as well as two "Reports of Investigation" in response to the third request, and the Court denied the remainder of Runyon's request. *See* Mem. Order at 11, 20, ECF No. 685 (July 28, 2022). Petitioner now files his second discovery motion.

## LEGAL STANDARD

A habeas corpus petitioner is entitled to discovery under Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts if he can establish "good cause" for his request. *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997). A petitioner establishes "good cause" whenever "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Id.* (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)); *see also* Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts.

2

**SA008**

When a habeas petitioner has shown good cause for discovery (i.e., he has shown that the requested discovery will assist in proving the facts pled, which in turn would entitle him to relief), discovery must be allowed: "it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 909 (quoting *Harris*, 394 U.S. at 299).

"Good cause" for discovery exists when: (1) the petitioner makes credible allegations of a constitutional violation; and (2) the requested discovery will enable the petitioner to investigate and prosecute his claims. *See Bracy*, 520 U.S. at 908–09. In *Bracy*, the Supreme Court noted the petitioner's allegations were "only a theory at this point," and "not supported by any solid evidence[.]" *Id.* at 908. The allegations, however, were specific enough to establish good cause for factual development even if the petitioner ultimately would "be unable to obtain evidence sufficient" for actual relief. *Id.* at 909. A sufficient showing of good cause, as required by Rule 6(a), therefore exists simply when a "petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief." *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) (citing *Harris*, 394 U.S. at 300).

The Supreme Court in *Blackledge v. Allison*, described "specific factual allegations" as allegations which are not "vague [or] conclusory," "palpably incredible," nor "patently frivolous or false." 431 U.S. 63, 75–76 (1977) (internal quotation marks and citations omitted). As applied in the Fourth Circuit, a petitioner could satisfy Rule 6(a) by making a "plausible indication" that a discovery request "might demonstrate" an entitlement to relief. *See Hill v. Ozmint*, 339 F.3d 187, 201 (4th Cir. 2003). "More specifically, a petitioner must 'state what he hope[s] to find,'" and how the information will "'help him prosecute his [action].'" *Lenz v. True*, 370 F. Supp. 2d 446, 455 n.2 (W.D. Va. 2005) (quoting *Smith v. United States*, 618 F.2d 507, 509 (8th Cir. 1980) (per curiam)). When good cause is established, discovery must be allowed. *Harris*, 394 U.S. at 299–

3

**SA009**

300; *see also id.* at 291 ("It is now established beyond the reach of reasonable dispute that the federal courts not only may grant evidentiary hearings to applicants, but must do so upon an appropriate showing."); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991) ("A court should grant discovery in its discretion where there is 'good cause' why discovery should be allowed.").

The Fourth Circuit's opinion in this case conclusively establishes that Petitioner's claim makes credible allegations of a constitutional violation. *See Runyon*, 994 F.3d at 209 ("[W]e conclude that Runyon has made a colorable claim that his trial counsel's performance was objectively unreasonable and that the material facts necessary to resolve this issue are fairly in dispute."). By remanding for an evidentiary hearing, the Fourth Circuit determined Petitioner's allegations are not "so palpably incredible, so patently frivolous or false as to warrant summary dismissal," *United States v. White*, 366 F.3d 291, 296 (4th Cir. 2004) (quoting *Blackledge*, 431 U.S. at 76) (setting forth the legal standard for an evidentiary hearing). The query remaining is whether the requested discovery will enable Petitioner to investigate and prosecute his claims. For the reasons set forth below, Runyon submits that the discovery requested herein meets this standard.

## REQUESTED DISCOVERY

**A.     Reports, opinions, and notes from Dr. Daniel Martell, records of communications with Dr. Daniel Martell, and any favorable evidence relating to Dr. Daniel Martell**

On November 14, 2022, counsel for the government informed Runyon's counsel that it would be advisable to speak to the government's expert witness, Dr. Daniel Martell, as he was favorable to Runyon. Martell is a neuropsychologist who was retained by the government as a rebuttal expert for Runyon's capital trial. Martell was on the government's November 1, 2022, witness list for the upcoming evidentiary hearing, Exhibit List, ECF No. 699-1 (Nov. 1, 2022), but as a result of his favorable opinions as to Runyon's brain damage, the government released him as

4

**SA010**

an expert just this month, and he was recently retained as an expert witness for Runyon. Runyon requests any and all communications that the government had with Martell, from 2008 through the present, as well as any reports, notes, or other documents within the government's possession that reflect Martell's favorable opinion regarding Runyon's case and brain damage.

In light of the government's representations, the requested documents "may well contain favorable, material information," that would support Runyon's claim of brain damage. *See Dung The Pham v. Terhune*, 400 F.3d 740 (9th Cir. 2005) (finding "good cause" for discovery in a habeas case where the documents met this standard). This information is relevant particularly to the prejudice prong of Runyon's *Strickland* claim, and there is therefore good cause for this discovery. *See* Mem. Order at 14, ECF No. 685 (July 28, 2022) (finding that "any discovery requested must bear on an aspect of the two-pronged *Strickland* inquiry"); *see also Bracy*, 520 U.S. at 908–09 (quoting *Harris*, 394 U.S. at 299).

Further, this discovery is requested pursuant to the government's duty to disclose favorable information. Because § 2255 proceedings are "a continuing part of the criminal proceeding," Rule 6, Rules Governing Section 2255 Cases in the United States District Courts, advisory committee's note,[1] the government has an "ongoing" duty to disclose favorable evidence in its possession, such as that relating to Martell. *Carter v. Bigelow*, 787 F.3d 1269 (10th Cir. 2015) (citing *Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997)); *High v. Head*, 209 F.3d 1257, 1265 n.8 (11th Cir. 2001) (finding that the duty to disclose favorable evidence is "ongoing" including "throughout habeas proceedings" (quoting *Thompson v. Calderon*, 151 F.3d 918, 935 n.12 (9th Cir. 1998) (Reinhardt, J., concurring and dissenting))); *Steidl v. Fermon*, 494 F.3d 623, 629 (7th Cir. 2007); *United States v. Le*, 306 F. Supp. 2d 589, 592 n.4 (E.D. Va. 2004) (quoting *Smith*, 115 F.3d at

---

[1] This case is also docketed as a criminal case.

**SA011**

820). The government's representations to Runyon indicate that Martell provided information to the government that was favorable to Runyon, and Runyon now requests that this Court order the government to comply with its duties and disclose that evidence.

**B.      Contemporaneous notes of the interviews with Runyon's trial counsel and any communications, notes, or statements of subsequent conversations with trial counsel**

On March 29, 2022, counsel for the government interviewed Runyon's trial counsel outside of Runyon's presence. Resp. of the United States to Pet'r's First Mot. for Discovery and to Potect [sic] Pet'r's Ability to Assert Attorney-Client Privilege and Confidentiality of Work Product, and Consolidated Mem. of Law at 6 n.1, ECF No. 672 (Apr. 4, 2022). The government disclosed "Reports of Investigation" from the interviews with trial counsel on June 15, 2022. *See* 7/20/2022 Hearing Tr. at 6, ECF No. 686 (Aug. 4, 2022). These Reports of Investigation contained typed summaries of the interviews with trial counsel. At least five people were present at the interviews of counsel Stephen Hudgins and Larry Woodward: AUSA Brian Samuels, AUSA Lisa McKeel, Criminal Paralegal Margaret Jahn, DOJ Attorney Carrie Ward, and ATF Special Agent Anthony Ambrose. Runyon now requests any contemporaneous notes from those interviews (whether handwritten or typed), as well as any records of communications between the government and Runyon's trial counsel, including notes, summaries, or otherwise documented statements from any meetings, and emails or other written documents surrounding these meetings.

The Reports of Investigation that have been provided to Runyon include statements made by trial counsel that are inconsistent with other statements counsel have made, including their sworn declarations, as well as with documentary evidence. The additional requested discovery will provide more details as to what counsel said at those interviews and any subsequent interviews, as well as information about how these statements came to be. In light of trial counsel's statements in the Reports of Investigation, these documents would likely include additional information

6

**SA012**

impeaching trial counsel's credibility. Given that the Fourth Circuit remanded this case to determine whether counsel's choices were strategic, *see Runyon*, 994 F.3d at 208, trial counsel's credibility will certainly bear on the performance prong of Runyon's *Strickland* claim, and materials related to their credibility are therefore discoverable, especially because trial counsel is scheduled to testify at the upcoming evidentiary hearing, *cf. Fudge v. Broomfield*, No. 2:95-cv-05369, 2021 U.S. Dist. LEXIS 259866, at *11 (C.D. Cal. Dec. 8, 2021) (finding no good cause for discovery of a witness's recorded prior statement where that witness was not testifying at the evidentiary hearing).

Disclosure of these documents is also necessary to protect Runyon's right to attorney-client privilege and to enforce the guarantees of confidentiality and loyalty. This Court has recognized that Runyon's waiver of attorney-client privilege is "limited," and has issued a protective order requiring that "[o]utside of this § 2255 proceeding, the United States is prohibited from otherwise using the . . . information, and documents possessed by Petitioner's former counsel, without further order of a court of competent jurisdiction or a written waiver by the Petitioner." Agreed Protective Order at 1–2, ECF No. 652 (Nov. 30, 2021). That Order can only be enforced if Runyon is made aware of what "information and documents" the government obtained from Runyon's trial counsel.

**C.      An updated witness and exhibit list**

Pursuant to this Court's order, Runyon and the government each disclosed a witness and exhibit list on November 1, 2022. Since that time, it appears the government's witness list has changed. On January 20, 2023, the government disclosed to Runyon a final report, curriculum vitae, and case list from a doctor who was not on the government's witness list from November. The government has also subpoenaed three unknown witnesses for the evidentiary hearing. *See* ECF Nos. 723, 724. In light of the fact that no scheduling order has been entered requiring further

**SA013**

disclosures, *see* Notice of Joint Proposed Scheduling Order, ECF No. 707 (Nov. 17, 2022) (pending), Runyon requests an order directing the parties to file final witness and exhibit lists by January 31, 2023, one week before the beginning of the evidentiary hearing.

Respectfully Submitted,

/s/Elizabeth J. Peiffer
Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

/s/Dana C. Hansen Chavis
Dana C. Hansen Chavis, *pro hac vice*
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

8

**SA014**

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

/s/Nancy Hernandez
Nancy Hernandez
Paralegal, Capital Habeas Unit
nancy_hernandez@fd.org

**SA015**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON, | ) | |
| Petitioner, | ) | Original Criminal No. 4:08-cr-16-3 |
| | ) | Original Civil No. 4:15-cv-108 |
| v. | ) | **CAPITAL §2255 PROCEEDINGS** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | HON. REBECCA BEACH SMITH |
| Respondent. | ) | |

### Motion Requesting Early Production of Jencks Material

Petitioner hereby moves under 18 U.S.C. § 3500, the Due Process Clause of the Fifth Amendment, and the Eighth Amendment, for this Court to order that the government provide Jencks materials by February 2, 2023. This includes any and all prior statements of government witnesses as defined in 18 U.S.C. § 3500.

1

The reasons supporting this motion are set out in the accompanying memorandum of law.

Respectfully Submitted,

/s/Elizabeth J. Peiffer
Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

/s/Dana C. Hansen Chavis
Dana C. Hansen Chavis, *pro hac vice*
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

2

**SA017**

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov


Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax: (202) 305-9779
Carrie.Ward@usdoj.gov


Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov


/s/Nancy Hernandez
   Nancy Hernandez
   Paralegal, Capital Habeas Unit
   nancy_hernandez@fd.org


3

**SA018**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

| | | |
|---|---|---|
| DAVID ANTHONY RUNYON,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Original Criminal No. 4:08-cr-16-3<br>Original Civil No. 4:15-cv-108<br>**CAPITAL §2255 PROCEEDINGS**<br><br>HON. REBECCA BEACH SMITH |

### Motion Requesting Early Production of Jencks Material

Petitioner hereby moves under 18 U.S.C. § 3500, the Due Process Clause of the Fifth Amendment, and the Eighth Amendment, for this Court to order that the government provide Jencks materials by February 2, 2023. This includes any and all prior statements of government witnesses as defined in 18 U.S.C. § 3500.

MOTION DENIED.*
Entered this 6 day of Feb. 2023

- RBS
Rebecca Beach Smith
Senior United States District Judge

*Production to be made as provided by statute. RBS

1

**SA019**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

DAVID ANTHONY RUNYON,

        Petitioner,

v.

                                    CIVIL NO. 4:15cv108
                        [ORIGINAL CRIMINAL NO. 4:08cr16]

UNITED STATES OF AMERICA,

        Respondent.

ORDER

This matter comes before the court regarding several motions that were filed by Petitioner in the final days before his evidentiary hearing. On February 7, 2023, the parties convened before the court for the first day of the hearing, at which time the court ruled on Petitioner's motions, as set forth hereto.

For the reasons stated from the bench on February 7, 2023, Petitioner's Second Motion to Expand the Record, ECF No. 769, was **DENIED**; Petitioner's Motion to Permit an Additional Person to Sit at Counsel Table, ECF No. 756, was conditionally **DENIED**; Petitioner's Motions to Exclude Evidence Unrelated to the Strickland Inquiry, ECF No. 729, and that Violates Petitioner's Protections Under the Attorney-Client Privilege, ECF No. 731, were **DENIED**. Regarding Petitioner's Motion for Discovery, ECF No. 737, for the reasons stated from the bench, the court **DENIED** the motion to the extent it sought the United States' attorney-work-product

**SA020**

and **FOUND** that the United States had already produced the remainder of the motion's requests.

The Clerk is **DIRECTED** to forward a copy of this Order to counsel for Petitioner and the United States Attorney at Newport News.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

February 8 , 2023

2

**SA021**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Newport News Division

DAVID ANTHIONY RUNYON,      )
                            )
            Petitioner      )
                            )
      v.                    )      Criminal Action No.: 4:08cr16
                            )      Civil Action No. :4:15cv108
UNITED STATES OF AMERICA,   )
                            )      **CAPITAL § 2255 PROCEEDINGS**
            Respondent.     )
                            )      HON. REBECCA BEACH SMITH

### UNITED STATES' EVIDENTIARY HEARING MEMORANDUM

The United States, by and through its attorneys, Jessica D. Aber, United States Attorney

for the Eastern District of Virginia, Brian J. Samuels and Lisa R. McKeel, Assistant United States

Attorneys, and Carrie L. Ward, Trial Attorney for the Department of Justice, respectfully submits

this memorandum for the Court's review, which addresses some of the issues  - both factual and

legal - that may arise at the evidentiary hearing in this Section 2255 matter, set to commence on

February 7, 2023.

This memorandum includes a preview and discussion of the witnesses and exhibits that

may be offered by the parties.  By separate motion, the United States has moved *in limine* to

exclude the testimony of Ms. Barrett – one of the Petitioner's identified experts.  Another other

expert witness-related issue that may arise is whether the Petitioner may introduce the testimony

and report of Dr. Siddartha Nadkarni, a newly employed expert that introduces what the United

States submits are irrelevant opinions in an untimely manner.  Thus, as set forth herein, the United

States also provides notice to the Court and habeas counsel that it will object to the proposed

testimony of Dr. Nadkarni as contained in his report and letters to the Petitioner's counsel.

1

**SA022**

Additionally, since January 13th, the Petitioner has filed a series of motions and supporting memoranda. (ECF Nos. 725, 726, 729 – 734, 737, 739, 741).   The United States has endeavored to respond to a number of these filings in a separate and timely fashion (prior to the 14-day requirement). (ECF Nos. 738, 740, 742).   But as the most recent motions pertain to matters that directly implicate proceedings at the evidentiary hearing, the United States will endeavor to address those motions herein.

## **BACKGROUND**

The background of this case, both factual and procedural, is exceedingly well known to the Court, which has presided over this case in its various postures for nearly fifteen years.   This history has been summarized in a number of recent pleadings.   In 2007, the Petitioner, DAVID ANTHONY RUNYON, engaged in a murder-for-hire plot to kill Cory Allen Voss, a United States Naval officer, for money.   The Petitioner traveled from West Virginia to kill Mr. Voss.   The Petitioner shot Mr. Voss five times at point blank range as the two men sat in the victim's pickup truck.   The Petitioner contrived to make the murder look like a random act of violence, a carjacking and/or ATM robbery.   However, as the jury found, this was a thoroughly planned execution the preparation and concealment of which started before and continued long after the actual killing of Cory Allen Voss.   The Petitioner conspired with his co-defendants, CATHERINA VOSS and MICHAEL DRAVEN, to murder Mr. Voss to obtain an expected life insurance payout and avoid apprehension.

The indictment was returned on February 13, 2008. (ECF No. 3).   The Petitioner proceeded to trial nearly eighteen months later in the Summer of 2009.   The United States sought the death penalty in this matter and the long delay between indictment and trial accounted for a comprehensive mitigation investigation.   At trial, the Petitioner was convicted of three of the five

2

**SA023**

initial charges.   After a penalty phase proceeding during which extensive information, both aggravating and mitigating, was presented to a qualified jury, the Petitioner was sentenced to death on two of his three convictions.   An appeal followed that resulted in the convictions and sentence being affirmed by the Court of Appeals in February 2013.   (ECF No. 382).

The Petitioner then filed a habeas motion under 28 U.S.C. § 2255 on October 5, 2015, along with an amended motion on February 4, 2016 – nearly seven years ago.   (ECF Nos. 478, 511).   That motion was denied by this Court on January 19, 2017.   (ECF No. 560).   The Petitioner appealed again to the Court of Appeals, which granted a certificate of appealability as to four of eighteen claims of error.   Following briefing and oral argument, the Court of Appeals remanded the case for an evidentiary hearing only as to Claim Six of the Section 2255 motion – alleging that trial counsel provided ineffective assistance by failing to investigate and present mitigating evidence of a brain injury and potential mental illness and such inadequacy prejudiced his defense. (ECF Nos. 619, 620).

The case returned to this Court in or about August 2021, some twelve years after the penalty phase that is the focus of Claim Six commenced.   Over the last eighteen months, numerous status hearings have been held and pleadings have been filed concerning discovery and the scope of the evidentiary hearing.   The United States understands that the Petitioner, who has submitted a witness list, identifying over twenty lay, expert and attorney witnesses, estimates that the hearing will take approximately two to three weeks.

The United States submits that the scope of the evidentiary hearing should be limited to; 1) whether trial counsel exercised a reasonable standard of care in investigating the evidence concerning the defendants purported brain injury and potential mental illness, and 2) whether the decision to forgo the introduction of such evidence at the penalty phase proceeding prejudiced the

3

**SA024**

defense. Though the temptation to revisit and criticize a defense strategy that did not prove successful may be strong, particularly with the benefit that years of resources and effort makes possible, the Fourth Circuit in its opinion did caution that "[l]ooking in hindsight to what decisions trial counsel made and why is to be sure, a perilous activity, readily subject to historical revisionism. Moreover, in fulfilling his duty to investigate, it must be recognized that counsel need not have investigated 'every conceivable line of mitigating evidence'". *United States v. Runyon*, 994 F. 3d 192, 207 (4th Cir. 2021) (citing *Williams v. Stirling*, 914 F.3d 302, 313 (4th Cir. 2019).

The United States submits that trial counsel conducted reasonable investigations into the Petitioner's purported brain injury and potential mental illness prior to the penalty phase of the trial and any further investigation given the evidence that they found was unnecessary. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation". *United States v. Runyon* at 207 (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

Thus, the scope of the hearing on the performance prong should be limited to evidence known to trial counsel that would have resulted in decisions made or actions taken, not evidence adduced six or seven or many more years after trial.[1] With regard to the scope of the evidence, the Fourth Circuit stated in *Runyon*, "In conducting this inquiry, we 'consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further'". *United States v. Runyon* at 207 (citing *Wiggins. v. Smith*, 539 U.S. 510, 527

---

[1] The United States understands that following the evidentiary hearing there may be the opportunity for post-hearing briefing and provides just an overview of the pertinent legal framework that may be expanded upon at a later date.

4

**SA025**

(2003)). To satisfy this inquiry, the evidence adduced at the habeas proceeding should include only that information that Petitioner's counsel knew or reasonably should have pursued at the time of their investigation, as well as evidence appropriate in rebuttal thereto. The Government's objections, below, identify evidence that falls beyond the limited scope of the hearing, as well as evidence that is untimely, unnecessary, and irrelevant to this Court's inquiry or does not contain necessary indicia of reliability.

Even a finding of deficient performance will not end the inquiry, as the Court would then have to consider any prejudicial impact – reweighing the mitigating evidence (old and purportedly new) against the case in aggravation. The United States will argue that given the substantial planning and premeditation, any foregone mental health evidence would have had no impact on the outcome of the trial for the Petitioner.

## UNITED STATES' WITNESSES AND EXHIBITS

At the evidentiary hearing, the United States intends to present the following witnesses and exhibits. The United States recognizes that the Court has set forth a schedule for this hearing wherein certain witnesses will be scheduled to testify in a particular order. (ECF No. 685). As the Petitioner has made the habeas claim, he has the burden of proof and will proceed first in calling any witnesses.

### A. Witnesses

The list of witnesses that the United States may call testify was filed with the Court on November 1, 2022. (ECF No. 699-1). The United States anticipates that the Petitioner may call a number of these identified witnesses to testify in his case; thus, it may not be necessary for the United States to recall such witnesses in rebuttal. This would include attorneys Jon M. Babineau, Lawrence H. Woodward, Jr., and Judge Stephen A. Hudgins, and mental health professionals Drs.

**SA026**

Paul Montalbano, Daniel Martell and Raymond Patterson.  In fact, the only potential witnesses identified by the United States that does not overlap with the Petitioner's list are Drs. Geoffrey Aguirre and Paul Montalbano.  The report of Dr. Montalbano that was issued in 2009 was unsealed nearly seven years ago, in March 2016.  (ECF Nos. 277, 519).  The United States has provided recently received disclosures from Dr. Montalbano, although the United States is not yet certain whether it will be necessary to call Dr. Montalbano.  The report from Dr. Aguirre and his disclosures have been provided to counsel for the Petitioner.  The United States would observe that it has not received reciprocal disclosures from certain of the Petitioner's experts, including Dr. Siddartha Nadkarni.

### B.  Petitioner's Request for Early Jencks Act Materials  (ECF Nos. 739, 741)

On January 30, 2023, the Petitioner filed a motion requesting early production of Jencks Act materials, pursuant to 18 U.S.C. § 3500.  (ECF Nos. 739, 741).  The Petitioner requests all such materials by February 2, 2023.  *Id.*  While the United States certainly recognizes its obligation to provide any such materials (indeed, Rule 8 of the Rules Governing Section 2255 Proceedings requires such disclosure by any party that offers a witness) the Petitioner already has the reports of the experts tendered by the United States, as well as reports of interview from trial counsel.  The rule applies to a party after direct examination by its terms, and the United States anticipates that most of its examinations will be via cross-examination.  Yet the United States did disclose the above-referenced materials.  It is further unclear what the Petitioner believes he is lacking in a case where he bears the burden of proof, will present his case first and has tendered a list of some

**SA027**

twenty-odd witnesses.  In any case, the United States has and will continue to comply with the Jencks Act requirements.

The United States observes that Rule 8 incorporates Rule 26.2(a) – (d) and (f) of the Federal Rules of Criminal Procedure.  The United States has not received any production of materials from the Petitioner – outside of exhibits and some initial discovery productions – that relate to any Jencks Act materials.  Accordingly, the United States makes a reciprocal request for any additional Jencks Act materials falling within the ambit of Rule 8 that are in the possession of the Petitioner.

### C.  Exhibits – United States

Also on November 1, 2022, the United States filed a proposed exhibit list.  (ECF No. 699-2).  Upon further review and in preparing for the hearing, the United States has determined that some of these exhibits are either not necessary or appropriate.  Additionally, the United States has determined that certain other documents should be included for the review by witnesses or the Court's consideration.  The United States, as an exhibit to this memorandum provides the attached updated exhibit list.  Gov't Ex. 1.

The exhibits to be offered by the United States largely relate to: (1) select pleadings in the case that are certainly part of the record, but will be marked for identification / admission through witnesses; (2) exhibits from the 2009 trial; (3) emails and correspondence between counsel, staff and experts that was provided in Petitioner's disclosures after the remand in this case; and (4) the report of the government's experts – both in 2009 and the recent report of Dr. Aguirre.

### D.  Petitioner's Request for Additional Discovery (ECF No. 737).

On January 27, 2023, the Petitioner filed a motion for discovery.  (ECF No. 737).  The Petitioner seeks three categories of information from the United States: (1) any reports, opinions, notes and records of communications from Dr. Daniel Martell and any favorable evidence relating

**SA028**

to Dr. Martell; (2) notes of interviews with Runyon's trial counsel and any communications; and (3) an updated witness and exhibit list. *Id.* To address item (3), the United States has herein discussed its planned witnesses and exhibits and provides an updated exhibit list as an attachment to this memorandum.

With respect to the request for information related to Dr. Martell, the United States is aware of its obligation to disclose any favorable evidence – which is why the United States identified Dr. Martell's opinions as potentially favorable to the Petitioner, made Dr. Martell – at the time an expert consultant for the United States – available and released Dr. Martell as a government expert to facilitate those discussions. The United States understands that Dr. Martell may testify for the Petitioner, although no such expert disclosures have been provided by the Petitioner to date. Dr. Martell provided no written report to the United States prior to being retained by the Petitioner.

With respect to the request for any notes with the interviews of the Petitioner's trial counsel, such request is unwarranted. The United States provided the reports of interview that were prepared after meeting with trial counsel in March 2022. The Petitioner now demands, without any authority, the notes of counsel from the United States. The United States submits that any such materials are work product to which the Petitioner is not entitled. This is the reason the United States had interview reports prepared. To the extent there is any daylight between those interview reports and the declarations obtained through habeas counsel, this will certainly be the subject for examination at the evidentiary hearing. Additionally, to the extent habeas counsel note concern about the attorney-client privilege, the Court and formal trial counsel can certainly address and safeguard any such risk during the evidentiary hearing. To this end, the United States also

8

**SA029**

refers to its prior response to the Petitioner's motion concerning attorney-client privilege *See also* (ECF No. 740).

## PETITIONER'S WITNESSES AND EXHIBITS

### A.    Witnesses

The United States has reviewed the proposed witness list from the Petitioner. On January 20, 2023, the United States moved *in limine* to exclude the testimony of Ms. Jean Barrett, who would proposedly testify as to the performance prong of the *Strickland* inquiry. (ECF No. 723). The United States has also noted its objection to the testimony by video conference (as opposed to in-court testimony) of Dr. James Merikangas. (ECF No. 738). There are other witnesses the significance of which to the limited purpose of the evidentiary hearing is not entirely clear to the United States and may be the subject to objection for relevance at the hearing. Based on the information at hand, however, the United States provides the following discussion of issues that may arise at the hearing.

### 1. Declarations and Expert Reports

It appears as if the Petitioner may propose to introduce testimony via declaration or expert report, without a live sponsoring witness. While the United States understand certain declarations or reports may be offered for limited purposes (e.g., the impact of an expert report on trial counsel who reviewed the report) and the United States may agree to the authenticity of such declarations and expert reports, the United States has advised habeas counsel that it will generally object to the practice of substituting declarations and expert reports for live testimony.

The Federal Rules of Evidence, including the rules regarding the inadmissibility of hearsay, apply in habeas proceedings. *See* Fed. R. Evid. 1101(d) (listing exceptions to applicability of the rules and not including postconviction proceedings); *see also United States v. Scott*, 576 Fed. App'x 409, 415 (5th Cir. 2014) (finding Rule 606(b) foreclosed movant's argument

9

in § 2255 proceeding); *Salazar v. Dretke*, 419 F.3d 384, n.28 (5th Cir. 2005) (recognizing that Federal Rules of Evidence apply to § 2254 habeas corpus proceedings); *United States v. Francischine*, 512 F.2d 827, 829 (5th Cir. 1975) (stating in dicta that Federal Rules of Evidence apply in § 2255 proceeding).

Certainly, the Court will may make credibility determinations that are important to the claim at issue by reviewing witness testimony. This is the purpose of the evidentiary hearing In this case, many of the anticipated declarations are simply sworn and unwitnessed. There is no information regarding who prepared the documents, how the information was determined, and whether the declarant had the opportunity to review any information prior to committing to the substantive contents therein. Additionally, many of the declarations attached to Petitioner's amended Section 2255 brief contain multiple examples of hearsay, and third party hearsay. While the rules may be relaxed, the rules of evidence still apply and that information cannot be sufficiently reliable to consider as substantive proof of a material fact. *See* (ECF No. 511 and attachments).

### 2. Dr. Nadkarni

One of the Petitioner's identified witnesses is Dr. Siddartha Nadkarni, who has not previously testified or consulted in connection with this matter. At the time of initial disclosure of witness lists, the Petitioner did not provide further detail in that filing as to the nature and substance of Dr. Nadkarni's testimony. Counsel for the petitioner later provided to the United States a report of Dr. Nadkarni, dated November 9, 2022, as well as two letters from Dr. Nadkarni to counsel for the Petitioner, and a copy of his curriculum vitae. Presumably, the petitioner proposes to call Dr. Nadkarni as a new expert witness, although full expert disclosures have not been received.

While the Petitioner does not specify on which topics Dr. Nadkarni would testify or provide an explanation as to the grounds for admissibility of his report, Dr. Nadkarni's report and letters

to counsel provide some indication as to the proposed substance of his testimony. Dr. Nadkarni is a neuropsychiatrist and epileptologist, who apparently was retained by counsel for the Petitioner. In a September 22, 2022, letter to counsel for the Petitioner, Dr. Nadkarni indicated that his initial review of the petitioner's record led him to believe that the Petitioner has had several head injuries and episodes of unawareness or unconsciousness.[2] Dr. Nadkarni also mentioned that the Petitioner has deficits in sustained attention on neuropsychological testing, and a pattern of academic underperformance.

Dr. Nadkarni's report, dated November 9, 2022, goes into greater detail regarding his assessment of the Petitioner. Gov't Ex. 2. In addition to his review of records from this case, Dr. Nadkarni bases his conclusions on a medical interview and examination of the petitioner conducted on July 25, 2022, during which he aimed to "evaluate Mr. Runyon from a Neuropsychiatric perspective." *Id.* at 4. In fact, the majority of Dr. Nadkarni's ten-page report sets forth his notes from this 2022 examination of the Petitioner.[3] Therein, Dr. Nadkarni describes the Petitioner's symptoms of "present illness," as well as "active brain injury symptoms," which appear to be based on anecdotal information provided by the Petitioner regarding his current condition. *Id.* at 4–7. Specifically, Dr. Nadkarni describes "nocturnal episodes" purportedly experienced by the Petitioner, which he categorizes as "seizures." *Id.* at 4. This is the first mention of the Petitioner experiencing seizures; such symptoms were not discussed in any of the several earlier evaluations of the Petitioner in this case. It is unclear when the Petitioner purportedly began to experience

---

[2] The United States does not attach the letters between Dr. Nadkarni and counsel, but provides a summary of their relevant portions.

[3] The United States has not been provided with a recording of that interview, and Dr. Nadkarni's notes on the interview appear to be a rough summary (*i.e.*, not a verbatim transcript).

**SA032**

these possible seizures and why he failed to disclose them during prior interviews with medical experts.

Dr. Nadkarni's report goes on to memorialize his impressions of the Petitioner from the 2022 examination, including the Petitioner's present appearance, mental status, mood, affect, thought content and process, and so forth. *Id.* at 7–8. Based on that examination, as well as his review of case materials and results from an MRI conducted in 2018 and a CT scan from 2017, Dr. Nadkarni opines that the Petitioner "has several areas of his brain that are not functioning properly and that produce several identifiable symptom clusters for several diagnoses," and that "many of these diagnoses, both psychiatric and neurologic either stem directly from his head injuries or are greatly exacerbated by brain injuries." *Id.* at 8. Such diagnoses include: (1) Traumatic Brain Injuries with chronic sequelae; (2) Post-Traumatic Stress Disorder; (3) Cyclic Mood Disorder, namely Schizoaffective Disorder, Bipolar Type; (4) Migraines, Post-Traumatic; (5) Organic Personality Syndrome; (6) Frontal Lobe Syndrome; and (7) R/O Epilepsy, likely focal. *Id.* Dr. Nadkarni further opines that neuropsychological testing "revealed a right-left brain split that is significant, with right hemisphere functioning being significantly lower than left hemisphere functioning," as well as frontal lobe damage. *Id.* at 9.

Dr. Nadkarni ultimately concludes that "Mr. Runyon is severely brain injured and suffers from chronic sequelae of these injuries including major psychiatric syndromes and marked frontal lobe dysfunction," and that the petitioner's "brain abnormalities and psychiatric difficulties constitute a severe mental or emotional disturbance." *Id.* at 9–10. Notably, Dr. Nadkarni further opines that, "as a result of brain dysfunction and psychiatric difficulties, Mr. Runyon's capacity to conform to the requirements of law was significantly impaired at the time of the crime." *Id.* at 10.

**SA033**

In a subsequent letter to counsel for the Petitioner, dated November 23, 2022, Dr. Nadkarni raised the prospect of the Petitioner suffering from epileptic seizures. He requested EEG monitoring, with the goal of confirming that epileptic events likely contributed to brain injury that impacted the Petitioner's functioning at the time of the crime. Dr. Nadkarni opined that, if the petitioner has developed epilepsy, that condition could be "an exacerbating condition" that would have a magnifying effect on the deficits from other head injuries.

In reviewing these materials and understanding that Dr. Nadkarni will not likely testify during the first week of the evidentiary hearing so there will be time to address this issue more fully during the hearing, the United States provides notice to the Court and counsel that it will object to the testimony and report of Dr. Nadkarni because such information is not relevant. To the extent his testimony would have any probative value, its minimal value would be substantially outweighed by a danger of wasting time and needlessly presenting cumulative and redundant evidence. Furthermore, the Court should exclude his testimony as untimely because Dr. Nadkarni's report - rendered over seven years after the statute of limitations ran on the Petitioner's § 2255 claim - appears to introduce novel theories of relief. The Court should not permit this attempt at what certainly appears to be late expert shopping.

### a. The Testimony of Dr. Nadkarni is Not Relevant

The opinions of Dr. Nadkarne, which are based on a 2022 examination of the Petitioner and reports from medical testing conducted in 2017 and 2018, have no bearing on the narrow ineffective assistance of counsel claim currently before the Court. The Federal Rules of Evidence generally apply to evidentiary proceedings under 28 U.S.C. § 2255. *Avalos v. United States*, No. 1:10-cr-134, 2014 U.S. Dist. LEXIS 182633, at *4 n.2 (E.D. Va. Aug. 19, 2014) (citing Fed. R. Evid. 1101(e)). Thus, although the upcoming Section 2255 hearing concerns the presentation of

13

**SA034**

evidence at a capital penalty phase proceeding, relevance remains a threshold concern, despite the liberal evidentiary provision of the Federal Death Penalty Act, 18 U.S.C. § 3593(c). *United States v. Basham*, 561 F.3d 302, 331–32 (4th Cir. 2009). Relevance has the same meaning under § 3593(c) as it does under Federal Rule of Evidence 401. *Id.* at 332. Specifically, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Here, the report and proposed testimony of Dr. Nadkarni are not relevant to the specific issue before the Court: whether the petitioner's counsel provided ineffective assistance of counsel "by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the penalty phase of trial." *Runyon*, 994 F.3d at 204. Specifically, the Fourth Circuit instructed this Court to conduct an evidentiary hearing on the issues of: (1) whether the defendant's trial counsel made the strategic choice, after a reasonable investigation, not to further investigate and present evidence regarding potential brain damage and mental illness, and (2) if the Court finds that counsel's failure to further investigate and develop such evidence was not the result of a strategic decision made after a reasonably limited investigation, whether that failure "prejudiced the defense." *Id.* at 207–09. To establish that his trial counsel's assistance was deficient, the Petitioner must demonstrate that counsel made errors so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court "must not set aside sentences due to ineffective assistance of counsel absent manifest incompetence that falls outside 'the wide range of reasonable professional assistance' permissible under the Constitution." *Runyon*, 994 F.3d at 217–18 (quoting *Strickland*, 466 U.S. at 689).

14

**SA035**

The Petitioner's trial counsel retained the services of a neuropsychologist and a neuropsychiatrist, neither of whom was Dr. Nadkarni, and both of whom examined the Petitioner and submitted preliminary reports in 2009. Then in 2015, in support of his Section 2255 motion, the Petitioner presented further evidence from four medical experts related to his claim that his trial counsel was deficient in failing to further investigate his potential brain injury and mental illness and to present such evidence during the penalty phase. Apparently still not satisfied with the numerous existing opinions about his mental health and brain injuries, the Petitioner now seeks to introduce another neuropsychiatrist into the mix.

Thus, the Petitioner evidently aims to use the evidentiary hearing to present opinion testimony that is neither relevant nor timely for the sole purpose of expanding and improving upon existing theories. Dr. Nadkarni's proposed expert opinion, rendered over thirteen years after the trial in this case, is based on present-day evaluations and other materials not available to trial counsel or to habeas counsel at the time they filed the motion, such as results from an MRI conducted in 2018 and from a 2017 CT scan.

The Court of Appeals did not remand this case to determine if trial counsel could have presented a stronger case given the advantages of infinite resources, infinite time, and infinite hindsight. Dr. Nadkarni's evaluations of the Petitioner's present state do not provide any insight regarding mitigation evidence that was available to counsel at the time of the defendant's trial. The record does not reflect that counsel would have had reason to have retained or presented testimony of Dr. Nadkarni, given the numerous other experts retained by counsel at trial and in support of the petitioner's Section 2255 motion in 2015. Therefore, the putative testimony of Dr.

**SA036**

Nadkarni appears to be not relevant as to the ultimate question of whether the petitioner's trial counsel was constitutionally ineffective, and the United States objects as such.[4]

### b. The Court Should Exclude the Testimony of Dr. Nadkarni as Untimely

Second, even if the Court concludes that the proposed testimony of Dr. Nadkarni is relevant to the narrow issue before the Court, the United States objects to his testimony as an attempt to introduce novel, statutorily time-barred theories.

The Antiterrorism and Effective Death Penalty Act of 1996 imposes a one-year period of limitations in which federal prisoners may file motions to vacate, set aside, or correct their sentence. 28 U.S.C. § 2255(f); *United States v. Segers*, 271 F.3d 181, 184 (4th Cir. 2001). The limitations period begins when the conviction becomes final—*i.e.*, on the date the Supreme Court denies a defendant's petition for a writ of certiorari from direct appeal. *Segers*, 271 F.3d at 184. This statue of limitations bars untimely amendments that add new claims to § 2255 motions. *United States v. Pittman*, 209 F.3d 314, 315–16 (4th Cir. 2000). Petitioners may, however, make untimely amendments that relate back to existing Section 2255 claims. *See Mayle v. Felix*, 545 U.S. 644, 664 (2005) (holding amendments relate back only if "the original and amended petitions state claims that are tied to a common core of operative facts"); *Pittman*, 209 F.3d at 317–18 (finding that relation back is not permitted when the new claims are based on events separate in "both time and type" from the original claims).

In this case, the Petitioner's conviction became final on October 6, 2014, when the Supreme Court denied his petition for a writ of certiorari, *Runyon*, 574 U.S. 813, and the Petitioner timely

---

[4] To the extent the Court finds any portion of Dr. Nadkarni's testimony to be relevant, it is needlessly cumulative and redundant. *See* Fed. R. Evid. 403. The only portions of Dr. Nadkarni's report and proposed testimony that could be at all probative merely parrot the aspects of the Petitioner's previously presented expert reports.

16

**SA037**

filed his Section 2255 motion on October 5, 2015. ECF No. 478. Now, over seven years later, the Petitioner may not insert a new theory into the case that does not share "a common core of operative facts" with his timely filed motion. *See Mayle*, 545 U.S. at 650, 664 (holding that a new habeas claim "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth"). Through the report and proposed testimony of Dr. Nadkarni, the Petitioner apparently intends to do just that. Dr. Nadkarni's report and letters to counsel for the petitioner set forth novel theories, such as the proposition that epileptic events likely contributed to brain injury that impacted the Petitioner's functioning at the time of the crime.[5] The petitioner has been examined by numerous medical experts throughout the course of this matter, including other neuropsychiatrists, and this is the first mention of the petitioner potentially having epilepsy.

The Court should not permit the Petitioner to present a new theory at this late juncture of his post-conviction litigation, over eight years after his conviction became final. Dr. Nadkarni's report does not strictly replicate the findings of other experts (which would be unnecessarily cumulative and a waste of time, as addressed above). His report appears to build upon the findings of prior experts that are advantageous to the Petitioner, ignore their unhelpful conclusions, and improperly diverge into new territory. The Petitioner appears to attempt to engage in untimely

---

[5] It fully appears that this opinion of Dr. Nadkarni touches on the issue of the Petitioner's guilt, and to the extent it does, it is undoubtedly beyond the scope of the narrow issue before this Court on remand: whether the petitioner's counsel "failed to provide him with effective assistance, in violation of the Sixth Amendment, by failing to investigate adequately his brain injury and potential mental illness and introduce such evidence in mitigation during the *penalty* phase of trial." *Runyon*, 994 F.3d at 204 (emphasis added).

17

**SA038**

expert shopping and to introduce a new Section 2255 claim. Thus, the United States submits that the report and testimony of Dr. Nadkarni is time barred.[6]

### B. Exhibits

#### 1. Transcripts

The Petitioner has selected dozens of excerpts of the trial transcript, from the guilt and penalty phase and including arguments of counsel and the instructions of the Court, to be offered as exhibits. Some of these proposed exhibits are multiple pages; others are just a single page. The United States understands that in the context of a Section 2255 proceeding, where the case has been remanded, that this Court may take into consideration the record in this matter. But the United States objects to the consideration of isolated pieces of the trial transcript that may be taken out of context. Additionally, this piecemeal approach is cumbersome and unnecessary before a tribunal that has presided over the entire trial.

#### 2. Correspondence

The Petitioner has also selected various items of correspondence (in the form of letters and emails) from trial counsel, experts and investigators. Assuming that the Petitioner has at least one of the parties as a witness to the correspondence, the United States will largely agree to the admission of such exhibits.

---

[6]It is also worth noting that the United States will not open the door to new mental health testimony. Dr. Merikangas and Dr. Mirsky both provided preliminary reports in 2009. Dr. Mirsky did not review the brain imaging and radiology report at issue, and Dr. Merikangas did not drastically change his opinions in line with that evidence. As such, the reports of Dr. Montalbano and Dr. Patterson, provided to counsel before the penalty phase proceeding, remain relevant and persuasive. Dr. Aguirre, a neurologist, is the first government expert with opportunity to review the brain imaging and radiology report. His anticipated testimony is specific to that evidence, and will provide this court qualitative and quantity driven context to consider and understand the import of the scans, or lack thereof.

.

18

**SA039**

**3. Expert Background Packets Including Social History and Petitioner's Letters/Notes**

The Petitioner also apparently seeks to introduce various background information provided to its experts that include significant hearsay from the Petitioner's family, friends and colleagues and the Petitioner himself.  The United States will object to such exhibits.  There are also certain writings and notes of the Petitioner, to which the United States will object.

The United States reserves the right to offer other objections based on relevance, scope or evidentiary reasons.

<u>CONCLUSION</u>

The United States respectfully submits this memorandum for the Court's consideration of these matters that may arise in the course of the evidentiary hearing.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:   /s/_____
Brian J. Samuels
Lisa R. McKeel
Assistant United States Attorneys
Carrie L. Ward, Trial Attorney
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Phone: (757) 591-4000
Fax: (757) 591-0866
Email: Brian.Samuels@usdoj.gov
Email: Lisa.McKeel@usdoj.gov
Email: Carrie.Ward@usdoj.gov

**SA040**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of January, 2023, I electronically filed a true

copy of the foregoing with the Clerk of Court using the CM/ECF system who will send notice to

all filers.

By:  /s/_____
     Brian J. Samuels
     Assistant United States Attorney
     Virginia Bar Number: 65898
     Attorney for the United States
     United States Attorney's Office
     Fountain Plaza Three, Suite 300
     721 Lakefront Commons
     Newport News, Virginia 23606
     Phone: (757) 591-4000
     Fax: (757) 591-0866
     Email: Brian.Samuels@usdoj.gov

20

**SA041**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| | ) | |
| DAVID ANTHONY RUNYON, | ) | |
| Petitioner, | ) | Original Criminal No. 4:08-cr-16-3 |
| | ) | Original Civil No. 4:15-cv-108 |
| vs. | ) | **CAPITAL § 2255 PROCEEDINGS** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | HON. REBECCA BEACH SMITH |
| Respondent. | ) | |
| | ) | |

**RESPONSE TO UNITED STATES' EVIDENTIARY HEARING MEMORANDUM**

PETITIONER, DAVID ANTHONY RUNYON, files this pleading to address several misstatements and errors in the government's Evidentiary Hearing Memorandum, Doc. 743.

**I.      Timeliness of disclosures**

Sprinkled throughout the government's pleading are accusations and insinuations that Mr. Runyon's counsel has not timely complied with pre-hearing discovery. Doc. 743 at 6, 7. This is inaccurate. In fact, it is the government that has consistently failed to comply with agreed-upon disclosure deadlines, in ways that harm Mr. Runyon's ability to fully and fairly litigate his *Strickland* claim on remand.

On November 17, 2022, the parties filed a Joint Proposed Scheduling Order with this Court reflecting a joint agreement that expert witness information pursuant to Rule 16 of the Federal Rules of Criminal Procedure would be exchanged no later than December 2, 2022. Doc. 707 at 1. The agreement included a catchall provision that any remaining disclosures would be exchanged by December 30, 2022. Though the Court never entered the proposed order, both parties agreed to abide by this schedule.

**SA042**

As the December 30, 2022, deadline approached, it became clear that not all disclosures would be exchanged. On December 26, 2022, the government contacted undersigned counsel to say that Dr. Geoffrey Aguirre would not be able to meet the agreed-upon disclosure date, but he could provide his report by January 3, 2023. Undersigned counsel agreed to alter the schedule to make the final day to exchange expert disclosures January 3, 2023. Mr. Runyon's counsel complied with this deadline. Then, at 9:05 pm on January 3, Mr. Runyon's counsel emailed the government noting that they still had not received anything. On January 4, 2023, the government replied and informed counsel that "Dr. Aguirre said last night that his report is coming soon…" Attachment A. Two days later, the government forwarded an unsigned Microsoft Word document from Dr. Aguirre (dated January 4, 2023), referring to it as a "'draft' report." Attachment B. Finally, on January 20, 2023, more than two full weeks after even the amended deadline, the government provided to undersigned counsel Dr. Aguirre's signed report and disclosures which revealed significant new information and new arguments of the government's case.

Similarly, Mr. Runyon repeatedly sought information about government experts Drs. Montalbano and Patterson. The government suggested that they should not be treated as expert witnesses and Rule 16 expert disclosures were unnecessary because they were "strictly fact experts." Attachment C. Undersigned counsel continued to inquire about the substance of their proposed testimony. Last week, on January 31, 2023 (28 days after the disclosure deadline), the government sent Mr. Runyon's counsel the curriculum vitae and caselists for Drs. Montalbano and Patterson.[1]

_____

[1] This issue has since been resolved. On February 2, 2023, the parties agreed that Drs. Montalbano and Patterson are fact witnesses and have agreed on a stipulation; based on that stipulation, it was agreed there is no need for Drs. Patterson and Montalbano to testify. The stipulation states that both of those doctors provided expert reports for the government before the penalty phase of trial

2

**SA043**

It is simply incorrect to suggest that Mr. Runyon's counsel has not complied with the agreed-upon disclosure schedule or that the government "has not received reciprocal disclosures from certain of the Petitioner's experts, including Dr. Siddartha Nadkarni." Doc. 743 at 6. Mr. Runyon's counsel complied with the agreement between the parties despite the lack of reciprocal timeliness. In fact, on January 20th when the government provided the long-overdue Aguirre report, Mr. Runyon's counsel noted that all of his experts' disclosures were provided on or before January 3, 2023, and specifically asked the government: "is there something you think you have not received?" Attachment D. Because undersigned counsel received no response, it is surprising to see the government now impugning counsel's diligence in a filed pleading.

## II. Additional discovery

In a previously-filed motion, Doc. 737, Mr. Runyon requested reports, notes, and any communication related to Dr. Daniel Martell, as well as notes and information from the government's interviews with Mr. Runyon's trial counsel. The government objected.

### A. Information related to trial counsel meetings

The government's position is that Mr. Runyon is only entitled to the interview reports created by the federal agent after the government meeting with trial counsel. Doc. 743 at 8. According to the government, "[t]o the extent there is any daylight between those interview reports and the declarations obtained through habeas counsel, this will certainly be the subject for examination at the evidentiary hearing." *Id.* This assertion is insufficient to resolve Mr. Runyon's request for several reasons.

---

and that trial counsel received those reports. Because these witnesses will not testify as experts at the hearing, and because the parties have stipulated to the content of their testimony as fact witnesses, Mr. Runyon's counsel has not raised an issue as to the untimeliness of the government's expert disclosures. The parties plan to offer an oral stipulation to the Court.

3

**SA044**

First, upon information and belief, the government has met with trial counsel Stephen Hudgins multiple times—as recently as last week, and for several hours at a time. Mr. Runyon has only received a report from one single occasion of meeting with him.[2] Mr. Runyon is entitled to discover the substance of *each* of these pre-hearing preparatory meetings.

Second, the government's suggestion that the only means Mr. Runyon has of discovering the substance of these conversations is through examination on the witness stand ignores its duty under both the law and Department of Justice policy, a duty which covers not only exculpatory information but also any potential impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Any and all conflicting statements, no matter how minor, must be disclosed.

In 2010, after the failure to disclose exculpatory information undermined the prosecution of a high-profile case, the Department of Justice issued a nation-wide memorandum (the "Ogden Memo") regarding criminal discovery. Several key points in that memo are relevant here. The Memo made clear, for example, that "[m]aterial variances in a witness's statements should be memorialized, even if they are within the same interview, and they should be provided to the defense as *Giglio* information." https://www.justice.gov/archives/dag/memorandum-department-prosecutors. Furthermore, even though trial preparation meetings generally do not need to be memorialized, "prosecutors should be particularly attuned to new or inconsistent information disclosed by the witness" and "if the new information represents a variance from the witness's prior statements, prosecutors should consider whether memorialization and disclosure is necessary consistent with" its *Giglio* duty. *Id.* The Ogden Memo also instructs that, in most cases, "the format of the information does not determine whether it is discoverable…. information that the prosecutor

_____

[2] The report is from March 29, 2022. Mr. Runyon received an additional report from an interview on the same day of trial counsel Lawrence Woodward.

4

**SA045**

receives during a conversation with an agent or a witness is no less discoverable than if that same information were contained in an email." *Id.* Finally, the Memo made clear that DOJ policy encourages prosecutors "to provide discovery broader and more comprehensive than the discovery obligations." *Id.*

### B. Information regarding Dr. Martell

The government's pleading suggests that its disclosure of Dr. Martell's favorable position highlights its awareness and willingness to comply with its *Brady* obligations. Doc. 743 at 8. In fact, the government still has not discharged that obligation. In mid-November, on a phone call with the government, Mr. Runyon's counsel was informed that counsel should call Dr. Martell and interview him because he is favorable to the case. No other details about this disclosure have ever been provided.

As discussed above, the government's *Brady* duty is greater than simply encouraging counsel to speak to a witness because he could be favorable. Dr. Martell was hired by the government in early 2022 and Mr. Runyon's counsel sent him the MRI in May 2022. What constitutes *Brady* evidence in this situation is the particular statements and the context of those statements: What exactly did Dr. Martell tell the government? Who was present? What did they ask him that elicited the exculpatory answers? What evidence was he reviewing? Did he make any comments about the strength and substance of the government's case? Of the government's witnesses or their reports? The Ogden Memo lists what a prosecutor should review to ensure all such discovery is properly disclosed. The list includes; agency files, investigative files, files of related civil proceedings, case-related communications, agent notes, witness meetings and interviews etc. https://www.justice.gov/archives/dag/memorandum-department-prosecutors. In this case, Mr. Runyon was only informed that Dr. Martell could be helpful. The government should

5

be required to disclose the actual substance of the actual *Brady* and *Giglio* issue.

### III. Dr. Nadkarni

The government objects to the proposed testimony of Dr. Nadkarni claiming that it is irrelevant and untimely. These arguments are based on a misunderstanding of the law and the facts in this case.

#### A. Relevance

The government argues that Dr. Nadkarni's testimony is irrelevant because Dr. Nadkarni was not retained by trial counsel and Mr. Runyon had other expert opinions in his § 2255 motion. Doc. 753 at 15 ("The record does not reflect that counsel would have had reason to have retained or presented testimony of Dr. Nadkarni, given the numerous other experts retained by counsel at trial and in support of the petitioner's Section 2255 motion in 2015."). This argument misses the mark. First, the scope of the prejudice analysis in a *Strickland* claim is not limited solely to what evidence trial counsel collected or which experts they may have hired. In fact, the opposite is true: the crux of such an analysis is determining what trial counsel could and would have done differently if they were constitutionally effective. *See, e.g., Rompilla v. Beard*, 545 U.S. 374, 390–93 (2005) (discussing all the follow-up and further fact development effective trial counsel would have likely conducted). The question in Mr. Runyon's case is not limited to the direct effect of Dr. Merikangas's MRI opinion: the question is what would constitutionally effective counsel have done once they were informed the MRI did reveal organic brain damage. Dr. Nadkarni's testimony provides part of that answer.

Moreover, Dr. Nadkarni was hired by § 2255 counsel, in part, because of the age and health of the other experts in this case. Counsel had serious concerns about the ability of all of his experts to be available to testify at a hearing. Dr. Merikangas in is in his 80s, and as this Court is aware,

6

**SA047**

Dr. Dudley retired from practice and is no longer available to testify. Dr. Nadkarni's testimony therefore is not duplicative, as the government alleges, but rather is an important piece of the *Strickland* prejudice proof.

### B. Timeliness

On the same pages of the pleading where the government argues Dr. Nadkarni's testimony is "cumulative and redundant," the government asks this Court to exclude it because it is a "novel" theory. Doc. 743 at 16.  Mr. Runyon is not presenting a new or novel theory. Dr. Nadkarni's opinion relates directly to the issue of whether Mr. Runyon has brain damage, a ground for relief which was pled in his initial § 2255 motion. This Court should reject the government's attempt to improperly limit the scope of the Fourth Circuit remand.

Respectfully Submitted,

/s/Elizabeth J. Peiffer
Elizabeth J. Peiffer, VSB No. 71353
Capital Representation Resource Center
1155 Seminole Trail #6391
Charlottesville, VA 22906
Telephone (434) 817-2970
Fax (434) 817-2972
epeiffer@vcrrc.org

/s/Dana C. Hansen Chavis, *pro hac vice*
Dana C. Hansen Chavis
Asst. Federal Community Defender
Federal Defender Services of Eastern Tennessee
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Telephone (865) 637-7979
Fax (865) 637-7999
Dana_Hansen@fd.org

7

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, I have electronically filed the foregoing **Response** with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Brian J. Samuels
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4032
Fax (757) 591-0866
Brian.Samuels@usdoj.gov

Lisa R. McKeel
Asst. United States Attorney
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, VA 23606
Telephone (757) 591-4040
Fax (757) 591-0866
Lisa.McKeel@usdoj.gov

Carrie Lee Ward
Department of Justice
Capital Case Section
1331 F Street, NW
Room 650
Washington, DC 20530
Telephone (202) 923-7154
Fax (202) 305-9779
Carrie.Ward@usdoj.gov

/s/Nancy Hernandez
 Nancy Hernandez
 Paralegal, Capital Habeas Unit
 nancy_hernandez@fd.org

8

**SA049**