IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 23-5

———————————

IN RE: ELIZABETH JANE PEIFFER

*Appellant.*

———————————

UNITED STATES OF AMERICA,
*Appellee,*

v.

DAVID ANTHONY RUNYON,

*Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Newport News
*The Honorable Rebecca Beach Smith, Senior District Judge*

———————————

CORRECTED RESPONSE BRIEF OF THE UNITED STATES

———————————

| | |
|---|---|
| Jessica D. Aber | Richard D. Cooke |
| United States Attorney | Assistant United States Attorneys |
| | 919 East Main Street, Suite 1900 |
| Brian J. Samuels | Richmond, Virginia 23219 |
| Lisa McKeel | (804) 819-5400 |
| Assistant United States Attorneys | |

*Attorneys for the United States of America*

# Table of Contents

**Page**

Table of Authorities.................................................................................. ii

Introduction and Jurisdictional Statement .................................................1

Issues Presented.........................................................................................5

Statement of the Case .................................................................................6

Summary of Argument..............................................................................18

Argument...................................................................................................19

I.      Regardless of whether the collateral-order doctrine may be satisfied in some cases involving a district court's denial of a defense attorney's motion to withdraw, the appeal here addresses an order that counsel could revisit and is not completely separate from the merits of defendant's § 2255 motion.................................................................19

II.     The district court did not abuse its discretion in denying counsel's motion to withdraw given the circumstances presented to the court, including the narrow issues remaining in the case and the presence of other counsel to represent defendant.............................................23

Conclusion.................................................................................................29

Statement Regarding Oral Argument ......................................................30

Certificate of Compliance ........................................................................30

i

# Table of Authorities

**Page**

## Cases

*Adams v. Ferguson*, 884 F.3d 219 (4th Cir. 2018)................................................3, 22

*Britt v. DeJoy*, 45 F.4th 790 (4th Cir. 2022) (en banc) ...............................................3

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) .......4, 20, 22

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981) ................................20

*Flanagan v. United States*, 465 U.S. 259 (1984) ....................................................21

*Martel v. Clair*, 565 U.S. 648 (2012) ..........................................5, 18, 23, 25

*Maryland v. Kulbicki*, 577 U.S. 1 (2015) ...............................................................25

*Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) ..............................................3, 30

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) .......................3, 19, 20, 22

*Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985) .......................................21

*Runyon v. United States*, 228 F. Supp.3d 569 (E.D.Va. 2017) .................................6

*Sanford v. Commonwealth of Va.*, 687 F. Supp. 2d 591 (E.D. Va. 2009) ...................................................................................27

*Strickland v. Washington*, 466 U.S. 668 (1984) .....................................................25

*United States v. Bell*, 5 F.3d 64 (4th Cir. 1993) ......................................................25

*United States v. Bellille*, 962 F.3d 731 (3d Cir. 2020) ...............................2, 21, 22

*United States v. Blackledge*, 751 F.3d 188 (4th Cir. 2014)....................................24

*United States v. Plunkett*, 2023 WL 2929684 (4th Cir. Apr. 13, 2023) (unpublished) ..................................................................................2, 21

*United States v. Runyon*, 707 F.3d 475 (4th Cir. 2013) ............................................6

*United States v. Runyon*, 994 F.3d 192 (4th Cir. 2021) ........................................5, 7

*United States v. Sueiro*, 946 F.3d 637 (4th Cir. 2020) ...........................2, 21

*United States v. Williams*, 81 F.3d 1321 (4th Cir. 1996) .......................................27

*Whiting v. Lacara*, 187 F.3d 317 (2d Cir. 1999)...............................................21, 22

*Wilson v. Moore*, 178 F.3d 266 (4th Cir. 1999) .....................................................27

**Statutes**

28 U.S.C. § 2072 ................................................................21

28 U.S.C. § 2255 ...........................................................*passim*

**Other Authorities**

Va. R. Prof'l Conduct 1.16(c) ..........................................25

Va. R. Prof'l Conduct 1.7(a)(2) ...................................24, 26

## Introduction and Jurisdictional Statement

After this Court remanded defendant David Anthony Runyon's motion under 28 U.S.C. § 2255 for the district court to conduct an evidentiary hearing on a single claim of ineffective assistance of counsel, the district court began an evidentiary hearing that lasted eight days, learned that one of Runyon's counsel had committed a discovery violation that undermined Runyon's claim on remand, and then continued the evidentiary hearing. The attorneys responsible for the discovery violation withdrew while one of Runyon's attorneys, Elizabeth Peiffer, remained lead counsel, and the district court appointed a new attorney to represent Runyon. Later, Peiffer sought to withdraw for reasons unrelated to the discovery violation—namely, that her mother was diagnosed with cancer. Peiffer has now appealed the district court's interlocutory order denying her motion to withdraw as counsel. She previously sought an emergency stay, which this Court denied on July 24, 2023. SA1.

Separately, Runyon filed a petition for a writ of mandamus and an emergency stay motion, challenging the district court's determination that, although six attorneys from the law firm Covington & Burling were free to work on Runyon's behalf, the court was, at that point, not inclined to grant *pro hac vice* applications for those six additional attorneys. This Court denied the mandamus petition and denied the stay as moot on July 24, 2023. As this Court explained:

After considering Peiffer's motion and recognizing the difficulties created by her home issues, the district court nonetheless denied her motion in the interests of justice, focusing on the need for the institutional memory of the Virginia Capital Representation Resource Center [where Peiffer is employed] and the continuity of counsel. The court also appointed Kathryn Ali of Ali & Lockwood LLP and noted that she was being assisted by six lawyers at Covington & Burling, LLP, serving pro bono. Finally, the court decided not to authorize the Covington & Burling lawyers to appear pro hac vice as counsel for Runyon because doing so could "put the hearing out of control." The court observed that in an ordinary habeas proceeding, it would be appropriate to appoint only one counsel and that, because this was a capital case, it decided to appoint two. The court nonetheless "welcome[d]" the pro bono help, inviting the lawyers to assist and to be present in the courtroom during all proceedings.

Because the defendant is receiving ample legal assistance in this habeas proceeding and the district court's decision fell within its discretion in the circumstances, we deny the petition for a writ of mandamus.

SA2–3.

This Court should dismiss Peiffer's interlocutory appeal. As she notes, multiple courts of appeals have permitted in certain circumstances an attorney to pursue an interlocutory appeals from the denial of the attorney's motion to withdraw, *see, e.g., United States v. Bellille*, 962 F.3d 731, 735–36 (3d Cir. 2020) (collecting cases), and this Court has indicated that it might agree with those rulings, *United States v. Plunkett*, 2023 WL 2929684, at *1 n.* (4th Cir. Apr. 13, 2023) (unpublished). But those courts have not said flatly that all appeals of the denial of a motion to withdraw satisfy the collateral-order doctrine, and exceptions to the final-judgment rule are "narrow." *United States v. Sueiro*, 946 F.3d 637, 639 (4th Cir. 2020). "Ensuring the finality of lower court proceedings before appellate

review is critical for 'preserv[ing] the proper balance between trial and appellate courts,' by minimizing piecemeal appeals and for promoting 'efficient administration of justice.'" *Britt v. DeJoy*, 45 F.4th 790, 792–93 (4th Cir. 2022) (en banc) (quoting *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017)). "Finality is so important that '[w]e routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system.'" *Id*. (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108–09 (2009)).

For the requirements of the collateral-order doctrine to be satisfied, the challenged order must (1) be "conclusive," (2) "resolve important questions separate from the merits," and (3) be "effectively unreviewable on appeal from the final judgment in the underlying action.'" *Adams v. Ferguson*, 884 F.3d 219, 223–24 (4th Cir. 2018) (quoting *Mohawk Indus., Inc.*, 558 U.S. at 106). Here, Peiffer's motion to withdraw depends on evolving facts about the demands that her mother's illness creates and what remains to be done on Runyon's ineffectiveness claim. Peiffer remains free to revisit with the district judge additional facts about her circumstances that makes her unable to continue working. But given the facts before it, the district court acted within its discretion in concluding that Peiffer had failed to demonstrate that her mother's health precluded her from continuing to represent Runyon, particularly in view of the other defense attorneys involved.

Likewise, the district court's denial of the motion to withdraw cannot be evaluated

independently from the questions of what remains to be litigated in Runyon's

§ 2255 motion—questions that inevitably will draw this Court into the merits of

Runyon's claims.  Although some claims of attorney conflicts might be

definitively resolved by a district court and be independent from the merits of the

case, Peiffer's claims are not.  Moreover, as the Supreme Court has explained,

even though "a ruling 'may burden litigants in ways that are only imperfectly

reparable by appellate reversal of a final district court judgment,'" such

circumstance have "never sufficed" to justify interlocutory appeal.  *Mohawk*

*Indus., Inc.*, 558 U.S. at 107 (quoting *Digital Equipment Corp. v. Desktop Direct,*

*Inc.*, 511 U.S. 863, 868 (1994)).

    As to the merits of Peiffer's appeal, Runyon has already presented thirteen

witnesses in support of his remaining claim of ineffective assistance of counsel

during a hearing spanning eight days in February 2023 and represented that he had

just five proposed remaining expert witnesses, all of whom have completed their

evaluation and reports.  Indeed, the proceedings would have concluded if one of

Runyon's attorneys had not committed a material discovery violation by failing to

disclose evidence that weakens Runyon's claims on the issue on which this Court

remanded.  Runyon had previously contended in his § 2255 that trial counsel

essentially stopped communicating with Runyon's mental-health expert, Dr.

4

Merikangas, after he provided a preliminary report on August 5, 2009, and that

counsel never shared brain scans with Dr. Merikangas. As this Court put it in its

opinion remanding, the evidence as this Court evaluated in Runyon's last appeal

was that Runyon's trial counsel "never provided the [brain] scans to Dr.

Merikangas, as Dr. Merikangas had requested." *United States v. Runyon*, 994 F.3d

192, 205 (4th Cir. 2021). But the discovery that Runyon's counsel failed to

disclose shows that trial counsel did provide the scans to Dr. Merikangas, who in

turn counseled against presenting a mental-health defense at the penalty phase.

The standard for substitution of counsel is "a peculiarly context-specific

inquiry," and because it "is so fact-specific, it deserves deference." *Martel v.*

*Clair*, 565 U.S. 648, 663 (2012). Here, the court had appointed another attorney to

represent Runyon, who asserted she is learned and capable of representing Runyon

through this evidentiary hearing (JA2079-2080); Runyon's counsel proposed the

next discovery deadline in August; Runyon has the assistance of six *pro bono*

attorneys; and the issue remaining following an eight-day evidentiary hearing are

not broad.

## Issues Presented

1.    Does this Court possess jurisdiction under the collateral-order doctrine

for defense counsel's appeal of the denial of her motion to withdraw when the

district court's order (a) is not final in the sense that counsel could present

additional information bearing on her asserted inability to work with co-counsel on

Runyon's behalf, and (b) cannot fairly be evaluated without taking into account

what remains to be litigated in the case, requiring this Court to assess the merits of

Runyon's § 2255 motion?

2.    If this Court determines that it possesses jurisdiction for this

interlocutory appeal, did the district court abuse its discretion in denying Peiffer's

motion to withdraw?

### Statement of the Case

Runyon murdered Cory Allen Voss in late April 2007 after Voss's wife,

Catherina, and her lover, Michael Draven, paid Runyon to carry out the murder so

that Catherina and Draven could collect life insurance proceeds and terminate

Cory's and Catherina's marriage.  Runyon's convictions and death sentence were

upheld after extensive litigation on direct appeal.  *United States v. Runyon*, 707

F.3d 475 (4th Cir. 2013), *cert. denied*, 574 U.S. 813 (2014).

Three years after the Supreme Court denied review, the district court denied

defendant's motion under 28 U.S.C. § 2255 in an equally extensive opinion

reviewing Runyon's 18 claims for relief.  *Runyon v. United States*, 228 F. Supp.3d

569 (E.D.Va. 2017).  On appeal, after this Court granted a certificate of

appealability on four issues, this Court affirmed the denial of relief on all but one

portion of one of defendant's claims and ordered an evidentiary hearing on that

6

issue—namely, whether defense counsel was ineffective at the penalty phase for

failing to investigate adequately mitigation evidence about defendant's potential

mental illness and brain injury. *United States v. Runyon*, 994 F.3d 192, 208–09

(4th Cir. 2021). Defendant had raised a broader claim alleging ineffectiveness in

presenting mitigation evidence, but this Court denied defendant's claim that his

counsel were ineffective in investigating or presenting evidence on defendant's

putative "generational trauma" and "Psycho-Social History."

At the time of the remand, Runyon had long been represented in his § 2255

by Michele Brace of the Virginia Capital Representation Resource Center

(VCRRC) and Dana Chavis, then supervisor of the capital habeas unit of the

Federal Defender Services of Eastern Tennessee, Inc. (FDSET). In November

2021, Brace moved to withdraw for medical reasons and requested that she be

replaced by Elizabeth Peiffer, also an employee of VCRRC and member of the

EDVA bar. JA740. Brace amply described her circumstances of personal illness,

represented that she "already has withdrawn from her representation of the

petitioner in her other active habeas matter," and sought equally to withdraw from

Runyon's § 2255. JA740. Peiffer's resume was attached, identifying her as

learned and competent counsel to proceed in the capital litigation. The government

did not object, and the district court granted the withdrawal and substitution in

November 2021. JA743.

On January 27, 2022, the parties entered a joint scheduling and discovery order. SA4–6, JA747. Runyon later filed motions for discovery and early production of *Jencks* that were denied. SA7–21.

In August 2022, Runyon filed a motion to appoint Susanne Bales, another FEDSET attorney, pro hac vice (JA755, JA758), and renewed the motion on January 13, 2023. The district court granted the motion in part, limited to a set of designated witnesses. JA765, JA786, JA776, JA801.

On January 31, 2023, the United States filed a memorandum (SA022-041), addressing Runyon's motion for the early production of *Jencks* materials, and explained that the materials had already been produced. The United States noted, however, that Runyon had not disclosed such materials and made a reciprocal request. SA28. On February 6, 2023, Runyon disputed the United States' claims of untimely discovery disclosure and accused the United States of failing to comply with the agreed upon disclosure deadlines. SA42–49. Counsel stated, "It is simply incorrect to suggest that Mr. Runyon's counsel has not complied with the agreed-upon disclosure schedule or that the government 'has not received reciprocal disclosures from certain of the Petitioners experts, including Dr. Siddartha

Nadkarni.'"  SA44.  Runyon also emphasized, "Any and all conflicting statements, no matter how minor, must be disclosed."  SA45.

The evidentiary hearing commenced on February 7, 2023.  By that time, approximately two years had elapsed since this Court's remand.  Runyon called thirteen witnesses to testify, including trial counsel (now) Judge Stephen Hudgins, Jon Babineau, and Lawrence Woodward.  Also called to testify were lay witnesses Maria Runyon, Mark Runyon, David Dombrowski, Wren Fleming, Scott Linker, Tiffany Linker, Deborah and Robert Seeger, Jeffrey Harris and (mitigation specialist) Sheila Cronin.  Often, witnesses were asked about information pertaining to Runyon's psycho-social history, or transgenerational and cultural trauma.  The government objected frequently that the testimony was beyond the scope of the remand, and the district court agreed.  For example, after such an objection during David Dombrowski's testimony regarding generational trauma, the court asked habeas counsel whether the scope of the claim was limited to evidence of brain injury and mental illness.  Counsel agreed but requested permission to elicit the information for purposes of the record.

On the morning of the fifth hearing day, February 13, 2023, Chavis left two documents on the courtroom table of the attorneys for the United States that had not been produced previously in discovery or as part of any *Jencks* material.  At minimum, these documents were *Jencks* material for Sheila Cronin and Judge

9

Hudgins.  Hudgins had already testified.  At the end of the day of testimony, the

United States alerted the district court that it was concerned that discovery had not

been provided in a complete or timely manner.  The district court questioned

Runyon's counsel about the matter.  Chavis acknowledged giving the documents to

the United States before the hearing but was uncertain whether they had been

produced previously.  Chavis continued that Runyon did not introduce the

document because the United States objected.

On February 14, 2023, before the hearing began, Bales approached the

government's counsel and advised that there were documents that were

discoverable regarding Dr. Merikangas' testimony that had not been produced to

the United States and that counsel was working on the production.  In court, Bales

disclosed to the court that certain documents had not been disclosed to the United

States and that their office was working to produce the documents.  The district

court questioned Runyon's counsel and adjourned until 5:00 p.m. for Runyon's

counsel to report about the production's status.  At 5:00 p.m., the court

reconvened, and Bales disclosed that they lacked a record to determine what had

previously been disclosed to the United States and that they did not know how long

it would take to produce the documents, but that counsel was working diligently on

the matter.  At the end of the hearing, the court ordered Runyon's counsel to

produce all discoverable and *Jencks* documents to the attorneys for the United

States and set a deadline of February 15, 2023, by 3:30 p.m.

The initial production of documents provided on February 14, 2023,

established, at minimum, that: (1) trial counsel did have communications with Dr.

Merikangas after he had completed his August 5, 2009, preliminary report and this

communication included Dr. Merikangas' recommendation that a mental health

defense *not* be invoked; and (2) that Dr. Merikangas had, in fact, received and

reviewed the MRI and PET scans of Runyon that had been conducted before the

onset of the penalty phase.  These two facts alone conflict with information

tendered in pleadings, declarations and examinations that have been presented to

the district court and this Court.  For example, contrary to many representations

about Dr. Merikangas and the scans, the following documents have been provided:

- A "Memo To File" from attorney Hudgins that reflects an August 13, 2009 telephone conference with attorney Woodward and Dr. Merikangas.  According to this document, Dr. Merikangas relayed he did not believe that the defense was in a good position to present a mental health defense because of the government's rebuttal.  Dr. Merikangas indicated that the examination of Runyon was not abnormal and that Runyon was not truthful.  Dr. Merikangas indicated that unless there was something glaring in the MRI or PET scan, he did not recommend a mental health defense, and even if there were a defect shown in the scans or testing, it would be a risk the defense counsel would have to weigh as to whether or not to present a mental health defense absent a very bad injury or defect.

- Billing records from attorney Woodward that reflect an entry entitled "Memo to file regarding Dr. Merikangas interview" on August 13, 2009; and an entry entitled "Memo to file regarding mental health

11

evidence/interview with Dr. Merikangas" on August 16, 2009. To
date, neither memo has been found and produced.

- Two invoices from Dr. Merikangas to attorney Hudgins, both from
  August 2009; one reflects "MRI and PET 8/17/2009 Review" for two
  hours at $100 per hour accompanied by a court reimbursement invoice
  signed by Dr. Merikangas that has the written description of "review
  of MRI and PET scans"; and the other invoice reflects "MRI and PET
  8/17/2009" also for two hours at $100 per hour.

JA1920.

On February 15, 2023, Chavis emailed the district court and parties that she

could not meet the deadline for production or answer the government's questions

regarding discovery. The district court convened a hearing to assess the status of

the discovery production. Bales took the lead in addressing the court, candidly

conceding that the task was likely much larger than anticipated. She explained

that, due to Chavis' actions earlier that day, the team had been unable to access its

physical workspace or the internet.

Chavis explained her belief that files had been overlooked due to possible

file-naming issues and her mistaken belief that the undisclosed items were

duplicates. She admitted to preventing her colleagues from accessing the defense

files, which she characterized as her own. Chavis explained that her co-counsel

were leveling "false accusations" against her. JA1850.

After hearing from all three of Runyon's counsel, including Peiffer, the

district court observed that there was a breakdown in Runyon's team and suggested

that Runyon be consulted as to whether Chavis should move to withdraw. Chavis then moved to withdraw from representation, which all parties, including Runyon, agreed should happen. Bales also moved to withdraw from her representation, citing the general advice of her supervisor and the possibility of an imputed conflict. The court initially denied the motion pending briefing.

On February 17, 2023, Bales moved to withdraw. JA1884. The court granted Bales' motion, finding the appearance of imputed conflict. JA1969. The evidentiary hearing was continued so that proper disclosures could be made to the United States. JA1969.

On February 24, 2023, the Federal Defender filed an affidavit with the court, outlining habeas counsels' agreed upon plan to transfer all files to VCRRC and Peiffer and her office. JA1967. On February 27, 2023, Peiffer submitted a declaration to the court, confirming that she had reached resolution regarding Runyon's file transfer from FDSET. JA1976. This declaration adopted the schedule set forth by FDSET (JA1977), promising completion of the scanning and transfer of files by April 3, 2023.

Between October 2021 and February 3, 2023 (before the evidentiary hearing), habeas counsel produced 4,809 pages of information. Following the February 14, 2023, continuance, habeas counsel produced an additional 1,613 pages through February 20, 2023. Nothing further was produced, despite promises

13

of a "rolling discovery plan" until June 1, 2023, and the government received approximately 315 pages followed by approximately 437 pages on June 15, 2023 (excepting approximately 300 pages that were entirely redacted). After June 15, 2023, habeas counsel produced an additional 32 pages of discovery on July 21, 2023.

On April 12, 2023, Runyon filed a motion for the appointment of Kathryn Ali to represent him with Peiffer. JA1992. Runyon also sought "to be represented in this matter on a pro bono basis by attorneys from Covington & Burling LLP, whose pro hac vice motions are forthcoming." JA1994. Runyon alleged receiving "at least fifty-seven bankers boxes and a hard drive containing 187,284 documents" and acknowledged that the "hearing was stopped at least in part due to the production of documents not previously disclosed." JA1997. Runyon also claimed that "a number of expert and lay witnesses remain to be called." JA1998. Runyon also asserted that the requested appointment is critical for the parties "and for any subsequent appeal." (*Id.*).[1] The court granted Ali's appointment "for the sole purpose of moving the case forward on the one issue now before the court for

---

[1] Before the district court's decision to continue the hearing, the government addressed the myriad of discovery issues and highlighted that the few pages turned over were apparently claim dispositive. The government, as the victim of the violations, sought to waive further discovery for purposes of the limited hearing (JA1893), but that request was deemed moot by the continuance. JA1984.

an evidentiary hearing." JA2033.  Although no *pro hac vice* motion was, or has

ever been, presented to the district court from the Covington attorneys, the court

put the parties on notice that "the court does not intend to appoint, or to otherwise

admit pro hac vice, any additional attorneys.  To the extent that petitioner utilizes

additional counsel in a supporting pro bono role, he will do so without the

appointment or involvement of, or reimbursement from, the court." JA2034.

Meanwhile, on April 14, 2023, Runyon sought another continuance to

submit a proposed discovery schedule, again discussing an obligation to "conduct

an independent review to ensure that all appropriate disclosures are made."

JA2015.  The government requested a status conference, which was held on June

16, 2023.  Ultimately, the court granted Runyon's requested continuance to

complete discovery by August 31, 2023, and ordered that the hearing will

recommence on November 1, 2023.  JA2116.

Meanwhile, Peiffer filed a motion seeking to withdraw and substitute

counsel, (JA2036, JA2039) which was heard at the June 16, 2023 hearing.  Peiffer

provided limited information in support of her motion.  Peiffer provided a sealed,

undated declaration (filed with her motion on June 7, 2023) in which she explained

that her mother fell ill on April 28, 2023, requiring Peiffer's assistance.  Without

question, her personal circumstances have become challenging, as she and others

seek to provide the requisite care and attention to her mother.

15

Peiffer informed the court of her general review of the Virginia Rules of Professional Conduct and a consultation with the Virginia State Bar, without specificity.  The district court gave Peiffer the opportunity to expand on her motion and declaration; however, Peiffer did not provide additional factual information. Moreover, Peiffer did not address how her withdrawal affected her overall duties at VCRRC, how it affected other clients, and how she prioritized client representation.  At the hearing on June 16, 2023, the court sought such clarity and allowed Peiffer every opportunity to remedy the lack of information before the court.  Peiffer did not attest that she was withdrawing from other client representation; she did not address how she prioritized work; and while she has a modified schedule to provide her reasonable accommodations to care for her mother, she said that she will remain employed with the VCRRC.  JA2062–2066. The court noted that while Peiffer availed herself of a consultation with the bar, she did not disclose the substance of those communications; she did not provide a written opinion explaining how her perception of a personal conflict gave rise to a withdrawal from the representation—particularly at this late stage in the litigation; and she did not identify whether she discussed her ethical obligations for providing Runyon with continuity of counsel.  JA2063.  Despite the district court's invitation to address the court's concerns (JA2062), Peiffer never provided additional

evidence on those issues and likewise never addressed whether she received advice regarding her ethical obligations to remain in the representation.

Runyon did "renew his request to be represented in these § 2255 proceedings by *pro bono* counsel from Covington." JA2043. The motion remains unclear as to which attorneys will formally seek admission, and no Covington attorney has in fact submitted a *pro hac vice* application.

Despite her difficult personal situation, Peiffer remains involved in other federal cases, including a case pending in the United States District Court for the Northern District of Mississippi – *Batiste v. Cain*, No. 1:22cv108. Peiffer was admitted *pro hac vice* in that case and was listed as counsel on an Amendment to Petition for a Writ of Habeas Corpus by a Prisoner in State Custody, filed on June 20, 2023. (ECF 31). That filing apparently prompted a *sua sponte* order by the district court, filed on June 21, 2023, that clarified an apparent misunderstanding as to "the nature of Ms. Peiffer's role in these proceedings." (ECF 32). The district court indicated that Peiffer was admitted *pro hac vice* as associate counsel at a reduced rate. *Id.* This Order has not prompted any motion to withdraw by Peiffer. In fact, the Superseding Scheduling Order in that case, also issued on June 21, 2023, requires an answer and reply to the Amended Petition within the next five months (90 days for an answer, and another 60 days for a reply). Additionally, the petitioner in this case (represented by Peiffer and other counsel) must file a

17

memorandum of law within 90 days after service of the answer.  In short, the

schedule sets forth deadlines occurring over the next three to six months, which is

the same time frame in this case.

### Summary of Argument

In denying Runyon's mandamus petition, this Court succinctly and correctly

summarized that Runyon "is receiving ample legal assistance in this habeas

proceeding and the district court's decision fell within its discretion in the

circumstances."  SA3.  The Supreme Court has explained that the standard that

governs a district court's ruling on a motion to substitute counsel is "a peculiarly

context-specific inquiry" and "deserves deference" because it "is so fact-specific."

*Martel v. Clair*, 565 U.S. 648, 663 (2012).  Here, in denying Peiffer's motion to

withdraw, the district court acted well within its discretion in concluding that

Peiffer's continued participation provides Runyon with continuity of counsel.  The

proceedings that remain are focused on completing an evidentiary hearing that has

already run eight days, addressing a single claim of ineffective assistance of

counsel.  The district court also appointed Kathryn Ali to represent defendant, and

she and Peiffer have the assistance of six lawyers at Covington & Burling, LLP.

Given the limited nature of the remaining proceedings, the ample assistance that

Runyon is receiving from other counsel, and Peiffer's unwillingness to declare that

her family circumstances prevent her from working, the district court did not abuse

its discretion in denying Peiffer's motion to withdraw.

Moreover, because Peiffer is free to present the district court with more information about her circumstances, meet her burden of showing that she is unable to continue the representation, and request that the district court revisit her request to withdraw, the order that she appeals cannot be said to have conclusively resolved the issue that she appeals. Peiffer's burdens of remaining in the case are also directly tied to the merits of the case given the limited nature of what remains to be litigated. Under these circumstances, Peiffer fails to satisfy the narrow exception to the rule that interlocutory appeals are not permitted.

## Argument

## I.    Regardless of whether the collateral-order doctrine may be satisfied in some cases involving a district court's denial of a defense attorney's motion to withdraw, the appeal here addresses an order that counsel could revisit and is not completely separate from the merits of defendant's § 2255 motion.

The collateral-order doctrine seldom permits interlocutory appeal. "Permitting piecemeal, prejudgment appeals," the Supreme Court has explained, "undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106–07 (2009) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)). "The justification for immediate appeal must therefore be sufficiently strong to

overcome the usual benefits of deferring appeal until litigation concludes." *Id.*

When the collateral-order doctrine is not satisfied, some mechanisms for review remain. For example, mandamus remains available, and while mandamus does not "provide relief in every case," it does offer a "safety valve[]" for "correcting serious errors." *Mohawk Indus., Inc.*, 558 U.S. at 111 (quoting *Digital Equipment*, 511 U.S. at 883). Here, Runyon sought relief via mandamus, and this Court denied relief. But that denial reinforces, rather than undermines, that the collateral-order doctrine is satisfied here. "Another long-recognized option is for a party to defy [the district court's] … order and incur court-imposed sanctions," which then can be appealed. *Mohawk Indus., Inc.*, 558 U.S. at 111–12. But Peiffer has not sought to employ that mechanism here.

As discussed below, the cases that have permitted interlocutory appeal are best understood as taking a limited, case-specific approach. This narrow approach "has acquired special force in recent years with the enactment of legislation designating rulemaking, 'not expansion by court decision,' as the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Mohawk Indus., Inc.*, 558 U.S. at 113. "Specifically, Congress in 1990 amended the Rules Enabling Act, 28 U.S.C. § 2071 *et seq.*, to authorize this Court to adopt rules 'defin[ing] when a ruling of a district court is final for purposes of appeal under section 1291.'" *Mohawk Indus., Inc.*, 558 U.S. at 113–14

(quoting 28 U.S.C. § 2072(c)). The "rulemaking process has important virtues," including "facilitate[ing] the adoption of measured, practical solutions," and "the combination of standard postjudgment appeals, § 1292(b) appeals, mandamus, and contempt appeals" weigh against courts adding blanket categories of interlocutory appeals. *Id*.

The Supreme Court has held that orders granting motions for disqualification of defense counsel in a criminal case may not be appealed before final judgment. *Flanagan v. United States*, 465 U.S. 259 (1984); *see also United States v. Sueiro*, 946 F.3d 637, 642–43 (4th Cir. 2020). And an order disqualifying counsel in a civil case is likewise not subject to interlocutory appeal. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985).

Some courts of appeals have concluded that an attorney may appeal the denial of the attorney's motion to withdraw in a case "because of the irreparable harm that befalls an attorney 'forced to continue representing a client against his or her wishes.'" *United States v. Plunkett*, 2023 WL 2929684, at *1 n.* (4th Cir. Apr. 13, 2023) (quoting *United States v. Bellille*, 962 F.3d 731, 736 (3d Cir. 2020); *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999)). But neither cases like *Bellille* and *Whiting* nor this Court's precedent purports to collapse the collateral-order doctrine to a single showing of asserted irreparable harm. Indeed, as the Supreme Court has explained, even though "a ruling 'may burden litigants in ways

21

that are only imperfectly reparable by appellate reversal of a final district court judgment,'" such circumstance have "never sufficed" to justify interlocutory appeal. *Mohawk Indus., Inc.*, 558 U.S. at 107 (quoting *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

To satisfy the collateral-order doctrine, the party appealing must show that the challenged order (1) is "conclusive," (2) "resolve[s] important questions separate from the merits," and (3) is "effectively unreviewable on appeal from the final judgment in the underlying action.'" *Adams v. Ferguson*, 884 F.3d 219, 223–24 (4th Cir. 2018) (quoting *Mohawk Indus., Inc.*, 558 U.S. at 106). Here, Peiffer fails to satisfy these requirements.

Peiffer's motion to withdraw depends on evolving facts about the demands that her mother's illness creates and what remains to be done on Runyon's ineffectiveness claim—a scenario that distinguishes this case from those that Peiffer invokes from other circuits such as *Bellille* and *Whiting*. Peiffer remains free to revisit with the district judge additional facts about her circumstances that makes her unable to continue working. Given the facts before it, the district court acted within its discretion in concluding that Peiffer had failed to demonstrate that her mother's health precluded her from continuing to represent Runyon, particularly in view of the other defense attorneys involved, but Peiffer was free to offer further evidence and developments to the district court.

22

Likewise, the district court's denial of the motion to withdraw cannot be evaluated independently from the questions of what remains to be litigated in Runyon's § 2255 motion—questions that inevitably will draw this Court into the merits of Runyon's claims. Given the extent of the proceedings that had already been completed, and the way in which Runyon's belated disclosures undermine his claims, this Court cannot meaningfully evaluate the district court's order to keep Peiffer in the case without taking into account the merits of Runyon's claims in his § 2255. In short, the collateral-order doctrine does not apply here, and there is no blanket exception to the final-judgment rule that permits an attorney to satisfy the collateral-order doctrine for any and all orders denying a motion to withdraw from a case.

**II.    The district court did not abuse its discretion in denying counsel's motion to withdraw given the circumstances presented to the court, including the narrow issues remaining in the case and the presence of other counsel to represent defendant.**

Peiffer does not dispute that her request to withdraw is governed by the "interests of justice" standard that the Supreme Court identified in *Martel*, a standard that covers counsel appointed under 18 U.S.C. § 3006A and 18 U.S.C. § 3599. Indeed, the district court's order, JA2116, expressly relied on *Martel*, and its interest-of-justice standard governs even when, as here, a defendant on collateral review has no constitutional right to counsel. *Martel*, 565 U.S. at 661.

23

"As its name betrays, the 'interests of justice' standard contemplates a peculiarly context-specific inquiry"—so much so that the Supreme Court "doubt[ed] that any attempt to provide a general definition of the standard would prove helpful." *Id*. at 662.  As an example, the Court explained that "[p]rotecting against abusive delay *is* an interest of justice." *Id*. at 661.  Factors that circuits have considered "generally include: the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the con]flict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Id*. at 663; *see also United States v. Blackledge*, 751 F.3d 188, 194 (4th Cir. 2014).

But this case does not involve the typical scenario of disagreements between defense counsel and defendant.  Rather, the "peculiarly context-specific inquiry" here took into account the stage of the proceedings, what had transpired before, and what remained to be litigated.  Against that background, the court had to weigh Peiffer's competing ethical responsibilities to avoid having her personal obligations harm her client under Va. R. Prof'l Conduct 1.7(a)(2), at the same time not harm her client through her withdrawal given her institutional knowledge of the case, and fulfil her obligation not to withdraw except by leave of court under Va. R. Prof'l Conduct 1.16(c).  The district court did not abuse its discretion in

24

weighing these factors, and "[b]ecause a trial court's decision on substitution is so fact-specific, it deserves deference." *Martel*, 565 U.S. at 663–64.

First, the district court plainly did not abuse its discretion in restricting its attention to the limited substantive issue remaining before the court. The mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court," as well as "issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *United States v. Bell*, 5 F.3d 64, 66–67 (4th Cir. 1993). Certainly, misconduct by one of Runyon's attorneys that improperly strengthened the claim on which he won a remand cannot reasonably be treated as broadening the bases for § 2255 relief that Runyon could seek now.

Second, because the sole claim before the court addressed whether trial counsel was ineffective in presenting evidence of brain damage and mental health, the ineffectiveness standard necessarily is evaluated based on the facts available "as of the time of counsel's conduct." *Maryland v. Kulbicki*, 577 U.S. 1, 4 (2015) (per curiam) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). After a remand and an eight-day evidentiary hearing, where five proposed witnesses remain, the district court did not abuse its discretion in declining to view the remaining proceedings as a jumping off point for a brand new assessment,

25

unavailable to Runyon's trial counsel, of Runyon's purported brain damage and mental health.

Third, the district court did not abuse its discretion in weighing Peiffer's competing ethical obligations in light of the evidence Peiffer presented to the court and concluding that her continued representation—which the court established on habeas counsels' own motion—provided Peiffer sufficient opportunity to address her other commitments and bring to bear her accumulated institutional knowledge of the case. This determination by a judge well acquainted with the case, its posture and the needs of the defendant was not an abuse of discretion.

Under Va. R. Prof'l Conduct 1.7(a)(2), a lawyer should not represent a client when there is "a significant risk that the representation … will be materially limited … by a personal interest of the lawyer." But a court need not simply accept a lawyer's representations that other work and personal commitments require the lawyer to end a longstanding representation. The commentary to Rule 1.7 explains that conflicts must ripen from a potential conflict to an actual one:

> A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

Va. R. Prof'l Conduct 1.7 cmt. [8].  Sixth Amendment standards also incorporate this point.  *See, e.g., Wilson v. Moore*, 178 F.3d 266, 280 (4th Cir. 1999) ("merely demonstrating a potential conflict of interest will not suffice").  And courts have discretion to determine whether a potential conflict should lead to disqualification of a lawyer.  *United States v. Williams*, 81 F.3d 1321, 1324–25 (4th Cir. 1996).

Moreover, reasonableness is an objective standard.  "[R]easonably when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer."  Preamble to Virginia Rules of Professional Conduct.  Thus, the assessment of whether a lawyer has a personal interest conflict of interest under Virginia Rule 1.7(a)(2) necessarily involves an objective analysis of whether there is a significant risk that a lawyer's personal interest will foreclose the lawyer from taking action that a reasonably prudent and competent lawyer would take.  *Cf., e.g., Sanford v. Commonwealth of Va.*, 687 F. Supp. 2d 591, 602 (E.D. Va. 2009) (for motion to disqualify counsel under Virginia Rule 1.7, "the asserted conflict must be a real one and not a hypothetical one").

Again, Peiffer's request occurred late in the proceedings involving a narrow habeas remand, after a significant record has already been developed—a record with which Peiffer is well familiar having litigated the evidentiary hearing and participated in recent discovery productions to date.  Peiffer stresses that the final days of the pending evidentiary hearing are in November, purportedly making her

27

request to withdraw timely. But the district court was not limited to considering solely whether Peiffer spoke up promptly after her mother's diagnosis (which arose in April 2023), but also considering what remained to be litigated and the stage of the proceedings. Viewed that way, Peiffer's request did come at the eleventh hour.

The district court also appropriately inquired of Peiffer as to any updates on her then at least 10-day old declaration. Despite claiming that the situation was fluid and unpredictable, Peiffer had no significant update for the court that extended beyond her declaration.

The court acknowledged and endorsed Peiffer taking a reduced role with Ali ready (and willing) to assume lead counsel status, together with the services of the six lawyers from Covington on a pro bono basis. The court did expressly consider the impact on Runyon, as it determined that representation would benefit from an attorney who had significant experience in the proceedings and could provide that assistance to more recently appointed and obtained counsel.

Although Peiffer claims that Runyon will experience prejudice with her remaining in the case, the district court appropriately focused on the effect on Runyon of allowing an attorney to withdraw in the middle of an evidentiary hearing. And again Runyon remains represented by Ali—capable learned counsel—and has obtained the pro bono services of a large law firm, who have begun their robust assistance, and which the court did nothing to prohibit.

Peiffer references Rules 1.1, 1.3 and 1.7 in support of her motion, but neglects to address Rule 1.16, which requires leave of the court to withdraw. Clearly, the district court found that such withdrawal could not be accomplished without working on hardship on Runyon.

### Conclusion

For the reasons stated above, this Court should dismiss Peiffer's appeal because it falls outside the collateral-order doctrine's stringent requirements. Alternatively, if this Court finds that there is jurisdiction for this appeal, this Court should affirm because the district court did not abuse its discretion.

Respectfully submitted,

Jessica D. Aber
United States Attorney


_____/s/_____
Richard D. Cooke
Brian J. Samuels
Lisa McKeel
Assistant United States Attorneys

**Statement Regarding Oral Argument**

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

**Certificate of Compliance**

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 6,822 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____
Richard D. Cooke
Assistant United States Attorney
