**No. 23-5**

IN THE
# United States Court of Appeals for the Fourth Circuit

---

In re: ELIZABETH JANE PEIFFER,
*Appellant*

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID ANTHONY RUNYON,

*Defendant*.

---

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 4:08-cr-00016-RBS-DEM
(The Honorable Rebecca Beach Smith)

---

**REPLY BRIEF OF APPELLANT**

---

CATHERINE E. STETSON
TIARA BROWN
AMANDA N. ALLEN
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004-1109
(202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Appellant*

September 1, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

    I.    THE GOVERNMENT'S OPPOSITION RESTS ON FACTUAL INACCURACIES ......................................................................................... 2

    II.   THE DISTRICT COURT'S ORDER DENYING APPELLANT'S MOTION TO WITHDRAW AS COUNSEL IS AN APPEALABLE COLLATERAL ORDER ................................................................................................... 7

    III.  THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT DISREGARDED APPELLANT'S CLEAR CONFLICT OF INTEREST ................... 12

CONCLUSION ................................................................................................... 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Brandon v. Blech*,
560 F.3d 536 (6th Cir. 2009) ..................................................................... 8, 14

*Cobra Nat. Res., LLC v. Federal Mine Safety & Health Review Comm'n*,
742 F.3d 82 (4th Cir. 2014) ......................................................................... 8, 9

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ......................................................................................... 7

*Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*,
310 F.3d 537 (7th Cir. 2002) ............................................................... 8, 11, 14

*Hunter v. Earthgrains Co. Bakery*,
281 F.3d 144 (4th Cir. 2002) ........................................................................ 16

*Martel v. Clair*,
565 U.S. 648 (2012) ...................................................................................... 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ............................................................................................. 9

*Sanford v. Maid-Rite Corp.*,
816 F.3d 546 (8th Cir. 2016) ................................................................... 8, 9, 14

*United States v. Barton*,
712 F.3d 111 (2d Cir. 2013) ........................................................................ 8, 9

*United States v. Bellille*,
962 F.3d 731 (3d Cir. 2020) ................................................................... *passim*

*United States v. Blackledge*,
751 F.3d 188 (4th Cir. 2014) ..................................................... 12, 15, 16, 18

*United States v. Muslim*,
944 F.3d 154 (4th Cir. 2019) ........................................................................ 16

*United States v. Oberoi*,
331 F.3d 44 (2d Cir. 2003) ............................................................................ 14

**Page(s)**

*United States v. Plunkett*,
No. 22-7225, 2023 WL 2929684 ...................................................................... 10

*United States v. Williams*,
81 F.3d 1321 (4th Cir. 1996)............................................................................ 18

*Whiting v. Lacara*,
187 F.3d 317 (2d Cir. 1999)....................................................................... 10, 11

*Will v. Hallock*,
546 U.S. 345 (2006) ...................................................................................... 8, 9

**STATUTE:**

28 U.S.C. § 2255 ................................................................................................. 5

**RULES:**

Va. R. Pro. Conduct 1.7(a)(2) ........................................................................... 2

Va. R. Pro. Conduct 1.16(a)(1) ......................................................................... 2

**OTHER AUTHORITY:**

*Request a Legal Ethics Opinion*, Virginia State Bar, *available at*
https://vsb.org/Site/lawyers/leo-request.aspx ................................................13

IN THE

# United States Court of Appeals for the Fourth Circuit

---

In re: ELIZABETH JANE PEIFFER,

*Appellant*

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

DAVID ANTHONY RUNYON,

*Defendant*.

---

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 4:08-cr-00016-RBS-DEM
(The Honorable Rebecca Beach Smith)

---

**REPLY BRIEF OF APPELLANT**

---

## INTRODUCTION

The Government's response veers away from the critical legal issues that underscore this appeal. The question here is whether Appellant Elizabeth Peiffer has a conflict of interest necessitating withdrawal from her representation of David Runyon. The answer is clear: Appellant faces an actual conflict of interest between her caretaking duties for her seriously ill mother and her responsibilities to Mr. Runyon. This conclusion is supported by Virginia Bar ethics counsel and Virginia's

Rules of Professional Conduct, which identify an ethical conflict where "there is significant risk that [counsel's] representation . . . will be materially limited by . . . a personal interest." Va. R. Pro. Conduct 1.7(a)(2). Thus, Appellant is obligated to withdraw, *see id.* 1.16(a)(1) & cmt. 1.

The Government instead opted to dedicate much of its argument to factual inaccuracies and an ill-conceived attempt to poison the well. By choosing to focus on irrelevant discovery issues, unripe merits issues, and an alternative narrative about Appellant's sworn representations to the District Court, the Government largely fails to meaningfully engage with the law and the established facts. This Court has jurisdiction over Appellant's interlocutory appeal. And the Court should hold that the District Court abused its discretion in denying Appellant's motion to withdraw.

## ARGUMENT

### I. THE GOVERNMENT'S OPPOSITION RESTS ON FACTUAL INACCURACIES.

The Government's response spends a lot of ink reciting inaccurate, incomplete, or irrelevant facts. To the extent the Government's statements warrant a response, it is important to correct the record:

1. The Government's assertion that Appellant is "involved in other federal cases" is irrelevant. Gov't Br. 17. Appellant appeared as associate counsel in *Batiste v. Cain*, No. 1:22-cv-108 (N.D. Miss.) in October 2022, ECF No. 13. She was listed

as counsel on an amended petition filed in June 2023, ECF No. 31, but she did not file it.  As the Government ultimately concedes, the *Batiste* court issued an order clarifying that Appellant was admitted as associate counsel.  Gov't Br. 17.  As Appellant informed the District Court, her circumstances have made her "unavailable to work on our other cases."  JA2069.  That she remains on the docket in other cases does not alter the fact that *this* case is the only case on her docket barreling toward an evidentiary hearing, and requiring significant blocks of time away from home, which is what gives rise to the ethical conflict.

2.  The Government claims that Appellant "provided limited information" in support of withdrawal and "never provided additional evidence" in response to the court's concerns.  Gov't Br. 15, 17.  That is wrong.  Appellant's sworn, sealed declaration contained significant personal detail about her mother's illness, the impact of her caretaking duties on her job, and her conclusion after consultation with Virginia Bar ethics counsel that she is ethically obligated to withdraw.  At the hearing, Peiffer "expand[ed] on her motion and declaration," *contra* Gov't Br. 16, attesting that her personal circumstances have made her "unable to work my normal schedule since April 28th . . . because of the degree of unpredictability that has taken over my schedule and my life . . . due to my mother's illness," JA2065.  She also stated:  "I have not been working in the way that I would need to to prepare for [Mr. Runyon's] evidentiary hearing or to support Ms. Ali as co-counsel."  JA2065.  When

later allowed to reply to the court—but admonished "don't repeat" and "[b]e as quick as possible," JA2067-2068—she added that her "inability to work at full capacity, and the need to accommodate that on our other cases," have had a "great effect on [her] office." JA2069.

3. There is no basis to suggest Appellant concealed information from the court. The Government's assertion that "[t]he court noted . . . [Peiffer] did not disclose the substance" of her communications with ethics counsel, Gov't Br. 16, is false. Appellant truthfully represented to the court that the advice she received from ethics counsel, based on an assessment of the totality of her circumstances, was that she was obligated to withdraw. *See* JA2228; JA2064. The Government also does not acknowledge, let alone dispute, that a *written* ethics opinion was unavailable; the State Bar does not issue written ethics opinions on issues subject to ongoing litigation. *See* Appellant's Br. 27-28.

4. The Government asserts that the remaining proceedings are narrow and uncomplicated. That is wrong again.

For the last several months, Mr. Runyon's counsel have been tasked with reviewing hundreds of thousands of pages of potential discovery transmitted by former counsel and producing relevant documents to the Government by the discovery deadline, and much work remains beyond that. This includes, among other things, mastering the voluminous record, identifying and litigating pre-hearing

issues, and preparing for and litigating the main event of these § 2255 proceedings:  presenting testimony from half a dozen or more witnesses (almost all of whom are experts), examining the Government's witnesses (including at least one expert and Mr. Runyon's trial counsel), and appropriate rebuttal witnesses, over what the District Court suggested would be "at minimum" an eight-day hearing set to begin on November 1.  JA2111.

And while the Government tries to minimize the issues remaining to be litigated as "narrow," Gov't Br. 24-28, they do not dispute that these issues are *complex*.  The complexity of the matter warrants the testimony of at least seven more experts from the witness lists previously submitted who have not yet testified.  The District Court itself observed that the "complexity of the case" justified appointing more than one counsel of record to litigate Mr. Runyon's remaining § 2255 proceeding.  JA2033-JA2034.  The Government also has stated that it plans to file "some motions regarding the scope of the resumed hearing," JA2112, which presumably would need to be briefed and argued before November 1.[1]  And the

---

[1] The Government's arguments about the scope of Mr. Runyon's claim on remand, Gov't Br. 22-23, are unripe, as the Government has effectively conceded by noting its intent to file motions below.  The Government's arguments also rest on a misconstruction of the record.  *Compare* Gov't Br. 9 (arguing that the Government "objected frequently" that testimony about Mr. Runyon's psycho-social history "was beyond the scope of the remand, and the district court agreed"), *with* JA1402-1403, JA1430, JA1501-1503, JA1529 (consistently permitting testimony on this topic over the Government's repeated objections).  Nor did habeas counsel ever "agree[]" that

Government's insistence that Mr. Runyon has the additional assistance of *pro bono* attorneys to prepare for the upcoming hearing ignores that fact that the *pro bono* attorneys are barred from meaningfully participating in the hearing, having been denied pro hac vice status. *See* JA2222-2223. In all events, the critical question here is not the extent to which Appellant must help prepare for and lead the hearing; it is whether she should be forced to continue in this representation *at all* given her current ethical conflict.

5. The Government's additional arguments about the scope of Mr. Runyon's ineffective-assistance claim, Gov't Br. 21-24, are merits arguments not before this Court in this limited interlocutory appeal. Consider first the Government's arguments about Dr. Merikangas, one of Mr. Runyon's experts, *id.* at 4-5, 11-12. In addition to being as-yet-undeveloped and not germane, the Government's arguments mischaracterize record facts and ignore other significant gaps in the record. For example, the Government asserts that Dr. Merikangas "received and reviewed the MRI and PET scans of Runyon that had been conducted before the penalty phase" and "recommended that a mental health defense not be invoked." *Id.* at 11. This assertion is false. Before having ever *seen* the scans, Dr. Merikangas provisionally

---

"the scope of the claim was limited to evidence of brain injury and mental illness," Gov't Br. 9, and the Government cites nothing to support its claim on this point. Habeas counsel has repeatedly argued that Mr. Runyon's psychosocial history is part of the claim on remand. *See, e.g.*, JA1565-1566.

counseled against a mental health defense "unless there was something glaring in the MRI or PET scan" that would provide a very strong argument (which, of course, the MRI scans did show). *Id.* And even entertaining the unlikely proposition that Dr. Merikangas received and reviewed the scans before the penalty phase began on August 19, nothing in the current record indicates that trial counsel ever communicated with Dr. Merikangas after he would have had an opportunity to review the scans. On the contrary, the last recorded call between trial counsel and Dr. Merikangas was on August 13, when the record definitively shows neither trial counsel nor Dr. Merikangas had yet obtained the scans. In any case, all of this just leads back to the more fundamental problem with the Government's arguments: these facts have not yet been developed in the District Court. It is neither necessary nor appropriate for this Court to wade into these issues to resolve this narrow appeal.

## II. THE DISTRICT COURT'S ORDER DENYING APPELLANT'S MOTION TO WITHDRAW AS COUNSEL IS AN APPEALABLE COLLATERAL ORDER.

The collateral order doctrine permits the appeal of an order that "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action"—rights "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

An appealable collateral order must meet three requirements: it must "[1] conclusively determine the disputed question, [2] resolve an important issue

completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted). The District Court's order meets all three requirements.

1. Courts have found that an order denying a motion to withdraw satisfies the first requirement—conclusive determination—because when a court orders that an attorney "must continue to represent [her] client," the court conclusively determines the issue. *Sanford v. Maid-Rite Corp.*, 816 F.3d 546, 549 (8th Cir. 2016); *United States v. Barton*, 712 F.3d 111, 116 (2d Cir. 2013); *United States v. Bellille*, 962 F.3d 731, 737 (3d Cir. 2020); *Brandon v. Blech*, 560 F.3d 536, 537 (6th Cir. 2009); *Fid. Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 310 F.3d 537, 539-540 (7th Cir. 2002).

Here, the District Court entered an order denying Appellant's motion to withdraw. JA2116-2119. The Government contends that Appellant could perhaps raise the issue with the District Court again, Gov't Br. 22, but there is no "plain prospect" that the District Court would alter its ruling, *Cobra Nat. Res., LLC v. Federal Mine Safety & Health Review Comm'n*, 742 F.3d 82, 88 (4th Cir. 2014).[2]

---

[2] On August 31, 2023, Appellant's co-counsel in the underlying matter moved for Appellant to appear remotely for a September 15, 2023 District Court discovery hearing. Mot. for Co-Counsel to Appear, ECF No. 838, Case No. 4:08-CR-00016-RBS-DEM (E.D. Va.). Attending the hearing is a significant burden on Appellant because of her caretaking obligations for her mother. *Id.* at 2-3. The motion was needed because the District Court insisted that Appellant attend the

And it is not enough that the order may be "subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12-13 (1983). Were that the case, no conclusive, rights-determining ruling—immunity, for example—would ever be subject to interlocutory review; after all, there is always a chance the court could change its mind.

2. For an order to "resolve an important issue completely separate from the merits of the action," *Will*, 546 U.S. at 349 (citation omitted), it cannot "involve considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Cobra Nat. Res.*, 742 F.3d at 90 (citation omitted). The question whether counsel should be permitted to withdraw in light of an ethical conflict is completely separate from the merits of the underlying action. *See Sanford*, 816 F.3d at 549; *Barton*, 712 F.3d at 116; *Bellille*, 962 F.3d at 737 ("[W]hether Golubitsky has a conflict of interest is separate from the merits of the underlying criminal matter involving a vast RICO conspiracy.").

3. The order denying Appellant's motion to withdraw is the type of order that is effectively unreviewable on appeal from a final judgment. If Ms. Peiffer waits until final judgment to appeal, the "harm of violating [her] ethical obligations would

---

discovery hearing. *Id.* at 2-3. This is despite the District Court's representations that Appellant could take a on a lesser role and that she didn't have to be present for everything leading up to the evidentiary hearing. *Id.* at 2.

be complete and could not be undone after [the hearing]." *Bellille*, 962 F.3d at 737. And "[n]either the Supreme Court, nor any court of appeals to consider the issue, has held that the denial of a motion to withdraw fails interlocutory review under the collateral order doctrine in civil cases." *Id.* at 735; *accord United States v. Plunkett*, No. 22-7225, 2023 WL 2929684, at *1 n. (4th Cir. Apr. 13, 2023) ("[S]everal circuits have concluded that an attorney may immediately appeal the denial of a motion to withdraw."). This Court should not be the first to hold otherwise.

The Government attempts to distinguish some of Appellant's cited cases, but its distinctions amount to nothing. Gov't Br. 22. *Bellille* concerned a motion to withdraw based on ethical obligations, which is precisely the issue here. 962 F.3d at 737-738. In *Whiting v. Lacara*, counsel sought to withdraw his representation and submitted an affidavit in support—also as here. 187 F.3d 317, 319 (2d Cir. 1999). The court denied the motion, counsel appealed, and the Second Circuit concluded that it had jurisdiction over the *Whiting* appeal under the collateral-order doctrine. *Id.* at 320. For the remaining cases that Appellant cites, the Government does not engage in any meaningful discussion about how those cases are distinct from this case. Gov't Br. 22. Nor could it. As discussed here and in Appellant's opening brief, Appellant's Br. 1-3, case law shows that the collateral order doctrine applies in this situation.

10

The Government implies that Appellant reformulates the collateral order doctrine requirements into one that requires a "single showing of asserted irreparable harm." Gov't Br. 21-22. That argument is inapposite here. The irreparable harm here arises because of the active ethical conflict Appellant currently is working under; that ethical conflict is not remediable on appeal from a final judgment.

The Government also argues that denying a motion to withdraw is like the grant of a motion for disqualification, which is not subject to the collateral order doctrine. *Id.* at 21. But as multiple courts have explained, motions for disqualification are only "superficially similar" to withdrawal motions. *Fid. Nat'l Title Ins. Co.*, 310 F.3d at 539. "[U]nlike an order granting or denying a motion to disqualify an attorney . . . an order denying counsel's motion to withdraw primarily affects the counsel forced to continue representing a client against his or her wishes." *Bellille*, 962 F.3d at 735-736 (citation omitted). The better analogy, as the *Whiting* court observed, is to "a denial of immunity or of a double jeopardy claim, which are reviewable under the collateral order doctrine on the ground that having to go through a trial is itself a loss of the right involved." 187 F.3d at 320; *see also Fid. Nat'l Title Ins. Co.*, 310 F.3d at 539 ("[I]ncorrect decisions about disqualification may justify reversal at the end of the case, while an incorrect decision forcing an unpaid lawyer to continue providing services never would supply a reason to reverse the final judgment.").

4.  Finally, the Government offers a handful of other arguments against review. Gov't Br. 20.  It first claims that the denial of Mr. Runyon's mandamus petition shows that the collateral order doctrine requirements are not met here.  *Id.*  That is wrong.  Mandamus relief is subject to a different standard.  And the ethics issues in this appeal are different from the adequate-representation issues in the mandamus petition, which is why this and the mandamus petition were brought as separate matters.

The Government also suggests that Appellant could commit a separate ethical violation by simply defying a court order and that would then give this Court appellate jurisdiction.  *Id.*  That is, of course, not a serious prospect, and there is no need for such an egregious act when the collateral order doctrine applies here. Furthermore, Appellant is seeking to withdraw because she takes her ethical obligations seriously—including the obligations that come with following a court order.

### III.  THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT DISREGARDED APPELLANT'S CLEAR CONFLICT OF INTEREST.

1.  As Appellant explained in her opening brief, Appellant's Br. 23-29, the District Court failed to make an adequate inquiry "into the scope and nature" of the "ethical conflict" when it denied Appellant's withdrawal motion, *United States v. Blackledge*, 751 F.3d 188, 196 (4th Cir. 2014); *see* Amicus Curiae Br. of McCauley & Moliterno 14-15 ("[A] motion to withdraw based on a conflict requires a binary

decision:  if there is a significant risk of a material limitation in the representation, withdrawal should be granted.").  Appellant concluded that she had to withdraw only after consulting with Virginia Bar ethics counsel.  JA2233-2234.  She made this representation as an officer of the court, in a declaration that was sworn under the penalty of perjury.  The District Court made no significant inquiry about ethics counsel's recommendation, and instead dismissed the argument by saying that it had not received a written ethics opinion.  JA2064.  The District Court ignored the fact that the Virginia State Bar's Standing Committee on Legal Ethics does not always issue opinions.  The Committee will issue a legal ethics opinion only for "a hypothetical set of facts" and "may decline to issue an opinion if the question raised is the subject of collateral litigation."  Appellant's Br. 27-28 (quoting *Request a Legal Ethics Opinion*, Virginia State Bar, *available at* https://vsb.org/Site/lawyers/leo-request.aspx).  In fact, it is "unheard of for ethics counsel to issue a Legal Ethics Opinion on an issue arising from active litigation."  Amicus Curiae Br. of McCauley & Moliterno 11.  And the former head of the Ethics Department of the Virginia State Bar "does not recall a single instance" where this occurred in his thirty years of service as ethics counsel.  *Id.*

When district courts misapply or disregard professional rules of conduct, courts routinely reverse them, in both the civil and criminal contexts.  In *Fidelity National Title Insurance Company*, for example, the Seventh Circuit reversed a

13

district court decision denying a law firm's request to withdraw because of unpaid fees. 310 F.3d at 539, 541. The court of appeals noted that the district court had not discussed the applicable Local or Model Rules of Professional Conduct when denying the withdrawal motion. Other courts have ruled similarly. *See also, e.g.*, *Sanford*, 816 F.3d at 549-550 (permitting withdrawal where attorney who moved to withdraw due to unpaid fees met requirements of applicable Rule of Professional Conduct); *Brandon*, 560 F.3d at 537-539 (reversing denial of withdrawal motion where district court's order did not acknowledge the Model Rules of Professional Conduct).

*United States v. Oberoi* similarly concerned a district court decision denying the Federal Public Defender's request to withdraw because of a conflict of interest. 331 F.3d 44, 47 (2d Cir. 2003). The Second Circuit vacated the district court's denial of the motion to withdraw, and remanded for the appointment of new counsel. *Id.* at 52; *Bellille*, 962 F.3d at 738-745 (examining the American Bar Association's Model Rules of Professional Conduct regarding conflicts of interest and remanding for the district court to address factual gaps).

The Government attempts to recast the issue by arguing that this case is not the "typical" matter of a disagreement between a defendant and their counsel. Gov't Br. 24. And the Government says that the District Court deserves deference because it weighed "competing ethical responsibilities," which resulted in a determination

14

that Appellant was ethically obligated to remain in the case under the Virginia Rules of Professional Conduct. *Id.* at 24-25. But there was no need for the District Court to do such a thing when Virginia Bar ethics counsel advised that Appellant withdraw and her client supported such a withdrawal.

2. The Government also makes no attempt to respond to Appellant's argument that the District Court's order violates Mr. Runyon's rights, and that the District Court did not examine the effect of Appellant's conflict of interest on Mr. Runyon's rights and interests. Appellant's Br. 34-39. Mr. Runyon's rights and interests deserve more—especially since Appellant's capacity impacts Mr. Runyon and his defense as an indigent person under a sentence of death, Appellant's Br. 34-39.

3. This Court examines three questions in assessing withdrawal motions: (1) timeliness; (2) adequacy of the court's inquiry; and (3) extent of conflict. *See, e.g., Blackledge*, 751 F.3d at 194. All three factors weigh in favor of reversal.

a. The Government argues, echoing the District Court, that Appellant's request to withdraw came too late, and that the proceedings are narrow. Gov't Br. 27-28. We have already responded to the Government's inaccurate characterization of the remaining proceedings—which also are irrelevant to the question of whether Appellant has a conflict necessitating her withdrawal. *Supra* at 4-6. And precedent

is not on the Government's (or the District Court's) side with respect to timeliness. The timeliness inquiry focuses on "the temporal proximity of the motion to trial or another proceeding" and "the resulting delay on the overall proceedings." *United States v. Muslim*, 944 F.3d 154, 166 (4th Cir. 2019). The District Court, however, focused on the duration of the case and what remained to be litigated. *See* JA2071. Under the correct standard, Appellant's motion—which came just days after Appellant received the advice from Virginia Bar ethics counsel that she must move to withdraw—plainly was timely. Indeed, the Government hardly argues otherwise. Despite referencing the Supreme Court's assertion that "[p]rotecting against abusive delay *is* an interest of justice," Gov't Br. 24 (citation omitted), throughout its response, the Government did not and (cannot) argue that granting Appellant's motion would have caused *any* delay, let alone "abusive" delay. *Martel v. Clair*, 565 U.S. 648, 662 (2012). The District Court did not make the correct timeliness inquiry and thus committed "an error of law"—"by definition an abuse of discretion." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 150 (4th Cir. 2002).

b. The District Court also failed to "thoroughly inquire into the factual basis of any conflicts asserted by counsel." *Blackledge*, 751 F.3d at 194. The District Court disregarded Appellant's unrebutted representations about her lack of capacity and the recommendation from ethics counsel that she withdraw. Instead, the District Court insisted that Appellant's involvement was necessary for "continuity" and

"institutional knowledge," despite acknowledging that Appellant would need to have a "lesser role." JA2073; JA2075.

The Government argues in response that the District Court was correct in its assessment of the "the needs of the defendant" and the benefit of "institutional knowledge." The Government does not dispute, however, that the District Court *failed to consider* Mr. Runyon's support for Appellant's withdrawal. *See* Appellant's Br. 27; JA2039-2040; JA2044. Nor does the Government acknowledge that Appellant has offered to make herself available to Mr. Runyon's trial team after withdrawal to ensure continuity of knowledge to the extent possible. *See* Appellant's Br. 33; JA2233-2234.

The District Court and the Government both conceded that Appellant's circumstances would require her to proceed on a limited basis, JA2072, and in a "lesser," JA2075, or "reduced role," Gov't Br. 28. *See also* JA2074 (Government counsel acknowledging at hearing that Appellant should remain involved but "not [in] the capacity that she was."). Indeed, in the Government's own response, it admitted that the court "acknowledged and endorsed Peiffer taking a reduced role." Gov't Br. 28. That is the wrong question. The question here is whether Appellant can be forced to continue representing Mr. Runyon at all—particularly when it appears her presence (in person) will continue to be required at all court proceedings, including a lengthy hearing beginning on November 1. *See supra* n.2.

17

c. The District Court also failed to engage in an adequate inquiry as to the extent of conflict. *Blackledge*, 751 F.3d at 195. The conflict is stark and grave: Appellant cannot both take care of her mother and serve her death-sentenced client.

The Government argues that Appellant's conflict is simply a "potential" conflict, and that "courts have discretion to determine whether a potential conflict should lead to disqualification of a lawyer." Gov't Br. 27 (citing *United States v. Williams*, 81 F.3d 1321, 1324-25 (4th Cir. 1996)). To be very clear: There is nothing "potential" about Elizabeth Peiffer's conflict. Her mother has advanced cancer. Her caretaking duties have already materially limited her capacity to adequately represent Mr. Runyon. And Virginia Bar ethics counsel has concluded that she must withdraw. There is nothing "potential" about any of that.

The amici in this case, who together have over 70 years of experience with ethical issues largely in Virginia, also find Appellant's conflict patent and serious. *See* Amicus Curiae Br. of McCauley & Moliterno 1-4. Their experience has led them to conclude that the District Court's decision about the Appellant's conflict of interest is "diametrically opposed to [her] actual ethical obligations," *id.* at 10, and unreasonably justified by "extraneous and irrelevant factors" "that were not supported by the record of this case," *id.* at 15.

**CONCLUSION**

For the foregoing reasons, and those in the opening brief, this Court should exercise jurisdiction over this appeal and hold that the District Court abused its discretion in denying Elizabeth Peiffer's motion to withdraw.

September 1, 2023

Respectfully submitted,

/s/ Catherine E. Stetson

CATHERINE E. STETSON
TIARA BROWN
AMANDA N. ALLEN
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Tel: (202) 637-5491
cate.stetson@hoganlovells.com

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this motion contains 4,265 words.

This foregoing complies with the typeface and type style requirements because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

September 1, 2023

/s/ Catherine E. Stetson
Catherine E. Stetson

**CERTIFICATE OF SERVICE**

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on September 1, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

September 1, 2023         /s/ Catherine E. Stetson

                                    Catherine E. Stetson